## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. _____

FRANCISCO RENE MARTY,
on behalf of himself and all others
similarly situated,

        Plaintiffs,

                                      **CLASS ACTION**

v.                                        **JURY DEMAND**

ANHEUSER-BUSCH COMPANIES, LLC,

        Defendant.

_____/

## CLASS ACTION COMPLAINT

        Plaintiff, Francisco Rene Marty, files this class action complaint on behalf of himself and all others similarly situated against Anheuser-Busch Companies, LLC ("AB" or "Defendant"), and as grounds states:

### INTRODUCTION

        1.     This is a class action by a consumer on behalf of consumers of Beck's beer who have been deceived that Beck's, a historically German beer, is manufactured in and imported from Germany.  Defendant, AB has committed unfair and deceptive practices and has been unjustly enriched by marketing and selling beer in a way that misleads consumers into believing that Beck's beer is still imported from Germany, claiming that Beck's beer "Originated in Germany" with "German Quality", and selling Beck's Beer at prices substantially higher than those of domestic beer, despite the fact that the beer is brewed in the United States with domestic ingredients.

## JURISDICTION, VENUE, AND PARTIES

2.     This Court has jurisdiction over this action pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d)(2).  The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000, and there is complete diversity of citizenship.

3.     Venue is proper in the Southern District of Florida under 28 U.S.C. § 1391(b)(2) because the Florida plaintiffs reside within it, a substantial part of the events or omissions giving rise to the claim occurred within this district, and Defendant caused harm to class members residing in this district.

4.     Defendant AB is Delaware limited liability corporation, wholly owned and controlled by Anheuser-Busch InBev SA/NV, a publicly traded company (NYSE: BUD).  Anheuser Busch InBev SA/NV was formed in November of 2008 following the merger of InBev and Anheuser Busch.  AB's principal place of business is in St. Louis, Missouri.

5.     All conditions precedent to this action have occurred, been performed, or have been waived.

## FACTUAL ALLEGATIONS

### The History of Beck's Brewery

6.     In 1873, Luder Rutenberg, Heinrich Beck, and Thomas May formed the original Beck's Brewery.  Beck's Brewery remained owned by local families until 2002, when it was sold to the Belgian company Interbrew for 1.8 billion Euros.  In 2004, Interbrew merged with AmBev, and became InBev.  Shortly before the merger, Carlos Brito was named the CEO of AmBev.  In 2008, InBev purchased Anheuser Busch for $52 billion, and became Anheuser-Busch InBev SA/NV ("AB InBev").

7.     AB InBev, Defendant AB's parent company, is the world's largest producer of

alcoholic beverages. In 2012, AB InBev generated gross profits of more than $23 billion. In the United States, AB InBev operates 13 breweries and produced over 3.3 billion gallons of malt beverages last year. Imported beer is the fasted growing segment of the American beer market, nearly doubling in market share during the 1990s. According to one report, AB sold $73.6 million in Beck's Beer in 2012 in the U.S. with 2,656,154 cases worth of beer sold at an average price of $27.74.

8.     For over 225 years, Beck's was known for its pilsner consisting of "two row spring barley from the south of England, yeast, crystal water from the 'Rotenburger Rinne' and Hallertau hops from southern Germany." Beck's Brewery brewed beer under the Beck's brand ("Beck's Beer") in the German city of Bremen, under the "Germany Purity Law of 1516", and with the same four ingredients. Although these four ingredients, water, hops, barley, and yeast, are the key ingredients in almost every beer today, it was the source of these ingredients that made Beck's Beer special to its consumers, and why the people who drink Beck's Beer trusted Beck's Brewery's reputation and consistency. Beck's Beer consumers in the United States knew that the only way to get German beer of such high quality, as boasted about on Beck's Beer packaging, was to import the beer from Germany. As such, Beck's Beer consumers relied on Beck's Brewery's representations that Beck's Beer was imported from Germany and brewed with the same ingredients as it has been in the past, and they paid a premium for imported Beck's Beer.

