# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

### Case No. 13-CV-23656-JJO

FRANCISCO MARTY, et al.,

                     Plaintiffs,

     v.

ANHEUSER-BUSCH COMPANIES, LLC,

                     Defendant.

_____/

## DEFENDANT'S MOTION TO DISMISS AND MEMORANDUM OF LAW IN SUPPORT

Dated: April 25, 2014

KENNY NACHWALTER, P.A
Stanley H. Wakshlag
201 South Biscayne Boulevard, Suite 1100
Miami, FL 33131-4327
Phone: (305) 373-1000
Fax: (305) 372-1861
swakshlag@knpa.com

SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
Edward M. Crane, *pro hac vice*
David R. Pehlke, *pro hac vice*
Brandon R. Keel, *pro hac vice*
155 North Wacker Drive
Chicago, IL 60606
Phone: (312) 407-0700
Fax: (312) 407-0411
edward.crane@skadden.com
david.pehlke@skadden.com
brandon.keel@skadden.com

*Attorneys for Defendant Anheuser-Busch
Companies, LLC*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................... 1

BACKGROUND AND COMPLAINT ........................................................................................ 4

LEGAL STANDARD .................................................................................................................. 7

ARGUMENT ............................................................................................................................... 9

I.      PLAINTIFFS HAVE FAILED TO STATE CLAIMS UNDER THE FDUTPA,
        THE GBL, THE UCL, AND THE CLRA. .................................................................... 9

        A.      The Representations Plaintiffs Lift In Isolation From Beck's Labeling And
                Packaging Are All True. ..................................................................................... 10

                1.      "Originated in Bremen, Germany" ......................................................... 11

                2.      The German Purity Law. ......................................................................... 12

                3.      "German Quality" ................................................................................... 12

        B.      Beck's Labeling And Packaging Are Not Deceptive As A Matter Of Law
                Because They Clearly Disclose That Beck's Is A Product Of The USA. ............. 14

II.     SAFE HARBOR PROVISIONS UNDER FLORIDA, NEW YORK, AND
        CALIFORNIA LAW REQUIRE DISMISSAL OF PLAINTIFFS' CLAIMS. ................ 19

III.    PLAINTIFFS HAVE NOT IDENTIFIED ACTUAL HARM CAUSED BY A-B. .......... 23

IV.     PLAINTIFFS HAVE FAILED TO STATE A CLAIM FOR UNJUST
        ENRICHMENT. ........................................................................................................... 26

V.      PLAINTIFFS LACK STANDING TO SEEK INJUNCTIVE RELIEF ............................ 28

CONCLUSION .......................................................................................................................... 29

## **TABLE OF AUTHORITIES**

**Cases**                                                                                                    **Page(s)**

*Ackerman v. Coca-Cola Co.,*
        No. CV-09-0395 (JG), 2010 WL 2925955 (E.D.N.Y. July 21, 2010)...............................24

*Allen v. Similasan Corp.,*
        No. 12CV0376-BTM-WMC, 2013 WL 5436648 (S.D. Cal. Sept. 27, 2013) ..................28

*American Home Products Corp. v. Johnson & Johnson,*
        672 F. Supp. 135 (S.D.N.Y. 1987)...............................................................................21

*Andre Strishak & Associates, P.C. v. Hewlett Packard Co.,*
        752 N.Y.S.2d 400 (App. Div. 2002)..............................................................................18

*Aprigliano v. American Honda Motor Co.,*
        No. 13-22066-CIV, 2013 WL 5788771 (S.D. Fla. Oct. 28, 2013) ....................................13

*Arnold's Wines, Inc. v. Boyle,*
        571 F.3d 185 (2d Cir. 2009)............................................................................................6

*Ashcroft v. Iqbal,*
        556 U.S. 662 (2009)...................................................................................................7, 8

*Avoy v. Turtle Mountain, LLC,*
        No. 13-CV-0236-LHK, 2014 WL 587173 (N.D. Cal. Feb. 14, 2014)........................16, 26

*Bainbridge v. Turner,*
        311 F.3d 1104 (11th Cir. 2002) ...................................................................................6, 7

*Ballas v. Virgin Media, Inc.,*
        856 N.Y.S.2d 22 (Sup. Ct. 2007) *aff'd*, 875 N.Y.S.2d 523 (App. Div. 2009) ..................18

*Begualg Investment Management Inc. v. Four Seasons Hotel Ltd.,*
        No. 10-22153-CIV, 2011 WL 4434891 (S.D. Fla. Sept. 23, 2011).....................................8

*Bell Atlantic Corp. v. Twombly,*
        550 U.S. 544 (2007)........................................................................................................7

*Bildstein v. MasterCard International Inc.,*
        329 F. Supp. 2d 410 (S.D.N.Y. 2004)............................................................................23

*Block v. eBay, Inc.,*
        No. 12-16527, 2014 WL 1282288 (9th Cir. Apr. 1, 2014).........................................17, 24

*Bohn v. Boiron, Inc.,*
        No. 11 C 08704, 2013 WL 3975126 (N.D. Ill. Aug. 1, 2013)..........................................29

*Bongat v. Fairview Nursing Care Center, Inc.*,
    341 F. Supp. 2d 181 (E.D.N.Y. 2004) ............................................................................27

*Boris v. Wal-Mart Stores, Inc.*,
    No. CV 13-7090 ABC (FFMx), 2014 WL 1477404 (C.D. Cal. Apr. 9, 2014)....6, 9, 10, 11

*Brett v. Toyota Motor Sales, U.S.A., Inc.*,
    No. 6:08-cv-1168-Orl-28GJK, 2008 WL 4329876 (M.D. Fla. Sept. 15, 2008) ...............20

*Cel-Tech Communications, Inc. v. L.A. Cellular Telephone Co.*,
    973 P.2d 527 (Cal. 1999) ............................................................................20, 21, 22

*In re Celexa & Lexapro Marketing & Sales Practices Litigation*,
    No. 09-2067-NMG, 2014 WL 866571 (D. Mass. Mar. 5, 2014)........................................21

*Chamberlain v. American Tobacco Co.*,
    No. 1:96-CV-02005-PAG, 1999 WL 33994451 (N.D. Ohio Nov. 19, 1999) ..................28

*Clark v. City of Lakewood*,
    259 F.3d 996 (9th Cir. 2001) ............................................................................28

*Clear Marine Ventures, Ltd. v. Brunswick Corp.*,
    No. 08-22418-CIV, 2010 WL 528477 (S.D. Fla. Feb. 11, 2010) ....................................24

*Cohen v. J.P. Morgan Chase & Co.*,
    608 F. Supp. 2d 330 (E.D.N.Y. 2009) ............................................................................21

*In re ConAgra Foods Inc.*,
    908 F. Supp. 2d 1090 (C.D. Cal. 2012) ....................................................................26, 27

*Cytyc Corp. v. Neuromedical Systems, Inc.*,
    12 F. Supp. 2d 296 (S.D.N.Y. 1998).......................................................................21, 22

*Durell v. Sharp Healthcare*,
    108 Cal. Rptr. 3d 682 (Ct. App. 2010).............................................................................24

*Ebeid ex rel. United States v. Lungwitz*,
    616 F.3d 993 (9th Cir. 2010) ............................................................................8

*FindWhat Investor Group v. FindWhat.com*,
    658 F.3d 1282 (11th Cir. 2011) ............................................................................8

*Fort Lauderdale Lincoln Mercury, Inc. v. Corgnati*,
    715 So. 2d 311 (Fla. 4th DCA 1998).............................................................................24

*Freeman v. Time, Inc.*,
    68 F.3d 285 (9th Cir.1995) ............................................................................10

*Georgian v. Zodiac Group, Inc.*,
    No. 10-CIV-60037, 2011 WL 3349573 (S.D. Fla. Aug. 3, 2011) ....................................14

*Gomez-Jimenez v. New York Law School*,
    943 N.Y.S.2d 834 (Sup. Ct.), *aff'd*, 956 N.Y.S.2d 54 (App. Div. 2012) ..........................25

*Gomez–Jimenez v. New York Law School*,
    956 N.Y.S.2d 54 (App. Div. 2012) ...................................................................................18

*Goodwin v. Anheuser-Busch Cos., Inc.*,
    No. BC310105, 2005 WL 280330 (Cal. Super. Ct. Jan. 28, 2005) ....................................7

*Gottlieb Development LLC v. Paramount Pictures Corp.*,
    590 F. Supp. 2d 625 (S.D.N.Y. 2008)...............................................................................23

*Guerrero v. Target Corp.*,
    889 F. Supp. 2d 1348 (S.D. Fla. 2012) .............................................................................27

*Harmon v. Hilton Group, PLC*,
    No. 11-18056, 2014 WL 504182  (9th Cir. Feb. 10, 2014) ...............................................18

*Henderson v. Gruma Corp.*,
    No. CV 10-04173 AHM (AJWx), 2011 WL 1362188 (C.D. Cal. Apr. 11, 2011) ...........14

*Hill v. Roll International Corp.*,
    128 Cal. Rptr. 3d 109 (Ct. App. 2011)..............................................................................27

*Hodges v. Apple, Inc.*,
    No. 13-CV-01128-WHO, 2013 WL 6698762 (N.D. Cal. Dec. 19, 2013).........................11

*Irving v. Mazda Motor Corp.*,
    136 F.3d 764 (11th Cir. 1998) ..........................................................................................23

*Kane v. Chobani, Inc.*,
    No. 12-CV-02425-LHK, 2013 WL 5289253 (N.D. Cal. Sept. 19, 2013).........................17

*Kaye v. Grossman*,
    202 F.3d 611 (2d Cir. 2000)..............................................................................................26

