UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 13-23656-CIV-O'SULLIVAN

[CONSENT]

FRANCISCO RENE MARTY, et al.,

       Plaintiffs,

v.

ANHEUSER-BUSCH COMPANIES, LLC,

       Defendant.

_____/

## ORDER

THIS MATTER comes before the Court on the Defendant's Motion to Dismiss and Memorandum of Law in Support (DE# 54, 4/25/14).

## BACKGROUND

Anheuser-Busch Companies, LLC (hereinafter "defendant" or "AB") is the brewer of Beck's beer (hereinafter "Beck's" or "Beck's Beer").[1] See Amended Class Action Complaint (DE# 50 at ¶10, 3/31/14) (hereinafter "Amended Complaint").[2] Beck's originated and was brewed in Germany from 1873 until 2012 when the defendant

_____

[1] Unless otherwise stated in this Order, the words "Beck's" and "Beck's Beer" refer to six and twelve packs of twelve ounce bottles and cans of Beck's brand beer, the products at issue in the instant action. See Amended Complaint (DE# 50 at 1 n.1, ¶ 22, 24, 26, 3/31/14).

[2] Some of the parties' filings contain page numbers which do not correspond to the page numbers automatically assigned by the Court's CM/ECF system. When citing the Amended Complaint (DE# 50 at ¶10, 3/31/14), the Court will cite to the paragraph number instead of the page number, when available. With respect to all other documents, the Court will cite to the page numbers automatically assigned by CM/ECF.

began brewing Beck's in St. Louis, Missouri. Id. at ¶¶ 6,10.[3]

The plaintiffs are consumers of Beck's residing in Florida, New York and California who purchased Beck's "in reliance on representations contained on [the] packaging and Beck's history of being an imported beer from Germany." Amended Complaint (DE# 50 at ¶¶ 22, 24, 26, 3/31/14). The plaintiffs allege that the defendant made misrepresentations about Beck's that caused confusion among consumers. Id. at ¶15. According to the plaintiffs, "[c]onsumers believed they [we]re purchasing German beer, imported from Germany, brewed using German requirements and with German ingredients, when in fact, they [we]re purchasing beer brewed in St. Louis, Missouri . . . with ingredients from the United States." Id. The plaintiffs maintain that "[b]ased on [the d]efendant's misrepresentations and deceptive conduct, [they] purchased beer that had less value than what [they] had paid, and [they] ha[ve] accordingly suffered legally cognizable damages proximately caused by the [d]efendant's misconduct. Id. at ¶¶ 22, 24, 26.

On March 31, 2014, the plaintiffs filed their Amended Complaint asserting causes of action for: unjust enrichment (Count I), violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201, et seq. ("FDUTPA") (Count II), violation of the New York General Business Law § 349 (Count III), violation of the California Unfair Competition Law Business and Professions Code § 17200, et seq. ("UCL") (Count IV) and violation of the California Consumer Legal Remedies Act Civil Code §

---

[3] The predecessor of the defendant's parent company purchased Beck's in 2002. Amended Complaint (DE# 50 at ¶6, 3/31/14).

1750, et seq. ("CLRA") (Count V). See Amended Complaint (DE# 50 at ¶10, 3/31/14).[4]

On April 25, 2014, the defendant moved to dismiss all counts of the Amended Complaint (DE# 50) for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure and to dismiss the injunctive relief sought in Counts II through IV for lack of standing under Rule 12(b)(1). See Defendant's Motion to Dismiss and Memorandum of Law in Support (DE# 54, 4/25/14). The plaintiffs filed their response on May 19, 2014. See Plaintiffs' Response in Opposition to Defendant's Motion to Dismiss Amended Complaint (DE# 62, 5/19/14). The defendant filed its reply in support of the instant motion on May 30, 2014. See Defendant's Reply Memorandum in Support of its Motion to Dismiss (DE# 63, 5/30/14).

On June 6, 2014, the defendant filed a notice of supplemental authority. See Defendant's Notice of Supplemental Authority in Support of Its Motion to Dismiss (DE# 66, 6/6/14). The defendant filed a second notice of supplemental authority on July 28, 2014. See Defendant's Notice of Supplemental Authority in Support of Its Motion to Dismiss (DE# 75, 7/28/14).

In a prior Order, the Court granted the defendant's request to take judicial notice of the Certificates of Label Approval from the Alcohol and Tobacco Tax and Trade Bureau ("TTB") dated December 14, 2009 and December 14, 2011, "the bottom of the

---

[4] In a separate motion, the plaintiffs seek class action certification of a national class for unjust enrichment and three deceptive and unfair trade practices act subclasses for the states of Florida, New York and California. See Plaintiffs' Motion for Class Certification and Incorporated Memorandum of Law (DE# 68 at 7, 6/30/14). The motion for class certification is not yet ripe.

current [carton][5] of Beck's six[-]pack of bottles" and the front carton of Beck's six-pack and twelve-pack bottles. See Order (DE# 38, 1/21/14); Defendant's Request for Judicial Notice in Support of its Motion to Dismiss (DE# 14, 12/9/13) (footnote added). The Court will consider these documents in ruling on the instant motion.

On August 1, 2014, the Court held a hearing on the instant motion. At the defendant's request, the Court allowed the defendant to bring demonstratives to the hearing for the Court's consideration. See Defendant's Unopposed Motion for Permission to Bring Demonstratives to the August 1, 2014 Hearing (DE# 74, 7/28/14); Order Granting Defendant's Motion for Permission to Bring Demonstratives to the August 1, 2014 Hearing (DE# 76, 7/29/14). The defendant presented the Court with sample twelve ounce bottles and cans of Beck's, the cartons for six-pack and twelve-pack bottles and the carton for twelve-pack cans. Following the hearing, the Court issued an Order permitting the parties to file supplemental briefs on the issue of standing to seek injunctive relief. See Order (DE# 78, 8/1/14).

On August 6, 2014, the defendant filed its supplemental brief. See Defendant's Supplemental Brief in Support of Its Motion to Dismiss (DE# 81, 8/6/14). The plaintiffs filed their supplemental brief on August 11, 2014. See Plaintiff's Supplemental Brief in Opposition to Defendant's Motion to Dismiss Amended Complaint (DE# 83, 8/11/14). On September 2, 2014, the defendant filed its third notice of supplemental authority. See Defendant's Notice of Supplemental Authority in Support of Its Motion to Dismiss (DE# 86, 9/2/14). This matter is ripe for adjudication.

---

[5] In this Order, the word "carton" will refer to the cardboard, outer packaging of Beck's.

## STANDARD OF REVIEW

**A.    Rule 12(b)(6)**

The defendant seeks to dismiss the Amended Complaint (DE# 50, 3/31/14) for failure to state a claim upon which relief can be granted. See Defendant's Motion to Dismiss and Memorandum of Law in Support (DE# 54 at 1-36, 4/25/14). "A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8 does not require "detailed factual allegations," but "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)) (internal quotations omitted).

The defendant also argues that Rule 9(b)'s heightened pleading requirement applies to the plaintiffs' FDUTPA, UCL and CLRA claims and that the plaintiffs have not met this pleading requirement in their Amended Complaint (DE# 50, 3/31/14). See Defendant's Motion to Dismiss and Memorandum of Law in Support (DE# 54 at 16, 4/25/14). Rule 9(b) states that: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). There is some disagreement in the case law concerning the applicability of Rule 9(b) to state law consumer protection claims. This Court has recognized, for instance, that "although most courts have found that Rule 9(b) applies to claims brought under states' consumer fraud statutes, other courts have found that Rule 9(b) is not applicable to those claims." In re Horizon Organic Milk Prods. Plus DHA Omega-3 Mktg. & Sales

Practice Litig., 955 F. Supp. 2d 1311, 1323 n.8 (S.D. Fla. 2013); see also, e.g.,

Galstaldi v. Sunvest Cmty. USA, LLC, 637 F. Supp. 2d 1045, 1058 (S.D. Fla. 2009)

(stating that "[t]he requirements of Rule 9(b) do not apply to claims under the FDUTPA"

because "FDUTPA was enacted to provide remedies for conduct outside the reach of

traditional common law torts such as fraud, and therefore, the plaintiff need not prove

the elements of fraud to sustain an action under the statute.") (citation and internal

quotation marks omitted). The undersigned does not need to decide whether Rule 9(b)

applies to the plaintiffs' Florida and California consumer protection claims because the

allegations in the Amended Complaint (DE# 50, 3/31/14) are sufficiently detailed to

meet the requirements of Rule 9(b).

     In considering a motion to dismiss brought under Rule 12(b)(6) of the Federal

Rules of Civil Procedure, the Court's analysis is generally limited to the four corners of

the complaint and the attached exhibits. See Grossman v. Nationsbank, N.A., 225 F.3d

1228, 1231 (11th Cir. 2000). The Court must also accept the non-moving party's well-

pled facts as true and construe the complaint in the light most favorable to that party.

See Caravello v. Am. Airlines, Inc., 315 F. Supp. 2d 1346, 1348 (S.D. Fla. 2004) (citing

United States v. Pemco Aeroplex, Inc., 195 F.3d 1234, 1236 (11th Cir. 1999) (en

banc)). To survive a motion to dismiss, the complaint must contain factual allegations

which are "enough to raise a right to relief above the speculative level." Twombly, 550

U.S. at 555. "When there are well-pleaded factual allegations, a court should assume

their veracity and then determine whether they plausibly give rise to an entitlement to

relief." Iqbal, 556 U.S. at 664. The issue to be decided is not whether the claimant will

ultimately prevail, but "whether the claimant is entitled to offer evidence to support the

claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Davis v. Scheuer, 468 U.S. 183, 190 (1984).

