# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 13-cv-23656-JAL

FRANCISCO RENE MARTY,
SETH GOLDMAN, and
FERNANDO MARQUET
on behalf of themselves and all others
similarly situated,

        Plaintiffs,

                                **CLASS ACTION**
v.                                 **JURY DEMAND**

ANHEUSER-BUSCH COMPANIES, LLC,

        Defendant.
_____/

### SECOND AMENDED CLASS ACTION COMPLAINT

Plaintiffs, Francisco Rene Marty, Seth Goldman and Fernando Marquet file this class action complaint on behalf of themselves and all others similarly situated against Anheuser-Busch Companies, LLC ("AB" or "Defendant"), and as grounds state:

### INTRODUCTION

1.  This is a class action on behalf of consumers of Beck's Beer[1] who have been deceived that Beck's, a historically German beer, is manufactured in and imported from Germany.  Defendant has committed unfair and deceptive practices and has been unjustly enriched by marketing and selling beer in a way that misleads consumers into believing that Beck's Beer is German, still imported from Germany, claiming that Beck's Beer "Originated in Germany" with "German Quality" while "Brewed Under the German Purity Law of 1516," and selling Beck's Beer at prices substantially higher than those of domestic beer, despite the fact

---

[1] As used in this Amended Complaint, the term "Beck's Beer" refers to six and twelve packs of bottles and cans of Beck's pilsner.

that the beer is brewed in the United States with domestic ingredients.

## JURISDICTION, VENUE, AND PARTIES

2.      This Court has jurisdiction over this action pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d)(2).  The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000, and there is complete diversity of citizenship.

3.      Venue is proper in the Southern District of Florida under 28 U.S.C. § 1391(b)(2) because the Florida plaintiff resides within it, a substantial part of the events or omissions giving rise to the claim occurred within this district, and Defendant caused harm to class members residing in this district.

4.      Defendant AB is a Delaware limited liability corporation, wholly owned and controlled by Anheuser-Busch InBev SA/NV, a publicly traded company (NYSE: BUD). Anheuser Busch InBev SA/NV was formed in November of 2008 following the merger of InBev and Anheuser Busch.  AB's principal place of business is in St. Louis, Missouri.

5.      All conditions precedent to this action have occurred, been performed, or have been waived.

## FACTUAL ALLEGATIONS

### The History of Beck's Brewery

6.      In 1873, Luder Rutenberg, Heinrich Beck, and Thomas May formed the original Beck's "Braverei" or  brewery.  Beck's Brewery remained owned by local families until 2002, when it was sold to the Belgian company Interbrew for 1.8 billion Euros.  In 2004, Interbrew merged with AmBev, and became InBev.  Shortly before the merger, Carlos Brito was named the CEO of AmBev.  In 2008, InBev purchased Anheuser Busch for $52 billion, and became Anheuser-Busch InBev SA/NV ("AB InBev").

7.      AB InBev, Defendant AB's parent company, is the world's largest producer of alcoholic beverages.  In 2012, AB InBev generated gross profits of more than $23 billion.  In the United States, AB InBev operates 13 breweries and produced over 3.3 billion gallons of malt beverages last year.   Imported beer is the fastest growing segment of the American beer market, nearly doubling in market share during the 1990s.  According to one report, AB sold $73.6 million in Beck's beer in 2012 in the U.S. with 2,656,154 cases worth of beer sold at an average price of $27.74.

8.      For over 225 years, Beck's was known for its pilsner consisting of "two row spring barley from the south of England, yeast, crystal water from the 'Rotenburger Rinne' and Hallertau hops from southern Germany."  Beck's was known to consist of "only top-grade barley, hand-selected hops from the Bavarian Hallertau region, fresh glacier water and Beck's exclusive strain of yeast that's been cultured and cultivated for generations."  Beck's Brewery brewed beer under the Beck's brand in the German city of Bremen with the same four ingredients.  Although these four ingredients, water, hops, barley, and yeast, are the key ingredients in almost every beer today, it was the source of these ingredients that made Beck's special to its consumers, and why the people who drink Beck's trusted Beck's Brewery's reputation and consistency.  Beck's consumers in the United States knew that the only way to get German beer of such high quality, as boasted about on Beck's packaging, was to import the beer from Germany.  As such, Beck's consumers relied on Beck's Brewery's representations that Beck's was German, imported from Germany, and brewed with the same ingredients as it has been in the past, and they paid a premium for imported Beck's.

9.      In 2010, Defendant formulated a plan to move the production of Becks from Bremen, Germany to the U.S. to save on transportation costs, over $9 million per year.  The plan

was approved in October 2010 by the highest management, including the CEO of AB Inbev, Carlos Brito, and the Zone President of North America for AB Inbev and the CEO of AB, Luiz Fernando Edmond, as part of a cost saving plan that looked toward moving imported brands generally into local production in order to save shipping and other importation costs.

10.     In 2012, AB began brewing Beck's in St. Louis, Missouri as part of its effort to slash costs and increase profit margins.  Although Beck's is still brewed with water, hops, barley, and yeast, the source and type of each of these ingredients is substantially different.   For example, Beck's is brewed with water from Missouri, as opposed to the Rotenburger Rinne in Germany.

