**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 13-cv-23656-JJO**

FRANCISCO RENE MARTY,
SETH GOLDMAN, and
FERNANDO MARQUET
on behalf of themselves and all others
similarly situated,

      Plaintiffs,

v.

ANHEUSER-BUSCH COMPANIES, LLC,

      Defendant.

_____/

**PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION**
**SETTLEMENT AND CERTIFICATION OF THE SETTLEMENT CLASS**

Plaintiffs Francisco Marty, Seth Goldman and Fernando Marquet ("Plaintiffs"), on behalf of themselves and on behalf of all those similarly situated, hereby request entry of an order granting preliminary approval of the class action settlement as set forth in the parties' Settlement Agreement and Release, certifying a nationwide class for settlement purposes, and providing for issuance of notice to Class Members.

## INTRODUCTION

After over a year and a half of hard-fought litigation, Plaintiffs and Defendant Anheuser-Busch Companies, LLC ("A-B") (collectively the "Parties") have negotiated a settlement that provides substantial relief to purchasers of Beck's Beer,[1] beer that Plaintiffs allege has been falsely advertised and marketed by A-B throughout the United States. The Parties have executed a Settlement Agreement and Release (attached as Exhibit 1) ("Settlement") and agreed upon the form of proposed Notice to Class Members.[2]

Under the Settlement, A-B has agreed, among other things, to offer  partial refunds to Settlement Class Members for Beck's Beer in varying amounts that are based upon whether claims are supported by proof of purchase, and to stipulated injunctive relief (as set forth below). The Settlement's benefits were the result of rigorous, arm's-length negotiations by the Parties and their counsel under the direction of a distinguished mediator, Ronald Ravikoff, Esq.  Notice of this Settlement will be disseminated to Class Members via, among other things, (i) published notice, (ii) internet notice, (iii) establishment of a settlement website, and (iv) through direct mail (along with a Claim Form) or email to currently available addresses that have been provided to A-B through the Beck's or A-B websites or via email or telephone by potential Beck's Beer consumers.

---

[1] "Beck's Beer" means all bottles or cans of Beck's Pilsner, Beck's Dark, Beck's Light, and/or Beck's Oktoberfest brewed and sold in the United States by A-B.
[2] Unless otherwise noted, all capitalized terms used herein have the same definition as that provided in the Settlement.

Undersigned counsel were well positioned to evaluate and negotiate this settlement because they have been actively litigating against A-B in this and other fora for over a year and a half. Specifically, Plaintiffs' counsel investigated their claims and allegations through extensive discovery, including the review of thousands of pages of documents and the depositions of key A-B personnel as well as expert depositions. Despite that work, Plaintiffs and the Class faced significant hurdles in litigating their claims to successful adversarial resolution. As such, and given the immediate and substantial benefits the settlement will provide to the Class, there can be no question that the terms of the proposed settlement are "fair, reasonable, and adequate" and should receive the Court's preliminary approval.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. The Beck's Litigation and Mediation

On October 9, 2013, Plaintiff Marty filed the Action seeking damages, injunctive relief and declaratory relief, alleging that Beck's Pilsner had been falsely or misleadingly labeled or marketed. The Action asserted a claim for unjust enrichment on behalf of a nationwide class and a claim for violation of Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201, *et seq.* "FDUTPA", on behalf of a Florida subclass.  Plaintiff Marty amended the Complaint on March 31, 2014, adding Plaintiffs Goldman and Marquet, as well as claims under New York General Business Law § 349, California Unfair  Competition Law, Business and Professions Code § 17200, and California Consumer Legal Remedies Act, Civil Code § 1750. The Amended Compliant sought certification of a nationwide unjust enrichment class and three state subclasses for Florida, New York, and California for the consumer protection act claims. The Action alleged that Defendant's advertising, marketing and selling practices regarding Beck's beer were deceptive and sought a change to the marketing practices of A-B and the packaging of Beck's.[3]

---

[3] During the pendency of the Action, A-B began the process of changing its packaging to prominently include "Brewed in USA" or "Product of USA" on the front and back of consumer-facing packages of Beck's Beer, as well as to revise the "Product of USA" disclosure on Beck's Beer labels.  These changes have been approved by the Alcohol and Tobacco Tax and Trade Bureau ("TTB").

The Parties engaged in substantial discovery. There were twelve depositions taken of the Parties, non-parties, and expert witnesses. The Parties responded to interrogatories and over 28,000 documents were produced.  The Plaintiffs engaged experts both on marketing and damages.  Counsel for Plaintiffs also obtained final approval of a nationwide class action settlement, including both monetary and injunctive relief, in a case involving Kirin beer that involves issues similar to those in the instant Action. *See Suarez v. Anheuser-Busch Companies, LLC*, Case No. 13-033629 CA 01 (Fla. 11th Jud. Cir.).

