**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 13-cv-23656-JJO**

FRANCISCO RENE MARTY,
SETH GOLDMAN, and
FERNANDO MARQUET
on behalf of themselves and all others
similarly situated,

          Plaintiffs,

v.

ANHEUSER-BUSCH COMPANIES, LLC,

          Defendants.

_____/

**PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS**
**ACTION SETTLEMENT, APPLICATION FOR SERVICE AWARDS, CLASS**
**COUNSEL'S APPLICATION FOR ATTORNEYS' FEES AND EXPENSES,**
**AND INCORPORATED MEMORANDUM OF LAW**

Class Representative Plaintiffs and Settlement Class Counsel hereby request entry of an order granting final approval of the class action settlement as set forth in the parties' Settlement Agreement and Release, which was preliminarily approved by this Court on June 23, 2015.

## INTRODUCTION

After a hard-fought litigation in which fact and expert discovery was largely completed and class certification and motions in *limine* were fully briefed and argued, Plaintiffs and Defendant Anheuser-Busch Companies, LLC ("A-B") (collectively the "Parties") have negotiated a settlement that provides substantial relief to purchasers of Beck's Beer,[1] a domestically brewed beer that Plaintiffs allege has been falsely advertised and marketed as an import by A-B throughout the United States. The Parties have executed a Settlement Agreement and Release ("Settlement Agreement" (DE 149-1)) and agreed upon the form of proposed Notice to Class Members.[2]

To date, no member of the Class has objected to the settlement, and there have been only a handful of opt-outs – overwhelming class support that shows the settlement's fairness. Under the Settlement Agreement, A-B has agreed, among other things, to offer partial refunds to Settlement Class Members for Beck's Beer in varying amounts, depending upon the product purchased and whether the claim is supported by proof of purchase. The Settlement Agreement also contains important injunctive relief which achieves greater disclosure of A-B's practices concerning Beck's Beer, by requiring the inclusion of "Brewed in USA" or "Product of USA" on the label and packaging of Beck's Beer.  Notice of this Settlement via a plan approved by the Court was disseminated to all Class Members by, among other things, (i) published notice, (ii) internet notice, (iii) establishment of a settlement website, and (iv) through direct mail or email (along with a Claim Form) to currently available addresses that have been provided to A-B through the Beck's or A-B website or via email or telephone by potential Beck's Beer consumers.

---

[1] "Beck's Beer" refers to all bottles or cans of Beck's Pilsner, Beck's Dark, Beck's Light, and/or Beck's Oktoberfest brewed and sold in the United States by Defendant Anheuser-Busch Companies, LLC.

[2] Unless otherwise noted, all capitalized terms used herein have the same definition as that provided in the Settlement Agreement.

Undersigned counsel are well positioned to evaluate and negotiate this settlement because they have been actively litigating against A-B in this Action, and in a related state-court case concerning Kirin Beer, for almost two years.  Plaintiffs' counsel investigated and supported Plaintiffs' claims through extensive discovery, including the review of thousands of pages of documents, and numerous depositions of key A-B personnel as well as expert depositions. Nonetheless, Plaintiffs and the Class faced significant hurdles in litigating their claims.  Given the immediate and substantial benefits the settlement will provide to the Class, there can be no question that the terms of the proposed Settlement Agreement are fair, reasonable, and adequate and should receive the Court's approval.

Additionally, Class Counsel are asking the Court to award them $3.5 million in fees and expenses, an amount that was negotiated only after all class benefits had been secured, and is payable by A-B *in addition to* the benefits to the Class.  Such a fee would amount to only 10.9% to 15.3% of the monetary recovery to the Class, and is easily within the parameters established by the Eleventh Circuit.

Accordingly, Plaintiffs respectfully request that the Court grant final approval of the Settlement Agreement, and approve the application for attorneys' fees and Representative Plaintiffs' service awards.

## FACTUAL BACKGROUND

1. ### The Beck's Litigation and Mediation

Plaintiff Marty began the litigation by filing the Action on October 9, 2013, seeking damages, injunctive relief and declaratory relief. Plaintiff Marty alleged that Beck's Pilsner had been deceptively marketed as being brewed in Germany, when in fact it was brewed in the United States. The Action asserted a claim for unjust enrichment on behalf of a nationwide class and a claim for violation of Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201, *et seq.* "FDUTPA", on behalf of a Florida subclass.  The Complaint was amended on March 31, 2014, adding Plaintiffs Goldman and Marquet, as well as claims under New York General Business Law § 349, California Unfair Competition Law, Business and Professions Code § 17200, and California Consumer Legal Remedies Act, Civil Code § 1750.  The Amended Complaint sought certification of a nationwide unjust enrichment class and three state subclasses for Florida, New York, and California for the consumer protection act claims. The Action alleged that A-B's advertising, marketing and selling practices regarding Beck's Beer were

2

deceptive, and sought a change to the marketing practices of A-B and the packaging of Beck's Beer.

The Parties engaged in substantial discovery. There were twelve depositions taken of the Parties, non-parties, and expert witnesses. (Exhibit 1--Declaration of T. Ronzetti ("Ronzetti Decl."), at ¶ 8.) The Parties litigated discovery issues and responded to interrogatories, and over 28,000 documents were produced. *Id.* The Plaintiffs retained experts to evaluate marketing practices and damages calculations. *Id.*

Defendant A-B moved to dismiss the Amended Complaint in its entirety. After extensive briefing and oral argument, the motion was largely denied on September 5, 2015, and Plaintiffs filed a Second Amended Complaint on September 19, 2014.

During the pendency of this Action, Counsel for Plaintiffs litigated and ultimately reached a nationwide class action settlement, including both monetary and injunctive relief, in a related state-court case involving Kirin beer. *See Suarez v. Anheuser-Busch Companies, LLC*, Case No. 13-033629 CA 01 (Fla. 11th Jud. Cir.). That settlement was reached only within a month of trial and with the assistance of retired Judge Gerald Cope serving as mediator.

