UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 13-cv-23656-JJO

FRANCISCO RENE MARTY,
SETH GOLDMAN, and
FERNANDO MARQUET
on behalf of themselves and all others
similarly situated,

Plaintiffs,

v.

ANHEUSER-BUSCH COMPANIES, LLC,

Defendants.
_____/

**CLASS COUNSEL'S RESPONSE TO OBJECTIONS**

The proposed Class's settlement before the Court:

- provides over $20 million in monetary value to the Class;

- requires revised packaging, labeling, marketing, and advertising that should end any possible future deception about Beck's domestic production;

- was achieved only after contentious litigation, against premier counsel, in the face of uncertain law at the brink of the class certification hearing;

- has resulted in only 5 opt outs and two objections, amounting to .0004% of the estimated 1.7 million households in the Class; and

- is supported by abundant evidence, including documents, declarations from class counsel and former U.S. Attorney and District Court Judge Thomas Scott, and the experience of this very Court regarding the risks and challenges of this litigation.

Only two objections question the settlement. One is by objector Ross Muller [D.E. 161], whose counsel Stephen Field made similar objections which were rejected in the related state court

*Kirin* settlement;[1] the other is by Abner Leps [D.E. 159], whose two-page objection was apparently ghost written by an attorney. Both objections entirely ignore the law in the Eleventh Circuit, except for Mr. Field's, whose sole citation to a case affirmatively *misstates* the law. In fact, Mr. Field has at least three statements in his objection which are demonstrably false:

   1.   Muller Objection at 2: "In a claims-made settlement, such as this settlement, the proper analysis for a fee award in the 11th [C]ircuit is a lodestar analysis (see *Camden I Condominium Association, Inc. v. B. Dunkle*, 946 F. 2d 768, 772 (11th Cir. 1991)." Nowhere does *Camden* make such a statement, and in fact the Court ruled the opposite, that "in this circuit, attorney's fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class." *Id.* at 774. Eleventh Circuit law holds that this "percentage of the fund" analysis applies to claims-made settlements, as the Motion for Final Approval points out. *See* D.E. 157 at 15 (Mot. at 14); *see also infra* at Section B(1).

   2.   Muller Objection at 3: "The Court should deduct hours expended to complete and file the class certification motion and motions in limine. The class certification motion and motions in limine were completed and filed after settlement." A simple review of the docket establishes this is false. *See also infra* at p. 11 n.7.

   3.   Muller Objection at 3: "Class Counsel has not posted its fee motion to the Settlement Website." This, too, is false. *See infra* at Section B(6).

---

[1] Muller and Field attempt to distinguish the Kirin-court's overruling of Mr. Field's objection in that case by arguing that the court was incorrect because filing a claim does not forfeit objection rights. The Objector fails to disclose, however, that the *Kirin* Court overruled Mr. Field and his client's objection on multiple grounds. Specifically, the court rejected Mr. Field's objections to the adequacy of the settlement relief, the fee request, and the class representative award because none of those objections compelled the court to find that "the Settlement was not fair, reasonable, or adequate." *See Kirin* Order Overruling Objections ¶ 3 (attached as Exhibit 1). The court also expressed that Mr. Field's objection failed to "take into account the inherent risks associated with complex litigation such as this and the possibility that A-B may have ultimately prevailed in this case." *Id.* ¶ 4. The court further reasoned that Mr. Field and his client had an opportunity to opt-out of the proposed Settlement and chose not to do so, instead deciding to file a claim seeking benefits under the settlement months before the claims deadline had passed. *See id.* Any suggestion by Mr. Field that the *Kirin* Court incorrectly overruled his objection based solely on the fact that he filed a claim is wrong.

In their Motion for Final Approval, Class Counsel cautioned that "Nationwide consumer class litigation often results in lawyer-driven objections in an effort to hold up the class settlement solely for a payoff." [D.E. 157 at 7 n.3.] That is precisely what is occurring here. The Court should not allow, much less reward, such conduct. The objections are frivolous and should be overruled.

## Argument

The two objections are frivolous. As an initial matter, neither objection mentions, much less discusses, the Eleventh Circuit's law on class action settlement approval. Neither so much as acknowledges the six elements of the test for approval in *Bennett v. Behring Corp.*, 737 F.2d 982 (11th Cir. 1984) and its progeny. Each of those elements is established by overwhelming evidence provided by declarations and documents, and is discussed at length in the Motion for Final Approval. Beyond that, major portions of the settlement are not even mentioned by the two Objectors, and so have received no objection at all. These include the injunctive relief of revised packaging and labeling,[2] and the notice plan. At bottom, the objectors raise two arguments: (A) the class should receive more money, by eliminating caps or otherwise; and (B) class counsel should not be paid the fees and class representatives awards they request, because the objectors believe their work was simple or the fee is excessive. Neither argument has any merit whatsoever.