9.     In 2012, AB began brewing Beck's Beer in St. Louis, Missouri in an effort to slash costs and increase profit margins. Although Beck's Beer is still brewed with water, hops, barley, and yeast, the source and type of each of these ingredients is substantially different. For example, Beck's Beer is brewed with water from Missouri, as opposed to the Rotenburger Rinne

in Germany.

10.    Although Beck's Beer is no longer imported from Germany, the marketing and advertising of Beck's has remained mostly unchanged.  Nowhere on the packaging of Beck's six or twelve pack of containers does the label indicate that Beck's Beer is brewed in the U.S.A. with domestic ingredients.  In fact, the packaging for Beck's boldly states that it is "German Quality" beer "brewed under the German Purity Law of 1516" and that it "Originated in Bremen, Germany."  Photographs of packaging are attached as Composite Exhibit A, and that packaging typical of the packaging used by AB and purchased by Plaintiffs and the class.  Beck's Beer's logo also remains, along with the image of the coat of arms of Bremen, Germany.

11.    The individual bottles also remain almost identical to the imported beer bottles. The only difference is that on the border of the new labels, in obscure white text on a silver background, the bottle says: "Product of USA – Brauerei Beck & Co. – St. Louis, MO. – 12 FL. OZ."  Although certain aspects of the bottle label are reviewed by the Alcohol and Tobacco Tax and Trade Bureau and subject to its Certificate of Label Approval System, ("COLA"), this bottle labeling cannot even be seen before 12-pack containers are purchased, cannot be seen in 6-pack packaging unless a bottle is removed and examined, and is inadequate to inform the reasonable consumer that Beck's Beer, a beer that had been brewed in Germany for over 225 years, is no longer imported. AB's packaging and labeling are insufficient for a reasonable consumer to believe that Beck's Beer is no longer imported.  Reasonable consumers, including Plaintiffs, cannot or do not read the fine print on the bottles until after they have already purchased Beck's Beer. Even then, the print on the bottle label is ambiguous and difficult to read.

12.    Most breweries proudly display their location.  Now, Beck's Brewery is hiding behind misrepresentations to its loyal customers to mislead consumers into thinking Beck's Beer

4

is the same, imported product it has been for years.

13.     AB's misleading packaging and labeling is buttressed by an overall marketing campaign, online and in ads, that misleads the consuming public that Beck's is imported from Germany.  For example, on line AB touts that it was "the first to export beer from Germany in a steel keg, ensuring the beer tasted as fresh when it arrived as when it left the brewery."  *See* www.becks.com/#/en/about/becks.

14.     Defendant's misrepresentations cause confusion among consumers.  Consumers believe they are purchasing beer imported from Germany brewed with German ingredients, when in fact, they are purchasing beer brewed in St. Louis, Missouri, brewed with ingredients from the United States.

15.     Defendant knows that consumers are willing to pay more for imported beer products because the quality is higher, and Plaintiffs believe they are paying costs associated with high quality ingredients and for importing the beer.

16.     Furthermore, Defendant's misrepresentation causes confusion among retailers, restaurants, and bars.  These establishments purchase Beck's Beer and market Beck's Beer to the general public as an imported beer.  Many retailers and restaurants charge a premium for imported beers, and consumers are further damaged by Defendant's misrepresentations.  True and correct copies of examples of advertisements and websites erroneously stating Beck's is "imported" are attached as Composite Exhibit "B".  Thus, consumers are further harmed by restaurants, bars, and retail stores selling Beck's Beer at higher prices under the false belief that it is still imported.

17.     Beer consumers are willing to pay a premium for high quality, imported beer. Consumers in the United States often pay higher prices for their beer because European

breweries follow centuries of traditions and brewing practices, and the breweries use only premium quality ingredients from local farms.  Indeed, many breweries, in the United States and Europe, are located in certain areas solely because the water in those regions yields a higher quality beer.  Consumers have grown accustomed to the consistency from these imported beers. As a result, consumers pay higher prices for imported beer than similar beers that are brewed domestically.