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009) ............................................................................................8

*Kuenzig v. Kraft Foods, Inc.*,
    No. 8:11-CV-838-T-24 TGW, 2011 WL 4031141 (M.D. Fla. Sept. 12, 2011)................15

*Kuenzig v. Hormel Foods Corp.*,
    505 F. App'x 937 (11th Cir. 2013).......................................................................15, 20, 22

iv

*Lacoff v. Buena Vista Publishing, Inc.*,
    705 N.Y.S.2d 183 (Sup. Ct. 2000)......................................................................13

*Law Offices of K.C. Okoli, P.C. v. BNB Bank, N.A.*,
    481 F. App'x 622 (2d Cir. 2012)...............................................................20, 22

*Leonard v. Abbott Laboratories, Inc.*,
    No. 10-CV-4676 (ADS) (WDW), 2012 WL 764199 (E.D.N.Y. Mar. 5, 2012)...............13

*Levine v. Blue Shield of California*,
    117 Cal. Rptr. 3d 262 (Ct. App. 2010)................................................................27

*Llado-Carreno v. Guidant Corp.*,
    No. 09-20971-CIV, 2011 WL 705403 (S.D. Fla. Feb. 22, 2011).......................8

*Lucente v. IBM*,
    310 F.3d 243 (2d Cir. 2002)................................................................................27

*Manchouck v. Mondelez International Inc.*,
    No. C 13-02148 WHA, 2013 WL 5400285 (N.D. Cal. Sept. 26, 2013)...........................17

*Marino v. Home Depot U.S.A., Inc.*,
    245 F.R.D. 729 (S.D. Fla. 2007)...........................................................................9

*Matthews v. American Honda Motor Co.*,
    No. 12-60630-CIV, 2012 WL 2520675 (S.D. Fla. June 6, 2012).......................27

*McKinnis v. Kellogg USA*,
    No. CV 07-2611 ABC (RCx), 2007 WL 4766060 (C.D. Cal. Sept. 19, 2007) ...............17

*McKinniss v. Sunny Delight Beverages Co.*,
    No. CV 07-02034-RGK(JCx), 2007 WL 4766525  (C.D. Cal. Sept. 4, 2007)..9, 10, 15, 16

*Merl v. Warner Brothers Entertainment Inc.*,
    No. 1:12-CV-20870-PAS, 2013 WL 266049 (S.D. Fla. Jan. 23, 2013) ...........................15

*Neitzke v. Williams*,
    490 U.S. 319 (1989)..............................................................................................7

*Pelayo v. Nestle USA, Inc.*,
    No. CV 13-5213-JFW (AJWx), 2013 WL 5764644 (C.D. Cal. Oct. 25, 2013) ...............17

*Pernod Ricard, USA LLC v. Bacardi U.S.A., Inc.*,
    702 F. Supp. 2d 238 (D. Del. 2010)....................................................................19

*Pernod Ricard USA, LLC v. Bacardi U.S.A., Inc.*,
    653 F.3d 241 (3d Cir. 2011)................................................................................19

*Perret v. Wyndham Vacation Resorts, Inc.*,
    846 F. Supp. 2d 1327 (S.D. Fla. 2012) ............................................................8

*Perret v. Wyndham Vacation Resorts, Inc.*,
    889 F. Supp. 2d 1333 (S.D. Fla. 2012) ..........................................................13

*Piazza's Seafood World, LLC v. Odom*,
    448 F.3d 744 (5th Cir. 2006) .........................................................................19

*Pom Wonderful LLC v. Coca Cola Co.*,
    No. CV 08-06237 SJO (FMOx), 2013 WL 543361 (C.D. Cal. Feb. 13, 2013)................21

*Porr v. NYNEX Corp.*,
    660 N.Y.S.2d 440 (1997).................................................................................21

*Prohias v. AstrZeneca Pharmaceuticals, L.P.*,
    958 So. 2d 1054 (Fla. 3d DCA 2007) ............................................................20

*Prohias v. Pfizer, Inc.*,
    485 F. Supp. 2d 1329 (S.D. Fla. 2007) ..........................................................25

*Prohias v. Pfizer, Inc.*,
    490 F. Supp. 2d 1228 (S.D. Fla. 2007) .....................................................22, 27

*QSGI, Inc. v. IBM Global Fin.*,
    No. 11-80880-CIV, 2012 WL 1150402 (S.D. Fla. Mar. 14, 2012) ............................23, 25

*Rasmussen v. Apple Inc.*,
    No. C-13-4923 EMC, 2014 WL 1047091 (N.D. Cal. Mar. 14, 2014).........................13, 14

*Red v. Kraft Foods, Inc.*,
    No. CV 10-1028-GW (AGRx), 2012 WL 5504011 (C.D. Cal. Oct. 25, 2012)................17

*Rivera v. BAC Home Loans Servicing, L.P.*,
    756 F. Supp. 2d 1193 (N.D. Cal. 2010) ..........................................................25

*Robinson v. Hornell Brewing Co.*,
    Civ. No. 11-2183 (JBS-JS), 2012 WL 1232188 (D.N.J. Apr. 11, 2012)..........................28

*Rollins, Inc. v. Butland*,
    951 So. 2d 860 (Fla. 2d DCA 2006) ..............................................................24

*Scotch Whiskey Association v. Majestic Distilling Co.*,
    958 F.2d 594 (4th Cir. 1992) .........................................................................19

*Shain v. Ellison*,
    356 F.3d 211 (2d Cir. 2004).........................................................................28

*Shaker v. Nature's Path Foods, Inc.*,
  No. EDCV 13-1138-GW(OPx), 2013 WL 6729802 (C.D. Cal. Dec. 16, 2013) ..............17

*Shotz v. Cates*,
  256 F.3d 1077 (11th Cir. 2001) .......................................................................28

*Spagnola v. Chubb Corp.*,
  574 F.3d 64 (2d Cir. 2009)...............................................................................9

*Swearingen v. Yucatan Foods, L.P.*,
  No. C 13-3544 RS, 2014 WL 553537 (N.D. Cal. Feb. 7, 2014)........................................24

*Tae Hee Lee v. Toyota Motor Sales, U.S.A., Inc.*,
  No. 13-CV-7431-JFW (VBKx), 2014 WL 211462 (C.D. Cal. Jan. 9, 2014) ...................11

*Verzani v. Costco Wholesale Corp.*,
  No. 09 CIV 2117 CM, 2010 WL 3911499 (S.D.N.Y. Sept. 28, 2010) *aff'd*, 432 F.
  App'x 29 (2d Cir. 2011) ...............................................................................18

*Viggiano v. Hansen Natural Corp.*,
  944 F. Supp. 2d 877 (C.D. Cal. 2013) ...........................................................13

*Virgilio v. Ryland Group, Inc.*,
  680 F.3d 1329 (11th Cir. 2012) ....................................................................26

*Werbel v. Pepsico, Inc.*,
  No. C 09-04456 SBA, 2010 WL 2673860 (N.D. Cal. July 2, 2010) ................................17

*Wilner v. Allstate Insurance Co.*,
  893 N.Y.S.2d 208 (App. Div. 2010) ...............................................................9

*Zlotnick v. Premier Sales Group, Inc.*,
  480 F.3d 1281 (11th Cir. 2007) ....................................................................9

## Statutes & Regulations

27 C.F.R. § 7.25 .............................................................................................1, 22

27 C.F.R. § 7.29 .............................................................................................22

California Bus. & Prof. Code §§ 17200-17210 ....................................................5

California Civil Code §§ 1750-1784..................................................................6

Florida Stat. Ann. §§ 501.201-13.....................................................................5

Florida Stat. Ann. § 501.212 ..........................................................................19

New York General Business Law § 349 .............................................................5, 19

Defendant Anheuser-Busch Companies, LLC ("A-B") hereby moves to dismiss Plaintiffs' Amended Complaint ("Complaint") pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) for lack of standing and failure to state a claim, and submits the following memorandum of law in support.

## PRELIMINARY STATEMENT

Every beer sold in the United States, including Beck's pilsner ("Beck's"), is required to comply with the comprehensive regulations promulgated by the United States Treasury's Alcohol, Tobacco, Tax & Trade Bureau ("TTB"). Those regulations specify what must be stated on labels of domestic and imported beer. For imported beer, the TTB requires that labels state that the beer is imported and list the name of the party responsible for importing it. 27 C.F.R. § 7.25(b). For domestic beer, the TTB requires that labels state "the name of the bottler or packer" and either (i) "the place where bottled or packed," or (ii) "[t]he bottler's or packer's principal place of business." 27 C.F.R. § 7.25(a).

Beck's has always complied with these regulations. When the Beck's available in the United States was imported from Germany, every single bottle had a neck label that stated, "Imported," and a back label that stated, "Product of Germany" "Imported by Import Brands Alliance, St. Louis, MO." The outside packaging for Beck's also prominently stated that the beer was "Imported." When production was moved to the United States for domestically sold Beck's, A-B removed all references to the beer being imported—both from the labeling and outside packaging—and added the affirmative disclosure to the front label: "Product of USA, Brauerei Beck & Co., St. Louis, MO." And before any Beck's made in the United States was sold, these labels were submitted to, and approved by, the TTB.

Despite the fact that Beck's has always complied with applicable regulations and that Beck's labels have always been approved by the TTB prior to their use, Plaintiffs contend that

1

Beck's labeling and packaging are misleading as to the place of production and thus violate state consumer protection laws. Specifically, they allege that, despite the removal of *all* "import" references from the labels and outside packaging, and the addition of "Product of USA" to the front label, Plaintiffs were nonetheless misled into believing that Beck's was still being imported from Germany. Plaintiffs' claims fail as a matter of law for a number of reasons.