**B.      Rule 12(b)(1)**

The defendant also challenges the plaintiffs' standing to seek injunctive relief pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. See Defendant's Motion to Dismiss and Memorandum of Law in Support (DE# 54 at 36-37, 4/25/14). Rule 12(b)(1) of the Federal Rules of Civil Procedure allows for the dismissal of a claim when it is determined that the Court lacks subject-matter jurisdiction. See Fed. R. Civ. P. 12 (b)(1). Federal courts are bound by Article III of the United States Constitution to adjudicating only actual "cases" or "controversies." Allen v. Wright, 468 U.S. 737 (1984). Article III standing is a jurisdictional requirement that cannot be waived and, as such, may be brought up at any time in the proceeding. See Smith v. GTE Corp., 236 F.3d 1292, 1299 (11th Cir. 2001) ("[A] court must zealously insure that jurisdiction exists over a case, and should itself raise the question of subject matter jurisdiction at any point in the litigation where a doubt about jurisdiction arises."). "Because standing is jurisdictional, a dismissal for lack of standing has the same effect as a dismissal for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1)." Stalley ex rel. United States v. Orlando Reg'l Healthcare Sys., Inc., 524 F.3d 1229, 1232 (11th Cir. 2008) (citation and internal quotation marks omitted).

## ANALYSIS

The defendant moves to dismiss all five causes of action in the Amended Complaint for failure to state a claim and the plaintiffs' request for injunctive relief contained within Counts II through IV for lack of standing. See Defendant's Motion to

Dismiss and Memorandum of Law in Support (DE# 54, 4/25/14). The Court will address the defendant's arguments in turn.

## A.      Failure to State a Claim

### i.      State Law Consumer Protection Claims

The plaintiffs assert state law claims under FDUTPA, the New York General Business Law § 349, the UCL and the CLRA (collectively, "state law consumer protection claims"). The defendant maintains that the plaintiffs have failed to state causes of action under each of these statutes because: (1) no reasonable consumer could be deceived by the defendant's representations, (2) the safe harbor provisions of these statutes insulate the defendant from liability and (3) no cognizable harm has been pled.[6] These arguments are addressed below.

---

[6] To the extent the defendant is relying on Porsche Cars N. Am., Inc. v. Diamond, 140 So. 3d 1090 (Fla. 3d DCA 2014), in support of its argument that the plaintiffs have failed to state a claim under FDUTPA, the undersigned finds that Porsche is distinguishable from the instant case. In Porsche, a Florida appellate court reversed a class certification of a FDUTPA claim because the trial court incorrectly applied the 1964 Federal Trade Commission ("FTC") policy statement definition to the term "unfair" when it should have applied the 1980 FTC policy statement definition establishing a three prong test for "unfairness." Id. at 1096-97. Under the three-prong test for "unfairness," injury to the consumer must: (1) be substantial; (2) "not be outweighed by any countervailing benefits to the consumers or competition that the practice produces" and (3) "be an injury that consumers themselves could not reasonably have avoided." Id. at 1096. The appellate court reversed the class certification because common issues of law and fact would not predominate over the FDUTPA claim and over the unjust enrichment claim. Id. at 1098-1100. In issuing its opinion, the appellate court included the following caveat:

> This is not to say that individual knowledge must always be considered to determine whether a trade practice was unfair. **The individual consumer's knowledge may not be a relevant factor where, for example, the legal theory of the claim posits that "consumers do not have a free and informed choice that would have enabled them to avoid the unfair practice."** F.T.C. v. Neovi, Inc., 598 F. Supp. 2d 1104,

### (a).    Whether a Reasonable Consumer Could Be Deceived

The defendant argues that the plaintiffs have failed to state a claim as to each of the relevant state law consumer protection statutes because the plaintiffs have not pled any actual misrepresentation or any representations likely to deceive a reasonable consumer. The defendant maintains that the plaintiffs' state law consumer protection claims must fail because they are based on the plaintiffs' own unreasonable assumptions about the labeling and packaging, rather than what the labeling and packaging actually state. According to the defendant, the plaintiffs: (1) fail to identify any misrepresentation that Beck's is imported or brewed in Germany and (2) depend entirely on their failure to read the actual representations regarding production location that are contained on Beck's labeling and packaging.

The Amended Complaint alleges that:

> [The d]efendant has committed unfair and deceptive practices and has been unjustly enriched by marketing and selling beer in a way that misleads consumers into believing that Beck's Beer is German, still imported from Germany, claiming that Beck's Beer **"Originated in Germany"** with **"German Quality"** while **"Brewed Under the German Purity Law of 1516"** . . . .

---

1115 (S.D. Cal. 2008) (quotation and citation omitted). This scenario would arise where the claim is based on allegations of "some form of seller behavior that unreasonably creates or takes advantage of an obstacle to the free exercise of consumer decisionmaking." F.T.C. v. Direct Mktg. Concepts, Inc., 569 F. Supp. 2d 285, 299-300 (D. Mass. 2008) (quotation and citation omitted).

Id. at 1099. The instant case is distinguishable from Porsche because the plaintiffs allege that the defendant engaged in misrepresentations and deceptive conduct leading them to believe that Beck's was still imported from Germany. See Amended Complaint (DE# 50 at ¶¶ 23, 25, 27, 3/31/14). Thus, the Court will not dismiss the plaintiffs' FDUTPA claim on this ground.

Amended Complaint (DE# 50 at ¶1, 3/31/14) (emphasis added). The defendant notes that none of the above quoted statements make any representations concerning the location where Beck's is brewed.

### (i).    The Product of the USA Disclaimer and the Statement "BRAUEREI BECK & CO., BECK'S © BEER, ST. LOUIS, MO"

The defendant argues that any mistaken belief that Beck's is brewed in Germany is contradicted by the statement "Product of USA, Brauerei Beck & Co., St. Louis, MO." (hereinafter "'Product of USA' disclaimer") on the label[7] and by the words "BRAUEREI BECK & CO., BECK'S © BEER, ST. LOUIS, MO" on the bottom of the carton.

With respect to the "Product of USA" disclaimer, the plaintiffs argue that it is in a font that is too small and difficult to read, its illegibility is further exacerbated by the fact that it is in metallic white print on a metallic silver background and it is blocked by the carton. The defendant maintains that the "Product of USA" disclaimer complies with the TTB's font size requirements under 27 C.F.R. § 7.28(b) and the Court need only look to the label itself to reject the plaintiffs' illegibility claim.

At the August 1, 2014 hearing, the defendant submitted demonstrative samples of twelve ounce bottles and cans of Beck's for the Court's inspection. At the defendant's invitation, the Court examined these demonstratives. The undersigned finds that the "Product of USA" disclaimer as printed on the actual cans and bottles themselves is difficult to read. Depending on the angle from which the viewer looks at the product, the "Product of USA" disclaimer can be obscured by overhead lighting because the

---

[7] In this Order, the word "label" refers to the labels on both the cans and bottles of Beck's.

disclaimer is printed in a white font against a shiny, metallic silver background. By contrast, the "Product of USA" disclaimer printed on the label appearing on the Alcohol and Tobacco Tax and Trade Bureau ("TTB") certification is visible at any angle because the words are printed on a gray, matte background. <u>See</u> Exhibit 1 (DE# 14-1 at 6, 12/9/13). Thus, there is a discernable difference in legibility between the "Product of USA" disclaimer as it appears on the actual product and the "Product of USA" disclaimer approved by the TTB.

   More importantly, the "Product of USA" disclaimer is blocked by the carton. A consumer would have to either open the cartons of twelve-pack bottles and twelve-pack cans or lift the bottle from the six-pack carton in order to see the "Product of USA" disclaimer. A reasonable consumer is not required to open a carton or remove a product from its outer packaging in order to ascertain whether representations made on the face of the packaging are misleading. <u>See</u> <u>Williams v. Gerber Prods. Co.</u>, 552 F.3d 934, 939 (9th Cir. 2008) (reversing motion to dismiss on multiple claims including claims under the UCL and CLRA and "disagree[ing] with the district court that reasonable consumers should be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box.").

   The Court further finds that the statement "BRAUEREI BECK & CO., BECK'S © BEER, ST. LOUIS, MO" may not be sufficiently descriptive to alert a reasonable consumer as to the location where Beck's is brewed. Although this statement contains the words "St. Louis, Mo[.]," there is nothing in the statement which discloses where Beck's is brewed. Even assuming, <u>arguendo</u>, that the statement "BRAUEREI BECK &

11

CO., BECK'S © BEER, ST. LOUIS, MO" is sufficiently descriptive as to the location of the brewery, it is printed underneath the carton. A reasonable consumer may not necessarily look at the underside of the carton in deciding whether to purchase a product. See Gerber, 552 F.3d at 939, supra.

In sum, the undersigned finds that the "Product of USA" disclaimer on the label and the statement "BRAUEREI BECK & CO., BECK'S © BEER, ST. LOUIS, MO" underneath the carton do not warrant the dismissal of the plaintiffs' state law consumer protection claims.

### (ii).     The Statement "Brewed under the German Purity Law of 1516"

Next, the defendant argues that the statement "Brewed under the German Purity Law of 1516" is true because:

> German Purity Law has nothing to do with place of production or source of ingredients. This law simply concerns the type of ingredients used to brew beer (water, hops, barley, and yeast). (See Am. Compl. ¶8). And there is no dispute that Beck's has always been, and continues to be, brewed with these basic ingredients.

Motion to Dismiss (DE# 54 at 20, 4/25/14) (emphasis added).

> The Amended Complaint alleges that:

> Defendant went one step further to bolster the German identity of Beck's [B]eer by prominently adding the claim "Brewed Under the German Purity Law of 1516." This claim is false. The German Purity Law of 1516 allows only the inclusion of barley, hops and water in beer, and Beck's contains yeast and other ingredients and additives.

Amended Complaint (DE# 50 at ¶12, 3/31/14). At this juncture in the proceedings, the undersigned must accept as true all well pled allegations in the Amended Complaint (DE# 50, 3/31/14). As such, the undersigned will not rule on the veracity of this

12

statement on a motion to dismiss.