11.     AB markets its beer through "brand identity," and the brand identity of Beck's has always been that it is German beer.  In moving Beck's production to the U.S., it was critical that Beck's maintain its brand identity as a German beer, even though it would no longer be brewed in Germany with German ingredients.  Maintaining that brand identity was and is important to AB so it can charge a premium for Beck's and maintain competition with other imported European brands, especially Heineken.   To maintain that (now false) brand identity, AB maintained all of the German references on its packaging, deceiving consumers that Beck's was still German, brewed in Germany with German ingredients, as part of a scheme AB called "Project Schnitzel," and then "Project Green."

12.     Although Beck's is no longer imported from Germany, the marketing and advertising of Beck's has remained mostly unchanged.   The new packaging for Beck's beer was specifically designed in order to maintain the brand identity of Beck's beer as German beer. Nowhere on the cardboard packaging of Beck's Beer does the label indicate that Beck's is brewed in the U.S.A. with domestic ingredients.  In fact, the new packaging for Beck's boldly

states that it is "German Quality" beer and "Originated in Bremen, Germany" despite the fact that Beck's no longer originates from Germany, but originates from St. Louis.  Beck's logo also remains, along with the image of the coat of arms of Bremen, Germany.  Defendant went one step further to bolster the German identity of Beck's beer by prominently adding the claim "Brewed Under the German Purity Law of 1516."  This claim is false.  The German Purity Law of 1516 allows only the inclusion of barley, hops and water in beer, and Beck's contains yeast and other ingredients and additives.  Photographs of packaging are attached as Composite Exhibit A, and that packaging is typical of the packaging used by AB and purchased by Plaintiffs and the class.

13.     The individual bottles and cans also remain almost identical to the imported beer bottles and cans.  The only difference is that on the border of the new labels, in obscure white text on a silver background, the bottle says: "Product of USA – Brauerei Beck & Co. – St. Louis, MO. – 12 FL. OZ."  Although certain aspects of the bottle label are reviewed by the Alcohol and Tobacco Tax and Trade Bureau and subject to its Certificate of Label Approval System, ("COLA"), this labeling cannot even be seen before 12-packs are purchased, cannot be seen in 6-pack packaging unless a bottle is removed and examined, and is inadequate to inform the reasonable consumer that Beck's, a beer that had been brewed in Germany for over 225 years, is no longer imported. AB's packaging and labeling are insufficient for a reasonable consumer to believe that Beck's Beer is no longer imported from Germany.  Reasonable consumers, including Plaintiffs, cannot or do not read the fine print on the bottles and cans until after they have already purchased Beck's Beer.  Even then, the print on the label is ambiguous and difficult, if not impossible, to read.  Moreover, this claimed association with a German-named entity "Brauerie Beck & Co." is pure fiction, as no such company exists.  Rather, this is just another example of

Defendants' deceptive tactics used to maintain the brand identity of Beck's as a German beer.

14.     AB's misleading packaging and labeling is buttressed by an overall marketing campaign, online and in ads, that misleads the consuming public that Beck's is imported from Germany.  For example, on line AB touts that it was "the first to export beer from Germany in a steel keg, ensuring the beer tasted as fresh when it arrived as when it left the brewery."  *See* www.becks.com/#/en/about/becks.

15.     Defendant's misrepresentations cause confusion among consumers.  Consumers believe they are purchasing German beer, imported from Germany, brewed using German requirements and with German ingredients, when in fact, they are purchasing beer brewed in St. Louis, Missouri, brewed with ingredients from the United States.

16.     Defendant knows that consumers are willing to pay more for imported beer products because the quality is higher, and Plaintiffs believe they are paying costs associated with high quality ingredients and for importing the beer.

17.     Furthermore, Defendant's misrepresentation causes confusion among retailers, restaurants, and bars.  These establishments purchase Beck's and market Beck's to the general public as an imported beer.  Many retailers and restaurants charge a premium for imported beers, and consumers are further damaged by Defendant's misrepresentations.  Retailers also typically group imported beers and domestic ones, reinforcing the belief that Becks is imported.  True and correct copies of examples of advertisements and websites erroneously stating Beck's is "imported" are attached as Composite Exhibit "B".  Thus, consumers are further harmed by restaurants, bars, and retail stores selling Beck's at higher prices under the false belief that it is still imported.

18.     Beer consumers are willing to pay a premium for high quality, imported beer.

Consumers in the United States often pay higher prices for their beer because European breweries follow centuries of traditions and brewing practices, and the breweries use only premium quality ingredients from local farms.   Indeed, many breweries, in the United States and Europe, are located in certain areas solely because the water in those regions yields a higher quality beer.  Consumers have grown accustomed to the consistency from these imported beers. As a result, consumers pay higher prices for imported beer than similar beers that are brewed domestically.

19.     Beverage market analysts Gerard Rijk at ING has noted:  "The authenticity of Beck's is that it is a German brand with German water, with German malt, with German hops. This isn't about brand building.  It's about costs.  Heineken would never do such a thing."

20.     As a result of Defendant's false, deceptive, and misleading packaging, labeling and omissions, consumers such as Plaintiffs are deceived when they purchase Beck's Beer in violation of state laws governing unfair and deceptive trade practices.  Defendant has also been unjustly enriched as a result of its conduct.

21.     As a result of these unfair and deceptive practices, Defendant has collected millions of dollars from the sale of Beck's Beer that it would not have otherwise earned. Plaintiff and class members paid money for a product that is not what it claims to be or what they bargained for.   They paid a premium for Beck's Beer when they could have instead bought other, less expensive, domestic beer, and consumers have lost the opportunity to purchase and consume other, truly imported beer.  The improper premium for Beck's Beer could not have been charged without Defendant's misrepresentations, and if Defendant were forced by this Court to end its deceptive conduct, Beck's Beer would not be inflated by the improper premium, and would cost less to the consumer, or would reflect its genuine market value.