Defendant A-B moved to dismiss the Amended Complaint in its entirety. That motion was largely denied on September 5, 2015, with Plaintiffs filing a Second Amended Complaint on September 19, 2014.  Plaintiffs' Motion for Class Certification was fully briefed, along with various motions in limine directed at the expert witnesses.  These motions were argued before the Court on April 16, 2015.   After the hearing, the Court ordered the parties to mediation.  The parties conducted a mediation with Ronald Ravikoff, Esq. on May 26, 2015. Before, during, and after the mediation the parties engaged in a series of discussions regarding a settlement of the Action, including substantial arm's-length negotiations. The result was a settlement of the Action in its entirety, culminating with this Settlement.

## 2.   **The Settlement Terms and Agreement**

### A.   *The Proposed Class*

The Settlement provides relief to all consumers who purchased Beck's Beer in the United States for personal, family, or household purposes and not for re-sale from May 1, 2011 through the date of Preliminary Approval of Class Settlement.

### B.   *Monetary and Other Relief*

The Settlement affords these Class Members monetary relief, and provides other injunctive relief to assist the Class Members. Specifically, the Settlement Agreement provides that:

- Defendant shall offer partial refunds to Settlement Class Members for Beck's Beer in varying amounts that are based upon whether claims are supported by proof of purchase.

- For claims supported by proof of purchase, a Settlement Class Member will be entitled to the following refunds:

    o Six pack of 12 oz. bottles or cans: $.50 each

    o Four pack of 16 oz. cans: $.50 each

    o Twelve pack of 12 oz. bottles or cans: $1.00 each

    o Fifteen pack of 12 oz. bottles or cans: $1.25 each

    o Twenty pack of 12 oz. bottles: $1.75

    o Individual bottle or can: $0.10 each

Reimbursements supported by proof of purchase are capped at $50.00 per Settlement Class Household.

- For claims not supported by proof of purchase, a Settlement Class Member will be entitled to the following refunds:

    o Six pack of 12 oz. bottles or cans: $.50 each

    o Four pack of 16 oz. cans: $.50 each

    o Twelve pack of 12 oz. bottles or cans: $1.00 each

    o Fifteen pack of 12 oz. bottles or cans: $1.25 each

    o Twenty pack of 12 oz. bottles: $1.75

    o Individual bottle or can: $0.10 each

Reimbursements not supported by proof of purchase are capped at $12.00 per Settlement Class Household.

- The Parties also stipulated to the following injunctive relief:

    o For a period of no less than five (5) years, and subject to all necessary regulatory approvals by appropriate governing agencies, inclusion of either the phrase "Brewed in USA" or "Product of USA" on: a) Beck's Beer bottles substantially in the position and form recently approved by the TTB; b) Beck's Beer cans in its present position and form; c) the

front and back of all Beck's Beer consumer-facing packages; and d) the "About Beck's" (http://becks.com/#/en/about/becks) page of the Beck's website. The type face, type size, position, color, and setoff of the disclosures will be agreed by the parties to be sufficient to inform a reasonable consumer of the place where Beck's Beer is brewed while not unduly impairing A-B's marketing.

### C.  *Release of Claims against Defendant*

In exchange for the settlement relief, members of the Settlement Class will release Defendant and all its present and former parent companies, subsidiaries, shareholders, officers, directors, employees, agents, servants, registered representatives, attorneys, insurers, affiliates, and successors, personal representatives, heirs and assigns, retailers, suppliers, distributors, endorsers, consultants, and any and all other entities or persons upstream and downstream in the production/distribution channels from, in sum, all claims, demands, actions, causes of action, and damages arising from, or relating to the claims alleged in the Action.

### D.  *Class Notice*

Class Members will receive notice of the Settlement by publication in the manner recommended by the Class Action Settlement Administrator and in the form of the notice attached as Exhibit 2, assuming the form is approved by the Court. The manner of notice will include, but not be limited to, (i) published notice, (ii) internet notice, (iii) establishment of a settlement website, and (iv) direct mail (along with a Claim form) or email to currently available addresses that have been provided to A-B through the Beck's or A-B websites or via email or telephone by potential Beck's Beer consumers. The settlement website will be established, informing the Class Members of the settlement and allowing them to file a claim electronically. Moreover, a long form notice, in substantially the same form attached hereto as Exhibit 3, shall be published on the Settlement Website.