This case was also resolved only at the brink of a litigation milestone, class certification. Plaintiffs' Motion for Class Certification was fully briefed, along with various motions in *limine* directed at the expert witnesses. These motions were argued before the Court on April 16, 2015, and after the hearing, the Court ordered the Parties to mediation. The Parties conducted a mediation with a highly respected commercial litigator, Ronald Ravikoff, Esq., on May 26, 2015. (Ronzetti Decl. at ¶¶ 8, 19.) Before, during, and after the mediation, the Parties engaged in a series of discussions regarding a settlement of the Action, including substantial arm's-length negotiations. *Id.* The result was a settlement of the Action in its entirety, culminating with this Settlement Agreement.

## 2.   The Settlement Terms and Agreement

### A.   *The Proposed Class*

The Settlement Agreement provides relief to all consumers who purchased bottles and/or cans of Beck's Beer brewed and sold by A-B in the United States for personal, family, or household purposes and not for re-sale from May 1, 2011 up to and including June 23, 2015. Excluded from the Settlement Class are all persons who validly opt out of the settlement in a timely manner (for purposes of damages claims only); counsel of record (and their respective law

firms) for the Parties; A-B and any of its parents, affiliates, subsidiaries, and all of its respective employees, officers, and directors; and the presiding judge in the Action or judicial officer presiding over the matter, and all of their immediate families and judicial staff.

### B. *Monetary and Other Relief*

The Settlement Agreement affords the Class Members monetary relief, and provides injunctive relief to assist the Class Members. Specifically, the Settlement Agreement requires A-B to offer partial refunds to Settlement Class Members for Beck's Beer in varying amounts that are based upon whether the claims are supported by proof of purchase.   Settlement Class Members will be entitled to the following refunds:

- o  Six pack of 12 oz. bottles or cans: $.50 each
- o  Four pack of 16 oz. cans: $.50 each
- o  Twelve pack of 12 oz. bottles or cans: $1.00 each
- o  Fifteen pack of 12 oz. bottles or cans: $1.25 each
- o  Twenty pack of 12 oz. bottles: $1.75
- o  Individual bottle or can: $0.10 each

Reimbursements for claims supported by proof of purchase are capped at $50.00 per Settlement Class Household, while reimbursements for claims not supported by proof of purchase are capped at $12.00 per Settlement Class Household.

Additionally, the Settlement Agreement provides meaningful injunctive relief. Specifically, the injunction provides that for a period of no less than five years, and subject to all necessary regulatory approvals by appropriate governing agencies, A-B must include the phrase "Brewed in USA" or "Product of USA" on (1) Beck's Beer bottles substantially in the position and form recently approved by the Alcohol, Tobacco Tax & Trade Bureau ("TTB"); (2) Beck's Beer cans in its present position and form; (3) the front and back of all Beck's Beer consumer-facing packages; and (4) the "About Beck's" (http://becks.com/#/en/about/becks) page of the Beck's website.  The Parties agreed that the type face, type size, position, color, and setoff of the disclosures will be sufficient to inform a reasonable consumer of the place where Beck's Beer is brewed while not unduly impairing A-B's marketing.

4

**C.  *Release of Claims against Defendant***

In exchange for the settlement relief, Settlement Class Members agreed to release A-B and all related persons and entities from all claims relating to this Action, as specifically set forth in the Settlement Agreement.

**D.  *Class Counsel Fees and Expenses and Named Plaintiffs Case Contribution Award***

The Parties agreed that A-B would pay, beyond and separate from the Class's benefits, up to $3.5 million in attorney's fees and expenses and service awards of $5,000 to each Class Representative Plaintiff, without objection. The Parties also agreed that the consideration of whether to grant or deny these requested sums is to be separate and apart from the Court's consideration of the fairness, reasonableness, and adequacy of the settlement.

**3.    Preliminary Approval, Notice and Settlement Administration**

The Court preliminarily approved the terms of the Settlement Agreement and certified the proposed Settlement Class on June 23, 2015. *See* Order Granting Prelim. App. (D.E. 152) The Court preliminarily found that "the Settlement Agreement (1) was reached after arm's-length negotiations before a distinguished mediator, and after substantial factual and legal analyses by the parties; and (2) provides substantial benefits to all class members, especially in light of the risks associated with this litigation." *Id.* at 3.  The Court also approved the proposed Class Notice and notice plan, finding that it meets the requirements of Rule 23 of the Federal Rules of Civil Procedure, and provides the best notice practicable under the circumstances. *Id.* at 3. The Court ordered A-B to begin dissemination of the Class Notice within 30 days. *Id.*

Under the Settlement Agreement, the deadline for filing claims is November 20, 2015. The Settlement Administrator, Kurtzman Carson Consultants ("KCC"), obtained three computerized lists of 42,478 names with addresses or emails, characterized as potential Beck's consumers, i.e., consumers who purchased bottles or cans of Beck's Pilsner, Beck's Dark, Beck's Light, and/or Beck's Oktoberfest brewed and sold in the United States for personal, family, or household purposes and not for re-sale during the Class Period. (Exhibit 2-- Declaration of Jeffrey Gyomber re: Notice Procedures (("KCC Decl.") at ¶ 7.) KCC updated these addresses using the National Change of Address system. (*See id.* at ¶ 8.) KCC also removed records that were duplicative or had incomplete or invalid addresses, resulting in 40,039 names and addresses (with 15,852 valid email addresses) on the potential Beck's consumers. (*See id.* at ¶ 9.) On or before July 23, 2015, a Notice Packet was mailed by First

5

Class postage to all 24,187 potential Beck's consumers, and emails were delivered to all 15,852 valid email addresses. (*See id.* at ¶¶ 14, 15.)