### A.   The Settlement Provides Excellent Benefits and Easily Satisfies Eleventh Circuit Precedent.

The Settlement provides considerable monetary and injunctive relief, and falls well within the range of reasonableness. Settlement Class Members are entitled to reimbursements capped at

---

[2] While never addressing the injunctive relief itself, Mr. Leps — or more likely the lawyer who helped him ghost-write his objection — says only that the injunctive relief "shouldn't be a consideration with regard to determining attorney's fees, which should be based solely on the relation to the actual benefit paid out to the class." [D.E. 159 at 2.] This ignores the law, which states the exact opposite. *See infra* at Section B(5).

3

$12.00 per Settlement Class Household with no proof of purchase, and up to $50.00 per Settlement Class Household with proof of purchase. The Settlement further provides injunctive relief, requiring revisions to Beck's Beer's packaging, labeling, marketing, and advertising designed to eliminate any further deception.  There have been no objections to the injunctive portion of the Settlement dealing with the revised labeling — a key goal of this litigation.

Notwithstanding these benefits, the Objectors suggest that the Settlement provides an inadequate claims process and offers inadequate relief due to the $12.00 and $50.00 caps.  Objector Muller asserts that class members should be permitted to recover for purchases both with and without proof of purchase for a hypothetical total of $62.00 ($12.00 with no proof of purchase plus $50.00 with proof of purchase), and that a claimant's inability to do so renders the claims process inadequate and the Settlement unreasonable. And Leps objects to the $12.00 and $50.00 caps on recovery because he believes that few consumers will have proofs of purchase to recover the $50.00 reward, and the $12.00 cap on recovery for those with no proof of purpose is, in the Objector's words, "virtually meaningless."  [D.E. 159 at 1.] Leps accordingly suggests that the $50.00 cap should be raised to an unspecified amount and that proof of purchase should not be required for consumers to recover.  These objections ignore the legal standards and even the practical reality that settlements result from adversarial negotiation, not wishes.  They are frivolous for a host of reasons.

First, as a threshold matter the Objectors have not established standing to raise these arguments.  They have not shown that they purchased a sufficient quantity of Beck's Beer during the Class Period to qualify them for a recovery of more than the $12.00 cap and that they are thus

4

affected by the $12.00 cap.³ *See Ass'n for Disabled Americans, Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 474 (S.D. Fla. 2002) (finding that objectors lacked standing under Article III because, "like any plaintiff, Objectors must still possess a specific and concrete factual allegation of injury"); *see also In re Healthsouth Corp. Secs. Litig.*, 2010 U.S. Dist. LEXIS 146529, *8 (N.D. Ala. July 20, 2010) (concluding that objector "lacks standing to complain about a settlement that will not affect him"). These objections can be overruled based on this defect alone.

Second, both the $12.00 and $50.00 cap on recovery for consumers are reasonable. *See Poertner v. Gillette Co.*, 14-13882, 2015 WL 4310896, at *4 (11th Cir. 2015) (affirming final approval of class action settlement with $6.00 recovery cap for claimants with no proof of purchase). The $50 cap was the result of an arms-length negotiation between Class Counsel and A-B, in which it was necessary to address not only the challenges of the case, but also A-B's legitimate desire for a safeguard against fraud in the claims administration process.

Third, an objection like this, which amounts to a gripe that the settlement should be better, has no legal merit. "[T]he fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair and inadequate. . . . A settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery[.]" *Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988) *aff'd*, 899 F.2d 21 (11th Cir. 1990); *see also Bennett*, 737 F.2d at 986–87 & n.9 (approving as fair and adequate settlement that was 5.6% of potential recovery in light of the risks of further litigation

---

³ The Court's Order Granting Preliminary Approval required objectors to provide "documentation and/or attestation by sworn statement sufficient to establish the objector's membership in the Class" and "copies of any other documents upon which the objection is based" on or before the objection deadline, September 29, 2015. *See* Order Granting Preliminary Approval [D.E. 152] at ¶ 13. Here, the objections did not provide any documentation or sworn statement establishing that the Objectors purchased enough Beck's Beer such that they would be entitled to over $12.00 of refunds, nor did they provide even a single receipt for Beck's Beer.

and litigation objectives); *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1346 (S.D. Fla. 2011) ("nine percent or higher constitutes a fair settlement even absent the risks associated with prosecuting these claims"); *In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1331–32 (S.D. Fla. 2001) (recovery of 10.7% of "plaintiffs' 'best case' scenario" fell "well within the range of what is fair, adequate, and reasonable"); *In re Rite Aid Corp. Sec. Litig.,* 146 F. Supp. 2d 706, 715 (E.D. Pa. 2001) (noting that since 1995, class action settlements have typically "recovered between 5.5% and 6.2% of the class members' estimated losses").