18.    Beverage market analysts Gerard Rijk at ING has noted:  "The authenticity of Beck's is that it is a German brand with German water, with German malt, with German hops. This isn't about brand building.  It's about costs.  Heineken would never do such a thing."

19.    As a result of Defendant's false, deceptive, and misleading packaging, labeling and omissions, consumers such as Plaintiffs are deceived when they purchase Beck's Beer inviolation of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201-501.2101.  Defendant has also been unjustly enriched as a result of its conduct.

20.    As a result of these unfair and deceptive practices, Defendant has collected millions of dollars from the sale of Beck's Beer that it would not have otherwise earned. Plaintiff and class members paid money for a product that is not what it claims to be or what they bargained for.   They  paid a premium for Beck's Beer when they could have instead bought other, less expensive, domestic beer, and consumers have lost the opportunity to purchase and consume other, truly imported beer.

**Plaintiff**

21.    At all relevant times, Plaintiff  Francisco Rene Marty resided in, and continues to reside in, Miami-Dade County, Florida.  During the relevant time period, Francisco Rene Marty purchased AB's Beck's products in reliance on the representations contained on their packaging

and Beck's history of being an imported beer from Germany.  Specifically, Francisco Rene Marty purchased approximately one six-pack and/or 12 pack case of Beck's per week during the past 8 to 10 years at retailers licensed by the State of Florida to sell malt beverages.  Francisco Rene Marty has since learned that Beck's is no longer imported.  Francisco Rene Marty took into account AB's misrepresentations that Beck's was imported from Germany in making his purchases, and would not have purchased Beck's had he known that AB's representations were false.  Based on Defendant's misrepresentations and deceptive conduct, Francisco Rene Marty purchased beer that had less value than what he paid, and he has accordingly suffered legally cognizable damages proximately caused by Defendant's misconduct.  After learning the truth about AB's mislabeling of Beck's, Francisco Rene Marty decided to stop purchasing it.  However, Francisco Rene Marty might resume purchasing Beck's if and when he learns that it is accurately labeled.

22.     Francisco Rene Marty purchased Beck's Beer in reliance on Defendant's representations and omissions that Beck's Beer was brewed in Germany and imported into the United States.  Francisco Rene Marty was willing to pay a premium for Beck's Beer because of these representations and omissions, and would not have purchased, would not have paid as much for the products, or would have purchased alternative products in absence of these representations and omissions.

## CLASS ALLEGATIONS

### A.     Class Definitions

23.     Plaintiff brings this action against Defendant pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of himself and all other persons similarly situated.  Plaintiff seeks certification of the Nationwide Class and Florida Sub-Class, defined as follows:

## Nationwide Class

All consumers residing in the 48 contiguous states who purchased Beck's beer at retail for offsite, personal, family, or household purposes and not for re-sale, within the period that Beck's beer was not imported from Germany,

## Florida Sub-Class

All consumers residing in the state of Florida who purchased Beck's beer at retail in the State of Florida for offsite, personal, family, or household purposes and not for re-sale, within the period that Beck's beer was not imported from Germany.

24.     Defendant subjected Plaintiff and the respective Class members to the same unfair, unlawful, and deceptive practices and harmed them in the same manner, and was unjustly enriched in the same manner.

### B.      Numerosity

25.     The proposed classes are so numerous that joinder of all members would be impracticable.  Defendant  AB enjoys a 47.6% market share of the sale of malt beverages in the United States.  Defendant sells and distributes Beck's Beer throughout the State of Florida, as well as nationwide.  Although the number of Class members is not presently known, all Classes are likely to be comprised of Many thousands of consumers.  The classes are all certainly so numerous that joinder of all members of the Classes is impracticable.