First and foremost, Plaintiffs have failed to state a claim because they have not identified a single misrepresentation—nowhere on Beck's labeling or packaging does it state that the beer is imported or made in Germany. In accordance with TTB regulations, the only place of production identified anywhere on the labeling or packaging is the United States. The "deception" Plaintiffs allege is not, therefore, due to any statement actually on Beck's labeling and packaging. Instead, it is based entirely on Plaintiffs' own assumptions and misinterpretation of what the labeling and packaging actually says, and on Plaintiffs' *failure to read* the actual labeling statements indicating where Beck's is brewed.

Plaintiffs cannot survive dismissal on the back of their own subjective misinterpretations and their admitted failure to read Beck's labeling and packaging. The claims here must be tested against the objective standard of whether a *reasonable* consumer would *likely* be deceived in the manner that Plaintiffs claim to have been deceived. No reasonable consumer who actually reads Beck's labeling and packaging could be deceived into believing that the beer is imported. No mention of the beer as an imported product appears *anywhere* on the labeling or packaging. Beck's German heritage is mentioned in the vague puffery statement "German Quality" on the outside packaging and in the TTB-approved references to both the German Purity Law (which has nothing to do with place of production) and to the beer's origination in Bremen, Germany. In contrast, the *only* statements on Beck's packaging or labeling that refer to production location

2

accurately indicate that the beer is made in the United States (the label expressly states "Product of USA"). A reasonable consumer confronted with this labeling and packaging could not reach any conclusion other than the truth: Beck's is a "Product of USA."

The Complaint should be dismissed for the additional independent reason that Beck's labels comply with governing regulations and were approved by the TTB. The law of each of the states at issue here—Florida, California, and New York—provides safe harbors intended to prevent plaintiffs from challenging conduct that complies with federal regulations or that has been approved by the appropriate regulatory agency. Such safe harbors make perfect sense. Without them, a party could follow all the applicable regulations and receive specific regulatory approval, and yet still be exposed to a lawsuit simply because an individual claims that he failed to notice the mandated information on the approved label.

Here, A-B complied with applicable regulations and received TTB approval for the specific labels at issue. In addition to the "Product of USA" disclosure, the approved labels also include the representations that Beck's "Originated in Bremen, Germany" and that Beck's is brewed in conformity with the Germany Purity Law. The only representation Plaintiffs complain of that is not on the approved label is the vague "German Quality" statement on the outside packaging. But that statement is not only non-actionable puffery, it also does not conflict with any aspect of the approved labels (indeed, it is consistent with the TTB-approved reference to Beck's being brewed in conformity with the German Purity Law). These undisputable facts protect A-B from liability under the applicable safe harbors, and Plaintiffs cannot overcome that protection by claiming that they did not read the labels.

Finally, the Complaint should be dismissed because Plaintiffs have not identified any harm caused by A-B. The consumers who purchased Beck's bought it from retailers who set the

3

prices for the beer. By law, A-B does not sell beer to consumers and does not set the prices retailers charge for beer—that is entirely in the hands of the individual retailers. More fundamentally, the consumers who bought Beck's from individual retailers received exactly what they paid for (at whatever price the retailer chose to charge): Beck's beer. The fact that Beck's is made in the United States does not change the fact that it is a German style beer, with a German heritage, made with a German recipe. Beck's is a global brand that is brewed in sixteen different countries according to the same recipe and brewing principles. Beck's is Beck's, no matter where it is brewed.

## BACKGROUND AND COMPLAINT

Prior to 2012, Beck's sold in the United States was imported from Germany. (*See* Am. Compl. ¶ 10.) As required by federal law, the labels for Beck's during this time period specifically identified it as an imported beer: "Imported" was emblazoned on the neck label of each bottle, and the back label stated "Imported by Import Brands Alliance, St. Louis, MO." (*See* Dkt. 14, Def.'s Request for Judicial Notice in Support of its Motion to Dismiss ("RJN") Ex. A-3.)[1] The front label also stated "Bremen Germany," and the back label stated "Product of Germany." (*Id.*) The six and twelve-pack packaging for Beck's bottles (the only form of Beck's packaging at issue here) also prominently stated that the beer was "Imported." (RJN Exs. A-4, A-5.)

In or around 2012, A-B moved production for Beck's to be sold in the United States to its brewery in St. Louis, Missouri. (Am. Compl. ¶ 9.) A-B revised Beck's labels to reflect this fact. A-B removed every one of the multiple "Imported" designations from the individual bottle labels

---

[1]   This motion to dismiss relies on the exhibits attached to the previously filed RJN, which was granted on January 21, 2014. (*See* Dkt. 38.)

and removed "Product of Germany" from the back label of each bottle. (*See* RJN Exs. A-1, A-3.) In place of these designations, A-B listed "Product of USA, Brauerei Beck & Co., St. Louis, MO." on the front label of each bottle. (*See id.* Ex. A-1.) A-B also revised the front label to state that Beck's "Originated in Bremen, Germany." (*See id.*) This statement appears directly above the explicit identification of Beck's as a "Product of USA." (*Id.*) A-B retained the reference to the German Purity Law on the back label. (*Id.*) The federal agency responsible for beer labeling and advertising, the TTB, approved the labels prior to use. (*Id.*)

A-B similarly revised the packaging for six and twelve-packs of Beck's bottles. A-B removed the prominent, large-type statement on the front of the packages that read: "Imported" / "Germany." (*Id.* Exs. A-4, A-5; Am. Compl. Ex. A.) In its place, A-B placed the words "German" / "Quality" and included a reference in the top-right corner of the package to the fact that Beck's is still brewed in conformity with the German Purity Law of 1516 (a statement that has always been (and continues to be) on Beck's TTB-approved bottle label). (*Id.*) Contrary to Plaintiffs' allegation (*see* Am. Compl. ¶ 12), A-B also added the following disclosure to the bottom of all six and twelve-packs of Beck's indicating that the beer was being made in the United States: "Brauerei Beck & Co., Beck's Beer, St. Louis, MO." (RJN Ex. A-2.)

Despite these substantial and obvious changes to Beck's labeling and packaging, Plaintiffs filed this lawsuit claiming that they were deceived into believing that Beck's was still being imported from Germany. (Am. Compl. ¶¶ 1, 12-13, 20-27.) Plaintiffs assert five claims against A-B: (1) violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. §§ 501.201-13 ("FDUTPA"), (2) violation of the New York General Business Law, NY GBL § 349 ("GBL"), (3) violation of the California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200-17210 ("UCL"), (4) violation of California's Consumer Legal Remedies Act,

Cal. Civil Code §§ 1750-1784 ("CLRA"), and (5) unjust enrichment. (*Id.* ¶¶ 43-87.) Plaintiffs assert their consumer protection claims on behalf of all consumers who purchased Beck's from a retailer within their respective states since 2012. (*Id.* ¶¶ 28, 60-62, 67-68, 77-80, 87.) And Plaintiffs assert the unjust enrichment claim on behalf of a nationwide class of consumers who purchased Beck's over that same time period. (*Id.* ¶¶ 23, 43-47.)

Plaintiffs' Complaint also contains several allegations that are irrelevant to their claims. For instance, Plaintiffs complain that some of the ingredients used to brew Beck's may now come from the United States. (Am. Compl. ¶¶ 8-9.) But this case is solely about ***representations*** made to Plaintiffs on Beck's ***labeling*** and ***packaging***. Plaintiffs nowhere allege that Beck's labeling or packaging ever contained representations about the source of the ingredients used to make the beer (indeed, Beck's labels have never contained a nutrition label listing the beer's ingredients). Similarly, Plaintiffs allegations regarding unidentified marketing materials and website statements (*see id.* ¶ 14) are irrelevant because Plaintiffs do not allege that they saw or relied upon those statements when purchasing Beck's—their claims are based solely on Beck's labeling and packaging. *See*, *e.g.*, *Boris v. Wal-Mart Stores, Inc.*, No. CV 13-7090 ABC (FFMx), 2014 WL 1477404, at *8-9 (C.D. Cal. Apr. 9, 2014) (dismissing consumer protection claims based on allegedly false website statement because plaintiff did not allege that he saw the website and purchased the defendant's product in reliance on the allegedly false statement).

Plaintiffs also attach to the Complaint advertising displayed by retailers. (Am. Compl. Ex. B.) These materials are another red herring. Every state, including Florida, New York, and California, has adopted a three-tier system for alcohol sales and distribution. *See Bainbridge v. Turner*, 311 F.3d 1104, 1106 (11th Cir. 2002) ("The regulatory framework establishes what is known as a 'three-tier' distribution system—in essence a vertical quarantine."); *Arnold's Wines,*

*Inc. v. Boyle*, 571 F.3d 185, 187 (2d Cir. 2009) ("The three tiers are: (1) the producer, (2) the distributor or wholesaler, and (3) the retailer. Under this system, the producer sells to a licensed in-state wholesaler, who pays excise taxes and delivers the alcohol to a licensed in-state retailer. The retailer, in turn, sells the alcohol to consumers."); *Goodwin v. Anheuser-Busch Cos., Inc.*, No. BC310105, 2005 WL 280330, at *4 (Cal. Super. Ct. Jan. 28, 2005) ("It should be noted that under California's three tier licensing system that regulates alcohol advertising, marketing, labeling and sales, Defendants are not even permitted to sell alcohol."). Under this system, brewers like A-B can sell beer only to wholesalers, who in turn can sell only to retailers, who then sell to the general public. *See Bainbridge*, 311 F.3d at 1106. A-B is two steps removed from retailers and, as a matter of law, has no control over retailers or what retailers choose to put on their signs. Whatever errors Plaintiffs' local stores might have made in advertising Beck's provide no basis for a cause of action against A-B.