Moreover, even if the "Brewed Under the German Purity Law of 1516" statement is true, a reasonable consumer may not know what compliance with the German Purity Law means. Thus, a reasonable consumer could find the reference to the German Purity Law misleading, particularly when that statement is viewed in conjunction with: (1) other statements on the carton, (2) allegations of the defendant's overall marketing campaign and its efforts to maintain Beck's brand identity as a German beer and (3) Beck's German heritage including its 139-year history of being brewed in Germany. See Amended Complaint (DE# 50 at ¶6, 10, 11, 14, 3/31/14). Accordingly, the undersigned cannot agree with the defendant that the statement "Brewed under the German Purity Law of 1516" is true or that it cannot serve as the basis for claims under the applicable consumer protection statutes.

### (iii).   Whether "German Quality" Is Mere Puffery

The defendant also argues that the statement "German Quality" is mere puffery and is therefore not actionable under the applicable state law consumer protection statutes. "Specific, quantifiable 'statements of fact' that refer to a product's absolute characteristics may constitute false advertising, while general, subjective, unverifiable claims are 'mere puffery' that cannot." Edmundson v. Procter & Gamble Co., 537 F. App'x 708, 709 (9th Cir. 2013) (citing Newcal Indus. v. Ikon Office Solution, 513 F.3d 1038, 1053 (9th Cir. 2008)). In Gerber, the defendant argued that its claim that a product was "nutritious" was puffery and therefore not actionable. 552 F.3d at 939 n.3. In reversing the lower court's order granting the defendant's motion to dismiss, the Ninth Circuit stated that while that statement "were it standing on its own, could

13

arguably constitute puffery," it nonetheless found that "[t]his statement certainly contribute[d] . . . to the deceptive context of the packaging as a whole" and "[g]iven the context of this statement, [it] decline[d] to give [the defendant] the benefit of the doubt by dismissing the statement as puffery." Id.

Similarly here, the Court will not evaluate the statement "German Quality" in a vacuum. It must be considered in conjunction with: (1) other statements on cartons of Beck's, (2) allegations of the defendant's overall marketing campaign and its efforts to maintain Beck's brand identity as a German beer and (3) Beck's German heritage including its 139-year history of being brewed in Germany. See Amended Complaint (DE# 50 at ¶6, 10, 11, 14, 3/31/14). When viewed in this context, the Court cannot agree with the defendant that the statement "German Quality" is mere puffery.

Based on the allegations in the Amended Complaint and because the "Product of USA" disclaimer is blocked by the carton, the Court finds that the allegations in the Amended Complaint (DE# 50, 3/31/14) are sufficient to conclude that a reasonable consumer may be misled to believe that Beck's is an imported beer brewed in Germany.

### (b).    Safe Harbor Provisions

The defendant also argues that the Court should dismiss the plaintiffs' state law consumer protection claims because the TTB has approved the labels on bottles and cans of Beck's. The Florida and New York statutes contain safe harbor provisions. Florida law provides that FDUTPA does not apply to "[a]n act or practice required or specifically permitted by federal or state law." Fla. Stat. § 501.212(1). The New York statute states that:

14

In any such action it shall be a complete defense that the act or practice is, or if in interstate commerce would be, subject to and complies with the rules and regulations of, and the statutes administered by, the [F]ederal [T]rade [C]ommission or any official department, division, commission or agency of the United States as such rules, regulations or statutes are interpreted by the [F]ederal [T]rade [C]ommission or such department, division, commission or agency or the federal courts.

N.Y. Gen. Bus. Law § 349(d). The California statutes do not expressly provide for a safe harbor provision. However, under California law, "[t]he safe harbor defense [to claims brought under the UCL or CLRA] states that 'if the legislature has permitted certain conduct or considered a situation and concluded that no action should lie, courts may not override that determination.'" In re Horizon Organic Milk Prods. Plus DHA Omega-3 Mktg. & Sales Practice Litig., 955 F. Supp. 2d 1311, 1345 (S.D. Fla. 2013) (hereinafter "In re Horizon Organic Milk") (quoting Bronson v. Johnson & Johnson, Inc., No. C 12-04184 CRB, 2013 WL 1629191 at *7 (N.D. Cal. Apr. 16, 2013)) (alterations in original).  For the reasons stated below, the safe harbor protections of these statutes do not preclude the plaintiffs' claims.

The Amended Complaint contains a single reference to the TTB:

13.     The individual bottles and cans also remain almost identical to the imported beer bottles and cans. The only difference is that on the border of the new labels, in obscure white text on a silver background, the bottle says: "Product of USA – Brauerei Beck & Co. – St. Louis, MO. – 12 FL. OZ." Although certain aspects of the bottle label are reviewed by the Alcohol and Tobacco Tax and Trade Bureau and subject to its Certificate of Label Approval System, ("COLA"), this labeling cannot even be seen before 12-packs are purchased, cannot be seen in 6-pack packaging unless a bottle is removed and examined, and is inadequate to inform the reasonable consumer that Beck's, a beer that had been brewed in Germany for over 225 years, is no longer imported. AB's packaging and labeling are insufficient for a reasonable consumer to believe that Beck's Beer is no longer imported from Germany. Reasonable consumers, including Plaintiffs, cannot or do not read the fine print on the bottles and cans until after they have already purchased Beck's Beer. Even then, the

> print on the label is ambiguous and difficult, if not impossible, to read.
> Moreover, this claimed association with a German-named entity
> "Brauer[ei] Beck & Co." is pure fiction, as no such company exists. Rather,
> this is just another example of Defendant['s] deceptive tactics used to
> maintain the brand identity of Beck's as a German beer.

Amended Complaint (DE# 50 at ¶13, 3/31/14).

The defendant bears the burden of establishing the applicability of the safe

harbor provisions. See Fla. v. Tenet Healthcare Corp., 420 F. Supp. 2d 1288, 1310

(S.D. Fla. 2005) (placing the burden on the defendant on a FDUTPA claim to show "that

a specific federal or state law affirmatively authorized it to engage in the conduct

alleged in the [c]omplaints."). Here, the defendant has shown that the TTB approved

the labels affixed to bottles and cans of Beck's. However, the plaintiffs allege in their

Amended Complaint (and the Court has confirmed by inspecting the product) that part

of the label approved by the TTB, including the "Product of USA" disclaimer, is not

visible to the consumer at the time of purchase. See Amended Complaint (DE# 50 at

¶13, 3/31/14) (stating that [a]lthough certain aspects of the bottle label are reviewed by

the [TTB] . . . **this labeling cannot even be seen before 12-packs are purchased,**

**cannot be seen in 6-pack packaging unless a bottle is removed and examined**)

(emphasis added). For this reason, the Court finds that the defendant has not shown

that the TTB's approval of the labels on Beck's triggers the safe harbor provisions of the

relevant state law consumer protection statutes.

The instant case is distinguishable from In re: Anheuser-Busch Beer Labeling,

Mktg. and Sales Practices Litig., No. 1:13-md-02448-DCN, Dkt. No. 25, Memorandum

Opinion and Order (N.D. Oh. June 2, 2014) ("In re A-B Labeling"), cited in the

Defendant's Notice of Supplemental Authority in Support of Its Motion to Dismiss (DE#

66, 6/6/14), and <u>Kuenzig v. Hormel Foods Corp.</u>, 505 F. App'x 937, 939 (11th Cir. 2013) (<u>per curiam</u>) for the reasons discussed below.

In <u>In re A-B Labeling</u>, the plaintiffs alleged that the label on the beer they purchased over-stated the actual percentage of alcohol per volume contained in the product. <u>See</u> Memorandum Opinion and Order (DE# 66-1 at 6-7, 6/6/14). The relevant federal regulation read, in part: "For malt beverages containing 0.5 percent or more alcohol by volume, **a tolerance of 0.3 percent will be permitted, either above or below the stated percentage of alcohol**." 27 C.F.R. § 7.71(c)(1) (emphasis added). "There [wa]s no allegation in the [c]omplaint that the alleged mislabeling of alcohol content in [the defendant]'s products ha[d] ever exceeded the tolerance amount of 0.3 percent." Memorandum Opinion and Order (DE# 66-1 at 6, 6/6/14). The district court held that:

> the clear and unambiguous language contained in 27 C.F.R. § 7.71(c)(1) eliminate[d] liability for any over or under-statement of alcohol content on malt beverage labels so long as the stated content [wa]s within 0.3 percent of the product's actual alcohol content. The protection afforded by § 7.71 (c)(1) [wa]s provided without regard to the cause of any deviation or variation, and without regard to the intention behind any misstatement of alcohol content within the defined tolerance range.

<u>Id.</u> at 32. Thus, because the relevant federal regulation allowed for this 0.3 percent variance on actual alcohol content, the district court dismissed the plaintiffs' claims with prejudice.

In <u>Kuenzig v. Hormel Foods Corp.</u>, 505 F. App'x 937, 938, 939 (11th Cir. 2013) (<u>per curiam</u>), the Eleventh Circuit affirmed the district court's dismissal of the plaintiff's "putative class-action complaint alleging that [the defendant] misled consumers into believing its lunch meat products contained fewer fat-calories than they actually did."

The Eleventh Circuit ruled, in pertinent part, that "[the plaintiff]'s state law labeling claims were preempted by federal law" and "[a]lternatively, [the plaintiff]'s state law labeling claims were properly dismissed for failure to state a claim." The Eleventh Circuit stated that it "affirm[ed] the dismissal of [the plaintiff]'s claims . . . for the reasons stated in the district court's thorough and well reasoned orders." Id. at 939. The district court ruled that: (1) the plaintiff's state law claims were preempted because they "would impose requirements in addition to, or different than federal law" and (2) the defendants' challenged "labels were presumptively lawful and not false or misleading" because they "complied with federal nutrition labeling regulations and passed the [Food Safety and Inspection Service] preapproval process." Id. at 938-39.