## **Plaintiffs**

22.     At all relevant times, Plaintiff Francisco Rene Marty resided in, and continues to reside in, Miami-Dade County, Florida.   During the relevant time period, Plaintiff Marty purchased AB's Beck's Beer in reliance on the representations contained on their packaging and Beck's history of being an imported beer from Germany.  Specifically, Plaintiff Marty purchased approximately one six-pack and/or 12 pack case of Beck's per week during the past 8 to 10 years at retailers licensed by the State of Florida to sell malt beverages.    Plaintiff Marty has since learned that Beck's is no longer imported.    Plaintiff Marty took into account AB's misrepresentations that Beck's was imported from Germany in making his purchases, and would not have purchased Beck's Beer had he known that AB's representations were false.  Based on Defendant's misrepresentations and deceptive conduct, Plaintiff Marty purchased beer that had less value than what he paid, and he has accordingly suffered legally cognizable damages proximately caused by Defendant's misconduct.

23.     Plaintiff Marty purchased Beck's Beer in reliance on Defendant's representations and omissions that Beck's was brewed in Germany and imported into the United States.  Plaintiff Marty was willing to pay a premium for Beck's Beer because of these representations and omissions, and would not have purchased, would not have paid as much for the products, or would have purchased alternative products in absence of these representations and omissions.

24.     Plaintiff Marty faces a real and immediate threat of future harm in the form of deceptively packaged, labeled and marketed Beck's Beer sold at inflated prices based upon the deception that the Court's injunction would end.  Plaintiff Marty would purchase Beck's Beer again if and when it is properly labeled.

25.     At all relevant times, Plaintiff Seth Goldman resided in, and continues to reside

in, Port Washington, New York.  During the relevant time period, Plaintiff Goldman purchased AB's Beck's Beer in reliance on the representations contained on their packaging and Beck's history of being an imported beer from Germany.  Specifically, Plaintiff Goldman purchased approximately a dozen six packs during the past five years at retailers licensed by the State of New York to sell malt beverages.   Plaintiff Goldman has since learned that Beck's is no longer imported.   Plaintiff Goldman took into account AB's misrepresentations that Beck's was imported from Germany in making his purchases, and would not have purchased Beck's Beer had he known that AB's representations were false.  Based on Defendant's misrepresentations and deceptive conduct, Plaintiff Goldman purchased beer that had less value than what he paid, and he has accordingly suffered legally cognizable damages proximately caused by Defendant's misconduct.

26.   Plaintiff Goldman purchased Beck's Beer in reliance on Defendant's representations and omissions that Beck's was brewed in Germany and imported into the United States.  Plaintiff Goldman was willing to pay a premium for Beck's Beer because of these representations and omissions, and would not have purchased, would not have paid as much for the products, or would have purchased alternative products in absence of these representations and omissions.

27.   Plaintiff Goldman faces a real and immediate threat of future harm in the form of deceptively packaged, labeled and marketed Beck's Beer sold at inflated prices based upon the deception that the Court's injunction would end.  Plaintiff Goldman would purchase Beck's Beer again if and when it is properly labeled and brewed in Germany.

28.   At all relevant times, Plaintiff Fernando Marquet resided in, and continues to reside in, Los Angeles County, California.  During the relevant time period, Plaintiff Marquet

purchased AB's Beck's Beer in reliance on the representations contained on their packaging and Beck's history of being an imported beer from Germany. Specifically, Plaintiff Marquet has purchased approximately one six-pack case of Beck's per month during the relevant time period at retailers licensed by the State of California to sell malt beverages. Plaintiff Marquet has since learned that Beck's is no longer imported. Plaintiff Marquet took into account AB's misrepresentations that Beck's was imported from Germany in making his purchases, and would not have purchased Beck's Beer had he known that AB's representations were false. Based on Defendant's misrepresentations and deceptive conduct, Plaintiff Marquet purchased beer that had less value than what he paid, and he has accordingly suffered legally cognizable damages proximately caused by Defendant's misconduct.

29.     Plaintiff Marquet purchased Beck's Beer in reliance on Defendant's representations and omissions that Beck's was brewed in Germany and imported into the United States. Plaintiff Marquet was willing to pay a premium for Beck's Beer because of these representations and omissions, and would not have purchased, would not have paid as much for the products, or would have purchased alternative products in absence of these representations and omissions.

30.     Plaintiff Marquet faces a real and immediate threat of future harm in the form of deceptively packaged, labeled and marketed Beck's Beer sold at inflated prices based upon the deception that the Court's injunction would end. Plaintiff Marquet would purchase Beck's Beer again if and when it is properly labeled.

## **CLASS ALLEGATIONS**

### **A.     Class Definitions**

31.     Plaintiffs bring this action against Defendant pursuant to Rule 23 of the Federal

Rules of Civil Procedure on behalf of themselves and all other persons similarly situated.