Class Members may opt out of the settlement (for purposes of damages claims only) by sending a request for exclusion to the Claims Administrator, which will communicate requests for exclusion to Class Counsel, who will in turn report to the Court. Defendant shall bear all of the costs and expenses in administrating the Settlement, including the hiring of a Claims Administrator, providing class notice, publication of the notice, and providing the claim forms.

### E.  *Claims Process*

To obtain relief from Defendant, Class Members will be required to submit a simple claim form (in the form, if approved, as Exhibit 4) electronically via the Settlement Website or by mail within one hundred and twenty (120) days from the date that Class Notice is initially disseminated. The claims will be reviewed by the Claims Administrator, who will work with Defendant to confirm whether those who timely file a claim are members of the Class. Defendant shall fund the total amount to be paid to eligible Settlement Class Members within thirty (30) days after the Class Action Settlement Administrator determines the total amount to be paid to eligible claimants (which the Class Action Settlement Administrator shall do twenty (20) days after the Claims Period ends or twenty (20) days after the Effective date, whichever is later). The Class Action Settlement Administrator shall then pay all eligible claimants within thirty (30) days after A-B deposits the funds to be paid. The Parties will be entitled to further confirmatory discovery including purchase history, the number of units sold, the total revenues from said sales, the changes to the labeling once completed, as well as any other information required to finalize the Settlement.

### F.  *Class Counsel Fees and Expenses and Named Plaintiffs Case Contribution Award*

Defendant has agreed not to object to a motion by Class Counsel for an award of attorneys' fees and expenses in the amount of three million five hundred thousand dollars ($3,500,000.00) to Class Counsel. Defendant also will not oppose an application for a case contribution award not to exceed $5,000 to each named Plaintiff. The Court will consider whether to grant or deny these awards separate and apart from its consideration of the fairness, reasonableness, and adequacy of the settlement.

## LEGAL ARGUMENT

### I.  THE COURT SHOULD ENTER AN ORDER GRANTING PRELIMINARY APPROVAL OF THE BECK'S SETTLEMENT

To conclude the Settlement, the Federal Rules of Civil Procedure require that there be notice to the Settlement Class, a fairness hearing, and this Court's final approval. Settlement "has special importance in class actions with their notable uncertainty, difficulties of proof, and

length. Settlements of complex cases contribute greatly to the efficient utilization of scarce judicial resources, and achieve the speedy resolution of justice[.]" *Turner v. Gen. Elec. Co.*, No. 2:05-CV-186-FTM-99DNF, 2006 WL 2620275, at *2 (M.D. Fla. Sept. 13, 2006). For these reasons, "[p]ublic policy strongly favors the pretrial settlement of class action lawsuits." *In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir.1992).

"Approval of a class-action settlement is a two-step process." *Fresco v. Auto Data Direct, Inc.*, No. 03-cv-61063, 2007 WL 2330895, at *4 (S.D. Fla. May 14, 2007). Preliminary approval is the first step, requiring the Court to "make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms." *Id.* (citation omitted). In the second step, after notice to the class and time and opportunity for absent class members to object or otherwise be heard, the court considers whether to grant final approval of the settlement as fair and reasonable. *See id.*

The standard for preliminary approval of a class action settlement is not high — a proposed settlement will be preliminarily approved if it falls "within the range of possible approval" or, otherwise stated, if there is "probable cause" to notify the class of the proposed settlement and "to hold a full-scale hearing on its fairness[.]" *In re Mid-Atl. Toyota Antitrust Litig.*, 564 F. Supp. 1379, 1384 (D. Md. 1983) (quoting Manual for Complex Litigation § 1.46 at 62, 64–65 (5th ed. 1982). "Preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies, and the settlement falls within the range of reason." *In re Checking Account Overdraft Litig.*, 275 F.R.D. 654, 661 (S.D. Fla. 2011).

Here, the proposed settlement is the product of arm's-length negotiations before an experienced and respected mediator by counsel with significant experience in complex class action litigation, carries no "obvious deficiencies," and falls well within the range of reason. The Court should accordingly enter an order granting preliminary approval.

### A. The Settlement is the Product of Good Faith, Informed, and Arm's-Length Negotiations among Experienced Counsel.

At the preliminary approval stage, courts consider whether the proposed settlement appears to be "the result of informed, good-faith, arms'-length negotiation between the parties

and their capable and experienced counsel' and not 'the result of collusion . . . .'" *E.g.*, *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1340 (S.D. Fla. 2011). Courts begin by presuming good faith in the negotiating process. *See Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992) ("Absent evidence of fraud or collusion, such settlements are not to be trifled with."); Manual for Complex Litigation (Third) § 30.42) ("a presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel").