On July 23, 2015, KCC initiated an internet banner ad campaign, and on or before August 27, 2015, KCC caused the Summary Notice to be published in the August 27, 2015 issue of Rolling Stone and the August 31, 2015 issue of ESPN The Magazine. (*See id.* at ¶¶ 16, 17.) KCC also established and administered an Interactive Voice Response system to provide information about the settlement and to record requests for Notice Packets (which was supplemented with an option to speak with a live operator or staff members trained in the details of the settlement), and a website (http://www.BecksBeerSettlement.com/) to provide information about the settlement and to allow Class Members to download copies of the Claim Form and Notice. (*See id.* at ¶¶ 10, 11, 12.) Moreover, the settlement has garnered a significant amount of media attention, with coverage of the settlement occurring in the following outlets:

- The National Law Review
- The Wall Street Journal
- Law 360
- BloombergBusiness
- CBSPhilly
- CBS This Morning
- CBS News
- CNBC
- CNN Money
- NPR
- Drinks Business Review
- Agenda—A Financial Times Service
- Fortune
- Fox News
- Great Beer Now
- Just Drinks
- Nasdaq
- St. Louis Post-Dispatch

- Top Class Actions
- The Daily Business Review
- USA Today

(*See* Ronzetti Decl.  at ¶ 26.)

The deadline to opt-out out of the damages portion or to object to the Settlement Agreement is September 29, 2015.  As of the date of this Motion, no objections have been filed and only three requests to be excluded from the settlement have been received.[3] (*Id.* at ¶ 20.)

## LEGAL ARGUMENT

### I.     THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT.

Settlement "has special importance in class actions with their notable uncertainty, difficulties of proof, and length.  Settlements of complex cases contribute greatly to the efficient utilization of scarce judicial resources, and achieve the speedy resolution of justice[.]" *Turner v. Gen. Elec. Co.*, No. 2:05-CV-186-FTM-99DNF, 2006 WL 2620275, at *2 (M.D. Fla. Sept. 13, 2006) (citation omitted).  For these reasons, "there exists an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex." *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1314 (S.D. Fla. 2005) (citation omitted).

On final approval, after notice to the class and time and opportunity for absent class members to object or otherwise be heard, the Court considers whether the settlement "is fair, adequate, and reasonable and is not the product of collusion between the parties." *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984) (citation omitted); Fed. R. Civ. P. 23(e).  The Court is "not called upon to determine whether the settlement reached by the parties is the best possible deal, nor whether class members will receive as much from a settlement as they might have recovered from victory at trial." *In re Mex. Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1014 (N.D. Ill. 2000) (citations omitted).  Instead, courts consider the following factors: (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense and duration of litigation; (3) the stage of proceedings at which the settlement was achieved and the amount of

---

[3] Nationwide consumer class litigation often results in lawyer-driven objections in an effort to hold up the class settlement solely for a payoff.  The Kirin settlement resulted in such objections, which Class Counsel defeated in litigation.  (Ronzetti Decl. at ¶ 24.)  Such objections may arise in this case as well.  That, however, would not diminish what is clearly overwhelming acceptance of the Settlement by the Class Members with legitimate motives.

discovery completed; (4) the probability of the plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of class counsel, class representatives, and the substance and amount of opposition received. *Leverso v. SouthTrust Bank of Ala., N.A.*, 18 F.3d 1527, 1530 n.6 (11th Cir. 1994); *see also Faught v. Amer. Home Shield Corp.*, 668 F.3d 1233, 1240 (11th Cir. 2012); *Bennett*, 737 F.2d at 986. "In assessing these factors, the Court 'should be hesitant to substitute ... her own judgment for that of counsel.'" *Lipuma*, 406 F. Supp. 2d at 1315 (quoting *In re Smith*, 926 F.2d 1027, 1028 (11th Cir. 1991)). An analysis of these factors in the instant Action compels the conclusion that the Court should approve the proposed Settlement Agreement.

### A. The Beck's Settlement Is the Product of Good Faith, Informed, and Arms'-Length Negotiations among Experienced Counsel.

The first factor that a Court considers in determining whether to grant final approval of a Settlement Agreement is whether the settlement was obtained by fraud or collusion among the parties and their counsel. Courts rely on the presumption of good faith in the negotiating process. *See Hemphill v. San Diego Ass'n of Realtors, Inc.*, 225 F.R.D. 616, 621 (S.D. Cal. 2004) ("the courts respect the integrity of counsel and presume the absence of fraud or collusion in negotiating the settlement").  The settlement terms here are the product of significant give and take by the Parties, and were negotiated at arms' length. (Ronzetti Decl. at ¶ 19.) The Parties engaged in substantial settlement negotiations for months before the formal mediation before Mr. Ravikoff on May 26, 2015 and had regular communications, negotiating first the terms of an initial term sheet and then a Settlement Agreement reflecting the final terms. Mr. Ravikoff has significant experience mediating complex commercial suits to resolution and his involvement alone weighs in favor of approval. *See, e.g.*, *Poertner v. Gillette Co.*, 14-13882, 2015 WL 4310896, at *6 (11th Cir. 2015) (affirming approval of class action settlement and finding objector's allegation of self-dealing "is belied by the record: the parties settled only after engaging in extensive arms-length negotiations moderated by an experienced, court-appointed mediator"); *Nelson v. Mead Johnson & Johnson Co.*, 484 Fed. Appx. 429, 435 (11th Cir. 2012) (finding no collusion where "the settlement agreement was the result of extensive arms-length negotiations moderated by a court-appointed mediator"); *Lee v. Ocwen Loan Servicing, LLC*, No. 14-CV-60649, at 25-26 (S.D. Fla. September 14, 2015) (attached as Exhibit 3) (approving settlement and noting use of a highly respected mediator supported conclusion that negations

were not the product of collusion); *Hamilton v. SunTrust Mortg. Inc.*, 13-60749-CIV, 2014 WL 5419507, at *2 (S.D. Fla. 2014) (fact that settlement occurred "only after the parties mediated over a period of months with a nationally recognized and well respected mediator" supported approval of class action settlement).