In short, the Objectors are making the bald assertion that the settlement could have been better. They have failed to analyze the claims, the range of possible recoveries, and the obstacles and risks involved. Such an objection establishes nothing. *See Lee v. Ocwen Loan Servicing, LLC*, 14-CV-60649, 2015 WL 5449813, at *17 (S.D. Fla. 2015) (rejecting objector's argument that settlement could have been improved through direct payments and noting that an objector "must do more than just argue that she would have preferred a different settlement structure"); *Henderson v. Volvo Cars of N. Am.*, No. 09–4146, 2013 WL 1192479, at *9 (D.N.J. Mar. 22, 2013) (collecting cases rejecting objections that merely complained about the lack of full relief and holding that "[o]bjections based solely on the amount of the award lack merit"); *In re Apple iPhone 4 Products Liab. Litig.*, 5:10-MD- 2188 RMW, 2012 WL 3283432, at *2 (N.D. Cal. 2012) ("[O]bjections seeking a 'better' result are not sufficient to overturn a settlement agreement.").

Beyond that, the fact that the overwhelming majority of the class stayed in the class presents objective positive commentary as to its fairness. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998). Although Muller's counsel Mr. Field argues that the absence of opt-outs or objections does not show class support, the law says the opposite. "[A] low percentage of objections demonstrates the reasonableness of a settlement." *Perez v. Asurion Corp.*, 501 F. Supp.

6

2d 1360, 1381 (S.D. Fla. 2007); *see also Camden I,* 946 F.2d at 775 (the court should consider "whether there are any substantial objections by class members or other parties to the settlement terms . . . ."); *Lee*, 2015 WL 5449813, at *5 (that there were only four objections and 160 requests for exclusion in class of almost 400,000 constituted "powerful indicia that the Settlement is fair, reasonable and adequate, and deserves final approval."); *Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 694 (S.D. Fla. 2014), *appeal dismissed* (Oct. 15, 2014) ("low resistance" to settlement consisting of eight objections and 122 opt-outs supported approval).

The overwhelming class support for the Settlement in this case is evidence of its fairness. The Class is estimated to have beyond 1.7 million members. There were no objections to preliminary approval of the class settlement, only two objections to final approval, and five opt outs. *See* (Declaration of T. Scott ("Scott Decl.") [D.E. 157-6], at ¶ 19).

The Settlement provides an excellent monetary recovery estimated to be approximately 33% to 50% of Plaintiffs' estimate of complete success. (Declaration of T. Ronzetti ("Ronzetti Decl.") [D.E. 157-1], at ¶ 15.) This recovery surpasses the standards established by this and other courts and falls well within the range of reasonableness. (Scott Decl. at ¶ 13.) Moreover, "when settlement assures immediate payment of substantial amounts to class members, even if it means sacrificing speculative payment of a hypothetically larger amount years down the road, settlement is reasonable[.]" *Johnson v. Brennan*, No. 10-cv-4712, 2011 WL 4357376, at *12 (S.D.N.Y. Sept. 16, 2011). The objections should therefore be overruled.

      **B.**      **The Requested Attorneys' Fee Award is Fair and Should be Approved.**

The Objectors use a shotgun approach to argue that the attorneys' fees sought by Class Counsel are too high, contending that (a) the percentage-of-the-fund analysis is inapplicable; (b) the dollar amount of the actual claims made is low in comparison to the amount of fees;

7

(c) Class Counsel have not provided evidence to support a lodestar analysis; (d) it is "disturbing" that A-B has agreed not to challenge the fee award; (e) the injunctive relief should not be considered a benefit to the Class when valuing the Settlement for purposes of awarding fees; and (f) the motion for attorneys' fees was not posted to the settlement website. *See* Muller Objection at 2–4; Leps Objection at 1–2. The Objectors are wrong on all counts.