### C.      Commonality

26.     As outlined below, there are questions of law and fact that are common to all Plaintiff's and class members' claims.  These common questions predominate over any questions that go particularly to any individual member of the Class.  Common questions of fact and law exist because, inter alia, Plaintiff and all Class members purchased Beck's beer as being imported.  These common questions include, but are not limited to :

        a.   Whether Defendant falsely, deceptively and/or misleadingly misrepresented

Beck's beer as imported or German;

b.  Whether Defendant's misrepresentations and omissions are likely to deceive a reasonable consumer;

c.  Whether Plaintiff and members of the Nationwide Class and Florida Subclass were damaged by paying imported prices for non-imported beer;

d.  Whether Plaintiff and members of the Nationwide Class and Florida Subclass are entitled to damages;

e.  Whether Defendant violated Florida's Unfair and Deceptive Unfair Trade Practices Act;

f.  Whether Plaintiff and Class members are entitled to compensatory damages, including actual and statutory damages plus interest thereon and/or monetary restitution;

g.  Whether Defendant must disgorge any and all profits it has made as a result of its misconduct;

h.  Whether Defendant's conduct rises to the level of willfulness so as to justify punitive damages; and

i.  Whether an injunction is necessary in order to prevent AB from continuing to engage in unfair, deceptive and unlawful activity.

### D.  Typicality

27.  Plaintiff's claims are typical of the claims of the members of the Classes because they purchased and consumed Beck's beer, which was deliberately misrepresented as being an imported beer.  Thus, Plaintiff and all Class members sustained the same injury arising out of AB's common course of conduct in violation of law as complained of herein.  The injury of each Class member was caused directly by AB's uniform wrongful conduct in violation of law as alleged herein.  Each class member has sustained, and will continue to sustain, damages in the same manner as Plaintiff as a result of Defendant's wrongful conduct.

### E.     Adequacy of Representation

28.     Plaintiff will fairly and adequately protect the interest of the members of the Classes.  Plaintiff has retained highly competent and experienced class action attorneys to represent his interests and those of the Classes.  Plaintiff's counsel have the necessary financial resources to adequately and vigorously litigate this class action.  Plaintiff has no adverse or antagonistic interests to those of the Classes.  Plaintiff is willing and prepared to serve the Court and the Class members in a representative capacity, with all of the obligations and duties material thereto, and they are determined to diligently discharge those duties by vigorously seeking the maximum possible recovery for class members.

29.     To prosecute this case, Plaintiff has chosen the undersigned law firms, which are very experienced in class action litigation and have the financial and legal resources to meet the substantial costs and legal issues associated with this type of litigation.

### F.     Requirements of Fed. R. Civ. P. 23(b)(3)

30.     This action is appropriate as a class action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure.

31.     ***Common Questions of Law and Fact Predominate:*** The questions of law or fact common to Plaintiff's and each Class member's claims predominate over any questions of law or fact affecting only individual members of the class.

### G.     Superiority

32.     A class action is superior to individual actions in part because of the non-exhaustive factors listed below:

> (a) Joinder of all class members would create extreme hardship and inconvenience for the affected customers as they reside all across the states;

10

(b) Individual claims by class members are impractical because the costs to pursue individual claims exceed the value of what any one class member has at stake.  As a result, individual class members have no interest in prosecuting and controlling separate actions;

(c) There are no known individual class members who are interested in individually controlling the prosecution of separate actions;

(d) The interests of justice will be well served by resolving the common disputes of potential class members in one forum;

(e) Individual suits would not be cost effective or economically maintainable as individual actions; and

(f) The action is manageable as a class action.

33.   Plaintiff is unaware of any difficulties that are likely to be encountered in the management of these class actions that would preclude their maintenance as class actions.

## H. Requirements of Fed. R. Civ. P. 23(b)(1) & (2)

34.   Prosecuting separate actions by or against individual class members would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class.

35.   Defendant has acted or failed to act in a manner generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

36.   AB's wrongful conduct and practices, if not enjoined, will subject Class members and other members of the public to substantial continuing harm and will cause irreparable injuries to Class members and members of the public who are damaged by AB's conduct.