## LEGAL STANDARD

"Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law." *Neitzke v. Williams*, 490 U.S. 319, 326 (1989). This procedure, "operating on the assumption that the factual allegations in the complaint are true, streamlines litigation by dispensing with needless discovery and factfinding." *Id*. at 326-27. In order to avoid dismissal for failure to state a claim, a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In other words, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570. A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the court must accept well-pled factual allegations as

true, the court should eliminate all conclusory allegations, which "are not entitled to the assumption of truth." *Id.* at 680-81.

Moreover, for allegations that sound in fraud, as Plaintiffs' do here, Florida and California require the Complaint to be pled with the particularity required by Federal Rule of Civil Procedure 9(b). *See Perret v. Wyndham Vacation Resorts, Inc.*, 846 F. Supp. 2d 1327, 1333 (S.D. Fla. 2012) (finding that Rule 9(b) requirements applied to FDUTPA claim based on deceptive and misleading sales of timeshares); *Llado-Carreno v. Guidant Corp.*, No. 09-20971-CIV, 2011 WL 705403, at *5 (S.D. Fla. Feb. 22, 2011) (same for FDUTPA claim that was based on allegedly deceptive and unlawful inducement to purchase a product); *see also Begualg Inv. Mgmt. Inc. v. Four Seasons Hotel Ltd.*, No. 10-22153-CIV, 2011 WL 4434891, at *5 (S.D. Fla. Sept. 23, 2011) (recognizing split of authority regarding application of Rule 9(b) to FDUTPA claims but finding reasons for applying heightened pleading standards more persuasive); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009) ("The requirement in Rule 9(b) of the Federal Rules of Civil Procedure that allegations of fraud be pleaded with particularity applies to claims which are made in federal court under the CLRA and UCL."). To avoid dismissal under this standard, Plaintiffs must plead specific facts identifying precisely what misrepresentations were made, when and where they were made, the content of the misrepresentations, how they misled Plaintiffs, and what A-B received as a consequence of the fraud. *See FindWhat Investor Grp. v. FindWhat.com*, 658 F.3d 1282, 1296 (11th Cir. 2011); *Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010).

## ARGUMENT

I. **PLAINTIFFS HAVE FAILED TO STATE CLAIMS UNDER THE FDUTPA, THE GBL, THE UCL, AND THE CLRA.**

Plaintiffs have failed to state consumer protection claims under the FDUTPA, the GBL, the UCL, and the CLRA because Plaintiffs have not alleged any actual misrepresentations or even any representations likely to deceive a reasonable consumer. Each of these statutes requires a plaintiff to plead sufficient facts to establish the same basic elements of a misleading labeling claim. *See Marino v. Home Depot U.S.A., Inc.*, 245 F.R.D. 729, 737 (S.D. Fla. 2007) (an FDUTPA claim requires the plaintiff to plead sufficient facts to establish: (1) a deceptive act or unfair practice, (2) causation, and (3) actual damages); *Spagnola v. Chubb Corp.*, 574 F.3d 64, 74 (2d Cir. 2009) (to state a claim under § 349 of the GBL, "a plaintiff must allege: (1) the [defendant's] act or practice was consumer-oriented; (2) the act or practice was misleading in a material respect; and (3) the plaintiff was injured as a result"); *McKinniss v. Sunny Delight Beverages Co.*, No. CV 07-02034-RGK(JCx), 2007 WL 4766525, at *3 (C.D. Cal. Sept. 4, 2007) ("[I]n order to state a claim under the UCL [or the] CLRA, Plaintiffs must allege that statements or other representations appearing on Defendant's product labels are likely to deceive a reasonable consumer."). To state a viable claim, a plaintiff must identify "some act, statement, or omission by the defendant" that is false or misleading. *Boris*, 2014 WL 1477404, at *3. And in determining whether a plaintiff has provided allegations sufficient to advance a claim, courts must apply an objective standard to the allegedly false or misleading labeling. *See Zlotnick v. Premier Sales Grp., Inc.*, 480 F.3d 1281, 1284 (11th Cir. 2007) (the FDUTPA "standard requires a showing of 'probable, not possible deception,' that is 'likely to cause injury to a reasonable relying consumer'"); *Wilner v. Allstate Ins. Co.*, 893 N.Y.S.2d 208, 213 (App. Div. 2010) (for purposes of a GBL § 349 claim, courts apply "an objective standard which asks whether the

9

representation or omission was *likely* to mislead a reasonable consumer acting reasonably under the circumstances"); *McKinniss*, 2007 WL 4766525, at *3 (in California, "if an alleged misrepresentation would not deceive a reasonable consumer or amounts to mere puffery, then any cause of action having deception as an element may be addressed, as a matter of law, on a motion to dismiss"). Thus, "[a] consumer's *assumptions* about a product are not the benchmark for establishing liability under any of the consumer protection statutes." *Boris*, 2014 WL 1477404, at *3 (emphasis added). Only a likelihood of deception is sufficient to support a claim. *See Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995)

Plaintiffs here fail to state a claim under the objective reasonable consumer standard because their claims are based entirely upon their own assumptions about the labeling and packaging, rather than what the labeling and packaging actually state. Plaintiffs allege only that they failed to read the entirety of Beck's labeling and packaging, that they failed to notice the obvious changes in packaging when Beck's brewing moved to the United States, and that they misapprehended the plain and objective meaning of the packaging statements they did read (conveniently, Plaintiffs only read those statements with the word German or Germany in them). These allegations fail as a matter of law because: (1) they do not identify any misrepresentation that Beck's is imported or brewed in Germany, and (2) they depend entirely upon Plaintiffs' *failure to read* the only actual representations regarding production location that are contained on Beck's labeling and packaging.

A.    **The Representations Plaintiffs Lift In Isolation From Beck's Labeling And Packaging Are All True.**

The three statements Plaintiffs advance as actionably deceptive are: (1) "Originated in Bremen, Germany" on the front label (*immediately above* "Product of USA"); (2) the reference to the German Purity Law on the back label and repeated on the outside packaging; and (3) the

10

words "German Quality" on the outside packaging. (*See* Am. Compl. ¶¶ 1, 12, Ex. A; RJN Exs. A-1.) None of these statements represents anything about where Beck's is brewed. Any mistaken conclusion to the contrary would not only be unreasonable given the plain meaning of the three statements, but would also directly contradict the *only* representations on the labeling and packaging that indicate where Beck's is brewed. (*See* RJN Exs. A-1; A-2.) As such, these statements cannot support claims under the FDUTPA, the GBL, the UCL, or the CLRA. *See, e.g.*, *Boris*, 2014 WL 1477404, at *3 (consumer protection claims dismissed because plaintiffs failed to identify a misrepresentation made by defendant). *Tae Hee Lee v. Toyota Motor Sales, U.S.A., Inc.*, No. 13-CV-7431-JFW (VBKx), 2014 WL 211462, at *7 (C.D. Cal. Jan. 9, 2014) (same); *Hodges v. Apple, Inc.*, No. 13-CV-01128-WHO, 2013 WL 6698762, at *5 (N.D. Cal. Dec. 19, 2013) (same).

### 1.    "Originated in Bremen, Germany"

Plaintiffs' reliance on the statement "Originated in Bremen, Germany" is misplaced because the statement is true: Beck's originated in Bremen, Germany. The Complaint alleges this very fact at several points when it emphasizes the beer's German origins. (*See, e.g.*, Am. Compl. ¶ 1 ("Beck's, a historically German beer").) "Originated in" does not mean "imported from" or "brewed in." "Originated in" is an intransitive verb construction that means where something began. *See, e.g.*, *Merriam-Webster On-Line Dictionary*, available at m-w.com, ("*intransitive verb* – to take or have origin: begin" / "Examples of Originate: The custom is believed to have originated in the western U.S."). Plaintiffs' reliance on this phrase taken in isolation is also impermissible because one look at the front label shows that "Product of USA" appears only millimeters below this statement. It is implausible that a reasonable consumer could read this statement, misapprehend it, and then also miss "Product of USA" immediately below it.

11

### 2.      **The German Purity Law**

Likewise, the statements regarding the beer's adherence to the German Purity Law are true and do not indicate that Beck's is imported from Germany. Although Plaintiffs allege that Beck's is not brewed in conformity with the Germany Purity Law (*see* Am. Compl. ¶ 12), their description of that brewing guideline belies their conclusory allegation. As Plaintiffs admit, the German Purity Law has nothing to do with place of production or source of ingredients. This law simply concerns the *type* of ingredients used to brew beer (water, hops, barley, and yeast). (*See* Am. Compl. ¶ 8). And there is no dispute that Beck's has always been, and continues to be, brewed with these basic ingredients.

Moreover, Plaintiffs' allegations about ingredients, sources of ingredients, and, for that matter, the German Purity Law in general are irrelevant to this case. Plaintiffs' claims are based entirely on their contention that they were deceived into believing that Beck's was imported and that they paid what they call an "import premium." They allege no harm due to a misrepresentation as to the ingredients used to brew Beck's. Indeed, the Complaint contains no allegation that Beck's labeling or packaging has ever represented the source of the beer ingredients. The fact is, according to the Complaint's characterization of the German Purity Law, a beer could be brewed anywhere, and with ingredients from anywhere, and conform with the German Purity Law. Plaintiffs cannot allege an understanding of the German Purity Law that has nothing to do with location (of brewing or ingredients) and then offer it as a misrepresentation of location just because it includes the word "German."