In both In re A-B Labeling and Kuenzig, the alleged misrepresentations relied on by the plaintiffs were contained on the labels that were approved by a federal bureau or agency. The plaintiffs' claims in the instant case are not based on the labels approved by the TTB, but rather on the representations contained on the cartons of Beck's and the defendant's other representations and omissions. See Amended Complaint (DE# 50 at ¶¶22-27, 3/31/14). For example, the Amended Complaint alleges that the "[defendant]'s misleading packaging and labeling is buttressed by an overall marketing campaign, online and in ads, that misleads the consuming public that Beck's is imported from Germany." Id. at ¶14. It further alleges that "[a]s a result of [the d]efendant's false, deceptive, and misleading packaging, labeling and omissions, consumers such as [the p]laintiffs are deceived when they purchase Beck's Beer in violation of state laws governing unfair and deceptive trade practices." Id. at ¶20. Thus, unlike In re A-B Labeling and Kuenzig, the misrepresentations and omissions alleged in

the instant case are not based on a label approved by the TTB or any federal agency.[8]

In sum, the safe harbor provisions of the relevant state law consumer protection statutes are not triggered by the allegations in the Amended Complaint (DE# 50, 3/31/14) and the plaintiffs' state law consumer protection claims will not be dismissed on this ground.

### (c). Identification of an Actual Harm

The defendant also argues that the plaintiffs' state law consumer protection claims should be dismissed because the plaintiffs have failed to plead any facts establishing that they were harmed by the defendant. The defendant notes that it does not sell Beck's directly to consumers, that the retailer sets the prices for beer and that the Amended Complaint does not plead specific prices for imported beer. The defendant further states that the plaintiffs received exactly what they paid for: Beck's Beer.

Here, the Amended Complaint alleges that:

18. **Beer consumers are willing to pay a premium for high quality, imported beer.** Consumers in the United States **often pay higher prices** for their beer because European breweries follow centuries of traditions and brewing practices, and the breweries use only premium quality

---

[8] The Court recognizes that there is some overlap between the statements contained in the labels approved by the TTB and the statements contained on cartons of Beck's. Nonetheless, this is not a case where the safe harbor provisions apply to shield the defendant from liability. Of importance, the labels approved by the TTB contained the "Product of USA" disclaimer whereas this disclaimer is not visible to consumers of Beck's until after they have purchased the product. Moreover, the "Product of USA" disclaimer as printed on the TTB certificate is readily legible whereas this disclaimer as printed on the actual bottles and cans of Beck's is at times difficult to read. See supra. Lastly, the carton prominently displays the words "German Quality," a statement that is not contained in the TTB approved labels and which the Court has already determined is not "mere puffery."

ingredients from local farms. Indeed, many breweries, in the United States and Europe, are located in certain areas solely because the water in those regions yields a higher quality beer. Consumers have grown accustomed to the consistency from these imported beers. As a result, **consumers pay higher prices for imported beer than similar beers that are brewed domestically**.

\*\*\*

21.    As a result of these unfair and deceptive practices, Defendant has collected millions of dollars from the sale of Beck's Beer that it would not have otherwise earned. **Plaintiff and class members paid money for a product that is not what it claims to be or what they bargained for. They paid a premium for Beck's Beer when they could have instead bought other, less expensive, domestic beer**, and consumers have lost the opportunity to purchase and consume other, truly imported beer.

Amended Complaint (DE# 50 at ¶¶18, 21, 3/31/14) (emphasis added). The plaintiffs

further allege that they were "willing to pay a premium for Beck's Beer because of [the

defendant's] representations and omissions, and would not have purchased, would not

have paid as much for the products, or would have purchased alternative products in

absence of these representations and omissions." Amended Complaint (DE# 50 at ¶¶

23, 25, 27, 3/31/14).

This premium price theory of damages has been recognized by multiple courts

interpreting the state law consumer protection statutes at issue in the instant case. In

Lynch v. Tropicana Prods., Inc., No. 2:11-cv-07382 (DMC) (JAD), 2013 WL 2645050, at

*8 (D.N.J. June 12, 2013), the district court denied the defendant's motion to dismiss

class action claims, including a claim under N.Y. Gen. Bus. Law § 349, stating that

"Courts in New York have . . . recognized that the payment of a heightened price in

reliance on a misrepresentation may satisfy the injury requirement" and that the

plaintiffs in that case had "satisfied the injury and ascertainable loss requirements of . . .

New York" law. Id. In Lynch, the plaintiffs alleged that: "they did not receive the product for which they bargained as a result of [the defendant]'s misrepresentations" and "[the defendant] extract[ed] a premium price for the product in question, based on the fact that the product [wa]s represented as fresh-squeezed." Id.

Similarly, under Florida law, a plaintiff who alleges that he or she has paid a premium price for a product as a result of a defendant's misrepresentation has pled damages under FDUTPA. In Smith v. WM. Wrigley Jr. Co., 663 F. Supp. 2d 1336, 1339-40 (S.D. Fla. 2009), this Court denied a motion to dismiss a FDUTPA claim finding that the plaintiff had sufficiently pled a loss that was proximately caused by the defendant's deceptive, misleading and unfair trade practices where the complaint alleged that the plaintiff "was exposed to and saw [the defendant]'s advertising claims and purchased [the product] in reliance on those claims" and further alleged that "as a result of the misleading messages . . . [the defendant] ha[d] been able to charge a price premium for [the product]." See also In re Horizon Organic Milk, 955 F. Supp. 2d at 1333 (finding that the plaintiffs on a motion to dismiss had sufficiently pled causation and damages under FDUTPA where they "alleg[ed] that they relied on [the defendant]'s representations when buying the DHA-fortified milk products, that they would not have purchased the products but for [the defendant]'s misrepresentations, and that they were damaged in the amount of the difference between the premium price paid for the DHA-fortified milk products and the price they would have paid for other milk products"). In another case, the Eleventh Circuit stated in passing that "should the class [plaintiffs] prevail on the liability issue, each putative class member would only need to show that he or she paid a premium for [the product] to be entitled to damages under the

FDUTPA." Fitzpatrick v. Gen. Mills, Inc., 635 F.3d 1279, 1283 (11th Cir. 2011) (appeal of district court's ruling on class certification).

Courts interpreting California's consumer protection statutes have also recognized an injury-in-fact where a consumer purchases a product based on the defendant's misrepresentations. See Khasin v. Hershey Co., No. 5:12-CV-01862 EJD, 2012 WL 5471153, at *7 (N.D. Cal. Nov. 9, 2012) (on a motion to dismiss finding that the plaintiff had satisfied the UCL's statutory injury-in-fact requirement where the plaintiff "alleged that he would not have purchased the products but for the [d]efendants' allegedly misleading conduct" and also alleged that "he did not receive the full value for his purchases because he did not obtain the products as advertised and described by the labeling."); Rojas v. Gen. Mills, Inc., No. 12-cv-05099-WHO, 2014 WL 1248017, at *8 (N.D. Cal. Mar. 26, 2014) (denying motion to dismiss and finding that the plaintiff had shown an injury-in-fact on state law claims including claims under the CLRA and UCL where the plaintiff "allege[d] that he spent money purchasing products that he would not have purchased were it not for [the defendant]'s purported mislabeling" and that "he read [the defendant]'s misstatements on its product labels and relied on them in making his purchases."); In re Horizon Organic Milk, 955 F. Supp. 2d at 1331 (on motion to dismiss stating that "[a]llegations that a plaintiff paid a premium for a product that the plaintiff would not have paid but for the maker's misrepresentation are sufficient to allege economic injury and standing under the CLRA and UCL.").

The defendant cites to Prohias v. Pfizer, Inc., 485 F. Supp. 2d 1329, 1336 (S.D. Fla. 2007) in support of its argument that the plaintiffs have failed to identify an actual harm caused by the defendant. In Prohias, the district court granted a cholesterol drug

22

manufacturer's motion to dismiss because the plaintiffs in that case had failed to plead damages. Id. at 1336, 1339. Prohias is readily distinguishable from the instant case because the plaintiffs in Prohias continued to purchase the cholesterol reducing drug at issue even after they learned of the drug's alleged limitations. Id. at 1335-36. The district court reasoned that:

> the fact that [the plaintiffs] currently take [the cholesterol drug], in light of the information they have, requires [the Court] to conclude that they take [the drug] for its cholesterol reduction or other undisputed health benefits, and therefore cannot claim to have suffered any damage from the allegedly misleading statements about [the drug]'s coronary benefits.

Id. at 1336. Therefore, the plaintiffs in Prohias received what they paid for, a cholesterol reducing drug. Here, there are no allegations in the Amended Complaint that the plaintiffs continued to purchase Beck's after they learned it was no longer brewed in Germany. To the contrary, the plaintiffs allege that they "would not have purchased [Beck's], would not have paid as much for the products, or would have purchased alternative products in absence of [the defendant's] representations and omissions." Amended Complaint (DE# 50 at ¶¶ 23, 25, 27, 3/31/14).

Alternatively, the plaintiffs in Prohias argued a "price inflation" theory of damages. Id. at 1336. The district court determined that such damages were "purely speculative" because:

> They depend on the faulty premise that the price of [the cholesterol drug] fluctuated] based on the public's knowledge of [the drug]'s benefits, even though drug prices (unlike stock prices which are necessarily set by the price at which buyers are willing to buy, or sellers willing to sell) are fixed by the product's manufacturer.

Id. at 1337. This is not the theory of damages alleged by the plaintiffs in the instant case.

The courts have recognized an injury to a consumer who pays a premium price for a product based on misrepresentations made about that product. See discussion, supra. In light of the allegations in the Amended Complaint (DE# 50, 3/31/14) that the plaintiffs paid a premium price for Beck's based on the mistaken belief that it was an imported beer brewed in Germany, the Court finds that the plaintiffs have pled an actual harm resulting from the defendant's alleged misrepresentations concerning Beck's.