Plaintiffs seek certification of the Nationwide Class and state subclasses, defined as follows:

### Nationwide Class

**All consumers who purchased Beck's Beer at retail in the 48 contiguous states for offsite, personal, family, or household purposes and not for re-sale, within the period that Beck's Beer was not imported from Germany,**

### Florida Subclass

**All consumers who purchased Beck's Beer at retail in the State of Florida for offsite, personal, family, or household purposes and not for re-sale, within the period that Beck's Beer was not imported from Germany.**

### New York Subclass

**All consumers who purchased Beck's Beer at retail in the State of New York for offsite, personal, family, or household purposes and not for re-sale, within the period that Beck's Beer was not imported from Germany.**

### California Subclass

**All consumers who purchased Beck's Beer at retail in the State of California for offsite, personal, family, or household purposes and not for re-sale, within the period that Beck's Beer was not imported from Germany.**

32.     Defendant subjected Plaintiffs and the respective Class members to the same unfair, unlawful, and deceptive practices and harmed them in the same manner, and was unjustly enriched in the same manner.

### B.     Numerosity

33.     The proposed classes are so numerous that joinder of all members would be impracticable.  Defendant AB enjoys a 47.6% market share of the sale of malt beverages in the United States.  Defendant sells and distributes Beck's Beer throughout the State of Florida, New York and California, as well as nationwide.  Although the number of Class members is not presently known, all Classes are likely to be comprised of many thousands of consumers.  The

classes are all certainly so numerous that joinder of all members of the Classes is impracticable.

## C.      Commonality

34.      As outlined below, there are questions of law and fact that are common to all Plaintiffs' and class members' claims.  These common questions predominate over any questions that go particularly to any individual member of the Class.  Common questions of fact and law exist because, *inter alia*, Plaintiff and all Class members purchased Beck's Beer as a German beer, consistent with its brand identity.  Indeed, all of Defendant's packaging and labeling for Beck's is uniform throughout the contiguous United States.  Beck's is bottled and packaged in one location, St. Louis, and then shipped throughout the contiguous United States.  Consumers throughout the contiguous United States all received the same Beck's packaging, bottles and cans, both when Beck's was imported and when Beck's began being manufactured in St. Louis.

35.      The common questions include, but are not limited to:

a.  Whether Defendant falsely, deceptively and/or misleadingly misrepresented Beck's Beer as imported or German;

b.  Whether Defendant's misrepresentations and omissions are likely to deceive a reasonable consumer;

c.  Whether Plaintiffs and members of the Nationwide Class and the state subclasses were damaged by Defendant's conduct;

d.  Whether Plaintiffs and members of the Nationwide Class and state subclasses are entitled to damages;

e.  Whether Defendant violated Florida's Unfair and Deceptive Unfair Trade Practices Act;

f.  Whether Defendant violated New York General Business Law § 349.

g.  Whether Defendant violated California's Unfair Competition Law, Business and Professions Code § 17200.

h.  Whether Defendant violated California's Consumer Legal Remedies Act, Civil Code § 1750, *et seq.*

    i.   Whether and to what extent AB has been unjustly enriched by its conduct;

    j.   Whether Plaintiffs and Class members are entitled to compensatory damages, including actual and statutory damages plus interest thereon and/or monetary restitution;

    k.   Whether Defendant must disgorge any sums it has made as a result of its misconduct;

    l.   Whether Defendant's conduct rises to the level of willfulness so as to justify punitive damages; and

    m.   Whether an injunction is appropriate in order to prevent AB from continuing to engage in unfair, deceptive and unlawful activity.

### D.      Typicality

36.      Plaintiffs' claims are typical of the claims of the members of the Classes because they purchased and consumed Beck's Beer, which was deliberately misrepresented as being an imported beer.  Thus, Plaintiffs and all Class members sustained the same injury arising out of AB's common course of conduct in violation of law as complained of herein.  The injury of each Class member was caused directly by AB's uniform wrongful conduct in violation of law as alleged herein.  Each Class member has sustained, and will continue to sustain, damages in the same manner as Plaintiff as a result of Defendant's wrongful conduct.

### E.      Adequacy of Representation

37.      Plaintiffs will fairly and adequately protect the interest of the members of the Classes.  Plaintiffs have retained highly competent and experienced class action attorneys to represent their interests and those of the Classes.  Plaintiffs' counsel have the necessary financial resources to adequately and vigorously litigate this class action.  Plaintiffs have no adverse or antagonistic interests to those of the Classes.  Plaintiffs are willing and prepared to serve the Court and the Class members in a representative capacity, with all of the obligations and duties material thereto, and they are determined to diligently discharge those duties by vigorously

seeking the maximum possible recovery for Class members.

38.     To prosecute this case, Plaintiffs have chosen the undersigned law firms, which are very experienced in class action litigation and have the financial and legal resources to meet the substantial costs and legal issues associated with this type of litigation.

### F.      Requirements of Fed. R. Civ. P. 23(b)(3)

39.     This action is appropriate as a class action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure.

40.     ***Common Questions of Law and Fact Predominate:*** The questions of law or fact common to Plaintiffs' and each Class member's claims predominate over any questions of law or fact affecting only individual members of the class.

### G.      Superiority

41.     A class action is superior to individual actions in part because of the non-exhaustive factors listed below:

> (a) Joinder of all class members would create extreme hardship and inconvenience for the affected customers as they reside all across the states;

> (b) Individual claims by class members are impractical because the costs to pursue individual claims exceed the value of what any one class member has at stake.  As a result, individual class members have no interest in prosecuting and controlling separate actions;

> (c) There are no known individual class members who are interested in individually controlling the prosecution of separate actions;

> (d) The interests of justice will be well served by resolving the common disputes of potential class members in one forum;

> (e) Individual suits would not be cost effective or economically maintainable as individual actions; and

(f)  The action is manageable as a class action.