The settlement terms in this case are the product of significant give and take by the settling parties, and were negotiated at arm's length. The parties engaged in substantial settlement negotiations for months before the formal mediation before Ronald Ravikoff, Esq. on October 1, 2014, and thereafter had regular communications, negotiating first the terms of an initial term sheet and then a settlement agreement reflecting the final terms. Mr. Ravikoff has significant experience mediating complex commercial suits to resolution and his involvement alone weighs in favor of preliminary approval. *See, e.g.*, *In re Educ. Testing Serv. Praxis Principles of Learning & Teaching, Grades 7-12 Litig.*, 447 F. Supp. 2d 612, 619-20 (E.D. La. 2006) (use of court appointed special master to oversee mediation efforts evidenced the procedural fairness of the negotiating process); *In re WorldCom, Inc. ERISA Litig.*, 2004 WL 2338151, at *6 (S.D.N.Y. 2004) (fact that "[a] respected and dedicated judicial officer presided over the lengthy discussions from which this settlement emerged[]" belied any suggestion of collusion in the negotiating process).

The Parties' extensive negotiations were also informed by considerable discovery. The Parties have been actively litigating this matter for over a year and a half. The Parties produced over 28,000 documents and deposed corporate and class representatives, as well as other key personnel. The Parties have also engaged in significant motion practice, briefing the motion to dismiss, motions *in limine* including a motion to exclude expert testimony, and class certification, among others.

**B. The Settlement Provides Considerable Benefits to the Class and Falls Squarely within the Range of Reasonableness.**

The terms negotiated by the parties provide considerable benefits to the class, in terms of both monetary and injunctive relief, and fall well within the range of possible approval.

### i. Direct Monetary Relief

The Settlement provides that Settlement Class Members with claims supported by proof of purchase will be entitled to the following refunds:

- o   Six pack of 12 oz. bottles or cans: $.50 each
- o   Four pack of 16 oz. cans: $.50 each
- o   Twelve pack of 12 oz. bottles or cans: $1.00 each
- o   Fifteen pack of 12 oz. bottles or cans: $1.25 each
- o   Twenty pack of 12 oz. bottles: $1.75
- o   Individual bottle or can: $0.10 each

Reimbursements supported by proof of purchase will be capped at $50.00 per Settlement Class Household.

For claims not supported by proof of purchase, a Settlement Class Member will be entitled to the following refunds:

- o   Six pack of 12 oz. bottles or cans: $.50 each
- o   Four pack of 16 oz. cans: $.50 each
- o   Twelve pack of 12 oz. bottles or cans: $1.00 each
- o   Fifteen pack of 12 oz. bottles or cans: $1.25 each
- o   Twenty pack of 12 oz. bottles: $1.75
- o   Individual bottle or can: $0.10 each

Reimbursements not supported by proof of purchase will be capped at $12.00 per Settlement Class Household.

Courts routinely hold that settlements providing the class with a portion of the recovery sought in litigation are reasonable in light of the attendant risks of litigation. *See, e.g.*, *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 542–43 (approving recovery of $.20 per share where desired recovery was $3.50 a share and stating "the fact that a proposed settlement amounts to only a fraction of the possible recovery does not mean the settlement is unfair or inadequate[.]"). "Moreover, when settlement assures immediate payment of substantial amounts to class members, even if it means sacrificing speculative payment of a hypothetically larger amount years down the road, settlement is reasonable [when weighing the benefits of the settlement against the risks associated with proceeding in the litigation]." *Johnson v. Brennan*, No. 10-cv-4712, 2011 WL 4357376 (S.D.N.Y. Sept. 16, 2011) (internal quotation marks omitted).

Plaintiffs and the proposed class faced significant hurdles in litigating their claims to class certification and ultimate resolution, and the possible appeals of any of the Court rulings. Each Class Member now, however, stands to recover direct monetary and injunctive relief as a result of the settlement. The negotiated monetary recovery falls well within the range of reasonableness.

### ii.  Injunctive Relief

The Settlement also provides significant injunctive relief. Once approved, the Settlement requires that for a period of no less than five (5) years, and subject to all necessary regulatory approvals by appropriate governing agencies, Defendant will include either the phrase "Brewed in USA" or "Product of USA" on: a) Beck's Beer bottles substantially in the position and form recently approved by the TTB; b) Beck's Beer cans in its present position and form; c) the front and back of all Beck's Beer consumer-facing packages; and d) the "About Beck's" (http://becks.com/#/en/about/becks) page of the Beck's website.

### C.  The Settlement Saves the Class from Considerable Litigation Hurdles.

Any evaluation of the benefits of settlement must be tempered by the recognition that any compromise involves concessions by all settling parties. Indeed, "the very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes." *Officers for Civil Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 624 (9th Cir. 1982) (internal quotation

marks omitted). At bottom, had litigation continued, Plaintiffs and Class Members would have faced the risk of not prevailing on their claims.