The Parties' extensive negotiations were also informed by considerable discovery. The Parties have been actively litigating this matter for almost two years. The Parties have produced over 28,000 documents and deposed corporate and class representatives, as well as other key A-B personnel. Litigation of Plaintiffs' claims was also adversarial, and in the almost two years during which this Action and the *Kirin* case were pending, the parties advocated their positions zealously. (Ronzetti Decl. at ¶¶ 5, 8, 10.) The Parties have also engaged in significant motion preparation, briefing a motion to dismiss, motions in *limine* including a motion to exclude expert testimony, and class certification, among others. *Id.* The adversarial nature of the proceedings confirms the absence of fraud or collusion. *See, e.g., Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 693 (N.D. Ga. 2001) (there was "no doubt that th[e] case ha[d been] adversarial, featuring a high level of contention between the parties").

**B.  The Issues Presented Were Highly Complex, and Settlement Approval Will Save the Class Years of Extremely Costly Litigation in this Court and on Appeal.**

This case involves complex legal claims and defenses brought on behalf of over a million class members, and includes nationwide common law, quasi-contractual and consumer protection statute claims from three different states. The underlying facts of the case required interpreting complicated factual details such as differences in the locations, amounts, and reasons for which consumers purchased Beck's Beer, and the need for experts in the fields of marketing and economics.  (Ronzetti Decl. at ¶¶ 7, 8, 12.)  Legally, the case involves complex state law claims, as well as sophisticated defenses. Defendant A-B responded with challenging arguments. Among others, A-B argued Class Members were not ascertainable; that Plaintiffs lacked standing to pursue injunctive relief and failed to state a claim; and that A-B had adequately disclosed Beck's Beer's background. *Id.*

Litigating these claims would have undoubtedly proven difficult and consumed significant time, money, and judicial resources. As mentioned, the litigation has been pending for nearly two years. Without a settlement, the case would have likely continued for at least another two to three years, and would have involved a trial, post-trial motions, and an appeal. (Exhibit 4-

-Declaration of T. Scott (("Scott Decl.") at ¶ 17.) Even if Plaintiffs would have ultimately prevailed (which A-B contests), the win for Class Members would likely have come only after years of trial and appellate proceedings and the expenditure of significant funds by both Parties. *See, e.g., Lee*, No. 14-CV-60649, at 21 (attached as Exhibit 3) (fact that any success in litigation "would likely have bourne fruit for the Class only after years of trial and appellate proceedings and the expenditure of millions of dollars by both sides" was a factor supporting approval of settlement); *Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 694 (S.D. Fla. 2014), *appeal dismissed* (Oct. 15, 2014) (fact that "absent settlement, [the parties] would have had to expend significant resources in litigating a protracted trial and appeal" was a factor supporting approval); *Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1381 (S.D. Fla. 2007) (fact that, without a settlement, plaintiffs would incur significant trial expenses and the delay and uncertainty of appeal, supported approval of settlement).

By contrast, the proposed Settlement provides immediate and substantial monetary relief to the Class, with cash payments approximating 33% to 50% of Class Members' actual damages. (Ronzetti Decl. at ¶ 15.)  This range is extremely favorable, and constitutes an excellent result. (Scott Decl. at ¶ 13.); *see also Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1346 (S.D. Fla. 2011) (range of 9% to 45% of damages was an "exemplary" result).  These benefits come without the expense, uncertainty, and delay of continued and indefinite litigation. In light of the costs, uncertainties, and delays of litigating through trial—to say nothing of an appeal— "the benefits to the class of the present settlement become all the more apparent." *See Ressler v. Jacobso*n, 822 F. Supp. 1551, 1555 (M.D. Fla. 1992).

### C.  The Factual Record Was Sufficiently Developed to Enable Class Counsel to Make a Reasoned Judgment Regarding the Settlement.

Courts consider "the degree of case development that class counsel have accomplished prior to settlement" to ensure that "counsel had an adequate appreciation of the merits of the case before negotiating." *In re Gen. Motors Pick-up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 813 (3d Cir. 1995).  At the same time, however "[t]he law is clear that early settlements are to be encouraged, and accordingly, only some reasonable amount of discovery should be required to make these determinations." *Ressler*, 822 F. Supp. at 1555.

Prior to settlement, Class Counsel had been litigating claims against A-B for over a year and a half, and had familiarized themselves thoroughly with the facts surrounding the marketing, advertising, packaging, and labeling of Beck's Beer. (Ronzetti Decl. at ¶¶ 5, 8, 10.) The Parties produced thousands of pages of documents and the depositions of key A-B personnel, the class representatives and the experts were completed.  *Id.* The Parties had also engaged in significant motion practice, briefing a motion to dismiss, and motion *in limine* as to all of the experts disclosed in the case. *Id.*

Moreover, the settlement terms in this case were the product of significant give and take by the settling parties, and were negotiated at arms' length. (Ronzetti Decl. at ¶ 19.) The Parties participated in extensive negotiations before the formal mediation before Mr. Ravikoff, on May 26, 2015 and then had regular communications over the course of the next several months, negotiating both the terms of an initial term sheet and a settlement agreement reflecting the final terms.

Counsel for both parties are very familiar with consumer class action cases and had ample time, information, and resources available to assess the strengths and weaknesses of the case and reach a fair and reasonable settlement. (Scott Decl. at ¶ 19) (Ronzetti Decl. at ¶ 10.)

### D.  Plaintiffs Would Have Faced Significant Obstacles to Obtaining Relief.

 "[T]he likelihood and extent of any recovery from the defendants absent … settlement" must be considered in assessing the reasonableness of a settlement. *See In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 314 (N.D. Ga. 1993); *see also Ressler*, 822 F. Supp. at 1555 ("a court is to consider the likelihood of the plaintiffs' success on the merits of his claims against the amount and form of relief offered in the settlement before judging the fairness of the compromise"). Class Counsel and Plaintiffs believe they have a compelling case, but also recognize that A-B has raised significant defenses to all claims.