1. The Percentage of the Fund Analysis Applies.

Objector Muller challenges the proposed fee award on the grounds that the "percentage of the fund" approach set forth in *Camden I* is inapplicable to "a claims-made settlement." Muller Objection at 2. Eleventh Circuit case law and a legion of cases from this Court dispose of this frivolous argument. In *Poertner v. Gillette Co.*, 2015 WL 4310896 (11th Cir. 2015), the Eleventh Circuit approved a claims-made class action settlement based upon the deceptive labeling of a consumer product (batteries). *Id.* at *1, *4. In approving the requested attorneys' fees, the Court used the percentage-of-the-fund analysis, and specifically noted that "no principled reason counsels against" applying *Camden I*'s "percentage-of-recovery rule to claims-made settlements."[4] *Id.* at *4 n.2. The *Poertner* decision is consistent with numerous other decisions from this district that use the percentage-of-the-fund approach to evaluate the appropriateness of attorneys' fees in a claims-made class action settlement like this one.[5] *See, e.g.*, *Saccoccio*, 297 F.R.D. at 694–95; *Hall v. Bank of Am., N.A.*, 1:12-CV-22700-FAM, 2014 WL 7184039, at *8–*9

---

[4] The court explained that "properly understood, a claims-made settlement is . . . the functional equivalent of a common fund settlement where the unclaimed funds revert to the defendant, indeed, the two types of settlements are fully synonymous." *Id.* (citation and quotation omitted).

[5] *Camden I* clarified that the "lodestar analysis shall continue to be the applicable method used for determining statutory fee-shifting awards," which is not applicable to the instant settlement. *See* 946 F.2d at 774.

8

(S.D. Fla. 2014); *Hamilton v. SunTrust Mortg. Inc.*, 13-60749-CIV, 2014 WL 5419507, at *7 (S.D. Fla. 2014); *Pinto v. Princess Cruise Lines, Ltd.*, 513 F. Supp. 2d 1334, 1339 (S.D. Fla. 2007); *In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1328 (S.D. Fla. 2001). There is no doubt that a percentage-of-the-fund analysis applies here.

        2.        <u>The Value of the Settlement Fully Supports the Fee Award.</u>

The Objectors claim that the proposed fee award is too large when compared to the actual pay out to class members who make claims. A similar objection was recently unequivocally rejected by the Eleventh Circuit in *Poertner* because it was "based on [a] flawed valuation of the settlement pie[,] *limiting the monetary value to the amount of [Defendant's] actual payouts*," while excluding the value of the injunctive and other negotiated relief. *See* 2015 WL 431089, at *6 (emphasis added). Here, Objectors are likewise wrong when they point to a speculative estimate of what may actually be paid to class members, as opposed to the total amount available to the Class, including valuable injunctive relief. *See Waters v. Int'l Precious Metals Corp.,* 190 F.3d 1291, 1295–96 (11th Cir. 1999) ("class counsel are entitled to a reasonable fee based on the funds potentially available to be claimed, regardless of the amount actually claimed") (*quoting* Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* § 14.03 (3d ed.1992)); *Hall*, 2014 WL 7184039, at *8–*9 ("Attorneys representing a class action are entitled to an attorney's fee based upon the total benefits obtained in or provided by a class settlement, regardless of the amounts eventually collected by the Class"); *Saccoccio*, 297 F.R.D. at 694–95 ("The attorneys' fees in a class action can be determined based upon the total fund, not just the actual payout to the class."); *Hamilton*, 2014 WL 5419507, at *7 (same); *Pinto*, 513 F. Supp. 2d at 1339 (in assessing fee award, courts look at "the total fund created, even where the actual payout following the claims process is lower"); *In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d at 1333 (same). This rule serves the

9

important purpose of allowing attorneys to effectively litigate class actions involving widespread harm but relatively small individual damages. Limiting class counsel "to a fee based on a percentage of what class members actually claim will, in many instances, result in a fee that is so small as to prevent class action attorneys from pursuing such cases, which serve primarily a regulatory and deterrent function, not a compensatory function." Hailyn Chen, *Attorneys' Fees and Reversionary Fund Settlements in Small Claims Consumer Class Actions*, 50 UCLA L. Rev. 879, 892 (2003); s*ee also Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 338 n.9 (1980) (reasoning that plaintiffs with small individual claims "would be unlikely to obtain legal redress at an acceptable cost, unless counsel were motivated by the fee-spreading incentive and proceeded on a contingent-fee basis" and noting that this concept is "central" to Rule 23).