<u>COUNT I</u>

<u>UNJUST ENRICHMENT</u>
<u>(Nationwide Class)</u>

Plaintiff re-alleges and incorporates paragraphs 1 through 36 above as if fully set forth herein, and further alleges as follows:

37.     The Defendant received from Plaintiff and Class Members benefits in the form of inflated profits related to Defendant's misrepresentations of Beck's Beer as imported and German, when it is in fact brewed in St. Louis, Missouri.

38.     The Defendant implemented procedures to mislead consumers into believing that Beck's beer was imported from Germany, and that the ingredients used in Beck's beer have remained the same. However, Beck's beer is now brewed in St. Louis, Missouri, and Defendant has changed ingredients to cut costs.

39.     Defendant collected money from Plaintiff and consumers, in excess of what Plaintiff would have paid for beer that was brewed domestically.

40.     This money directly benefited Defendant and was taken to the detriment of the consumers. Plaintiff believed he was paying for high quality German ingredients and increased transportation and importation costs, when in reality Defendant was cutting costs and keeping the difference. Therefore, the Defendant had the incentive to charge and collect unreasonably inflated prices for the Beck's Beer.

41.     Further, the Defendant received financial benefits in the form of increased profits.

42.     As a result, Plaintiff and the Class have conferred a benefit on the Defendant.

43.     The Defendant had knowledge of this benefit and voluntarily accepted and retained the benefit conferred on them.

44.     The Defendant will be unjustly enriched if allowed to retain the aforementioned

benefits, and each class member is entitled to recover the amount by which the Defendant was unjustly enriched at his or her expense.

**WHEREFORE**, Plaintiff, on behalf of himself and all similarly situated Class members, demands an award against the Defendant in the amounts by which these Defendants have been unjustly enriched at Plaintiff's and the Class Members' expense, and such other relief as this Court deems just and proper.

<u>COUNT II</u>

<u>VIOLATION OF THE FLORIDA</u>
<u>DECEPTIVE AND UNFAIR TRADE PRACTICES ACT</u>
<u>(Florida Subclass)</u>

Plaintiff re-alleges and incorporates paragraphs 1 through 36 above as if fully set forth herein, and further alleges as follows:

45.     FDUTPA, section 501.201, *et seq.*, Florida Statutes, prohibits "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." § 501.204, Fla. Stat.

46.     Plaintiff and the Florida Subclass are "consumers" as that term is defined in section 501.203(7), Florida Statutes.

47.     Plaintiff has standing to pursue this claim as he has suffered injury in fact and has lost money or property as a result of Defendant's actions as set forth above.

48.     Defendant AB has engaged in, and continue to engage in, unconscionable acts or practices and used unfair or deceptive acts in the conduct of its trade and/or commerce in the State of Florida.

49.     AB's business practices, as alleged herein, are "unfair" because they offend established public policy and are immoral, unethical, unscrupulous, and substantially injurious to

13

their customers. Additionally, AB's conduct is unfair because AB's conduct violated the legislatively declared policies in the FDUTPA. Defendant misled consumers into believing that their product was imported from Germany, when in fact it was brewed in St. Louis, Missouri, and AB concealed this fact from consumers.

50.     Furthermore, AB's business practices, as alleged herein, are "deceptive" because they are likely to deceive consumers, including the Florida Plaintiff and members of the Florida Class.

51.     The policies, acts, and practices alleged herein were intended to result and did result in the payment of inflated prices for the purchase of Beck's Beer by Plaintiff and the Florida Subclass, which in turn were intended to generate unlawful or unfair compensation for Defendant.

52.     Specifically, Defendant has misled consumers into believing Beck's Beer was still imported from Germany, when in fact it was brewed in St. Louis, Missouri. AB took advantage of Plaintiff's trust and confidence in the Beck's brand, and deceptively began brewing Beck's Beer in St. Louis, Missouri without informing Plaintiff  that Beck's Beer was no longer imported.