### 3.      **"German Quality"**

Finally, the statement "German Quality" is also true and does not mean that the beer is imported from Germany. Beck's is a German style beer brewed according to a recipe developed in Germany and in conformity with a German brewing standard. As a result, it exhibits a German

quality. If Beck's was an Irish style beer brewed in conformity with an Irish standard, then it would exhibit an Irish quality. "German Quality" is a true statement of the style of beer and the standards that govern the brewing. More importantly, as with each of the other statements Plaintiffs attempt to cast as misleading, there is no basis for a reasonable consumer to consider "German Quality" to be synonymous with "imported."

Plaintiffs' reliance on the "German Quality" statement fails as well because it is not an affirmation of fact; it is at most mere puffery under the law. Like "high quality" or "premium," the statement "German Quality" is a general and vague marketing statement that the law presumes reasonable consumers do not rely upon when purchasing products. *See*, *e.g.*, *Aprigliano v. Am. Honda Motor Co.*, No. 13-22066-CIV, 2013 WL 5788771, at *8 (S.D. Fla. Oct. 28, 2013) ("mere puffery or sales talk" is not actionable affirmation of fact); *Perret v. Wyndham Vacation Resorts, Inc.*, 889 F. Supp. 2d 1333, 1342 (S.D. Fla. 2012) (statements that amount to "nothing more than opinion or puffery" are not actionable); *Leonard v. Abbott Labs., Inc.*, No. 10-CV-4676 (ADS) (WDW), 2012 WL 764199, at *22 (E.D.N.Y. Mar. 5, 2012) ("General statements about compliance with safety and quality standards are non-actionable 'puffery' where, as here, they fail to identify specific requirements or standards."); *Lacoff v. Buena Vista Publ'g, Inc.*, 705 N.Y.S.2d 183, 191 (Sup. Ct. 2000) ) (claim must be dismissed as a matter of law if alleged misrepresentation "is vague or amounts to mere puffery or opinion"); *Rasmussen v. Apple Inc.*, No. C-13-4923 EMC, 2014 WL 1047091, at *9 (N.D. Cal. Mar. 14, 2014) (noting that terms such as "high quality," "uncompromising quality," and "outstanding quality" are non-actionable puffery); *Viggiano v. Hansen Natural Corp.*, 944 F. Supp. 2d 877, 894 (C.D. Cal. 2013) (the term "premium" is non-actionable puffery because it is a "generalized, vague and unspecific assertion . . . upon which a reasonable consumer [cannot] rely");

*Henderson v. Gruma Corp.*, No. CV 10-04173 AHM (AJWx), 2011 WL 1362188, at *11 (C.D. Cal. Apr. 11, 2011) (the term "authentic tradition" is non-actionable puffery).

"German Quality" is not an actionable representation because it is not "'capable of being proved false or of being reasonably interpreted as a statement of objective fact'"—it is a subjective and generalized claim (one need look no further than the inclusion of the word "quality" to know that it is a qualitative statement, not a statement of fact). *See Rasmussen*, 2014 WL 10407091, at *9 (citation omitted). "German Quality" cannot be burdened with any interpretation other than the vague notion that the product's quality reflects some undefinable notion of German quality (a BMW may have "German Engineering," but that has nothing to do with the fact that it is manufactured in South Carolina). Indeed, if Beck's was still produced in Germany, the packaging would not say "German Quality," it would just say it was from Germany (as it did previously).

     B.     **Beck's Labeling And Packaging Are Not Deceptive As A Matter Of Law Because They Clearly Disclose That Beck's Is A Product Of The USA.**

In response to this motion, Plaintiffs will likely contend that, although the three representations they rely upon are true, they are still deceptive and therefore actionable under Florida, New York, and California law. Courts have recognized that, in limited circumstances, truthful representations *can* provide a basis for deceptive or false advertising claims. *See, e.g.*, *Georgian v. Zodiac Grp., Inc.*, No. 10-CIV-60037, 2011 WL 3349573 (S.D. Fla. Aug. 3, 2011) (noting that truthful but deceptive advertising may be actionable under the Federal Trade Commission standards). However, that narrow exception cannot apply here because Plaintiffs' interpretation of the true but allegedly deceiving statements directly conflicts with the statements on Beck's labeling and packaging that inform consumers that the beer is brewed in the United States.

Courts in all of the jurisdictions at issue here have dismissed false or misleading advertising or labeling claims where the claims rested entirely on a *selective reading* and misinterpretation of the labels and ignored clear statements on other parts of the packaging that were contrary to the plaintiffs' allegations of deception. For instance, in *Kuenzig v. Kraft Foods, Inc.*, No. 8:11-CV-838-T-24 TGW, 2011 WL 4031141 (M.D. Fla. Sept. 12, 2011), the court dismissed an FDUTPA misleading labeling claim because the allegedly misleading representation was belied by accurate disclosures on the product label. The plaintiff in *Kuenzig* alleged that the location of the fat free claims on Kraft food labels misleadingly suggested that the fat free percentage applied to the product's calories (as opposed to the weight of the product, as required by federal law). *Id.* at *1-5. The accurate number of calories, however, was stated on the product's nutrition label. *Id.* The court relied on that accurate statement when dismissing the plaintiff's FDUTPA claim: "Because the number of calories that come from fat is clearly disclosed in the nutrition panel on Kraft's labels, the Court finds that as a matter of law, Kraft's labeling is not misleading regarding the number of calories that come from fat in its products." *Id.* at *9. The Eleventh Circuit affirmed the dismissal on appeal. *Kuenzig v. Hormel Foods Corp.*, 505 F. App'x 937 (11th Cir. 2013). *See also Merl v. Warner Bros. Entm't Inc.*, No. 1:12-CV-20870-PAS, 2013 WL 266049, at *1 n.5 (S.D. Fla. Jan. 23, 2013) (dismissing FDUTPA claim that was based on allegedly misleading representation regarding expiration date of digital copies included in DVDs because expiration dates were accurately disclosed on packaging).

A federal court in California followed similar reasoning in dismissing UCL and CLRA misleading labeling claims against the maker of Sunny Delight beverages. *McKinniss*, 2007 WL 4766525, at *4-5. In that case, the plaintiffs alleged that the terms and imagery on Sunny Delight product labels misled them into believing that the products were genuine fruit juices containing a

high fruit content, rather than "sugar water with negligible amounts of fruit." *Id.* at *1, *3. In

ruling on the defendant's motion to dismiss, the court first noted the selective aspects of the

labeling upon which the plaintiffs' claims relied, and then explained the other aspects of the

labeling that warranted dismissal:

> [I]n the lower right corner of the label, the words "ORANGE FLAVORED
> CITRUS PUNCH" appear in capital letters. Nowhere on the label do the words
> "fruit juice" appear. It is undisputed that on the back of the label, water and high
> fructose corn syrup are listed as the most prominent ingredients. It is also
> undisputed that Defendant's product labels identify the precise percentage of fruit
> juice in each beverage. Moreover, it is undisputed that Defendant's packaging
> truthfully identifies that each of its products contains 2% or less of concentrated
> orange, tangerine, apple, lime, or grapefruit juice.

*Id.* at *4. The court dismissed the plaintiffs' claims, finding that "no reasonable consumer, upon

review of the label *as a whole* . . . would conclude that Defendant's products contain significant

quantities of fruit or fruit juice, particularly when the label identifies the product as fruit

'flavored' and indicates the exact fruit content of each product." *Id.* (emphasis added).

The *McKinniss* court also explained the broader reasoning supporting dismissal of these

consumer protection claims:

> Where a consumer can readily and accurately determine the composition and
> nutritional value of a product (here, by reading the front and back of the label), no
> reasonable consumer would be misled or deceived . . . . Defendant's product
> labels are simply not deceptive as a matter of law.

*Id.* at *4, *5. This reasoning applies equally to the place of production of a product: where the

labeling and packaging clearly state that the product is domestic, and nowhere state that it is

imported, a deceptive labeling claim must fail as a matter of law because there is no probability

of deceiving a reasonable consumer.

Numerous other California courts have dismissed misleading labeling claims on similar

grounds. *See, e.g., Avoy v. Turtle Mountain, LLC*, No. 13-CV-0236-LHK, 2014 WL 587173, at

*5-6 (N.D. Cal. Feb. 14, 2014) (dismissing misleading labeling claim, in part, because nutritional

panel accurately disclosed presence of sugars in product and belied plaintiff's contention that label misled her into believing that product contained no added sugar); *Shaker v. Nature's Path Foods, Inc.*, No. EDCV 13-1138-GW(OPx), 2013 WL 6729802, at *4-6 (C.D. Cal. Dec. 16, 2013) (dismissing misleading labeling claim because packaging contained disclosure that accurately described product contents and negated plaintiff's claim of deception); *Manchouck v. Mondelez Int'l Inc.*, No. C 13-02148 WHA, 2013 WL 5400285, at *3 (N.D. Cal. Sept. 26, 2013) (finding that use of "made with real fruit" was not deceptive in light of accurate ingredient disclosure on nutrition panel); *Kane v. Chobani, Inc.*, No. 12-CV-02425-LHK, 2013 WL 5289253, at *10 (N.D. Cal. Sept. 19, 2013) (dismissing UCL and CLRA claims after finding that use of "All Natural" on label was not deceptive in light of accurate ingredient disclosure on nutrition panel); *Pelayo v. Nestle USA, Inc.*, No. CV 13-5213-JFW (AJWx), 2013 WL 5764644 (C.D. Cal. Oct. 25, 2013) (same); *Red v. Kraft Foods, Inc.*, No. CV 10–1028–GW(AGRx), 2012 WL 5504011 (C.D. Cal. Oct. 25, 2012) (finding that the accurate representation "Made With Real Vegetables" on a box of crackers was not misleading); *Werbel v. Pepsico, Inc.*, No. C 09–04456 SBA, 2010 WL 2673860 (N.D. Cal. July 2, 2010) (dismissing UCL and CLRA claims after finding that no reasonable consumer would be deceived into believing that Cap'n Crunch cereal was derived from real fruit given lack of any misrepresentation and the affirmative disclosure: "Sweetened Corn & Oat Cereal"); *McKinnis v. Kellogg USA*, No. CV 07-2611 ABC (RCx), 2007 WL 4766060 (C.D. Cal. Sept. 19, 2007) (dismissing UCL and CLRA claims based on Froot Loops packaging for similar reasons).