## ii.    Unjust Enrichment

The defendant asserts that California law does not recognize an independent cause of action for unjust enrichment. The undersigned disagrees. Recently, in Imber-Gluck v. Google, Inc., No. 5:14-CV-01070-RMW, 2014 WL 3600506, at *7-8 (N.D. Cal. July 21, 2014), a California district court rejected a defendant's argument that a claim for unjust enrichment should be dismissed because "the Ninth Circuit has held that unjust enrichment does not describe a theory of recovery under California law" and that it is "a principle underlying various legal doctrines and remedies." Id. at *7 (internal quotations omitted) (quoting In re Sony PS3 "Other OS" Litigation, 551 F. App'x 916, 923 (9th Cir. 2014)). The district court noted that the defendant was relying on an unpublished decision and the Ninth Circuit's most recent published decision, Berger v. Home Depot USA, Inc., 741 F.3d 1061, 1070 (9th Cir. 2014), recognized unjust enrichment as an independent claim. The district court further noted that:

> While [the defendant] is correct that the issue in [Berger] was class certification, **the Ninth Circuit first discussed unjust enrichment as a claim before determining that the plaintiff's claim for unjust enrichment was not susceptible to class treatment in that specific case**. Berger, 741 F.3d at 1070. Other recent cases also point to unjust enrichment as a cause of action in California. See Gabriel v. Alaska Elec. Pension Fund, No. 12–35458, 2014 WL 2535469, at *8 (9th Cir. June 6,

24

2014) (noting that "the remedy of surcharge is available against the fiduciary 'for benefits it gained through unjust enrichment'" (quoting Skinner v. Northrop Grumman Retirement Plan B, 673 F.3d 1162, 1167 (9th Cir. 2012)); E.J. Franks Construction, Inc. v. Sohota, F066327, 2014 WL 2526978, at *1 (Cal. Ct. App. June 5, 2014) (allowing plaintiff to bring unjust enrichment claims to trial); People v. Sarpas, 255 Cal. Rptr. 3d 25, 47 (2014) (holding "plaintiffs had 'stated a valid cause of action for unjust enrichment'" (quoting Hirsch v. Bank of America, 107 Cal. App. 4th 708, 722 (2003)).

[The defendant]'s suggestion that the court follow an unpublished, non-precedential report is similarly unpersuasive. Even permitting that Berger did not expressly hold that California law recognizes an unjust enrichment cause of action, **the factually analogous In re Apple In-App Purchase Litigation allowed the plaintiffs to proceed with an unjust enrichment claim at the motion to dismiss stage**. Apple In-App Purchase Litig., 855 F. Supp. 2d [1030, 1042 (N.D. Cal. 2012)].

Id. at *8 (emphasis added). For this reason, the district court denied the defendant's

motion to dismiss the unjust enrichment claim.

Similarly here, the undersigned is unpersuaded that the plaintiffs' unjust

enrichment claim in the instant case should be dismissed on the ground that California

does not recognize a separate cause of action for unjust enrichment. The undersigned

acknowledges that there is case law supporting both parties' positions and finds the

reasoning in Imber-Gluck persuasive in concluding that California law does recognize a

separate cause of action for unjust enrichment. See also Khasin, 2012 WL 5471153, at

*9 (rejecting defendant's argument that the plaintiff's unjust enrichment claim must be

dismissed because California does not recognize this cause of action and noting that

"[u]njust enrichment has been recognized as an allegation akin to 'quasi-contract': a

restitution claim brought forth so as to avoid unjustly conferring a benefit upon a

defendant in the absence of a valid and enforceable contract.").

The defendant further argues that the Court should dismiss the plaintiffs' unjust

enrichment claims because: (1) they are duplicative of the state law consumer protection claims and (2) the plaintiffs have not shown that they lack a remedy at law in light of the plaintiffs' state law consumer protection claims. The undersigned acknowledges that there is some case law supporting the defendant's argument. However, in In re Horizon Organic Milk, 955 F. Supp. 2d at 1337, this Court rejected the argument that the plaintiffs could not maintain a cause of action for unjust enrichment under Florida law because an adequate remedy at law existed. This Court recognized that "[v]arious courts disagree as to whether the existence of an adequate legal remedy precludes the plaintiff from pleading a cause of action for unjust enrichment." Id. at 1337 (citations omitted).

The Court in In re Horizon Organic Milk relied on an unpublished Eleventh Circuit opinion which stated: "It is generally true that equitable remedies are not available under Florida law when adequate legal remedies exist. However, that rule does not apply to unjust enrichment claims." In re Horizon Organic Milk, 955 F. Supp. 2d at 1337 (quoting State Farm Mut. Auto. Ins. Co. v. Physicians Injury Care Ctr., Inc., 427 F. App'x 714, 722 (11th Cir. 2011) (per curiam) (internal citation omitted), rev'd in part on other grounds, State Farm Mut. Auto. Ins. Co. v. Williams, 563 F. App'x 665 (11th Cir. Apr. 15, 2014) (per curiam).[9] The Eleventh Circuit explained that "'[i]t is only upon a showing that an express contract exists [between the parties] that the unjust enrichment . . . count fails.'" Id.  Because there are no allegations of an express contract between the

_____

[9] The portion of the original opinion which the Eleventh Circuit reversed dealt with an insurer's requirement under Florida law to obtain a medical report before withholding payments for fraudulent claims and did not concern the FDUTPA or unjust enrichment claims. Williams, 563 F. App'x at 667-68.

parties in the instant case, the Court finds that the plaintiffs may plead claims for both FDUTPA and unjust enrichment. See In re Horizon Organic Milk, 955 F. Supp. 2d at 1337 (stating that "to the extent that a plaintiff has adequate legal remedies under theories of liability other than a claim of breach of an express contract, those remedies do not bar an unjust enrichment claim.") (citing State Farm, 427 F. App'x at 722).

The Court is also not required to dismiss the unjust enrichment claim under New York law at this juncture. See Maalouf v. Salomon Smith Barney, Inc., No. 02 Civ 4770 (SAS), 2003 WL 1858153, at *7 (S.D.N.Y. Apr. 10, 2003) (denying motion to dismiss unjust enrichment claim noting that "[t]he fact that [a plaintiff] may only recover on one claim, either contract or quasi-contract, certainly does not preclude him from pleading unjust enrichment in the alternative.") (emphasis in original). Similarly, a claim for unjust enrichment may be pled in the alternative under California law. See Malcolm v. JPMorgan Chase Bank, N.A., No. 09-4496-JF (PVT), 2010 WL 934252, at *7 (N.D. Cal. Mar. 15, 2010) (on a motion to dismiss rejecting as unpersuasive arguments that a claim for unjust enrichment/restitution "must be dismissed because California does not recognize a separate claim for unjust enrichment; [the p]laintiff failed to allege any benefit that he conferred on [the d]efendant; and an express contract governs the parties' relations, providing [the p]laintiff with an adequate remedy at law" and noting that the "existence of an express contract is not dispositive as [the p]laintiff clearly has pled in the alternative.").

Finally, the defendant argues that the plaintiffs' unjust enrichment claim fails because they received the benefit of the bargain: the plaintiffs received a product in exchange for their money. In the instant case, the Amended Complaint alleges that the

27

"[p]laintiff and class members paid money for a product that is not what it claims to be or what they bargained for. They paid a premium for Beck's Beer when they could have instead bought other, less expensive, domestic beer . . . ." Amended Complaint (DE# 50 at ¶¶18, 21, 3/31/14) (emphasis added). The Amended Complaint alleges that the plaintiffs were "**willing to pay a premium for Beck's Beer** because of these representations and omissions, and **would not have purchased, would not have paid as much for the products,** or would have purchased alternative products in absence of these representations and omissions." Id. at ¶¶ 23, 25, 27 (emphasis added). Based on these allegations, which must be accepted as true, the Court cannot find as a matter of law that the plaintiffs received what they bargained for as the defendant maintains.

The undersigned finds that Prohias v. Pfizer, Inc., 490 F. Supp. 2d 1228 (S.D. Fla. 2007), cited by the defendant for the proposition that the plaintiffs' unjust enrichment claims should be dismissed because they have not shown that they lack a legal remedy for the complained-of conduct and because they received a product in return for their money, is factually distinguishable from the instant case. In finding that certain plaintiffs failed to state a claim for unjust enrichment, this Court in Prohias noted that: "Both men purchased a cholesterol reducing drug, and both men obtained cholesterol reduction as a result. Therefore, in a general sense, they obtained the benefit of their bargain. Unjust enrichment cannot exist where payment has been made for the benefit conferred." Id. at 1236.[10] As explained above, the plaintiffs in the instant

---

[10] This Court in Prohias also dismissed the plaintiffs' unjust enrichment claims because "the plaintiffs ha[d] a remedy at law as a properly pled claim under the consumer fraud acts or for negligent misrepresentation." Prohias, 490 F. Supp. 2d at 1237. However, the undersigned will rely on In re Horizon Organic Milk, 955 F. Supp. 2d

28

case have alleged that they paid a premium price for what they believed was Beck's Beer brewed in Germany and that they "would not have purchased, would not have paid as much for the products, or would have purchased alternative products" if they had known that Beck's was brewed domestically using domestic ingredients. Amended Complaint (DE# 50 at ¶¶ 23, 25, 27, 3/31/14). Based on the allegations of the Amended Complaint (DE# 50, 3/31/14), the plaintiffs in the instant case did not receive the benefit of that bargain and have alleged a cause of action for unjust enrichment.

**B.   Article III Standing to Seek Injunctive Relief**

The plaintiffs seek injunctive relief with respect to each of their state law consumer protection claims. The defendant argues that the plaintiffs' claims for injunctive relief should be dismissed for lack of standing. See Defendant's Motion to Dismiss and Memorandum of Law in Support (DE# 54 at 36, 4/25/14).[11] "If at any point in the litigation the plaintiff ceases to meet . . . [the] requirements for constitutional

---

at 1331 and State Farm Mut. Auto. Ins. Co., 427 F. App'x at 722 in concluding that the plaintiffs may allege claims for violations under the relevant state law consumer protection statutes and unjust enrichment. See discussion, supra.