42.     Plaintiffs are unaware of any difficulties that are likely to be encountered in the management of these class actions that would preclude their maintenance as class actions.

### H. Requirements of Fed. R. Civ. P. 23(b)(1) & (2)

43.     Prosecuting separate actions by or against individual class members would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class.

44.     Defendant has acted or failed to act in a manner generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

45.     AB's wrongful conduct and practices, if not enjoined, will subject Class members and other members of the public to substantial continuing harm and will cause irreparable injuries to Class members and members of the public who are damaged by AB's conduct.

### <u>COUNT I</u>

### <u>UNJUST ENRICHMENT</u>
### <u>(Nationwide Class)</u>

Plaintiffs re-allege and incorporate paragraphs 1 through 45 above as if fully set forth herein, and further allege as follows:

46.     The Defendant received from Plaintiffs and Class Members benefits in the form of inflated profits related to Defendant's misrepresentations of Beck's as imported and German, when it is in fact brewed in St. Louis, Missouri.

47.     The Defendant acted to mislead consumers into believing that Beck's Beer was imported from Germany, and that the ingredients used in Beck's have the same origin.  However, Beck's Beer is now brewed in St. Louis, Missouri, and Defendant has changed ingredients to cut

costs.

48.     The Defendant received financial benefits in the form of reduced shipping and other costs and increased profits from its conduct.  The source of these financial benefits is the purchase of Beck's Beer by Plaintiffs and the Class while being deceived that Beck's is German. As a result, Plaintiffs and the Class have conferred a benefit on the Defendant.

49.     The Defendant had knowledge of this benefit and voluntarily accepted and retained the benefit conferred on them.

50.     The Defendant will be unjustly enriched if allowed to retain the aforementioned benefits, and each class member is entitled to recover the amount by which the Defendant was unjustly enriched at his or her expense.

**WHEREFORE**, Plaintiffs, on behalf of themselves and all similarly situated Class members, demands an award against the Defendant in the amounts by which these Defendants have been unjustly enriched at Plaintiffs' and the Class Members' expense, and such other relief as this Court deems just and proper.

## <u>COUNT II</u>

### <u>VIOLATION OF THE FLORIDA</u><br><u>DECEPTIVE AND UNFAIR TRADE PRACTICES ACT</u><br><u>(Florida Subclass)</u>

Plaintiff Marty re-alleges and incorporates paragraphs 1 through 45 above as if fully set forth herein, and further alleges as follows:

51.     FDUTPA, section 501.201, *et seq*., Florida Statutes, prohibits "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."  § 501.204, Fla. Stat.

52.     Plaintiff Marty and the Florida Subclass are "consumers" as that term is defined

in section 501.203(7), Florida Statutes.

53.     Plaintiff Marty has standing to pursue this claim as he has suffered injury in fact and has lost money or property as a result of Defendant's actions as set forth above.

54.     Defendant AB has engaged in, and continues to engage in, unconscionable acts or practices and used unfair or deceptive acts in the conduct of its trade and/or commerce in the State of Florida.

55.     AB's business practices, as alleged herein, are "unfair" because they offend established public policy and are immoral, unethical, unscrupulous, and substantially injurious to their customers.  Additionally, AB's conduct is unfair because AB's conduct violated the legislatively declared policies in the FDUTPA.  Defendant misled consumers into believing that its product was German and imported from Germany, when in fact it was brewed in St. Louis, Missouri, and AB concealed this fact from consumers.

56.     Furthermore, AB's business practices, as alleged herein, are "deceptive" because they are likely to deceive consumers, including Plaintiff Marty and members of the Florida Class.

57.     The policies, acts, and practices alleged herein were intended to result and did result in the payment of inflated prices for the purchase of Beck's Beer by Plaintiff Marty and the Florida Subclass, which in turn were intended to generate unlawful or unfair compensation for Defendant.

58.     Specifically, Defendant has misled consumers into believing Beck's Beer was still imported from Germany, when in fact it was brewed in St. Louis, Missouri.  AB took advantage of Plaintiff's trust and confidence in the Beck's brand, and deceptively began brewing Beck's in St. Louis, Missouri without informing Plaintiff that Beck's was no longer imported.

59.     Defendant's conduct of misrepresenting and mislabeling Beck's Beer to Plaintiff Marty and consumers mislead Plaintiff into believing that Beck's Beer was imported, and Plaintiff relied on these misrepresentations.  Defendant's actions violate FDUTPA, and were conceived, devised, planned, implemented, approved, and executed within the State of Florida, which has an interest in prohibiting violations of FDUTPA.

60.     In addition, the practice employed by Defendant, whereby Defendant sold, promoted and marketed that its products as an imported German beer with "German Origin" constitutes a *per se* violation of FDUTPA under Section 501.203(3)(c) because it is in violation of the Florida Food Safety Act, Fla. Stat. § 500.04 (1) and (2) in that said products are misbranded.

61.     Defendant's false, unlawful, and misleading product descriptions render its products misbranded under Florida law.  Specifically, Section 500.04 of the Florida Food Safety Act prohibits the manufacture, sale or delivery of "misbranded food."  Food is "misbranded" when "its labeling is false or misleading in any particular."  Fla. Stat. § 500.11(1)(a) & (b).  A food is considered mislabeled unless the proper disclosures are made "on the outside container or wrapper" on the product.  § 500.03(1)(t).  Misbranded products cannot be legally sold and are legally worthless.