Plaintiffs and the Class also faced hurdles in certifying the matter as a class action. For example, A-B argued that there were differences in the locations, the amounts, and the reasons for which consumers purchased Beck's Beer, and although Plaintiffs' counsel vigorously argued otherwise, Defendant argued that these differences and other issues precluded certification. Even if Plaintiffs were successful in certifying a class, Defendant would have vigorously contested the merits of Plaintiffs' claims.  The proposed settlement saves Plaintiffs and the proposed Class from facing these substantial obstacles, and eliminates the significant risk that they would recover nothing at all after several more years of litigation.

### D. Counsel Believes the Settlement is Reasonable and in the Class's Best Interest.

Finally, significant weight should be attributed to the belief of experienced counsel that the negotiated settlement is in the best interest of the class. *See, e.g.*, *In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions*, 410 F. Supp. 659, 666 (D. Minn. 1974) (the recommendation of experienced counsel is entitled to great weight). Plaintiffs' counsel here have litigated numerous class actions in state and federal courts and fully support the settlement.  For example, in this Court, Plaintiffs' counsel certified a class of Florida homeowners relating to the practice of force-placed insurance in *Williams v. Wells Fargo Bank, N.A.*, No. 11-cv-21233, 280 F.R.D. 665 (S.D. Fla. Feb. 21, 2012), and procured preliminary and/or final approval of a number of nationwide class action settlements in similar cases against various banks and insurers. *See Saccoccio v. JPMorgan Chase Bank, N.A.*, 13-cv-21107 (S.D. Fla.) (D.E. 130); *Fladell v. Wells Fargo Bank, N.A.*, No. 13-cv-60721 (S.D. Fla.), *Diaz v. HSBC Bank (USA), N.A.*, No. 13-cv-21104 (S.D. Fla.), *Hamilton v. SunTrust Mortgage, Inc.*, No. 13-cv-60749, *Hall v. Bank of America, N.A.*, No. 12-cv-22700 (S.D. Fla.), *Braynen v. Nationstar Mortgage LLC*, No. 14-cv-20726 (S.D. Fla.); and *Lee v. Ocwen Loan Servicing, LLC*, No. 14-cv-60649 (S.D. Fla.).  *See also Francisco v. Numismatics Guaranty Co.*, case no. 06-61677-CIV-Martinez, 2008 WL 649124 (S.D. Fla. Jan. 21, 2008) (class counsel achieved final approval of a nationwide class of purchasers of coin appraisal services);  *LiPuma v. American Express,* 406 F. Supp. 2d 1298

(S.D. Fla. 2005) (class counsel achieved final approval for a nationwide class of credit card users).   Counsel for Plaintiffs also used their experience from their nationwide class action settlement in an earlier case, involving Kirin beer that involves issues similar to this case.   *See Suarez v. Anheuser-Busch Companies, LLC*, Case No. 13-033629 CA 01 (Fla. 11th Jud. Cir.). That settlement was overwhelmingly approved by the class, with no opt outs and only two objections nationwide. *See* Comp. Exhibit 5, attached.   Based on this experience, the substantial information learned in the course of the litigation, and decades of experience litigating consumer class action lawsuits, it is Plaintiffs' counsel's informed opinion that the settlement is fair, reasonable, adequate, and in the best interests of the Class.

## II.      THE COURT SHOULD CERTIFY THE PROPOSED SETTLEMENT CLASS.

The Settlement Class here meets the requirements of numerosity, commonality, typicality and adequacy of representation required by Rule 23(a) of the Federal Rules of Civil Procedure, as well as the requirements of Rule 23(b)(3) and 23(b)(2).

### A.  The Settlement Class Meets the Four Requirements of Rule 23(a).

Rule 23(a) sets forth four prerequisites for class certification:  numerosity, commonality, typicality, and adequacy of representation.  *Cheney v. Cyberguard Corp.,* 213 F.R.D. 484,489 (S.D. Fla. 2003); *see* Fed. R. Civ. P. 23(a).  The policies underlying the class action rule dictate that Rule 23(a) should be liberally construed.  *See Walco Invs., Inc. v. Thenen*, 168 F.R.D. 315, 323 (S.D. Fla. 1996).  Plaintiff satisfies all four requirements as set forth below.