The classwide damages model and presentation in this case was complex due to the nature of the beer market, where the manufacturer sells to a distributor who sells to the ultimate consumer, and the data reflecting those sales.  (Ronzetti Decl. at ¶ 12.)  A-B attacked the Plaintiffs' price-premium model and its premises throughout the litigation.  Class certification is always challenging, and the unsettled nature of ascertainability in the Eleventh Circuit enhances the risk of prosecution in a consumer case like this.  *See Karhu v. Vital Pharmaceuticals, Inc*., Case No. 14-11648 (11th Cir. June 9, 2015).  Although Class Counsel believe Plaintiffs' Motion

for Class Certification was meritorious, other cases in this district involving labeling have failed at the certification stage. *See, e.g.*, *Randolph v. J.M. Smucker Co.*, Case No. 13-cv-80581-BB (S.D. Fla. Dec. 23, 2014); *Karhu v. Vital Pharma., Inc.*, Case No. 13-60768-CIV, 2014 WL 350811 (S.D. Fla., July 17, 2014), *aff'd*, Case No. 14-11648 (11th Cir. June 9, 2015). Regarding injunctive relief, this Court itself originally dismissed the claim due to Article III limitations. (*See* DE 88). Although Plaintiffs amended over to satisfy those limitations, their pleading and its claim were never subsequently tested. Thus, this case presented profound risks in achieving any result at all for the Class. (Ronzetti Decl. at ¶ 12) (Scott Decl. at ¶ 11.)

Further, major litigation against A-B involving labeling practices had been litigated and lost, in a multi-district litigation involving alcohol content. *See In re Anheuser-Busch Beer Labeling, Marketing, and Sales Practice Litigation*, MDL No. 2448 (N.D. Ohio).

Although Plaintiffs and Class Counsel maintain that A-B's defenses lack merit, if the litigation continued, Plaintiffs and Class Members would have faced the risk of not prevailing on their claims. (Scott. Decl. at ¶ 11); *see also, e.g., Kunzelmann*, 2013 WL 139913 (noting obstacles created by application of multistate law, among other things).

### E. The Benefits Provided by the Settlement Are Fair, Reasonable, and Adequate When Considered Against the Possible Range of Recovery.

The Settlement Agreement provides monetary recoveries that represent a substantial amount of the recovery Plaintiffs could recover at trial. As explained above, the Settlement Agreement provides that Class Members are eligible to receive refunds for the particular product they purchased. Using data uncovered in the litigation and with calculations assisted by Plaintiffs' experts, it is estimated these recovery amounts are approximately 33% to 50% of the recovery Plaintiffs could achieve at trial, depending on the product claimed. (Ronzetti Decl. at ¶ at ¶ 15.) As such, the recovery surpasses the standards established by this and other courts. (Scott Decl. ¶ 13); *see, e.g., Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988) *aff'd*, 899 F.2d 21 (11th Cir. 1990) ("the fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair and inadequate … A settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery[.]"); *Bennett*, 737 F.2d at 986-87 and n.9 (11th Cir. 1984) (approving as fair and adequate settlement that was 5.6% of potential recovery in light of the risks of further litigation and litigation objectives); *In re Checking Account Overdraft Litig.*, 830

F. Supp. 2d at 1346 ("nine percent or higher constitutes a fair settlement even absent the risks associated with prosecuting these claims"); *Sunbeam Sec. Litig.*, 176 F. Supp. 2d at 1331-32 (recovery of 10.7% of "plaintiffs' 'best case' scenario" fell "well within the range of what is fair, adequate, and reasonable"); *In re Rite Aid Corp. Sec. Litig.,* 146 F. Supp. 2d 706, 715 (E.D. Pa. 2001) (noting that since 1995, class action settlements have typically "recovered between 5.5% and 6.2% of the class members' estimated losses").

Additionally, the injunctive relief secured by the Settlement Agreement provides an additional benefit to the Class, and further supports a finding that the Settlement is fair, reasonable, and adequate. (Scott Decl. at ¶¶ 14, 38.) Further, the presence of "strong defenses to the claims" makes lower recoveries more reasonable. *See Checking Account Overdraft Litig.*, 830 F. Supp. 2d at 1346 ("standing alone, nine percent or higher constitutes a fair settlement even absent the risks associated with prosecuting these claims."). And, "when settlement assures immediate payment of substantial amounts to class members, even if it means sacrificing speculative payment of a hypothetically larger amount years down the road, settlement is reasonable[.]" *Johnson v. Brennan*, No. 10-cv-4712, 2011 WL 4357376, at *12 (S.D.N.Y. Sept. 16, 2011) (citation and internal quotations omitted).

Without a doubt, Plaintiff and the Class faced significant hurdles in litigating their claims to resolution. Each Class Member stands to recover approximately 33% to 50% of the amount attainable at trial. These results fall well within the range of reasonableness.

### F. The Opinions of Class Counsel, the Class Representative, and Absent Class Members Strongly Favor Settlement Approval.

A court should give "great weight to the recommendations of counsel for the parties, given their considerable experience in this type of litigation." *Warren v. Tampa,* 693 F. Supp. 1051, 1060 (M.D. Fla. 1988). This Court has already found that Class Counsel and Plaintiffs will adequately represent the Class in this action, and its conclusion was warranted. *See* Order Granting Prelim. App. (DE 152 at 2.) ("Plaintiffs fairly and adequately represent the interests of the Settlement Class."). It is Class Counsel's informed opinion that the Settlement is fair, reasonable, adequate, and in the best interests of the Class. (Ronzetti Decl. at ¶¶ 13, 15, 17.) The overwhelming class support for the settlement in this case is evidence of its fairness. There were no objections to preliminary approval of the class settlement, which, as mentioned previously, was granted by the Court. As of the date of this filing, there are no objections to final

approval of the class settlement, and only three opt outs. (KCC Decl. at ¶ 20.) Thus, this supports a finding that the settlement is fair and reasonable. *Lee*, No. 14-CV-60649, at 11-12 (attached as Exhibit 3) (fact that there were only four objections and 160 requests for exclusion in class of almost 400,000 was "powerful indicia that the Settlement is fair, reasonable and adequate, and deserves final approval"); *Perez*, 501 F. Supp. 2d at 1381 ("a low percentage of objections demonstrates the reasonableness of a settlement"); *Saccoccio*, 297 F.R.D. at 694 ("low resistance" to settlement consisting of eight objections and 122 opt-outs supported approval). Viewed either independently or taken together, the above factors confirm that the settlement is fair, reasonable, and adequate.