Here, expert evidence shows that the settlement provides an estimated $20,463,870.00 to $28,885,420.00 in monetary relief available to the Class. (Exhibit 2 — Declaration of P. Anderson, at 19.). This estimate was arrived at using two methodologies. The first, the demographic method, used data as to the number of Beck's consuming households and conservatively assumed that class members would not have documentation supporting their purchases. *See id.* at 12–13. The second, the sales volume method, used historical sales of Beck's Beer during the class period to estimate the monetary relief available to the Class and discounted that number to account for the $50.00 maximum cap. *See id.* at 15–16.[6] Therefore, the requested fee is only 10.9% to 15.3% of the estimated value of the Settlement to the Class, a modest and reasonable fee based on Eleventh

---

[6] The Objectors perform no analysis whatsoever as to the monetary relief available to the Class, and simply look to the actual claims made to date, which the ample caselaw cited above demonstrates is not the relevant inquiry. Further, the claims period is not yet closed and will extend past the final approval hearing. Class Counsel expects an increase in claims after final approval, as news of final approval typically generates a spike in claims.

Circuit precedent and numerous district court cases, which use 20% to 30% as the benchmark award. *See* Scott Decl. at ¶¶ 21–23. Further, although not assigned a specific dollar value, the important injunctive relief obtained provides additional value to the Class and supports the fee award. *See infra* at Section B(5).

        3.      <u>The Requested Fee is Also Fully Supported by a Lodestar Cross-check.</u>

Objector Muller claims that Class Counsel has not produced evidence sufficient to support a lodestar analysis. *See* Muller Objection at 2. In the Eleventh Circuit, a lodestar analysis may be used as a "cross-check" to the percentage-of-the-fund analysis. *See, e.g.*, *Pinto*, 513 F. Supp. 2d at 1343. Use of the lodestar cross-check is not mandatory. *See In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d at 1362–63 (declining to perform lodestar cross-check because *Camden I* "mandated the exclusive use of the percentage approach in common fund cases" and noting "courts in this Circuit regularly award fees . . . without discussing lodestar at all") (internal quotations omitted); *see also Waters*, 190 F.3d at 1298 ("while we have decided in this circuit that a lodestar calculation is not proper in common fund cases, we *may* refer to that figure for comparison) (emphasis added). Regardless, contrary to Objector Muller's bald assertion, Class Counsel provided detailed testimony of the number of hours expended, the hourly rates for the various timekeepers, the work performed, the prevailing market rates, and all of the lodestar factors.[7] (Ronzetti Decl. and Composite Exhibit 1 thereto).

---

[7] Objector Muller is also incorrect when he argues that the Court should deduct the hours spent on class certification and motions in *limine* because "the Class certification motion and motions in limine were completed and filed after settlement." Muller Objection at 3. This is flatly contradicted by even a cursory review of the record. The motion for class certification and motions in *limine* were all fully briefed and argued before the Court on April 16, 2015. *See* Minute Entry [D.E. 135]. The parties did not attend mediation until May 26, 2015 and finally consummated a settlement in June 2015. *See* Settlement Agreement [D.E. 149-1] at 5. All of this work was necessary to the prosecution of this case and the resulting settlement and should be compensated.

Class Counsel's requested fee is a modest lodestar multiple of 2.2. The range is typically 2.26 to 4.5, with many cases awarding much higher multipliers. *See Pinto*, 513 F. Supp. 2d at 1344 (noting lodestar multiples "in large and complicated class actions" range from 2.26 to 4.5, while "three appears to be the average"); *Behrens*, 118 F.R.D. at 549 (in complex cases "a lodestar multiple of three appears to be average" and "most lodestar multiples awarded in cases like this are between 3 and 4"); *see also Weiss v. Mercedes-Benz of N. Amer., Inc.,* 899 F. Supp. 1297 (D.N.J. 1995) (multiple of 9.3 times lodestar); *Cosgrove v. Sullivan,* 759 F. Supp. 166 (S.D.N.Y. 1991) (multiple of 8.74); *Grimshawe v. New York Life Ins. Co.,* Case No. 96-0746-Civ-Nesbitt (S.D. Fla. 1996) (percentage-based fee award equivalent to a multiple of 8.5).

With absolutely no analysis, Objector Muller asserts that the case "was not complex." Muller Objection at 3. This unsupported assertion is contradicted by the declarations of Class Counsel and expert Thomas Scott, which detail the challenging, complex nature of this case — a case that involved federal preemption; the interplay between A-B's disclosures and potentially individualized issues of differences in the locations, amounts, and reasons for which consumers purchased Beck's Beer; the formulation of a damages methodology and retention of a damages expert; the ascertainability of the class; the review of thousands of documents and the deposition of a dozen witnesses; and claims brought on behalf of over a million class members including nationwide common law, quasi-contractual and consumer protection statute claims from three different states. (Scott Decl. at ¶¶ 24, 25) (Ronzetti Decl. at ¶¶ 6, 7, 12).