53.     Defendant's conduct of misrepresenting and mislabeling Beck's Beer to Plaintiff and consumers mislead Plaintiffs into believing that Beck's Beer was imported, and Plaintiff relied on these misrepresentations. Defendant's actions violate FDUTPA, and were conceived, devised, planned, implemented, approved, and executed within the State of Florida, which has an interest in prohibiting violations of FDUTPA.

54.     In addition, the practice employed by Defendant, whereby Defendant sold, promoted and marketed that its products as an imported German beer with "German Origin"

constitutes a *per se* violation of FDUTPA under Section 501.203(3)(c) because it is in violation of the Florida Food Safety Act, Fla. Stat. § 500.04 (1) and (2) in that said products are misbranded.

55.    Defendant's false, unlawful, and misleading product descriptions render its products misbranded under Florida law.  Specifically, Section 500.04 of the Florida Food Safety Act prohibits the manufacture, sale or delivery of "misbranded food."  Food is "misbranded" when "its labeling is false or misleading in any particular."  Fla. Stat. § 500.11(1)(a) & (b).  A food is considered mislabeled unless the proper disclosures are made "on the outside container or wrapper" on the product.  § 500.03(1)(t).  Misbranded products cannot be legally sold and are legally worthless.

56.    Plaintiff and the Florida Subclass sustained damages as a direct and proximate result of Defendant's unfair and unconscionable practices.  Section 501.211(2), Florida Statutes provides Plaintiff and the Florida Subclass a private right of action against AB and entitles them to recover their actual damages, plus attorneys' fees and costs.

57.    As a result of AB's unfair conduct and deception, Plaintiff and members of the Florida Subclass have been damaged in that they spent money on premium-priced products that they would not have otherwise have spent and did not receive the value for – a product that is indeed considered worthless due to AB's misbranding.

58.    AB's wrongful business practices alleged herein constitute a continuing course of unfair competition because AB marketed or sold its products in a manner that offends public policy and/or in a fashion that is immoral, unethical, oppressive, unscrupulous, and/or substantially injurious to its customers.  Plaintiff and the Class have been damaged by Defendant's deceptive and unfair conduct in that they purchased a misbranded and worthless

product or paid prices they otherwise would not have paid had Defendant not misrepresented the product.

59.     Plaintiff and the Florida Subclass have suffered and will continue to suffer irreparable harm if Defendant continues to engage in such deceptive, unfair, and unreasonable practices.

**WHEREFORE,** Plaintiff, on behalf of himself and the Florida Subclass, demand judgment against Defendant for compensatory damages, pre- and post-judgment interest, attorneys' fees, injunctive and declaratory relief, costs incurred in bringing this action, and any other relief as this Court deems just and proper.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff, on behalf of himself and all similarly situated individuals, demands judgment against Defendant as follows:

(1) Declaring this action to be a proper class action maintainable pursuant to Rule 23(a) and Rule 23(b)(1) and (2) or Rule 23(b)(3) of the Federal Rules of Civil Procedure and declaring Plaintiffs and their counsel to be representatives of the Class;

(2) Enjoining Defendant from continuing the acts and practices described above;

(3) Awarding damages sustained by Plaintiff and the Class as a result of the Defendant's conduct, together with pre-judgment interest;

(4) Finding that Defendant has been unjustly enriched and requiring it to refund all unjust benefits to Plaintiff, the Nationwide Class, and the Florida Subclass, together with pre-judgment interest;

(5) Awarding Plaintiff and the Class costs and disbursements and reasonable

allowances for the fees of Plaintiff's and the Class's counsel and experts, and reimbursement of expenses;

(6) Awarding the Plaintiff and Florida Subclass damages, injunctive relief, declaratory relief, attorneys' fees, and costs under FDUTPA;

(7) Awarding the Nationwide Class damages, injunctive relief, declaratory relief, attorneys' fees, and costs; and

(8) Awarding such other and further relief the Court deems just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiff and the Class request a jury trial for any and all Counts for which a trial by jury is permitted by law.

Respectfully submitted this 9th day of October, 2013.