Moreover, the Ninth Circuit recently held that where an individual misinterpreted a truthful statement, he was unable to bring a claim under the UCL because he could not plead that he reasonably relied on the alleged misrepresentations. *Block v. eBay, Inc.*, No. 12-16527, 2014

17

WL 1282288, at *4 (9th Cir. Apr. 1, 2014); *see also Harmon v. Hilton Grp., PLC,* No. 11-18056, 2014 WL 504182, at *1 (9th Cir. Feb. 10, 2014) (affirming dismissal of claims brought under the UCL and CLRA where plaintiff's "complaint fail[ed] to allege that a reasonable consumer could not avoid any harm allegedly caused by the disclosure policy by closely reading the disclosure").

New York courts have similarly held that a claim under GBL § 349 will not stand where the allegedly deceptive activity or practice is fully disclosed and the plaintiffs either ignored the disclosure or made their own assumptions about the nature of the truthful information. *See Gomez–Jimenez v. N.Y. Law Sch.*, 956 N.Y.S.2d 54, 59 (App. Div. 2012), *aff'g* 36 Misc. 3d 230 (N.Y. Sup. Ct. 2012). In *Gomez-Jimenez*, the court found that "a party does not violate General Business Law § 349 by simply publishing truthful information and allowing consumers to make their own assumptions about the nature of the information." *Id*. Other courts have also dismissed claims brought under § 349 when only truthful information was published and plaintiffs either neglected to read or misinterpreted those statements. *See*, *e.g.*, *Ballas v. Virgin Media, Inc.,* 856 N.Y.S.2d 22 (Sup. Ct. 2007) *aff'd*, 875 N.Y.S.2d 523 (App. Div. 2009) (dismissing claim under § 349 where the plaintiff's failure to read terms of service was found to be inexcusable: "Inasmuch as one is obligated to read an agreement before assenting to its terms, Plaintiff cannot avoid the agreement by asserting she did not read or understand it"); *Verzani v. Costco Wholesale Corp*., No. 09 CIV 2117 CM, 2010 WL 3911499 (S.D.N.Y. Sept. 28, 2010) *aff'd*, 432 F. App'x 29 (2d Cir. 2011) (dismissing plaintiff's § 349 claim where label on shrimp cocktail package accurately stated that the "combined weight" of the food in the tray was sixteen ounces; plaintiff's assumption that he was purchasing sixteen ounces of shrimp did not make the label misleading in a material respect); *Andre Strishak & Assocs., P.C. v. Hewlett Packard Co*., 752 N.Y.S.2d 400, 403 (App. Div. 2002) (affirming dismissal of § 349 claim where printer packaging

advertised that ink cartridges were included but did not specify the size of the cartridges and therefore was not materially misleading in that respect).[2]

All of these cases support dismissal here. Beck's labeling and packaging accurately inform consumers that the beer is made in the United States and nowhere represent to consumers that the beer is imported from Germany. Plaintiffs cannot avoid dismissal by alleging that their selective reading of label and package information left them confused. They fail to state any claim under the objective consumer standard.

## II.   SAFE HARBOR PROVISIONS UNDER FLORIDA, NEW YORK, AND CALIFORNIA LAW REQUIRE DISMISSAL OF PLAINTIFFS' CLAIMS.

Plaintiffs' claims under the FDUTPA, the GBL, the UCL, and the CLRA fail for the independent reason that Beck's labels were approved by the TTB, thereby exempting them from challenge under these state consumer protection acts. Both the FDUTPA and the GBL contain explicit safe harbor provisions exempting conduct that complies with federal or state law. *See* Fla. Stat. Ann. § 501.212 (the FDUTPA exempts from its scope "[a]n act or practice required or specifically permitted by federal or state law"); NY GBL § 349(d) ("it shall be a complete defense that the act or practice is . . . subject to and complies with the rules and regulations of . . . any official department, division, commission or agency of the United States"). Likewise, the

---

[2]   Although not decided at the motion to dismiss stage, a number of courts also have rejected claims based on allegations of misleading packaging or labeling regarding a product's place of production. *See, e.g., Pernod Ricard, USA LLC v. Bacardi U.S.A., Inc.*, 702 F. Supp. 2d 238, 243-44, 251 (D. Del. 2010) (finding that, as a matter of law, Bacardi's "Havana Club" rum, which was marketed with a Cuban theme focusing on the rum's Cuban heritage, was not misleading as to the place of production because the bottle label accurately disclosed that the rum was made in Puerto Rico); *see also Pernod Ricard USA, LLC v. Bacardi U.S.A., Inc.*, 653 F.3d 241, 253 (3d Cir. 2011) (affirming ruling below and stating, "[E]ven if the words 'Havana Club,' taken in isolation, may be understood as indicating a product's geographic origin in Havana, Cuba, those same words cannot mislead a reasonable consumer who is told in no uncertain terms that 'Havana Club' is a brand of rum made in Puerto Rico."); *Piazza's Seafood World, LLC v. Odom*, 448 F.3d 744, 753 (5th Cir. 2006) (finding that use of "Cajun" on food labels was not misleading as to place of production because the labels accurately disclosed the place of production); *Scotch Whiskey Ass'n v. Majestic Distilling Co.*, 958 F.2d 594, 598 (4th Cir. 1992) (finding that use of Scottish infantry regiment name and other Scottish symbols on whiskey label was not misleading because "the labels clearly indicate the products are made in the United States").

common law of California provides safe harbor protection for actions in compliance with governing regulations. *See Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 973 P.2d 527, 541-42 (Cal. 1999) (establishing safe harbor protection for regulatory compliant conduct).

Courts in all of these jurisdictions have invoked these safe harbors to protect regulatory-compliant or federally-approved conduct alleged to be deceptive or unfair. The Eleventh Circuit, for example, recently affirmed dismissal of a misleading labeling claim on this basis. *See Kuenzig*, 505 F. App'x at 939. As noted above, the plaintiff in *Kuenzig* asserted an FDUTPA claim based on an allegation that Kraft food labels were misleading as to the fat free content of the products. *Id*. In affirming dismissal of the claim, the Eleventh Circuit found persuasive that the "[t]he labels complied with federal regulations regarding the use of percentage fat-free claims and ***were approved by [the appropriate federal agency] prior to their commercial use.***" *Id*. (emphasis added). For these reasons, the Eleventh Circuit held that the defendants "could not be liable pursuant to the FDUTPA's safe harbor provision." *Id*.; *see also Brett v. Toyota Motor Sales, U.S.A., Inc.*, No. 6:08-cv-1168-Orl-28GJK, 2008 WL 4329876, at *7 (M.D. Fla. Sept. 15, 2008) (dismissing FDUTPA claim based on fuel economy estimates for vehicles because the advertising complied with FTC regulations); *Prohias v. AstraZeneca Pharm.*, 958 So. 2d 1054, 1056 (Fla. 3d DCA 2007) (affirming dismissal of FDUTPA claims "because the promotional and advertising activity attacked in the Complaint [wa]s supported by the FDA-approved labeling for Nexium® and thus [wa]s 'specifically permitted' by federal law").

The Second Circuit likewise applied the GBL's safe harbor provision to bar claims challenging conduct that complied with federal regulations. *Law Offices of K.C. Okoli, P.C. v. BNB Bank, N.A.*, 481 F. App'x 622, 626 (2d Cir. 2012) ("Consequently, as Okoli's complaint alleges that BNB made the proceeds of its check available within the seven-day time frame

established by the EFAA and its implementing regulations, it cannot bring a claim against BNB pursuant to § 349”); *see also Porr v. NYNEX Corp*., 660 N.Y.S.2d 440, 448 (1997) (“Moreover, there is no violation of General Business Law § 349 if the challenged conduct is in compliance with the rules and regulations of a Federal commission”); *Am. Home Prods. Corp. v. Johnson & Johnson*, 672 F. Supp. 135 (S.D.N.Y. 1987) (compliance with FDA regulations created a complete defense to deceptive advertising claim); *Cytyc Corp. v. Neuromedical Sys., Inc*., 12 F. Supp. 2d 296 (S.D.N.Y. 1998) (representations were consistent with the FDA’s requirements and thus could not violate GBL § 349). This safe harbor protection applies even where a plaintiff alleges that he did not learn of the alleged misrepresentation until after the transaction took place. *Cohen v. J.P. Morgan Chase & Co.*, 608 F. Supp. 2d 330, 350-51 (E.D.N.Y. 2009) (holding that even where plaintiffs did not learn of post-closing fee until after closing on transaction, “if the post-closing fee is legal under RESPA, which is administered by HUD, a federal agency, then the § 349 claim is foreclosed”).

And like the statutory counterparts in the FDUTPA and the GBL, California’s common law safe harbor has been applied to insulate from liability regulatory compliant conduct. As the California Supreme Court has explained:

> Courts may not simply impose their own notions of the day as to what is fair or unfair. Specific legislation may limit the judiciary’s power to declare conduct unfair. If the Legislature has permitted certain conduct or considered a situation and concluded no action should lie, courts may not override that determination.