[11] In its motion to dismiss, the defendant does not challenge the plaintiffs' claim for declaratory relief. In its reply, the defendant included the following statement in a footnote: "Plaintiffs' claim for declaratory relief fails because it is based on the same unsupported 'premium price' theory." Defendant's Reply Memorandum in Support of its Motion to Dismiss (DE# 63 at 14 n.12, 5/30/14) (citing Dorfman v. Nutramax Labs, Inc., No. 13cv0873 WQH (RBB), 2013 WL 5353043, at *8 (S.D. Cal. Sept. 23, 2013)). Generally, the Court will not consider arguments raised for the first time in a reply brief. See Foley v. Wells Fargo Bank, N.A., 849 F. Supp. 2d 1345, 1349 (S.D. Fla. 2012) (stating that "[b]ecause it [wa]s improper for [the d]efendant to raise [a] new argument in its [r]eply brief, the argument [would] not be considered."). However, because this argument may relate to the injury-in-fact requirement of standing, the undersigned has considered it and finds, for the reasons discussed above, that the plaintiffs have sufficiently alleged an injury based on paying a premium price for domestic beer. See supra.

standing, the case no longer presents a live case or controversy, and the federal court must dismiss the case for lack of subject matter jurisdiction." Fla. Wildlife Fed'n, Inc. v. So. Fla. Water Mgmt. Dist., 647 F.3d 1296, 1302 (11th Cir. 2011); Fed.R.Civ.P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

Attacks on this Court's subject matter jurisdiction may be either facial or factual. "Facial attacks to subject matter jurisdiction require the court merely to look and see if the plaintiff's complaint has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." Houston v. Marod Supermarkets, Inc., 733 F.3d 1323, 1335-36 (11th Cir. 2013) (citation omitted). On the other hand, "in a factual challenge to subject matter jurisdiction, a district court can consider extrinsic evidence such as deposition testimony and affidavits and is free to weigh the facts and is not constrained to view them in the light most favorable to the plaintiff." Id. at 1336 (citation and quotation marks omitted). In the instant motion, the defendant does not specify whether it is making a facial or factual attack on jurisdiction. Because the defendant's standing arguments relate to the allegations in the Amended Complaint and do not rely on matters outside this pleading, the undersigned will construe the defendant's Motion to Dismiss (DE# 54, 4/25/14) as a facial attack on subject matter jurisdiction. See BP Chems. Ltd. v. Jiangsu Sopo Corp., 285 F.3d 677, 679 (8th Cir. 2002) ("constru[ing motion to dismiss] as a facial, not factual, challenge because [the movant] limited its attack to the allegations in [the

30

plaintiff]'s amended complaint.").[12]

 To establish standing under Article III, a plaintiff must demonstrate three things. First, the plaintiff must show that he or she has suffered an "injury-in-fact." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). Second, the plaintiff must demonstrate a causal connection between the asserted injury-in-fact and the challenged action of the defendant. Id. Third, the plaintiff must show that "the injury will be redressed by a favorable decision." Id. at 561 (citations and internal quotations omitted). These requirements are the "'irreducible minimum' required by the Constitution" for a plaintiff to proceed in federal court. Northeastern Fla. Chapter, Assoc. Gen. Contractors of Am. v. City of Jacksonville, 508 U.S. 656, 664 (1993). The party invoking federal jurisdiction has the burden of proving these elements. Lujan, 504 U.S. at 561.

 Additionally, "[b]ecause injunctions regulate future conduct, a party has standing to seek injunctive relief only if the party alleges . . . a real and immediate – as opposed to a merely conjectural or hypothetical – threat of future injury." Wooden v. Board of Regents of Univ. Sys. of Ga., 247 F.3d 1262, 1284 (11th Cir. 2001) (emphasis in original). "A determination that a plaintiff has standing to seek damages does not

―――――――――――

 [12] Unlike the defendant, the plaintiffs submit extrinsic evidence in the form of deposition transcript excerpts to support their argument that they have Article III standing to seek injunctive relief. However, because it is the defendant who is the movant, the plaintiffs' filing of record evidence will not recast the defendant's facial attack on jurisdiction into a factual attack on jurisdiction. Thus, the undersigned will not consider the deposition excerpts attached to the plaintiffs' supplemental memorandum of law because they are matters outside the Amended Complaint. In any event, the Court will provide the plaintiffs with leave to file a second amended complaint. Therefore, the plaintiffs will be provided with an opportunity to allege sufficient facts to support their claim for injunctive relief.

ensure that the plaintiff can also seek injunctive . . . relief." Clark v. City of Lakewood, 259 F.3d 996, 1006 (9th Cir. 2001) (citing Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., 528 U.S. 167, 180 (2000)). "[A] plaintiff seeking injunctive relief 'must show a sufficient likelihood that he will be affected by the allegedly unlawful conduct in the future.'" Houston, 733 F.3d at 1328-29 (quoting Wooden, 247 F.3d at 1284).

As a threshold matter, the Court finds that the plaintiffs have met the first three requirements of Article III standing. The Amended Complaint alleges that the plaintiffs have paid a premium price for what they believed was imported beer when in fact it was domestic beer. Amended Complaint (DE# 50 at ¶¶18, 21, 3/31/14). Therefore, the plaintiffs have pled an injury-in-fact. See also, discussion on "Identification of an Actual Harm," supra. The plaintiffs have also pled a causal connection between their injury and the defendant's conduct. The Amended Complaint alleges the plaintiffs were "willing to pay a premium for Beck's Beer **because of [the defendant's] representations and omissions**, and would not have purchased, would not have paid as much for the products, or would have purchased alternative products in absence of these representations and omissions." Amended Complaint (DE# 50 at ¶¶ 23, 25, 27, 3/31/14) (emphasis added). Lastly, the complained of injury would likely be redressed by a favorable decision. On their state law consumer protection claims, the plaintiffs seek damages, declaratory relief and injunctive relief.[13] Id. at 19-20, 23, 25-26. A

_____

[13] The plaintiffs do not describe the nature of the injunctive relief they seek under FDUTPA, the New York General Business Law § 349 or CLRA. However, in the UCL claim, the plaintiffs allege:

79. Unless restrained and enjoined, AB will continue to engage in the

favorable decision would redress the alleged injury suffered by the plaintiffs. Thus, the only remaining issue is whether the plaintiffs have standing to seek injunctive relief. To seek injunctive relief, the plaintiffs must show a real and immediate threat of future harm. Shotz, 256 F.3d at 1081.

In the instant case, the defendant argues that there is no threat of future injury to the plaintiffs from the defendant's purportedly wrongful conduct because the plaintiffs allege that they stopped buying Beck's after learning that Beck's was brewed in the United States. See Defendant's Motion to Dismiss and Memorandum of Law in Support (DE# 54 at 36, 4/25/14) (citing Amended Complaint (DE# 50 at ¶¶ 22, 24, 26)). In response to the defendant's standing argument, the plaintiffs point out that the Amended Complaint does not expressly state that the plaintiffs have stopped buying Beck's. See Plaintiffs' Response in Opposition to Defendant's Motion to Dismiss Amended Complaint (DE# 62 at 27, 5/19/14). The plaintiffs further state that:

> the Amended Complaint simply alleges that the [p]laintiffs purchased Beck's [B]eer in reliance on the representations about Beck's German origin, have since learned that Beck's is no longer imported, and would not have purchased it had they known the representations were false. (Am. Comp. at ¶¶ 22, 24, 26). Further, [the p]laintiffs may purchase Beck's again if it is appropriately labeled. These are classic allegations of a deceptive trade practice act claim – in fact, it would be virtually impossible to plead such a claim without relying upon the representation

---

above described conduct. Accordingly, injunctive relief is appropriate.

80. Plaintiff Marquet and the California Subclass seek restitution and an injunction prohibiting AB from continuing such practices, corrective advertising and all other relief this Court deems appropriate, consistent with Business & Professions Code §172033.

Amended Complaint (DE# 50 at ¶¶ 79-80, 3/31/14).

and later learning of its falsehood.

Id. at 27 (italics in original; footnote omitted). In a footnote, the plaintiffs state:

> The original complaint did contain the allegation that plaintiff [Francisco Rene Marty] stopped purchasing *Beck's.* Comp. [DE 1] at ¶ 21. But in that same paragraph, [the p]laintiff alleged that he may purchase it again if it is appropriately labeled. Therefore, to the extent the Court considers the original allegations about [p]laintiff [Marty] stopping his purchases, it would be appropriate to consider the allegation that [the p]laintiff would purchase *Beck's* again.

Id. at n.18.

The undersigned will only consider allegations made in the most recent Amended Complaint (DE# 50, 3/31/14). The Amended Complaint does not allege that the plaintiffs will purchase Beck's again in the future if appropriately labeled and there are no express allegations either that the plaintiffs have stopped purchasing Beck's or that they have continued to purchase Beck's despite the alleged misrepresentations. The Amended Complaint does allege that the plaintiffs were "willing to pay a premium for Beck's Beer because of [the defendant's] representations and omissions, and **would not have purchased, would not have paid as much for the products, or would have purchased alternative products** in absence of these representations and omissions." Amended Complaint (DE# 50 at ¶¶ 23, 25, 27, 3/31/14) (emphasis added). The only logical inference from this allegation is that the plaintiffs no longer purchase Beck's. Because there are no allegations in the Amended Complaint that the plaintiffs would purchase Beck's in the future, the undersigned finds that the plaintiffs have failed to plead "a real and immediate threat of future injury," Shotz, 256 F.3d at 1081, and thus have failed to plead standing to seek injunctive relief.

The plaintiffs reason that "[i]f Article III standing were construed as [the

34

d]efendant advocates, it would preclude any claim in federal court under consumer protection laws to enjoin false advertising or labeling, because a plaintiff would never have standing." Plaintiffs' Response in Opposition to Defendant's Motion to Dismiss Amended Complaint (DE# 62 at 27, 5/19/14). In support of this argument, the plaintiffs cite to two Americans with Disabilities Act ("ADA"): Parr v. L&L Drive-Inn Rest., 96 F. Supp. 2d 1065, 1080-81 (D. Haw. 2000) and Fortyune v. Am. Multi-Cinema, Inc., No. CV01-05551, 2002 U.S. Dist. LEXIS 27960 (C.D. Cal. Oct. 22, 2002). See Plaintiffs' Response in Opposition to Defendant's Motion to Dismiss Amended Complaint (DE# 62 at 28, 5/19/14).