62.     Plaintiff Marty and the Florida Subclass sustained damages as a direct and proximate result of Defendant's unfair and unconscionable practices.  Section 501.211(2), Florida Statutes provides Plaintiff Marty and the Florida Subclass a private right of action against AB and entitles them to recover their actual damages, plus attorneys' fees and costs.

63.     As a result of AB's unfair conduct and deception, Plaintiff Marty and members of the Florida Subclass have been damaged in that they spent money on premium-priced Beck's

Beer that they would not have otherwise have spent and did not receive the value for – a product that is indeed considered worthless due to AB's misbranding.

64.    AB's wrongful business practices alleged herein constitute a continuing course of unfair competition because AB marketed or sold Beck's Beer in a manner that offends public policy and/or in a fashion that is immoral, unethical, oppressive, unscrupulous, and/or substantially injurious to its customers.  Plaintiff Marty and the Florida Subclass have been damaged by Defendant's deceptive and unfair conduct in that they purchased a misbranded and worthless product or paid prices they otherwise would not have paid had Defendant not misrepresented the product.

65.    Plaintiff Marty and the Florida Subclass have suffered and will continue to suffer irreparable harm if Defendant continues to engage in such deceptive, unfair, and unreasonable practices.

**WHEREFORE,** Plaintiff Marty, on behalf of himself and the Florida Subclass, demand judgment against Defendant for compensatory damages, pre- and post-judgment interest, attorneys' fees pursuant to FDUTPA, injunctive and declaratory relief, costs incurred in bringing this action, and any other relief as this Court deems just and proper.

## COUNT III

### VIOLATION OF THE NEW YORK GENERAL BUSINESS LAW § 349
### (New York Subclass)

Plaintiff Goldman re-alleges and incorporates paragraphs 1- 45 of this complaint as if fully set forth herein, and further alleges as follows.

66.    Plaintiff Goldman, a New York resident who purchased Beck's Beer in New York, and who has been subjected to Defendant's scheme to mislead and deceive consumers,

asserts this claim on behalf of the New York Subclass.  Plaintiff Goldman and the New York Subclass purchased Beck's Beer in New York and were deceived by Defendant into believing that its product was imported from Germany, when in fact it was brewed in St. Louis, Missouri, and AB concealed this fact from consumers.

67.     Defendant's acts and practices alleged herein constitute acts, uses, or employment by Defendant and its agents of deception, fraud, unconscionable and unfair commercial practices, false pretenses, false promises, misrepresentations, or the knowing concealment, suppression, or omission of material facts with the intent that others rely upon such concealment, suppression, or omission, in violation of New York General Business Law § 349 ("NY GBL § 349"), making deceptive and unfair acts and practices illegal.

68.     Defendant engaged in deceptive and unfair practices in violation of  NY GBL § 349 by, among other things, misleading consumers into believing Beck's was still imported from Germany, when in fact it was brewed in St. Louis, Missouri.  AB took advantage of Plaintiff's trust and confidence in the Beck's brand, and deceptively began brewing Beck's in St. Louis, Missouri without informing Plaintiff that Beck's Beer was no longer imported.

69.     Defendant's false, unlawful, and misleading product descriptions render its products misbranded under New York law.  Specifically, New York Agriculture & Markets Law provides that food shall be deemed misbranded "[i]f its labeling is false or misleading in any particular." N.Y. Agric. & Mkts. Law § 201 (McKinney). Misbranded products cannot be legally sold and are legally worthless.

70.     The unfair and deceptive trade acts and practices of Defendant A-B are consumer oriented, are materially misleading, and have directly, foreseeably, and proximately caused damages and injury to Plaintiff Goldman and the other members of the New York Subclass.

71.     As a result of AB's unfair conduct and deception, Plaintiff Goldman and members of the New York Subclass have been damaged in that they spent money on premium-priced Beck's Beer that they would not have otherwise have spent and did not receive the value for – a product that is indeed considered worthless due to AB's misbranding.

**WHEREFORE**, Plaintiff  Goldman and the New York Subclass are entitled to damages, injunctive relief, declaratory relief, attorneys' fees, and costs as a result of Defendant AB's violations of NY GBL § 349.

## COUNT IV

### VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW BUSINESS AND PROFESSIONS CODE § 17200, *ET SEQ.* (California Subclass)

Plaintiff Marquet re-alleges and incorporates paragraphs 1 through 45 as if fully set forth herein, and further alleges as follows:

72.     As alleged herein, AB has marketed and sold beer in a way that misleads consumers into believing that Beck's is still imported from Germany, claiming that Beck's "Originated in Germany" with "German Quality," and selling Beck's Beer at prices substantially higher than those of domestic beer, despite the fact that the beer is brewed in the United States with domestic ingredients.  AB took advantage of Plaintiff's trust and confidence in the Beck's brand, and deceptively began brewing Beck's in St. Louis, Missouri without informing Plaintiff that Beck's was no longer imported.  Plaintiff Marquet has suffered injury in fact and lost money or property as a result of AB's conduct because he purchased Beck's Beer in reliance on Defendant's representations and omissions that Beck's was brewed in Germany and imported into the United States.  Plaintiff Marquet was willing to pay a premium for Beck's Beer because of these representations and omissions, and would not have purchased, would not have paid as

much for the products, or would have purchased alternative products in absence of these representations and omissions.