"It is well established that [a] class may be certified solely for purposes of settlement [if] a settlement is reached before a litigated determination of the class certification issue." *In re Checking Account Overdraft Litig.*, 275 F.R.D. at 659 (internal quotations omitted; brackets in original). "In deciding whether to provisionally certify a settlement class, a court must consider the same factors that it would consider in connection with a proposed litigation class[,]" save manageability, "since the settlement, if approved, would obviate the need for a trial." *Id.* However, "[t]he standards of Rule 23 for class certification are more easily met in the context of settlement than in the context of contested litigation." *Horton v. Metro. Life Ins. Co.,* No. 93-1849-CIV-T-23A, 1994 U.S. Dist. LEXIS 21395, at *15 (M.D. Fla. Oct. 25, 1994).

### i.   The Settlement Class is Sufficiently Numerous.

Rule 23(a)(1) requires Plaintiffs to show that the proposed class is so numerous that joinder of all members would be impracticable. Here, the number of class members is in the thousands and thus well exceeds the minimum threshold.

### ii.   There Are Questions of Law and Fact Common to All Class Members.

Rule 23(a)(2) requires class action plaintiffs to identify questions of law or fact common to the proposed class.  *See* Fed. R. Civ. P. 23(a)(2).   "The threshold for commonality is not high." *Cheney,* 213 F.R.D. at 490.   Commonality requires a showing that the class members' claims "depend on a common contention" and that the class members have "suffered the same injury."  *Wal-Mart Stores, Inc. v. Dukes,* 131 S. Ct. 2541, 2551 (2011).   "[F]or purposes of Rule 23(a)(2), even a single [common] question will do[,]" *id.* at 2556 (brackets in original), and "where a common scheme of conduct has been alleged, the commonality requirement should be satisfied." *Checking Overdraft,* 2011 WL 3158998, at *4.

Plaintiffs' claims here depend on the common contention that Defendant deceptively labeled, packaged, and marketed Beck's Beer to lead consumers to believe that Beck's Beer was imported from Germany when in fact Beck's Beer is manufactured in the United States. All members of the putative class were allegedly injured in the same manner: they were deceived by Defendant's conduct, and they allegedly paid a premium for Beck's Beer based on that deception.

While only one question of law *or* fact is required to establish commonality, several common questions capable of class-wide resolution—or that would "generate common answers"—arise from Plaintiffs' allegations, including:

> a.   Whether Defendant's labeling, packaging, and marketing of Beck's Beer is deceptive;
>
> b.   Whether Defendant engaged in unfair and deceptive trade practices when labeling, packaging, and marketing Beck's Beer; and
>
> c.   Whether Defendant was unjustly enriched as a result of its deceptive conduct.

These common questions are capable of class-wide resolution. *See Williams,* 2012 WL 566067, at *5 (finding commonality where "all members of the proposed class were injured in the same manner").

### iii.   Plaintiffs' Claims are Typical of Those of the Class.

Rule 23(a)(3) requires Plaintiffs to demonstrate that their claims are typical of those held by the proposed class.  *See* Fed. R. Civ. P. 23(a)(3).  Typicality and commonality are related, with commonality referring to "the group characteristics of the class as a whole" and typicality focusing on the named plaintiff's claims in relation to the class.  *Terazosin Hydrochloride Antitrust Litig.,* 220 F.R.D. at 686 n.23.  "Any atypicality or conflict between the named Plaintiff's claims and those of the class must be clear and must be such that the interests of the class are placed in significant jeopardy." *Cheney,* 213 F.R.D. at 491.

Plaintiffs' claims arise from the same alleged course of conduct and are based on the same legal theories as those brought on behalf of the proposed class.  For example, the alleged deception to which each of the class representatives was exposed — that Beck's Beer was a German import instead of a domestic beer brewed in the United States — was no different than the alleged deception to which all of the Class Members allegedly were exposed. Because Plaintiffs' claims are based on alleged injuries caused by conduct allegedly affecting the class as a whole, their claims easily satisfy the typicality requirement. *See, e.g., Williams*, 2012 WL 566067, at *6 (holding that the named plaintiffs were typical of the class where they were charged and paid an inflated price based upon the same alleged deceptive conduct).

Moreover, Plaintiffs' claims are based on the same legal theories of the violation of state consumer protection laws and unjust enrichment. This identity of claims and legal theories between Plaintiffs and the class satisfies the typicality requirement set forth in Rule 23(a)(3).

### iv.   Plaintiffs will Fairly and Adequately Represent the Interests of the Class.

To satisfy Rule 23(a)(4), the representative parties must "fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(a)(4).  This requirement is satisfied when the class representatives have (1) no interests antagonistic to the rest of the class and (2) counsel who are

"qualified, experienced, and generally able to conduct the proposed litigation." *Cheney*, 213 F.R.D. at 495. "Adequate representation is presumed in the absence of contrary evidence." *Association for Disabled Ams., Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 464 (S.D. Fla. 2002).