## II.   CLASS COUNSEL SHOULD BE AWARDED REASONABLE FEES AND COSTS AND CLASS REPRESENTATIVE PLAINTIFFS THE REQUESTED SERVICE AWARD.

For their extensive work prior to the filing of the complaint and throughout the pre-trial and settlement phases of this litigation, Class Counsel seek $3.5 million in attorneys' fees and expenses, equaling only 10.9% to 15.3% of the monetary settlement benefits provided to the Class, and without considering the settlement's important injunctive relief which alone justifies the award. A service award of $5,000 to each Class Representative is also appropriate.

### A.   The Court Should Award the Requested Attorney's Fees and Expenses.

Class Counsel is entitled to an attorney's fee for the benefit obtained in a class settlement. *See Casey v. Citibank, N.A.*, No. 12-cv-00820 (N.D.N.Y.) at (D.E. 223); *Boeing Co. v. Van Gemert,* 444 U.S. 472, 478, 676 (1980); *see David v. Am. Suzuki Motor Corp.*, No. 08–CV– 22278, 2010 WL 1628362 (S.D. Fla. Apr. 15, 2010) (settlement with ascertainable benefits may be treated as a common fund to which a percentage fee may be awarded, even if the fee is separately paid by the defendant). In the Eleventh Circuit, "attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class." *Camden I Condo. Ass'n v. Dunkle,* 946 F.2d 768, 774 (11th Cir. 1991); *see also Poertner*, 2015 WL 4310896, at *4 n.2 (holding that "no principled reason counsels against" extending *Camden I's* percentage-of-recovery rule to claims-made settlements); *Pinto*, 513 F. Supp. 2d at 1339; *In re Sunbeam Sec. Litig.,* 176 F. Supp. 2d at 1333. The percentage applies to the total benefits provided, even where the actual payments to the class following a claims process is lower. *See Waters v. Int'l Precious Metals Corp.,* 190 F.3d 1291, 1295-96 (11th Cir.

1999); *see also Casey*, No. 12-cv-00820 (N.D.N.Y.) at (D.E. 221) (the amount of claims made is "irrelevant to the underlying issue; to wit, whether the proposed settlement agreement is fair, reasonable, and adequate").

Under this approach, "the majority of common fund fee awards fall between 20% to 30% of the fund." *Camden I*, 946 F.2d at 774. This range of 20%-30% is viewed as a "benchmark" that may be adjusted in accordance with individual circumstances of each case, using the factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 448 F.2d 714 (5th Cir. 1974). *See Camden I*, 946 F.2d at 774-75; *see also Waters*, 190 F.3d at 1294 (reiterating the *Camden I* analysis and affirming award of fees using 30% as the benchmark and then adjusting upward to 33 1/3%). Here, of the $3.5 million fee and expense award that Class Counsel seeks, the net award of fees equals $3,140,053.94 ($3,500,000 total minus $359,946.06 in costs). (Ronzetti Decl. at ¶ 22.)  Plaintiffs' economic damages expert has estimated that the settlement provides approximately $20,463,870.00 to $28,885,420.00 in relief available to the Class. (Anderson Decl. at 19.)  Therefore, the requested fee is only 10.9% to 15.3% of the estimated value of the Settlement to the Class.  This is a modest fee based on Eleventh Circuit precedent, which uses 20% to 30% as its benchmark award.  *Camden I Condo Ass'n v. Dunkle*, 946 F.2d 768 at 774-875; *see also Poertner*, 2015 WL 4310896, at *4 (confirming *Camden I's* use of 25% as benchmark).[4]

This benchmark may be adjusted due to the *Johnson* factors, which include: (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and the length of the professional relationship with the client; and (12) awards in similar cases.  *See Camden I*, 946 F.2d at 772 n.3.  The Court may

---

[4] The attorneys' fee request is also supported when using a lodestar crosscheck because the award has a 2.2 multiplier. (Ronzetti Decl. at ¶ 22.) This is a modest multiplier.  The range is typically 2.26 to 4.5, with many cases awarding much higher multipliers. *Pinto*, 513 F. Supp. 2d at 1344 (noting lodestar multiples "in large and complicated class actions" range from 2.26 to 4.5, while "three appears to be the average"); *Behrens*, 118 F.R.D. at 549 (in complex cases "a lodestar multiple of three appears to be average" and "most lodestar multiples awarded in cases like this are between 3 and 4").

also consider the time required to reach settlement, the existence of substantial objections from class members, the existence of non-monetary benefits of the settlement, and the economics involved in prosecuting a class action. *Id.* at 775. As explained below, the factors set forth in *Camden I* amply support the full requested award.

1. **The Contingent Nature of the Fee, the Financial Burden Carried by Counsel, and the Economics of Prosecuting a Class Action Support the 10.9% to 15.3% Award.**

A determination of a fair fee for Class Counsel must include consideration of the contingent nature of the fee, the outlay of out-of-pocket expenses by Class Counsel, and the fact that the risks of failure and nonpayment in a class action are extremely high. *See Pinto*, 513 F. Supp. 2d at 1339. These factors weigh in favor of awarding Class Counsel 10.9% to 15.3% of the cash benefits obtained. Class Counsel have received no compensation during the course of this litigation and have incurred over $359,946.06 in costs litigating on behalf of the Class, which they risked losing had A-B prevailed. (Ronzetti Decl. at ¶ 21; Scott Decl. at ¶ 41.) From the time Class Counsel filed suit, there existed a real possibility that they would achieve no recovery and hence no compensation.