4.      <u>The Fees Were Negotiated at Arms' Length.</u>

Objector Leps implies collusion, contending it is "disturbing" that A-B "has agreed not to challenge" the $3.5 million fee award. *See* Leps Objection at 2. The Eleventh Circuit has recently addressed this precise situation, sometimes referred to as a "clear-sailing" provision, and rejected

the notion that it is a sign of unfairness or self-dealing. *See Poertner*, 2015 WL 4310896, at *6. This is especially the case where, as here, the settlement occurred only after extensive arms' length negotiations overseen by an experienced court-appointed mediator, there is absolutely no evidence of collusion, and the parties negotiated attorneys' fees only after negotiating relief to the Class. *See id.*; *Lee,* 2015 WL 5449813, at *12  (finding "clear-sailing provision to be immaterial" where there was no evidence of collusion among the settling parties and fees were negotiated only after all other terms were agreed upon);  *Fladell v. Wells Fargo Bank,* No. 0:13–cv–60721, 2014 WL 5488167, at *4 (S.D. Fla. Oct. 29, 2014) ("[A]lthough the Settlement Agreement includes a 'clear-sailing' provision, that is immaterial. There was no collusion in the settlement negotiations and the Parties began negotiations regarding attorneys' fees only after finishing negotiating the Settlement itself"). *See* Ronzetti Decl. at ¶¶18–19.

     5.     The Injunction Provides Value and Itself Justifies the Fee Request.

The Objectors do not challenge the way in which the labels and packaging for Beck's Beer were changed pursuant to the Settlement, but the Objectors argue that this injunctive relief should be given no weight whatsoever because injunctive relief is "not a benefit" to the Class. *See* Leps Objection at 2; *see also* Muller Objection at 3.  The Eleventh Circuit, however, has found the opposite: injunctive changes, such as label modifications, represent a benefit to the class and should be considered when approving a class settlement. *See Poertner*, 2015 WL 4310896, at *5, *6 (trial court properly concluded that "class received substantial benefit" from label change that removed allegedly misleading statement from battery label and non-monetary relief was properly considered in evaluating attorneys' fees); *see also Lee*, 2015 WL 5449813, at *26 (considering value of injunctive relief when approving class counsel's fee request even though no specific dollar amount was attributed to injunctive change and noting "courts consider the value of injunctive relief and monetary relief together in assessing whether a class action settlement provides

sufficient relief to the class"). Moreover, based on the case's statutory claims the injunctive relief justifies class counsel's fee award. *See* Mot. Final Approval at 18.

Here, a major goal of the litigation was to more fully inform the Class and consuming public about the origin of Beck's Beer, and the Settlement has accomplished that. The phrase "Brewed in USA" or "Product of USA" will not only be placed on the front and back of all Beck's packaging, but it will also be on the labels and website. This provides significant relief to the Class and supports the fairness of the settlement and the requested fee. (Scott Decl. at ¶¶14, 28–29) (Ronzetti Decl. at ¶ 17); *see also Pinto*, 513 F. Supp. 2d at 1342–43 ("courts usually consider not only the compensatory relief, but also the economic value of any prospective injunctive relief obtained for the class.").

Finally, the five-year length of the injunctive relief is adequate and reasonable, and protects consumers from future harm. Although Mr. Field complains that the "injunctive relief is limited to five years," Muller Objection at 3, he has provided no authority in support of the indefinite injunction that he is presumably seeking. Numerous cases have approved class action settlements with injunctions lasting five or six years.[8] *See Williams v. Wells Fargo Bank, N.A.*, Case No. 11-cv-21233 (S.D. Fla); *Hall v. Bank of America, N.A.*, Case No. 12-cv-22700 (S.D. Fla); *Fladell v. Wells Fargo Bank, N.A.*, Case No. 13-cv-60721 (S.D. Fla); *Diaz v. HSBC Bank (USA), N.A.*, Case No. 13-cv-21104 (S.D. Fla); *Saccoccio v. JPMorgan Chase Bank, N.A.*, Case No. 13-cv-21107 (S.D. Fla); *Hamilton v. SunTrust Mortgage*, Case No. 13-cv-60749 (S.D. Fla.). Five years is an appropriate period of time to educate the public about Beck's Beer while simultaneously subjecting A-B to liability for any failure to comply. (Ronzetti Decl. at ¶¶ 17, 26).

---

[8] Mr. Field is well aware that a five-year injunction is reasonable. He made this same objection in *Kirin*, which was rejected. *See* Order Overruling Objection.