By: /s/ Thomas A. Tucker Ronzetti

Thomas A. Tucker Ronzetti, Esq.
tr@kttlaw.com
Adam M. Moskowitz, Esq.
amm@kttlaw.com
David R. Matz, Esq.
drm@kttlaw.com
**KOZYAK, TROPIN, &
THROCKMORTON P.A.**
2525 Ponce de Leon Blvd., 9th Floor
Coral Gables, FL 33134
Telephone:  (305) 372-1800
Facsimile:   (305) 372-3508
*Counsel for Plaintiffs*

Lance A. Harke, P.A.
lharke@harkeclasby.com
Howard M. Bushman, Esq.
hbushman@harkeclasby.com
Allison Harke, Esq.
aharke@harkeclasby.com
**HARKE CLASBY & BUSHMAN LLP**
9699 NE Second Avenue

Robert W. Rodriguez, Esq.
RobertWRodriguez@GMail.Com
**ROBERT W. RODRIGUEZ, P.A.**
66 West Flagler Street, Suite 1002
Miami, Florida 33130
Telephone:  (305) 444-1446
Facsimile:  (305) 907-5244 (Fax)

Miami Shores, Florida 33138
Telephone:   (305) 536-8220
Facsimile:   (305) 536-8229

JS 44   (Rev. 12/12)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)* **NOTICE: Attorneys MUST Indicate All Re-filed Cases Below.**

**I. (a)  PLAINTIFFS**

FRANCISCO RENE MARTY

**DEFENDANTS**

ANHEUSER-BUSCH COMPANIES, LLC

**(b)** County of Residence of First Listed Plaintiff   Miami-Dade
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   St. Louis County, MO
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Thomas A. Tucker Ronzetti, Kozyak Tropin & Throckmorton, P.A.
2525 Ponce de Leon Blvd., 9th Floor, Miami, Fl 33134 (305) 372-1800

Attorneys *(If Known)*

**(d)** Check County Where Action Arose:   ☑ MIAMI- DADE   ☐ MONROE   ☐ BROWARD   ☐ PALM BEACH   ☐ MARTIN   ☐ ST. LUCIE   ☐ INDIAN RIVER   ☐ OKEECHOBEE   ☐ HIGHLANDS

**II. BASIS OF JURISDICTION** *(Place an "X" in One Box Only)*

☐ 1  U.S. Government
      Plaintiff

☐ 2  U.S. Government
      Defendant

☐ 3  Federal Question
      *(U.S. Government Not a Party)*

☑ 4  Diversity
      *(Indicate Citizenship of Parties in Item III)*

**III. CITIZENSHIP OF PRINCIPAL PARTIES** *(Place an "X" in One Box for Plaintiff)*
*(For Diversity Cases Only)* and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☑ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☑ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☑ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Mgmt. Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Med. Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | **Other:** | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 530 General | | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| | | ☐ 550 Civil Rights | ☐ 465 Other Immigration Actions | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

**V. ORIGIN** *(Place an "X" in One Box Only)*

☑ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Re-filed (See VI below)   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district *(specify)*   ☐ 6 Multidistrict Litigation   ☐ 7 Appeal to District Judge from Magistrate Judgment   ☐ 8 Remanded from Appellate Court

**VI. RELATED/ RE-FILED CASE(S)** *(See instructions):*   a) Re-filed Case ☐ YES ☑ NO   b) Related Cases ☐ YES ☐ NO

JUDGE _____   DOCKET NUMBER _____

**VII. CAUSE OF ACTION** Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause *(Do not cite jurisdictional statutes unless diversity)*:
Class Action Fairness Act of 2005, 28 U.S.C. 1332 (d)(2)
LENGTH OF TRIAL via _____ days estimated (for both sides to try entire case)

**VIII. REQUESTED IN COMPLAINT:** ☑ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23   DEMAND $ 500,000,000.00   CHECK YES only if demanded in complaint:   JURY DEMAND: ☑ Yes ☐ No

**ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE**

DATE   October 9, 2013

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   IFP _____   JUDGE _____   MAG JUDGE _____