*Cel-Tech Commc’ns, Inc.*, 973 P.2d at 541-42; *see also Pom Wonderful LLC v. Coca Cola Co.*, No. CV 08-06237 SJO (FMOx), 2013 WL 543361, at *5 (C.D. Cal. Feb. 13, 2013) (safe harbor shielded defendant from liability for advertising and labeling that complied with FDA regulations); *In re Celexa & Lexapro Mktg. & Sales Practices Litig.*, No. 09-2067-NMG, 2014

21

WL 866571, at *4 (D. Mass. Mar. 5, 2014) (California's safe harbor shielded defendant from liability for claims based on FDA-approved label).

These safe harbors require dismissal in this matter. The agency that approved Beck's labels, the TTB, is specifically charged with ensuring that beer labels do not contain "[a]ny statement that is false or untrue in any particular, or that, irrespective of falsity, directly, or by ambiguity, omission, or inference, or by the addition of irrelevant, scientific or technical matter, tends to create a misleading impression." 27 C.F.R. § 7.29(a)(1). In other words, the TTB's mandate specifically requires it to review labels to ensure that they are not misleading. Thus, when the TTB reviews and approves a label, it has determined that it is *not* misleading.

It is undisputed that Beck's labels comply with TTB regulations and that they were specifically approved by the TTB prior to use. (*See* RJN Ex. A-1; Am. Compl. ¶ 13; *see also* 27 C.F.R. § 7.25(a)-(b).) Accordingly, Plaintiffs' claims must be dismissed pursuant to the Florida, New York, and California safe harbor protections. *See Kuenzig*, 505 F. App'x at 939; *Law Offices of K.C. Okoli, P.C.,* 481 F. App'x at 626; *Cel-Tech Commc'ns, Inc.*, 973 P.2d at 541-42. Moreover, this reasoning applies equally to Plaintiffs' claims that are based on statements contained on Beck's six and twelve pack packages because those representations—besides being themselves accurate and true (*see supra* Sec. I)—are either also included on the approved labels or "generally comport" with the approved labels. *See Prohias v. Pfizer, Inc.*, 490 F. Supp. 2d 1228, 1235 (S.D. Fla. 2007) ("[E]ven if the advertisements did not comport precisely with Lipitor's approved label by claiming that Lipitor reduces the risk of coronary heart disease, the alleged advertisements generally comport with the approved label, and are therefore not misleading as a matter of law."); *see also Cytyc Corp.*, 12 F. Supp. 2d at 301 (holding that under

the Lanham Act,[3] statements that "comport substantively with statements approved as accurate by the FDA" cannot supply the basis for plaintiff's claims). Specifically, the statement on the packaging regarding the German Purity Law also appears on the TTB-approved back label, and the puffery statement on the packaging regarding "German Quality" does not contradict, and in fact comports with, the TTB-approved labels (in particular, the approved statement regarding the German Purity Law). Plaintiffs cannot escape the protections provided by these safe harbors by *ignoring* certain statements on the labels and mischaracterizing others on the packaging—especially where there is no conflict between those statements.[4]

III.  **PLAINTIFFS HAVE NOT IDENTIFIED ACTUAL HARM CAUSED BY A-B.**

Plaintiffs' consumer protection claims also fail as a matter of law because Plaintiffs have not alleged any facts to support a finding that they were harmed by A-B. Although the specific damages or harm requirements are somewhat different in these three states, at a minimum, they all require Plaintiffs to plead facts (not mere conclusions) to show that they were *actually* harmed. The Complaint here fails to do so.

Each relevant consumer protection statute requires plaintiffs to plead facts sufficient to state an actual injury. *QSGI, Inc. v. IBM Global Fin.*, No. 11-80880-CIV, 2012 WL 1150402 (S.D. Fla. Mar. 14, 2012) (FDUTPA dismissed where plaintiff failed to plead facts sufficient to show actual damages); *Bildstein v. MasterCard Int'l Inc.*, 329 F. Supp. 2d 410, 415 (S.D.N.Y. 2004) ("To state a claim under Section 349, Plaintiff must plead facts establishing actual injury

---

[3]  New York courts "adopt essentially the same analysis for both section 349 and Lanham Act claims." *Gottlieb Dev. LLC v. Paramount Pictures Corp.*, 590 F. Supp. 2d 625, 636 (S.D.N.Y. 2008).

[4]  Although it is unnecessary given the safe harbor protections provided by Florida, California, and New York law, it is worth noting that, even absent these protections, Plaintiffs' claims would be subject to dismissal because they conflict with, and thus are impliedly preempted by, federal law. *See Irving v. Mazda Motor Corp.*, 136 F.3d 764, 769 (11th Cir. 1998) ("'[A] state cannot impose common law damages on individuals for doing what a federal act or regulation "authorized them to do."'").

by the alleged deceptive act"); *Durell v. Sharp Healthcare*, 108 Cal. Rptr. 3d 682, 691 (Ct. App. 2010) ("A private plaintiff must . . . demonstrate injury in fact and a loss of money or property caused by unfair competition"). And where, as here, the plaintiffs allege an overpayment due to a misrepresentation, they are required to plead a factual basis showing that they paid a higher price for a product ***because of the alleged misrepresentation***. *See Clear Marine Ventures, Ltd. v. Brunswick Corp.*, No. 08-22418-CIV, 2010 WL 528477, at *3 (S.D. Fla. Feb. 11, 2010) (damages under the FDUTPA are measured as "the difference in market value of the product in the condition in which it was delivered and its market value in the condition in which it should have been delivered according to agreement between the parties"); *Ackerman v. Coca-Cola Co.*, No. CV-09-0395 (JG), 2010 WL 2925955, at *23 (E.D.N.Y. July 21, 2010) (under the GBL, plaintiff must plead that he "paid a premium for a product based on defendants' inaccurate representations"); *Swearingen v. Yucatan Foods, L.P.,* No. C 13-3544 RS, 2014 WL 553537 (N.D. Cal. Feb. 7, 2014) (plaintiffs required to allege that they paid a premium price for products that were allegedly mislabeled); *see also Block*, 2014 WL 1282288, at *3 (to state a UCL claim, a plaintiff must also allege "actual reliance that the defendant's misrepresentation or nondisclosure was an immediate cause of the plaintiff's injury-producing conduct such that in its absence the plaintiff in all reasonable probability would not have engaged in the injury-producing conduct").

For each state at issue, overpayment claims should be dismissed where the alleged damages are speculative, conclusory, or unsupported by facts. *See Rollins, Inc. v. Butland*, 951 So. 2d 860, 873 (Fla. 2d DCA 2006) ("[The] FDUTPA does not provide for the recovery of nominal damages, speculative losses, or compensation for subjective feelings of disappointment"); *Fort Lauderdale Lincoln Mercury, Inc. v. Corgnati*, 715 So. 2d 311, 314 (Fla.

24

4th DCA 1998) ("Evidence as to the amount of damages cannot be based on speculation or conjecture, but must be proven with certainty."); *QSGI, Inc.*, 2012 WL 1150402, at *5 ("QSGI has failed to plead any facts from which one could plausibly infer the degree to which, or even whether, the market value of any product has changed as a result of IBM's purported conduct."); *Prohias v. Pfizer, Inc.*, 485 F. Supp. 2d 1329, 1336 (S.D. Fla. 2007) (dismissing FDUTPA claim based on allegedly misleading advertising of Lipitor; stating that plaintiffs' "price inflation" theory was "too speculative to constitute an injury-in-fact under Article III"); *Gomez-Jimenez v. N.Y. Law Sch.*, 943 N.Y.S.2d 834, 848 (Sup. Ct.), *aff'd*, 956 N.Y.S.2d 54 (App. Div. 2012) *leave to appeal denied,* 987 N.E.2d 639 (2013) (dismissing GBL claim where plaintiffs asked the court to "accept as true" the allegation that a New York Law School degree is worth less than what the law school allegedly represented it to be because "the complaint does not allege facts from which pecuniary damages can be inferred as a direct result of the alleged wrong"); *Rivera v. BAC Home Loans Servicing, L.P.*, 756 F. Supp. 2d 1193, 1201 (N.D. Cal. 2010) (dismissing UCL claim in part "because plaintiffs [] added no factual support to their conclusory claim of damages").

Plaintiffs here aver only that they paid an import premium but received a domestic beer. (Am. Compl. ¶¶ 221-27.) They allege no facts in support of this conclusion. For example, Plaintiffs do not even allege the prices they paid. Instead, they proffer selective advertisements from retailers without stating whether the prices shown are the prices they paid. (Am. Compl. Ex. B.) Moreover, Plaintiffs do not allege how the prices they paid differed from prices charged for other beers (domestic or imported). Furthermore, Plaintiffs do not allege why any alleged difference in *retail* pricing is properly considered in a case against A-B. Under the three tier system, A-B does not sell beer to consumers, retailers do. A-B only sells beer to wholesalers, which, in turn, sell to retailers. As a matter of law, the retailers that sold Beck's to Plaintiffs were

free to (and did) charge *whatever price they wanted*. This also necessarily means that if Plaintiffs did not like the price that their retailer charged, they could just go to another store where a retailer likely charged a different price. By law, A-B did not control the prices Plaintiffs paid.

The Complaint fails to provide any basis for the notion of an "import premium." It fails even to allege the most basic element of the alleged harm—how much Plaintiffs paid for Beck's. Absent *any* factual allegations to support their theory of harm, the Complaint merely restates the *element* of harm and must be dismissed.