In Parr, the district court stated that it was "reluctant to embrace a rule of standing that would allow an alleged wrongdoer to evade the court's jurisdiction so long as he does not injure the same person twice." Parr, 96 F. Supp. 2d at 1080 (citations and internal quotation marks omitted). However, it also found that the "[p]laintiff ha[d] established a likelihood of future injury based on his reasonable desire to patronize [a particular fast food restaurant] in the future." Id. Among the circumstances considered by the Parr court were: the fact that this particular restaurant location was "within a reasonable distance from [the p]laintiff's residence and along a familiar bus route" and the similarity of the food and service provided at this chain of restaurants which the plaintiff had patronized in the past. Id. at 1079-1080.

In Fortyune, the court quoted Parr stating that: "[i]f this Court rules otherwise, like defendants would always be able to avoid enforcement of the ADA. This court is reluctant to embrace a rule of standing that would allow an alleged wrongdoer to evade the court's jurisdiction so long as he does not injure the same person twice." Fortyune,

2002 U.S. Dist. LEXIS 27960, at *21 (quoting Parr, 97 F. Supp. 2d at 1080) (alteration in original; internal quotation marks omitted). Nonetheless, "[the p]laintiff's intent to return to [the d]efendant's [movie] theater [wa]s undisputed" in that case. Id. at *20. Moreover, the Fortyune court specifically found that the plaintiff had established a likelihood of future injury because "[the plaintiff and his wife frequent[ed] the [movie theater in question] and the lack of accommodation continue[d] to exist." Id.

Thus, despite the broad language employed in Parr and Fortyune, the plaintiffs in both cases exhibited an intent to return to the defendants' facilities in the future. Because they would continue to encounter the same architectural barriers or lack of accommodations in the future, both courts concluded that the plaintiffs had standing to seek injunctive relief. There is nothing in Parr or in Fortyune which would suggest adopting a lower standard for Article III standing in order to allow a plaintiff to seek injunctive relief. Unlike Parr and Fortyune, there are no allegations in the Amended Complaint that the plaintiffs continue to purchase Beck's or that they will purchase Beck's in the future. There are no allegations to support a finding of future injury and thus, no standing to seek injunctive relief. "To establish an injury[-]in[-]fact sufficient to support a claim for injunctive relief, the plaintiff must demonstrate that a defendant's conduct is causing irreparable harm. This requirement cannot be met absent a showing of a real or immediate threat that the plaintiff will be wronged again." See Fortyune, 2002 U.S. Dist. LEXIS 27960 at *19 (internal citations omitted).

Moreover, the plaintiffs' argument that a plaintiff bringing a consumer protection law claim to enjoin false advertising or labeling "would never have standing," Plaintiffs' Response in Opposition to Defendant's Motion to Dismiss Amended Complaint (DE# 62

36

at 27, 5/19/14), rings hollow particularly when the plaintiffs themselves have cited to Richardson v. L'Oréal, 991 F. Supp. 2d 181, 187 (D.D.C. 2013). In Richardson, the district court dealt with the issue of Article III standing to seek injunctive relief in the context of a challenge to a motion for conditional class certification for the purposes of settlement and for final approval of the class settlement. The plaintiffs in Richardson "alleg[ed] that defendant L'Oréal falsely and deceptively labeled [certain] . . . products as available only in salons when the products c[ould] be purchased in non-salon retail establishments including Target, Kmart, and Walgreens" and "that the salon-only label implie[d] a superior quality product and buil[t] a cachet that allow[ed] L'Oréal to demand a premium price." Id. at 188. The issue in Richardson was whether the plaintiffs had established a likelihood of particularized future injury. Id. at 191. After carefully reviewing the case law and noting that "courts have differed on the showing plaintiffs must make to have standing" to seek injunctive relief, the district court ultimately concluded that the named plaintiffs in Richardson had standing to seek injunctive relief because "repeat past purchases, brand loyalty, allegations of ongoing purchases, and an injury unconnected to the performance of the product combine[d] to show that future injury [wa]s likely." Id. at 191, 195.[14]

In their response brief, the plaintiffs also cite to Mason v. Nature's Innovation,

---

[14] In their supplement, the plaintiffs cite to Richardson for the proposition that "plaintiffs [in Richardson] had standing where they 'ha[d] not indicated that they d[id] not intend to purchase the products in the future' and [the] defendant continued its deceptive conduct." Plaintiff's Supplemental Brief in Opposition to Defendant's Motion to Dismiss Amended Complaint (DE# 83 at 3, 8/11/14) (quoting Richardson, 991 F. Supp. 2d at 192) (alterations in supplement). However, there were a number of additional factors which the Richardson court considered in determining the likelihood of future injury, as outlined above.

Inc., No. 12cv3019 BTM (DHB), 2013 WL 1969957 (S.D. Cal. May 13, 2013). See

Plaintiffs' Response in Opposition to Defendant's Motion to Dismiss Amended

Complaint (DE# 62 at 28, 5/19/14). In Mason, the district court specifically stated that:

> [a]lthough injunctive relief may not be available in federal courts in many false advertising cases where the consumer no longer intends to purchase the product in question, **it is an exaggeration to claim that injunctive relief would never be available in false advertising cases. There are cases where a consumer would still be interested in purchasing the product if it were labeled properly – for example, if a food item accurately stated its ingredients. . . . In these types of cases that do not involve claims that product does not work or perform as advertised, injunctive relief may still be available.**

Mason, 2013 WL 1969957, at *4 (emphasis added). Thus, notwithstanding the plaintiffs'

claim that "[i]f Article III standing were construed as [the d]efendant advocates, it would

preclude any claim in federal court under consumer protection laws to enjoin false

advertising or labeling, because a plaintiff would never have standing," Plaintiffs'

Response in Opposition to Defendant's Motion to Dismiss Amended Complaint (DE# 62

at 27, 5/19/14), there are instances where a consumer protection law plaintiff would

have standing to seek injunctive relief in federal court.

The plaintiffs maintain that they have standing to seek injunctive relief because

the defendant continues to engage in the complained of conduct. Plaintiffs' Response

in Opposition to Defendant's Motion to Dismiss Amended Complaint (DE# 62 at 28,

5/19/14). The plaintiffs rely on three cases to support this argument: Ries v. Ariz.

Beverages USA, 287 F.R.D. 523, 533 (N.D. Cal. 2012), Koehler v. Litehouse, Inc., 2012

WL 6217635 (N.D. Cal. Dec. 13, 2012) and Richardson v. L'Oreal USA, 2013 WL

5941486 at *4 (D.D.C. Nov. 6, 2013).[15] "[A] plaintiff seeking injunctive relief 'must show

---

[15] <u>Richardson</u> is distinguishable from the allegations in the instant Amended Complaint for the reasons stated above. In <u>Ries v. Ariz. Beverages USA</u>, 287 F.R.D. 523, 533 (N.D. Cal. 2012), the district court rejected the defendants' argument that the plaintiffs lacked Article III standing because they stopped purchasing AriZona tea products after learning of certain alleged misrepresentations. The district court concluded that "the record [wa]s devoid of any grounds to discount [the] plaintiffs' **stated intent** to purchase [the product] in the future, thereby satisfying the requisites for standing." <u>Id.</u> (emphasis added). On this ground, <u>Ries</u> is distinguishable from the instant case because here, the Amended Complaint does not allege any intent by the plaintiffs to purchase Beck's again. In <u>Koehler v. Litehouse, Inc.</u>, 2012 WL 6217635, *6 (N.D. Cal. Dec. 13, 2012), the district court found that the plaintiff had standing to seek injunctive relief even though the plaintiff alleged "that he stopped using the [p]roduct once he learned that the [s]tatements were a misrepresentation, and he d[id] not intend to make another purchase of the [p]roduct, as it [did not] perform for the reason he purchased it." The <u>Koehler</u> court relied on <u>Henderson v. Gruma Corp.</u>, No. CV 10-04173 AHM (AJWx), 2011 WL 1362188 (C.D. Cal. Apr. 11, 2011) and stated that to dismiss the plaintiff's claim for lack of standing "would eviscerate the intent of the California legislature in creating consumer protection statutes because it would effectively bar any consumer who avoids the offending product from seeking injunctive relief." <u>Id.</u>

    The undersigned finds <u>Henderson</u>, and by extension <u>Koehler</u>, unpersuasive on several grounds. At the outset, the intent of a state legislature cannot trump the constitutional requirements of Article III standing. The undersigned also rejects the premise in <u>Henderson</u> that "[i]f the Court were to construe Article III standing for FAL and UCL claims as narrowly as the [the d]efendant advocates, federal courts would be precluded from enjoining false advertising under California consumer protection laws because a plaintiff who had been injured would always be deemed to avoid the cause of the injury thereafter . . . and would never have Article III standing." <u>Henderson</u>, 2011 WL 1362188, at *7. As illustrated by <u>Richardson</u> and as discussed in <u>Mason</u>, there are instances where a consumer protection law plaintiff would have standing to seek injunctive relief. <u>See</u>, <u>e.g.</u>, <u>Mason</u>, 2013 WL 1969957, at *4 (stating that "it is an exaggeration to claim that injunctive relief would never be available in false advertising cases. There are cases where a consumer would still be interested in purchasing the product if it were labeled properly"); <u>see also Jou v. Kimberly-Clark Corp.</u>, No. 3:13-cv-03075, 2013 WL 6491158, at *4 (N.D. Cal. Dec. 10, 2013) (on motion to dismiss "reject[ing the p]laintiffs' contention that it [wa]s unnecessary for them to maintain any interest in purchasing the products in the future" and noting that "[p]lacing this requirement on [the p]laintiffs d[id] not thwart the objective of California consumer protection laws since it [wa]s not impossible that a consumer would be interested in purchasing the products at issue if they were labeled correctly."). To the extent <u>Henderson</u>, 2011 WL 1362188 at *6-7, relies on the broad language of <u>Fortyune</u>, the

a sufficient likelihood that he will be affected by the allegedly unlawful conduct in the future.'" Houston, 733 F.3d at 1328-29 (quoting Wooden, 247 F.3d at 1284). Thus, the mere fact that the defendant will continue to engage in the same conduct is not enough. There must also be a likelihood that the complained of conduct will likely harm these particular plaintiffs in the future. Id.