73. California's Unfair Competition Law, Business & Professions Code § 17200, *et seq*. ("UCL"), prohibits any "unlawful," "fraudulent" or "unfair" business act or practice and any false or misleading advertising.   In the course of conducting business, AB committed unlawful business practices by, *inter alia*, making the representations (which also constitute advertising within the meaning of section 17200) and omissions of material facts, as set forth more fully herein, and violating Civil Code, §§1572, 1573, 1709, 1711, 1770 and Business & Professions Code §§17200, *et seq.*, 17500, *et seq.*, and the common law.

74. AB's actions also constitute "unfair" business acts or practices because, as alleged above, *inter alia*, AB engaged in false advertising, misrepresented and omitted material facts regarding Beck's beer, and thereby offended an established public policy, and engaged in immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers.

75. As stated herein, Plaintiff Marquet and the California Subclass allege violations of consumer protection, unfair competition and truth in advertising laws in California and other states, resulting in harm to consumers.   AB's acts and omissions also violate and offend the public policy against engaging in false and misleading advertising, unfair competition and deceptive conduct towards consumers. AB's practices are additionally unfair because they have caused Plaintiff and other members of the class substantial injury, which is not outweighed by any countervailing benefits to consumers or to competition, and is not an injury the consumers themselves could have reasonably avoided.   This conduct constitutes violations of the unfair prong of Business & Professions Code § 17200, *et seq*.

76.     Further, California's Sherman Law, adopts, incorporates, and is, in all relevant aspects, identical to the federal Food Drug & Cosmetic Act, 21 U.S.C.§ 301, *et seq.* ("FDCA") and the regulations adopted pursuant to that act.   These violations render Beck's Beer "misbranded."   Under FDCA section 403(a) (and the Sherman Law's counter-part), food is "misbranded" its "labeling is false or misleading in any particular." 21 U.S.C. § 343(a). Misbranded products cannot be legally sold and are legally worthless. This conduct constitutes violations of the unlawful prong of Business & Professions Code § 17200, *et seq*.

77.     There were reasonably available alternatives to further AB's legitimate business interests, other than the conduct described herein.

78.     Business & Professions Code § 17200, *et seq*., also prohibits any "fraudulent business act or practice."

79.     AB's actions, claims, nondisclosures and misleading statements, as more fully set forth above, were also false, misleading and/or likely to deceive the consuming public within the meaning of Business & Professions Code § 17200, *et seq*.

80.     Plaintiff Marquet and other members of the California Subclass have in fact been deceived as a result of their reliance on AB's material representations and omissions, which are described above. This reliance has caused harm to Plaintiff Marquet and other members of the California Subclass who each purchased Beck's Beer.  Plaintiff Marquet and the other California Subclass members have suffered injury in fact and lost money as a result of these unlawful, unfair, and fraudulent practices. As a result of AB's unfair conduct and deception, Plaintiff and members of the California Subclass have been damaged in that they spent money on premium-priced Beck's Beer that they would not have otherwise have spent and did not receive the value for – a product that is indeed considered worthless due to AB's misbranding.

81.     As a result of its deception, AB has been able to reap unjust revenue and profit.

82.     Unless restrained and enjoined, AB will continue to engage in the above-described conduct.  Accordingly, injunctive relief is appropriate.

83.     Plaintiff Marquet and the California Subclass seek restitution and an injunction prohibiting AB from continuing such practices, corrective advertising and all other relief this Court deems appropriate, consistent with Business & Professions Code §17203.

84.     Pursuant to California Code of Civil Procedure § 1021.5, Plaintiff Marquet and the California Subclass make claims for attorneys' fees and costs.

WHEREFORE, Plaintiff Marquet, on behalf of himself and the California Subclass, demand judgment against Defendant for damages, restitution, pre- and post-judgment interest, attorneys' fees, injunctive and declaratory relief, corrective advertising, costs incurred in bringing this action, and any other relief as this Court deems just and proper.

### COUNT V
### VIOLATION OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT
### CIVIL CODE § 1750, *ET SEQ.*
### (California Subclass)

Plaintiff Marquet re-alleges and incorporates paragraphs 1 through 45 as if fully set forth herein, and further alleges as follows:

85.     This cause of action is brought pursuant to the Consumers Legal Remedies Act, California Civil Code § 1750, *et seq.* (the "Act" or "CLRA").  Plaintiff Marquet is a consumer as defined by California Civil Code § 1761(d).   Beck's Beer constitutes "goods" within the meaning of the Act.

86.     AB violated and continues to violate the Act by engaging in the following practices proscribed by California Civil Code § 1770(a) in transactions with Plaintiff Marquet and the California Subclass which were intended to result in, and did result in, the sale of Beck's Beer:

    a.   Misrepresenting the source, sponsorship, approval, or certification of Beck's Beer in violation of Civil Code § 1770(a)(2);

    b.   Using deceptive representations or designations of geographic origin in connection with Beck's Beer in violation of Civil Code § 1770(a)(4).

    c.   Representing that Beck's Beer has characteristics, uses and benefits which it does not have in violation of Civil Code §1770(a)(5);

    d.   Representing that Beck's Beer is of a particular standard, quality, or grade, when it is of another in violation of Civil Code §1770(a)(7);

    e.   Advertising Beck's Beer with an intent not to sell it as advertised in violation of Civil Code § 1770(a)(9); and

    f.   Representing that Beck's Beer has been supplied in accordance with a previous representation when it has not in violation of Civil Code §1170(a)(16).