The attorneys who seek to represent the Class in this case are highly qualified to serve as class counsel, have served as lead and co-lead counsel in some of the largest class actions in the country, and are well respected in the communities that they serve. Copies of the firm resumes are attached hereto as composite Exhibit 6. "[T]he single most important factor considered by the courts in determining the quality of the representative's ability and willingness to advocate the cause of the class has been the caliber of the plaintiff's attorney." 1 Newberg on Class Actions 3d (1992) § 3.24 at 3-133 n. 353.; *see also Griffin v. Carlin*, 755 F. 2d 1516, 1533 (11th Cir. 1985) (inquiry as to adequacy of plaintiffs "involves questions of whether plaintiffs' counsel are qualified, experienced, and generally able to conduct the proposed litigation, and of whether plaintiffs have interests antagonistic to those of the rest of the class."). The firms representing Plaintiffs have overseen the litigation strategy, the briefing and argument of motions, and the vigorous pursuit of discovery.

Plaintiffs in this action also do not have interests that are antagonistic to those held by the rest of the class. There has been no evidence that would in any way show that Plaintiffs do not have the same interests as the other class members, or are in any way antagonistic to the class. Thus, the Plaintiffs have satisfied the adequacy requirement of Rule 23(a)(4).

### B. The Settlement Class Meets the Requirements of Rules 23(b)(3) and 23(b)(2).

In addition to meeting the four requirements of Rule 23(a), a plaintiff seeking class certification must satisfy one of the subsections of Rule 23(b). Plaintiffs here seek certification under Rules 23(b)(3) and 23(b)(2).

### i. Rule 23(b)(3)

Certification is appropriate under Rule 23(b)(3) if (1) common questions of law or fact predominate over those affecting only individual class members and (2) class treatment is superior to other adjudication methods. See Fed. R. Civ. P. 23(b)(3). The latter question

implicates manageability concerns, which do not bear on certification of a settlement class. *See Checking Account Overdraft Litig.*, 275 F.R.D. at 659.

For common questions of law or fact to predominate over individualized questions, "the issues in the class action that are subject to generalized proof, and [are] thus applicable to the class as a whole, must predominate over those issues that are subject only to individualized proof." *Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. at 694. "Common questions need only predominate; they need not be dispositive of the litigation." *Id.* "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Checking Overdraft Litig.*, 2011 WL 3158998, at *7.

Here, "irrespective of the individual issues which may arise, the focus of the litigation concerns the alleged common course of unfair conduct embodied in [Defendants'] scheme to" allegedly deceptively sell and market Beck's Beer as German, when it is a domestic beer. *Checking Overdraft Litig.,* 2011 WL 3158998, at *7. Proof of this alleged scheme may be substantiated by common evidence that would remain the same regardless of class size or composition. Common issues would predominate over any individual issue that might arise.

Moreover, a comprehensive resolution of the Settlement Class members' claims in this action would be far superior to litigating each of their claims separately. "Since the damage amounts allegedly owed to each individual [consumer] are relatively low—especially as compared to the costs of prosecuting [these] types of claims . . . —the economic reality is that many of the class members would never be able to prosecute their claims through individual lawsuits." *Williams*, 280 F.R.D. at 675. Even if the class members were able individually to prosecute their claims, "[s]eparate actions by each of the class members would be repetitive, wasteful, and an extraordinary burden on the courts." *Kennedy v. Tallant*, 710 F.2d 711, 718 (11th Cir. 1983). Accordingly, the Court should certify the proposed class.

The predominant issues raised by Plaintiffs and the Class, all susceptible to common proof, include the allegedly deceptive A-B conduct in labeling, packaging, and marketing Beck's Beer as a German imported beer; and A-B's monetary gains as a direct result of that deception.