2. **The Requested Fees Are Below the Market Rate in Complex, Contingent Litigation.**

A fee of 10.9% to 15.3% of the cash value is below the market for class actions. "The percentage method of awarding fees in class actions is consistent with, and is intended to mirror, practice in the private marketplace where attorneys typically negotiate percentage fee arrangements with their clients." *Pinto*, 513 F. Supp. 2d at 1340. In private litigation, attorneys regularly contract for contingent fees between 30% and 40% directly with their clients. (Scott Decl. at ¶ 40.) These percentages are the prevailing market rates throughout the United States for contingent representation. *See Pinto*, 513 F. Supp. 2d at 1341 (citing, *inter alia*, *Kirchoff v. Flynn*, 786 F.2d 320, 323 (7th Cir. 1986)). In making a determination of what constitutes a fair percentage fee, this Court should be guided by such awards. A fee of approximately 10.9% to 15.3% of the total monetary benefits obtained is fully consistent with and falls well within, if not below, the range of the customary fee awarded in common fund cases, many of which have

awarded a higher percentage.[5]

### 3. The Novelty and Difficulty of the Questions at Issue and Undesirability of the Case.

As previously mentioned, this case presents novel questions of law and complex issues of fact. Class action matters are generally complex, but this one is particularly so. The interplay between A-B's disclosures, potentially individualized issues of differences in the locations, amounts, and reasons for which consumers purchased Beck's Beer, state and common law, TTB preemption, and the formulation of a damages methodology led to significant briefing on class certification and would have led to further briefing on the merits, at trial, post-trial, and on appeal. (Scott Decl. at ¶¶ 24, 25) (Ronzetti Decl. at ¶¶ 6, 7, 12.)  Moreover, A-B also vigorously asserted the defense of lack of ascertainability, a defense that disposed of other consumer class cases in circuits across the country. *Id.*  Further, this case was undesirable at the outset--Class Counsel took on a corporate defendant with vast resources necessary to withstand a lengthy legal battle. (Scott Decl. at ¶ 42) (Ronzetti Decl. at ¶ 6.)  The undesirability of the case is also evidenced by the fact that, to Class Counsel's knowledge, no other representatives filed cases elsewhere in the country addressing the misleading labeling and packaging of beer as an import. *Id.* The only other contemporaneous labeling and marketing case located against A-B, *In re Anheuser-Busch Beer Labeling, Marketing, and Sales Practice Litigation*, MDL No. 2448 (N.D. Ohio), was dismissed on safe harbor grounds, as A-B notified the Court here in the course of the motion to dismiss filings (DE 66.)  Thus, even though Class Counsel successfully reached a settlement with A-B, the difficulty of mastering and litigating these issues and the undesirability of the case amply supports the full award requested.

---

[5] *See also, e.g., Gutter v. E.I. Dupont De Nemours & Co.,* 95–2152–Civ–Gold (S.D. Fla. May 30, 2003) (33-1/3 %); *Waters,* 190 F.3d 1291 (affirming 33-1/3%); *Tapken v. Brown,* Case No. 90-0691-CIV, 1992 WL 178984, Fed. Sec. L. Rep. P 96805 (S.D. Fla. 1995) (33%); *In re Home Shopping Network Sec. Litig.,* Case No. 87-428-T-13(A) (M.D. Fla. 1991) (33%).

### 4.   The Skill, Experience, and Reputation of Class Counsel.

This litigation required a high degree of skill and experience given the complexity of the issues. Class Counsel have established their skill, experience, and reputation in repeated cases before this Court. (Scott Decl. at ¶ 34, 35; Firm Resumes at D.E. 149-6.) Class Counsel has many years of experience successfully litigating nationally recognized class actions.

Beyond that, Class Counsel's reputation, diligence, expertise, and skill are reflected in the results they have achieved. They resolved this dispute efficiently despite the potential hurdles presented them and the arguments raised by A-B detailed above.  The quality of Class Counsel and their achievement in this case is equally shown by the strength of their opponents, Skadden, Arps, Slate, Meagher & Flom LLP and Kenny Nachwalter, P.A., two of the finest defense firms in the country. (Scott Decl. at ¶ 35; Ronzetti Decl. at 11.)  This factor thus also favors awarding the requested fee.

### 5.   The Result Achieved for the Class.

The result here is extraordinary, and perhaps best establishes the propriety of the requested fee award. The result achieved is a major factor to consider in making a fee award.  *See Hensley v. Eckerhart*, 461 U.S. 424, 436, (1983) ("critical factor is the degree of success obtained"); *Pinto*, 513 F. Supp. 2d at 1342; *Behrens*, 118 F.R.D. at 547-48 ("The quality of work performed in a case that settles before trial is best measured by the benefit obtained."). In considering the results, courts examine the value of *both* monetary and injunctive relief.  *See Lee*, No. 14-CV-60649, at 40 (attached as Exhibit 3); *Perez*, 501 F. Supp. 2d 1360; *LiPuma*, 406 F. Supp. 2d at 1323; *In re Managed Care Litig.*, 2003 WL 228500700, at *6 (S.D. Fla. Oct. 24, 2003).  Class Counsel are indeed entitled to a statutory award of attorney's fees *solely* based on the injunctive relief that they achieved.  *Airflo A/C & Heating, Inc. v. Pagan*, 929 So. 2d 739, 742 (Fla. 2d DCA 2006) (plaintiff who obtained injunctive relief, but no monetary damages, was entitled to attorneys' fees under FDUTPA); *Carr v. Tadin, Inc.*, 51 F. Supp. 3d 970, 976 (S.D. Cal. 2014) (awarding attorney's fees and approving class action settlement where plaintiffs obtained injunction, but no monetary relief, under California deceptive trade practices statutes); *N. State Autobahn, Inc. v. Progressive Ins. Group Co.*, 102 A.D.3d 5, 15, 953 N.Y.S.2d 96, 103-04 (2012) (New York General Business Law § 349 is a broad remedial statute that allows private plaintiffs to obtain, *inter alia*, injunctive relief and attorneys' fees).