  6. <u>The Motion for Fees Was Posted on the Settlement Website and Class Counsel Has Complied with Rule 23(h).</u>

Objector Muller argues that Class Counsel "has not posted its fee motion to the Settlement Website" and therefore has not satisfied Rule 23(h). *See* Muller Objection at 3–4. Objector Muller is wrong. Class Counsel's fee motion has been posted on the Settlement Website since September 22, 2015, before Muller filed his objection and before the September 29, 2015 objection deadline. *See* Email dated 9/22/15 from J. Gyomber and screenshot of Settlement Website (attached as Composite Exhibit 3).

Further, Rule 23(h) does not require a fee motion to be posted on the settlement website before the objection deadline. Rule 23(h) states only that the fee motion must "be directed to class members in a reasonable manner." This Court has found that Rule 23(h) is satisfied when the notice discloses the total amount of fees sought, even if the motion is not even *filed* until after the objection deadline. *See Saccoccio*, 297 F.R.D. at 699. Here, the approved class notice posted on the Settlement Website specifies the total amount being sought in fees and costs, and that alone satisfies Rule 23(h). *See Cassese v. Williams*, 503 F. App'x 55 (2d Cir. 2012) (where class notice provided dollar amount of fees sought, fact that objection deadline was *before* motion for fees was filed did not render fee motion untimely); *In re UnitedHealth Grp. Inc. S'holder Deriv. Litig.*, 631 F.3d 913, 918 (8th Cir. 2011) (rejecting objection where class counsel requested the precise amount of fees in the notice, because the notice apprises class members of all material information found in the fee motion, and thus provides "sufficient information to either object to the estimated requests for attorney fees and expenses or to inquire further about potential objections"). In addition, the motion for fees *was* posted on the Settlement Website before the objection deadline, and Objector Muller does not dispute he had a copy of the Motion before filing his objection.

7. <u>Final Approval Should Not Be Postponed to Obtain the Final Claims Rate.</u>

Leps' Objection asserts that the Court should not grant final approval before the claims rate is known, but "[d]istrict courts often grant final approval of class action settlements before the final claims deadline." *Lee*, 2015 WL 5449813, at *22–*23 (collecting cases, rejecting same argument by objector, and granting final approval where final claims rate was unknown) (quoting *Hamilton*, 2014 WL 5419507); *see also Saccoccio*, 297 F.R.D. at 696 (overruling same objection because courts in this district have upheld settlements before claims deadline had passed); *Perez*, 501 F. Supp. 2d at 1383 (court need not wait for final claims data to approve). Moreover, a low claims rate would not compel the conclusion that the settlement as a whole is not fair, reasonable, or adequate. *See, e.g., Lee*, 2015 WL 5449813, at *22 ("there is nothing inherently unfair about a single-digit claims rate in a class settlement. Indeed, 'courts in this district have approved claims-made settlements where the participation rate was very low.'") (quoting *Saccoccio*, 297 F.R.D. at 696); *see also Perez*, 501 F. Supp. 2d at 1377 (approving 10.3 million-member settlement class when less than 119,000 — approximately 1.1% — filed claims).

Had the claims deadline been set on an earlier date, class members would have had less time to submit claims forms, guaranteeing a lower claims rate. The plan proposed by the settlement and preliminary approval order provides class members the best opportunity to file claims and ensures a higher claim rate. Leps' objection has no merit.

**C.** **<u>The Class Representative Fee is Fair and Appropriate.</u>**

Objector Muller argues that Plaintiffs' $5,000.00 class representative awards are excessive.[9] The argument is frivolous. "It is well recognized that private class action suits are a

---

[9] Counsel for Objector Muller is well aware that the $5,000.00 representative award is reasonable — he made this same objection to the *Kirin* settlement and it was summarily rejected. *See* Order Overruling Objections at 3.

primary weapon in the enforcement of laws designed for the protection of the public," and that approval of class representative awards "is warranted as a matter of policy . . . ." *See Pinto*, 513 F. Supp. 2d at 1344.