## IV.  PLAINTIFFS HAVE FAILED TO STATE A CLAIM FOR UNJUST ENRICHMENT.

Plaintiffs assert a claim for unjust enrichment against A-B based on the same allegations underlying their consumer protection claims. (*See* Am. Compl. ¶¶ 43-87) Thus, this claim likewise fails for all of the reasons discussed above, as well as a number of independent reasons.

The basic elements of an unjust enrichment claim are the same under Florida and New York law. In Florida, an unjust enrichment claim requires the plaintiff to show that: (1) the plaintiff has conferred a benefit on the defendant; (2) the defendant voluntarily accepted and retained that benefit; and (3) the circumstances are such that it would be inequitable for the defendant to retain it without paying the value thereof. *Virgilio v. Ryland Grp., Inc.*, 680 F.3d 1329, 1337 (11th Cir. 2012). Similarly, "[t]o prevail on a claim for unjust enrichment in New York, a plaintiff must establish 1) that the defendant benefitted; 2) at the plaintiff's expense; and 3) that equity and good conscience require restitution." *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000). California law, however, does not recognize claims for unjust enrichment. *See In re ConAgra Foods Inc.*, 908 F. Supp. 2d 1090, 1114 (C.D. Cal. 2012) (under California law, a cause of action for unjust enrichment is not cognizable); *see also Avoy*, 2014 WL 587173, at *8

(same). For this reason alone, Plaintiffs' California *and nationwide* unjust enrichment claims must fail.

Plaintiffs' unjust enrichment claims also fail because they have not shown that they lack a legal remedy for the complained-of conduct. Unjust enrichment is an equitable doctrine that is unavailable unless the plaintiff lacks a legal remedy. *See Guerrero v. Target Corp.*, 889 F. Supp. 2d 1348, 1356 (S.D. Fla. 2012) (dismissing unjust enrichment claim based on misleading labeling because plaintiff did not lack an adequate legal remedy); *Prohias*, 490 F. Supp. 2d at 1236 (same); *Lucente v. IBM*, 310 F.3d 243, 262 (2d Cir. 2002) (same). Although some courts have permitted plaintiffs to plead unjust enrichment as an alternative basis to recovery, that is not permitted when, as here, the plaintiffs "seek[] recovery for the exact same wrongful conduct" under both claims. *Guerrero*, 889 F. Supp. 2d at 1356; *see also Matthews v. Am. Honda Motor Co.*, No. 12-60630-CIV, 2012 WL 2520675, at *2 (S.D. Fla. June 6, 2012) ("[B]ecause Matthews' unjust enrichment claim is predicated on the same wrongful conduct as her FDUTPA claim, she does not lack an adequate legal remedy."); *Bongat v. Fairview Nursing Care Ctr., Inc.*, 341 F. Supp. 2d 181, 189 (E.D.N.Y. 2004) (dismissing claim of unjust enrichment under New York law where claim based on wage-and-hour-statute provided adequate remedy at law); *In re ConAgra Foods Inc.*, 908 F. Supp. 2d at 1114 ("under California law, a cause of action for unjust enrichment is not cognizable. Rather, unjust enrichment is a theory that permits recovery on other recognized causes of action, including plaintiffs' UCL and CLRA claims"); s*ee also, Hill v. Roll Int'l Corp.*, 128 Cal. Rptr. 3d 109, 118 (Ct. App. 2011) (same); *Levine v. Blue Shield of Cal.*, 117 Cal. Rptr. 3d 262, 278-79 (Ct. App. 2010) (same).

Finally, the unjust enrichment claims fail because Plaintiffs received the benefit of their bargain. A claim for unjust enrichment cannot be maintained where, as here, the plaintiffs

received a product in return for their money. *See*, *e.g.*, *Prohias*, 490 F. Supp. 2d at 1236 ("Mr. Charles and Mr. Martin fail to state a claim for unjust enrichment. Both men purchased a cholesterol reducing drug, and both men obtained cholesterol reduction as a result. Therefore, in a general sense, they obtained the benefit of their bargain. Unjust enrichment cannot exist where payment has been made for the benefit conferred." (citation omitted)); *Chamberlain v. Am. Tobacco Co.*, No. 1:96-CV-02005-PAG, 1999 WL 33994451, at *15 (N.D. Ohio Nov. 19, 1999) (dismissing unjust enrichment claim because "the plaintiffs received a product (the cigarettes) in return for their money"). Plaintiffs bought and drank Beck's on a regular basis without complaint; they cannot now seek to recover damages by claiming that A-B was unjustly enriched by their purchases.

## V.  PLAINTIFFS LACK STANDING TO SEEK INJUNCTIVE RELIEF

Plaintiffs' claims for injunctive relief should be dismissed because Plaintiffs lack standing to assert these claims. "'Because injunctions regulate future conduct, a party has standing to seek injunctive relief only if the party alleges . . . a real and immediate—as opposed to a merely conjectural or hypothetical—threat of future injury.'" *Shotz v. Cates*, 256 F.3d 1077, 1081 (11th Cir. 2001) (citation omitted); *Shain v. Ellison*, 356 F.3d 211, 215 (2d Cir. 2004) (same); *Clark v. City of Lakewood*, 259 F.3d 996, 1007 (9th Cir. 2001) (same).

Plaintiffs allege that they stopped buying Beck's after learning that Beck's is brewed in the United States. (Am. Compl. ¶¶ 22, 24, 26.) Thus, there is no threat that Plaintiffs will be injured in the future by A-B's allegedly wrongful conduct, and Plaintiffs therefore lack standing to seek an injunction. *See Allen v. Similasan Corp.*, No. 12CV0376-BTM-WMC, 2013 WL 5436648 (S.D. Cal. Sept. 27, 2013) (dismissing injunctive relief claim based on allegedly misleading labeling because there was no threat of future injury); *Robinson v. Hornell Brewing*

28

*Co.*, Civ. No. 11-2183 (JBS-JS), 2012 WL 1232188, at *4 (D.N.J. Apr. 11, 2012) (same); *Bohn*

*v. Boiron, Inc.*, No. 11 C 08704, 2013 WL 3975126, at *4 (N.D. Ill. Aug. 1, 2013) (same).

<u>**CONCLUSION**</u>

For the foregoing reasons, A-B respectfully requests that this Court dismiss Plaintiffs'

Complaint with prejudice, and grant such other relief as it deems just and appropriate.

Dated: April 25, 2014                    Respectfully submitted,

                                         KENNY NACHWALTER, P.A

                                         By: /s/ Stanley H. Wakshlag
                                         Stanley H. Wakshlag
                                         201 South Biscayne Boulevard, Suite 1100
                                         Miami, FL 33131-4327
                                         Phone: (305) 373-1000
                                         Fax: (305) 372-1861
                                         swakshlag@knpa.com

                                         SKADDEN, ARPS, SLATE, MEAGHER &
                                         FLOM LLP
                                         Edward M. Crane, *pro hac vice*
                                         David R. Pehlke, *pro hac vice*
                                         Brandon R. Keel, *pro hac vice*
                                         155 North Wacker Drive
                                         Chicago, IL 60606
                                         Phone: (312) 407-0700
                                         Fax: (312) 407-0411
                                         edward.crane@skadden.com
                                         david.pehlke@skadden.com
                                         brandon.keel@skadden.com

                                         *Attorneys for Defendant Anheuser-Busch*
                                         *Companies, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing Defendant's Motion to Dismiss and Memorandum of Law in Support was served by electronic mail on April 25, 2014 on all counsel or parties of record on the attached service list.

/s/ Stanley H. Wakshlag
Stanley H. Wakshlag

## SERVICE LIST
**US District Court, Southern District of Florida**
**Case No. 13-cv-23656-JAL**
*Francisco Rene Marty v. Anheuser-Busch Companies, LLC*

Thomas A. Tucker Ronzetti, Esq.
tr@kttlaw.com
Adam M. Moskowitz, Esq.
amm@kttlaw.com
David R. Matz, Esq.
drm@kttlaw.com
KOZYAK, TROPIN, & THROCKMORTON
P.A.
2525 Ponce de Leon Blvd., 9th Floor
Coral Gables, Florida 33134
Telephone: (305) 372-1800
Facsimile: (305) 372-3508
*Counsel for Plaintiffs*

Lance A. Harke, P.A.
lharke@harkeclasby.com
Howard M. Bushman, Esq.
hbushman@harkeclasby.com
Allison Harke, Esq.
aharke@harkeclasby.com
HARKE CLASBY & BUSHMAN LLP
9699 NE Second Avenue
Miami Shores, Florida 33138
Telephone:    (305) 536-8220
Facsimile:      (305) 536-8229
*Counsel for Plaintiffs*

Robert W. Rodriguez, Esq.
RobertWRodriguez@GMail.Com
ROBERT W. RODRIGUEZ, P.A.
66 West Flagler Street, Suite 1002
Miami, Florida 33130
Telephone: (305) 444-1446
Facsimile: (305) 907-5244 (Fax)
*Counsel for Plaintiffs*

John Campbell, Esq.
john@campbelllawllc.com
CAMPBELL LAW, LLC
1500 Washington Avenue,
Suite 100
St. Louis, MO 63103
(314)588-8101
*Counsel for Plaintiffs*

Stanley Wakshlag
swakshlag@kennynachwalter.com
Kenny Nachwalter
1100 Miami Center
201 South Biscayne Boulevard
Miami, Florida 33131
*Counsel for Defendant*

Edward M. Crane, Esq.,
edward.crane@skadden.com,
David R. Pehlke
david.pehlke@skadden.com
Brandon R. Keel
brandon.keel@skadden.com
Skadden, Arps, Slate, Meagher & Flom LLP
155 N. Wacker Drive,
Chicago, Illinois 60606
*Counsel for Defendant*