The plaintiffs further argue that "courts have recognized the distinction between the cases that [the d]efendant cites, where the product does not work and therefore there is less likelihood of a future purchase, and the instant case, where the complaint concerning the product is easily cured by an accurate label." Plaintiffs' Response in Opposition to Defendant's Motion to Dismiss Amended Complaint (DE# 62 at 28, 5/19/14) (footnote omitted). Even accepting the plaintiffs' reading of the case law as accurate, the fact remains that the Amended Complaint is devoid of any allegations that the plaintiffs would purchase Beck's in the future. Without any allegations that the plaintiffs would purchase Beck's again, it is unclear how they can establish a likelihood of a future injury.

Following the August 1, 2014 hearing, the Court allowed the parties to file

---

undersigned has already explained why the Fortyune decision does not lessen the requirements of Article III standing to seek injunctive relief. Finally, the undersigned rejects the premise in Henderson that because there was no evidence that the defendant "ha[d] removed its allegedly misleading advertising from its products," the plaintiffs "as representatives of a class, should be entitled to pursue injunctive relief on behalf of all consumers in order to protect consumers from [the d]efendant's alleged false advertising." Henderson, 2011 WL 1362188 at *8. This statement is at odds with Ninth Circuit precedent which recognizes that "[i]n a class action, standing is satisfied if at least one **named plaintiff** meets the requirements," Bates v. United Parcel Serv., Inc., 511 F.3d 974, 985 (9th Cir. 2007) (en banc) (emphasis added), not the other way around. For these reasons, the undersigned remains unpersuaded by Henderson and Koehler.

supplemental briefs on standing. <u>See</u> Defendant's Supplemental Brief in Support of Its

Motion to Dismiss (DE# 81, 8/6/14); Plaintiff's Supplemental Brief in Opposition to

Defendant's Motion to Dismiss Amended Complaint (DE# 83, 8/11/14). In their

supplemental brief, the plaintiffs state the following:

> The Amended Complaint alleges that, as a result of AB's misleading
> labeling and packaging, the Plaintiffs purchased beer that they believed
> was brewed in and imported from Germany at prices higher than those of
> domestic beer. (Am. Compl. ¶ 1; *see also id.* ¶¶ 15, 18, 20, 21.) Plaintiffs
> further allege that they purchased *Beck's* [B]eer in reliance on the
> representations about *Beck's* German origin, have since learned that
> *Beck's* is no longer imported, and would not have purchased it had they
> known the representations were false. (*Id.* ¶¶ 22, 24, 26). The Amended
> Complaint also alleges that AB was only able to charge a price premium
> for *Beck's* through its misrepresentation, (*id.* ¶¶ 8, 11, 17, 18, 21), **and
> that premium could not have been charged without AB's
> misrepresentation.** [omitted footnote citing to expert economist report]. **In
> other words, if AB were forced by this Court to end its deceptive
> conduct, *Beck's* would cost less to the consumer.** At the same time,
> Plaintiffs do *not* allege that they will never purchase *Beck's* again under
> any circumstances. [omitted footnote citing to original complaint]. **To the
> contrary, Plaintiffs have testified that they *would* purchase *Beck's*
> again if AB ended its deceptive conduct.** [omitted footnote citing to
> deposition testimony].

Plaintiff's Supplemental Brief in Opposition to Defendant's Motion to Dismiss Amended

Complaint (DE# 83 at 2, 8/11/14) (original emphasis omitted; bold emphasis added;

footnotes omitted). The bold emphasis denotes allegations which are not in the

Amended Complaint (DE# 50, 3/31/14) as indicated by the plaintiffs citations to sources

outside the Amended Complaint: the original complaint, the plaintiffs' economist expert

report and the plaintiffs' deposition transcripts.[16] Because the defendants have raised a

---

[16] With respect to the statement "if AB were forced by this Court to end its
deceptive conduct, *Beck's* would cost less to the consumer," Plaintiffs' Supplement at 2,
for example, the Amended Complaint alleges that: (1) consumers paid a premium for
imported Beck's, (2) maintaining brand identity (as an imported beer) was important to

facial attack on this Court's subject matter jurisdiction, see discussion supra, the undersigned will not consider matters outside the Amended Complaint. The facts as pled in the Amended Complaint are insufficient to show a real and immediate threat of future harm, a prerequisite for Article III standing to seeking injunctive relief. The Court will provide the plaintiffs with an opportunity to file a second amended complaint.

In their supplement, the plaintiffs further maintain that "Courts find standing to seek injunctive relief under consumer protection laws where the defendant continues the allegedly deceptive labeling or advertising and the plaintiff *may* purchase the product in the future." Plaintiff's Supplemental Brief in Opposition to Defendant's Motion to Dismiss Amended Complaint (DE# 83 at 3, 8/11/14) (emphasis in original). The permissive word "may" seems at odds with Supreme Court precedent which requires a real and immediate threat of future injury. See City of Los Angeles v. Lyons, 461 U.S. 95, 101-02 (1983) (holding that the threat must be "real and immediate" as opposed to "conjectural or hypothetical"). In any event, the Amended Complaint (DE# 50) does not even allege that the plaintiffs "may" purchase Beck's in the future. It is simply silent on the plaintiffs' future purchasing intentions with respect to the defendant's products.

The requirements of Article III standing do not change merely because a plaintiff is asserting claims under a state law consumer protection statute. As the court in

---

the defendant, in part, because it could charge a premium for Beck's, (3) many restaurant and retailers charge and consumers are willing to pay a premium for imported beers, (4) consumers pay higher prices for imported beer over similar, domestically brewed beers and (5) each plaintiff paid a premium for Beck's when they could have purchased a less expensive domestic beer. See Amended Complaint (DE# 50 at ¶¶ 8, 11, 17-18, 21, 3/31/14). The Amended Complaint does not expressly allege that if the alleged misrepresentations contained on the packaging were corrected, Beck's would cost less.

Mason noted, "[i]f an ADA plaintiff must demonstrate likely injury in the future, consumer plaintiffs [seeking injunctive relief under the CLRA, the UCL, and the California False Advertising Law] must as well. There is no likelihood of injury in the future if a plaintiff has no interest in purchasing the product at issue again because it does not work or does not perform as advertised." Mason, 2013 WL 1969957, at *2. The undersigned recognizes that there is a line of cases, i.e., Henderson, 2011 WL 1362188 and Koehler, 2012 WL 6217635, which cite to public policy grounds for finding that Article III standing to seek injunctive relief has been met even where a plaintiff does not intend to purchase the same product again in the future. For the reasons discussed in footnote 15, supra. the undersigned is unpersuaded by this line of cases.

Moreover, the plaintiffs cannot rely on the text of a state statute to confer standing to seek injunctive relief in federal court. "The core component of standing . . . is derived directly from the Constitution," Parr, 96 F. Supp. 2d at 1077 (citation and internal quotation marks omitted), and the requirements of Article III are the "irreducible minimum," Northeastern Fla. Chapter, Assoc. Gen. Contractors of Am., 508 U.S. at 664, which a plaintiff must allege. The burden on a plaintiff to meet these constitutional requirements cannot be lessened even by Congress. See Raines v. Byrd, 521 U.S. 811, 820 n.3 (1997) (stating that "[i]t is settled that Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing.") (citing Gladstone, Realtors v. Vill. of Bellwood, 441 U.S. 91, 100 (1979)). If Congress cannot override the requirements of Article III standing for federal statutory claims, it is even less likely that a state legislature can do so to confer standing upon a federal court.

In their supplement, the plaintiffs also cite to Galstaldi v. Sunvest Cmty. USA, LLC, 637 F. Supp. 2d 1045, 1058 (S.D. Fla. 2009) to support their argument that they have pled Article III standing to seek injunctive relief. See Plaintiff's Supplemental Brief in Opposition to Defendant's Motion to Dismiss Amended Complaint (DE# 83 at 4, 8/11/14). However, the plaintiff in Galstaldi sought only declaratory relief and thus the issue of whether the plaintiff was required to allege a future harm was not before this Court in Galstaldi.

For the reasons stated above, the plaintiffs lack standing to seek injunctive relief. The Amended Complaint fails to allege facts showing that the plaintiffs will likely face a real or immediate threat of future injury. The Amended Complaint contains only allegations of past injury. Injury in the past, however, does not support a finding of an Article III case or controversy when injunctive relief is sought. Shotz, 256 F.3d at 1082. Absent allegations that each plaintiff will likely suffer a real and immediate threat of future injury, the plaintiffs have no standing to seek injunctive relief. Accordingly, the plaintiffs' claims for injunctive relief are **DISMISSED without prejudice** for failure to establish Article III standing.

## CONCLUSION

In accordance with the foregoing, the Defendant's Motion to Dismiss and Memorandum of Law in Support (DE# 54, 4/25/14) is **GRANTED in part and DENIED in part**. The plaintiffs' claims for injunctive relief under the state law consumer protection statutes are **DISMISSED without prejudice** for lack Article III standing. The plaintiffs are permitted to file a second amended complaint no later than **Friday,**

44

**September 19, 2014**.

DONE AND ORDERED in Chambers at Miami, Florida this _____ day of

September, 2014.

_____
JOHN J. O'SULLIVAN
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
All Counsel of Record

45