87.    AB violated the Act by representing and failing to disclose material facts on the Beck's Beer's labels and associated advertising, as described above, when it knew, or should have known, that the representations were unsubstantiated, false and misleading and that the omissions were of material facts they were obligated to disclose.

88.    Pursuant to California Civil Code § 1782(d), Plaintiff Marquet and the California subclass seek a Court order enjoining the above-described wrongful acts and practices of AB and for restitution and disgorgement.

89.    Pursuant to Section 1782 of the Act, by letter dated February 12, 2014, Plaintiff notified AB in writing by certified mail of the particular violations of section 1770 of the Act and demanded that AB rectify the problems associated with the actions detailed above and give notice to all affected consumers of AB's intent to so act.  AB failed to rectify or agree to rectify the problems associated with the actions detailed above and give notice to all affected consumers within 30 days of the date of written notice pursuant to section 1782 of the Act.  Therefore, Plaintiff Marquet and the California Subclass further seek claims for actual, punitive and statutory damages, as deemed appropriate.

90.    Pursuant to California Civil Code section 1780(e), Plaintiff Marquet and the California Subclass make claims for damages, attorneys' fees and costs.

WHEREFORE, Plaintiff Marquet, on behalf of himself and the California Subclass, demand judgment against Defendant for damages, restitution, punitive damages, statutory damages, pre- and post-judgment interest, attorneys' fees, injunctive and declaratory relief, costs incurred in bringing this action, and any other relief as this Court deems just and proper.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, on behalf of themselves and all similarly situated individuals, demand judgment against Defendant as follows:

(1) Declaring this action to be a proper class action maintainable pursuant to Rule 23(a) and Rule 23(b)(1) and (2) and Rule 23(b)(3) of the Federal Rules of Civil Procedure and declaring Plaintiffs and their counsel to be representatives of the Class;

(2) Enjoining Defendant from continuing the acts and practices described above.   Specifically, requiring Defendant to remove and/or clarify the deceptive language and/or to include a prominent disclaimer on the labeling, packaging and marketing material that informs consumers Beck's Beer is "Brewed in the United States" (or similar language) or, in the alternative, to resume production in Germany;

(3) Awarding damages sustained by Plaintiffs and the Classes as a result of the Defendant's conduct, together with pre-judgment interest;

(4) Finding that Defendant has been unjustly enriched and requiring it to refund all unjust benefits to Plaintiffs and the Nationwide Class, together with pre-judgment interest;

(5) Awarding Plaintiffs and the Classes costs and disbursements and reasonable allowances for the fees of Plaintiffs and the Classes' counsel and experts,

and reimbursement of expenses;

(6) Awarding Plaintiff Marty and the Florida Subclass damages, injunctive relief, declaratory relief, attorneys' fees, and costs under FDUTPA;

(7) Awarding Plaintiff Goldman and the New York Subclass damages, injunctive relief, declaratory relief, attorney's fees, and costs under New York General Business Law § 349;

(8) Awarding Plaintiff Marquet and the California Subclass damages, restitution, punitive damages, statutory damages, injunctive relief, declaratory relief, attorney's fees, and costs under California Code of Civil Procedure § 1021.5 and California Civil Code section 1780(e);

(9) Awarding the Nationwide Class damages, injunctive relief, declaratory relief, attorneys' fees, and costs; and

(10) Awarding such other and further relief the Court deems just and equitable.

Case No. 13-cv-23656-JAL

## DEMAND FOR JURY TRIAL

Plaintiffs and the Nationwide Class and state subclasses request a jury trial for any and all

Counts for which a trial by jury is permitted by law.

Respectfully submitted,


/s/Lance A. Harke

| | |
|---|---|
| Thomas A. Tucker Ronzetti, Esq. | Lance A. Harke, P.A. |
| tr@kttlaw.com | lharke@harkeclasby.com |
| Adam M. Moskowitz, Esq. | Howard M. Bushman, Esq. |
| amm@kttlaw.com | hbushman@harkeclasby.com |
| **KOZYAK, TROPIN, &** | **HARKE CLASBY & BUSHMAN LLP** |
| **THROCKMORTON P.A.** | 9699 NE Second Avenue |
| 2525 Ponce de Leon Blvd., 9th Floor | Miami Shores, Florida 33138 |
| Coral Gables, FL 33134 | Telephone:    (305) 536-8220 |
| Telephone:  (305) 372-1800 | Facsimile:    (305) 536-8229 |
| Facsimile:    (305) 372-3508 | |
| *Counsel for Plaintiffs* | |
| | |
| Robert W. Rodriguez, Esq. | John Campbell, Esq. |
| RobertWRodriguez@GMail.Com | john@campbelllawllc.com |
| **ROBERT W. RODRIGUEZ, P.A.** | **CAMPBELL LAW, LLC,** |
| 66 West Flagler Street, Suite 1002 | 1500 Washington Avenue, |
| Miami, Florida 33130 | Suite 100 |
| Telephone:  (305) 444-1446 | St. Louis, MO 63103 |
| Facsimile:  (305) 907-5244 | Telephone:  (314)588-8101 |

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been served via

transmission of Notices of Electronic Filing generated by CM/ECF, or in some other authorized

manner for those counsel or parties who are not authorized to receive electronically Notices of

Electronic filing, to all the parties in the attached service list on September 19, 2014.


/s/Lance A. Harke
Lance A. Harke