Moreover, courts have certified claims under FDUTPA, holding that individual proof of reliance is not required in class actions under FDUTPA. *See, e.g.*, *Turner Greenberg Assocs. v. Pathman*, 885 So. 2d 1004 (Fla. 4th DCA 2004) ("[A] demonstration of reliance by an individual consumer is not necessary in the context of FDUTPA."); *Fitzpatrick v. General Mills, Inc.*, 263 F.R.D. 687, 693 (S.D. Fla. 2010) (under FDUTPA, a plaintiff "may rely on any evidence concerning that message, including advertisements to which he or she was not personally exposed."); *see also Nelson v. Mead Johnson Nutrition Co.*, 270 F.R.D. 689, 692 & n.2 (S.D. Fla. 2010) (noting that deceptive marketing may injure consumers even without individual reliance upon misrepresentations); *Roggenbuck Trust v. Dev. Res. Group, LLC*, 505 F. App'x 857, 862 (11th Cir. 2013) ("a plaintiff need not prove [actual] reliance on the allegedly false statement to recover damages under FDUPTA, but rather a plaintiff must simply prove that an objective reasonable person would have been deceived.") (alteration in original); *State, Office of the Attorney Gen., Dep't of Legal Affairs v. Commerce Commercial Leasing, LLC*, 946 So. 2d 1253, 1258 (1st DCA 2007) ("A deceptive or unfair trade practice constitutes a somewhat unique tortious act because, although it is similar to a claim of fraud, it is different in that, unlike fraud, a party asserting a deceptive trade practice claim need not show actual reliance on the representation or omission at issue."); *Latman v. Costa Cruise Lines, N.V.*, 758 So. 2d 699, 703 (Fla. 3d DCA 2000) (holding that consumers could recover for false port charges even where "the consumers paid no attention to the sales tax amount").

### ii.   Rule 23(b)(2)

Rule 23(b)(2) provides for class certification where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  The term "generally applicable" has been interpreted to mean that the defendant "has acted in a consistent manner towards members of the class so that his actions may be viewed as part of a pattern of activity, or to establish a regulatory scheme, to all members."  *Leszczynski v. Allianz Ins. Co.*, 176 F.R.D. 659, 673 (S.D. Fla. 1997) (internal citations omitted).

Here, due to its use of uniform labels and packaging, A-B allegedly engaged in a standard and uniform practice of false, misleading and deceptive packaging and advertising, directed toward the Class as a whole.  Therefore, certification under Rule 23(b)(2) is appropriate.

### III.   THE COURT SHOULD APPOINT THE UNDERSIGNED FIRMS AS CLASS COUNSEL.

The Parties have named the undersigned firms as Class Counsel.  Undersigned counsel have significant experience in litigating complex commercial litigation including class actions. *See* § I.D*, supra.*  Because undersigned counsel are highly qualified and determined to represent the best interests of the Class, the Court should appoint them Class Counsel moving forward.

## CONCLUSION

Plaintiffs respectfully request the Court enter an order certifying the proposed class for purposes of settlement, preliminarily approving the terms of settlement, directing that Notice be given to the Class Members in the forms submitted with the Settlement Agreement, and setting a final fairness hearing at least 90 days after entry of the order.

Respectfully submitted,

Robert W. Rodriguez, Esq.
RobertWRodriguez@GMail.Com
**ROBERT W. RODRIGUEZ, P.A.**
66 West Flagler Street, Suite 1002
Miami, Florida 33130
Telephone:  (305) 444-1446
Facsimile:  (305) 907-5244

Lance A. Harke, P.A.
lharke@harkeclasby.com
Howard M. Bushman, Esq.
hbushman@harkeclasby.com
**HARKE CLASBY & BUSHMAN LLP**
9699 NE Second Avenue
Miami Shores, Florida 33138
Telephone:     (305) 536-8220
Facsimile:     (305) 536-8229

/s/ Thomas A. Tucker Ronzetti
Thomas A. Tucker Ronzetti, Esq.
tr@kttlaw.com
Adam M. Moskowitz, Esq.
amm@kttlaw.com
Tal J. Lifshitz, Esq.
tjl@kttlaw.com
**KOZYAK, TROPIN & THROCKMORTON, LLP**
2525 Ponce de Leon Blvd., 9th Floor
Coral Gables, FL 33134
Telephone:  (305) 372-1800
Facsimile:   (305) 372-3508
*Counsel for Plaintiffs*

John Campbell, Esq.
john@campbelllawllc.com
**CAMPBELL LAW, LLC**
1500 Washington Avenue,
Suite 100
St. Louis, MO 63103
(314)588-8101
*Counsel for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this <u>18</u> day of June, 2015, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing documents is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic filing.

/s/ Thomas A. Tucker Ronzetti

## SERVICE LIST

Stanley H. Wakshlag
swakshlag@knpa.com
201 South Biscayne Boulevard, Suite 1100
Miami, FL 33131-4327
Phone: (305) 373-1000
Fax: (305) 372-1861

*Attorneys for Defendant Anheuser-Busch Companies, LLC*

Edward M. Crane
edward.crane@skadden.com
David R. Pehlke
david.pehlke@skadden.com
Brandon R. Keel
brandon.keel@skadden.com
**SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP**
155 North Wacker Drive
Chicago, IL 60606
Phone: (312) 407-0700
Fax: (312) 407-0411

*Attorneys for Defendant Anheuser-Busch Companies, LLC*