Here, even without considering the value of the injunctive relief, it is estimated that the Settlement delivers between $20,463,870.00 and $28,885,420.00 to the Class. (Anderson Decl. at 19.)  Further, Class Members are able to obtain approximately 33% to 50% of the recovery Plaintiffs could achieve at trial, depending on the product claimed. (Ronzetti Decl. at ¶ 15.) This is an outstanding result that supports Class Counsel's fee request. (Scott Decl. at ¶¶ 13, 31.)

### 6.  The Time and Labor of Class Counsel and Preclusion of Other Work.

Prosecuting and settling the claims in this case demanded considerable time and labor. Kozyak, Tropin & Throckmorton LLP and Harke Clasby & Bushman LLP served as lead counsel. Robert W. Rodriguez, P.A. served as liaison with the class representatives and, along with Campbell Law, LLC, assisted in prosecuting depositions and effectuating process. (Ronzetti Decl. at ¶ 9.)

Class Counsel first interviewed class representatives and investigated the potential claims. After preparing the pleadings, Class Counsel spent many hours performing legal and factual research, engaging in extensive discovery production, and preparing witnesses. (Ronzetti Decl. at ¶ 8.)  In total, Class Counsel reviewed over 72,000 pages of documentation and conducted and defended twelve fact and expert witness depositions. Moreover, throughout the litigation, Class Counsel spent many hours working closely with experts to prepare reports and prepare for depositions. (*Id.*) In sum, the settling of this claim demanded considerable time and labor. Class Counsel has already spent 3,400 hours in this litigation and further time will be required in order to conclude the matter. (*Id.* at ¶ 21, 24.) The considerable time and energy devoted to this matter necessarily limited the time available for other litigation, and Class Counsel, in fact, turned away other significant and profitable work in order to give this case the time, effort, and attention it deserved. (Scott Decl. at ¶ 36.)

### 7.  The Reaction of the Class.

As of the date of this filing, there have been no objections to the final settlement and only three Class Members have submitted valid opt-out requests. (KCC Decl. at ¶ 20.)  The Class is estimated to have beyond 1 million households. (Anderson Decl. at 14.)  That this sizeable class has asserted no objections supports the fee request. *See Pinto*, 513 F. Supp. 2d at 1343; Scott Decl. at ¶ 19.

**B.   A Service Award of $5,000 Is Appropriate.**

The Court should approve a service award of $5,000 for the Representative Plaintiffs, as is customary and well supported by precedent in the Eleventh District. *See, e.g.*, *Pinto*, 513 F. Supp. 2d at 1344; (Ronzetti Decl. at ¶ 25.)   In instituting this litigation, the Representative Plaintiffs have acted as private attorney generals seeking a remedy for what appeared to be a public wrong. *See Pinto,* 513 F. Supp. 2d at 1344.   The Class Representatives aided in the investigation of these claims, discovery requests, depositions and settlement, all at their financial risk. (Ronzetti Decl. at ¶ 25.)   Furthermore, the detailed Notice advised Class Members that the Representative Plaintiffs would apply for a service award of $5,000 each, and no Class Member has objected to this reasonable request. (KCC Decl. at ¶ 21.) Private class action suits are a primary weapon in the enforcement of laws designed for the protection of the public.  *See Pinto,* 513 F. Supp. 2d at 1344.   Approval of this award is warranted as a matter of policy and is appropriate under applicable precedents.

<u>CONCLUSION</u>

Plaintiffs respectfully request the Court enter an order granting final approval of the Class Action Settlement, as well as the applications for Class Counsel's fees and expenses and a $5,000 service award to each of the Class Representatives.

Respectfully submitted,


Lance A. Harke, P.A.
lharke@harkeclasby.com
Sarah Clasby Engel
sengel@harkeclasby.com
Howard M. Bushman, Esq.
hbushman@harkeclasby.com
**HARKE CLASBY & BUSHMAN LLP**
9699 NE Second Avenue
Miami Shores, Florida 33138
Telephone:     (305) 536-8220
Facsimile:      (305) 536-8229


Robert W. Rodriguez, Esq.
RobertWRodriguez@GMail.Com
**ROBERT W. RODRIGUEZ, P.A.**
66 West Flagler Street, Suite 1002
Miami, Florida 33130
Telephone:  (305) 444-1446
Facsimile:  (305) 907-5244

/s/ Thomas A. Tucker Ronzetti
Thomas A. Tucker Ronzetti, Esq.
tr@kttlaw.com
Adam M. Moskowitz, Esq.
amm@kttlaw.com
Tal J. Lifshitz, Esq.
tjl@kttlaw.com
**KOZYAK, TROPIN &**
   **THROCKMORTON, LLP**
2525 Ponce de Leon Blvd., 9th Floor
Coral Gables, FL 33134
Telephone:  (305) 372-1800
Facsimile:   (305) 372-3508
*Counsel for Plaintiffs*


John Campbell, Esq.
john@campbelllawllc.com
**CAMPBELL LAW, LLC**
1500 Washington Avenue,
Suite 100
St. Louis, MO 63103
(314)588-8101
*Counsel for Plaintiff*

21

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 15th day of September, 2015, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing documents is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic filing.

/s/ Thomas A. Tucker Ronzetti

## SERVICE LIST

Stanley H. Wakshlag
swakshlag@knpa.com
201 South Biscayne Boulevard, Suite 1100
Miami, FL 33131-4327
Phone: (305) 373-1000
Fax: (305) 372-1861

*Attorneys for Defendant Anheuser-Busch Companies, LLC*

David R. Pehlke
david.pehlke@skadden.com
Brandon R. Keel
brandon.keel@skadden.com
**SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP**
155 North Wacker Drive
Chicago, IL 60606
Phone: (312) 407-0700
Fax: (312) 407-0411

*Attorneys for Defendant Anheuser-Busch Companies, LLC*