The class representatives here acted as private attorneys general seeking a remedy for what appeared to be a public wrong. The class representatives were prepared for and deposed by A-B's counsel, responded to interrogatories, produced documents, and worked closely with counsel in bringing, litigating, and settling this matter. (Ronzetti Decl. at ¶¶ 8, 25.) As the Court reasoned in *Pinto v. Princess Cruise Lines*,

> Under such circumstances, Courts have found it appropriate to specially reward named class plaintiffs for the benefits they have conferred. *See Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1218-19 (S.D. Fla. 2006); *In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366 (S.D. Ohio 1990) (two incentive awards of $ 55,000, and three incentive awards of $ 35,000); *Bogosian v. Gulf Oil Corp.*, 621 F. Supp. 27 (E.D. Pa. 1985) (incentive awards of $ 20,000 to each of two plaintiffs); *In re REVCO Sec. Litig., Arsam Co. v. Salomon Bros., Inc.*, 1992 U.S. Dist. LEXIS 7852 (N.D. Ohio May 5, 1992) ($ 200,000 to the named plaintiff); *Enter. Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240 (S.D. Ohio 1991) ($50,000 to each class representative, aggregate award of $ 300,000).

513 F. Supp. 2d at 1344. Here, the $5,000.00 service award is reasonable, well-supported, and should be approved. *See Saccoccio*, 297 F.R.D. at 695 (approving $5,000.00 representative service award and noting that courts find it appropriate to reward class plaintiffs who act as private attorneys general); *Lee*, 2015 WL 5449813, at *26 (approving $5,000.00 class representative service award); *Hamilton*, 2014 WL 5419507, at *8 (same). The service awards to the representatives are well deserved, and the objection to those awards is both mean spirited and legally frivolous.

**Conclusion**

The class's settlement confers over $20 million in cash benefits and indisputably effective injunctive relief. Class counsel's fee request is beneath the levels ordinarily awarded for such a result. The two objectors' apparent attempts to blackmail a settlement have no support under the law in the Eleventh Circuit, and range from reckless contention to outright falsehood. The Court should accordingly both overrule the two objections, find that they are frivolous, and grant final approval to the settlement in all respects.

Respectfully submitted,

Robert W. Rodriguez, Esq.
RobertWRodriguez@GMail.Com
**ROBERT W. RODRIGUEZ, P.A.**
66 West Flagler Street, Suite 1002
Miami, Florida 33130
Telephone: (305) 444-1446
Facsimile: (305) 907-5244

Lance A. Harke, P.A.
lharke@harkeclasby.com
Howard M. Bushman, Esq.
hbushman@harkeclasby.com
**HARKE CLASBY & BUSHMAN LLP**
9699 NE Second Avenue
Miami Shores, Florida 33138
Telephone:     (305) 536-8220
Facsimile:       (305) 536-8229

/s/ Thomas A. Tucker Ronzetti
Thomas A. Tucker Ronzetti, Esq.
tr@kttlaw.com
Adam M. Moskowitz, Esq.
amm@kttlaw.com
Tal J. Lifshitz, Esq.
tjl@kttlaw.com
**KOZYAK, TROPIN & THROCKMORTON, LLP**
2525 Ponce de Leon Blvd., 9th Floor
Coral Gables, FL 33134
Telephone: (305) 372-1800
Facsimile:   (305) 372-3508
*Counsel for Plaintiffs*

John Campbell, Esq.
john@campblelawllc.com
**CAMPBELL LAW, LLC**
1500 Washington Avenue,
Suite 100
St. Louis, MO 63103
(314)588-8101
*Counsel for Plaintiff*

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on this 15th day of October, 2015, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which will serve all counsel of record — including Objector Muller's counsel Stephen D. Field — via transmission of Notices of Electronic Filing generated by CM/ECF. I further certify that I mailed the foregoing document via FedEx to Objector Abner Leps at 11 Grayson Court, Charles Town, West Virginia 25414.

/s/ Thomas A. Tucker Ronzetti

## SERVICE LIST

Stanley H. Wakshlag
swakshlag@knpa.com
201 South Biscayne Boulevard, Suite 1100
Miami, FL 33131-4327
Phone: (305) 373-1000
Fax: (305) 372-1861

*Attorneys for Defendant Anheuser-Busch Companies, LLC*

David R. Pehlke
david.pehlke@skadden.com
Brandon R. Keel
brandon.keel@skadden.com
**SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP**
155 North Wacker Drive
Chicago, IL 60606
Phone: (312) 407-0700
Fax: (312) 407-0411

*Attorneys for Defendant Anheuser-Busch Companies, LLC*

Abner Leps
Iino27ii@hotmail.com
11 Grayson Court
Charles Town, West Virginia 25414
Phone: (205) 538-8618

*Objector*

Ross Muller
2140 Reef Drive
St. Augustine, Florida 32080
Phone: (949) 357-3132

*Objector*

Stephen D. Field
steve@field-law.com
Stephen D. Field, P.A.
102 East 49th Street
Hialeah, Florida 33013
Phone: (305) 698-3421
Fax: (305) 698-1930

*Attorney for Objector Ross Muller*

29715