UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 13-cv-23656-JJO

FRANCISCO RENE MARTY,
SETH GOLDMAN, and
FERNANDO MARQUET
on behalf of themselves and all others
similarly situated,

Plaintiffs,

v.

ANHEUSER-BUSCH COMPANIES, LLC,

Defendants.
_____/

**CLASS COUNSEL'S RESPONSE TO OBJECTOR
LEPS' MOTION FOR PROTECTIVE ORDER AND
CLASS COUNSELS' MOTION TO COMPEL AND FOR SANCTIONS**

Class Counsel responds to the letter submitted by Objector Abner Leps dated October 13, 2015 [D.E. 165] (attached as Exhibit 1) ("Motion"), which Class Counsel treats as a motion for protective order, and Class Counsel moves to compel Mr. Leps to appear for his deposition and to produce documents, as well as an award of attorneys' fees and costs.

**Background**

On June 23, 2015, this Court granted preliminary approval of the parties' Settlement Agreement, which provides over $20,000,000.00 of monetary relief to a nationwide class of Beck's consumers as well as injunctive changes to the label and packaging of Beck's that end the disputed practice by making it clear that Beck's is "Brewed in USA." *See* Plaintiffs' Motion for Final Approval of Class Action Settlement [D.E. 157] at 3-5.

On September 29, 2015, Abner Leps, filed an objection. *See* Objection of A. Leps [D.E. 159]. The Objection has no merit and, while purportedly submitted *pro se*, has significant indicia of being ghost-written.[1] For example, although Mr. Leps lives in Charles Town, West Virginia, the Objection was mailed *via* USPS Express Mail from Trussville, Alabama--indicating the possible assistance of an attorney. *See* USPS Label and Tracking Receipt (attached hereto as Composite Exhibit 2); *see also In re Cathode Ray Tube (CRT) Antitrust Litig.*, 281 F.R.D. 531, 533 (N.D. Cal. 2012) (fact that objection was mailed from a different state than where objector lived was indicia of objection being ghostwritten). Further, the cost of the USPS Express mailing was approximately $20.00 each, for a total of almost $60.00 to mail the objection to the Court and counsel--a large investment for a *pro se* litigant claiming only a $12.00 or $50.00 product refund, but a minimal expense for a professional objector attorney seeking to delay approval of this excellent settlement in an effort to extract a ransom of fees and costs. Tellingly, the Objection contains a litany of common (albeit meritless) legal objections typically made by professional objector attorneys—issues that are embedded in lay terms in a *pro se* objection and then, after a notice of appearance is filed on appeal, can be expanded upon.[2] For example:

- Leps states that "It is my understating that, generally, actual claims in cases like this are only made by 1%-5% of the class." Objection at 1. Although not impossible, it would be highly unusual for a lay person to have an understanding of

---

[1] Attorneys who are professional objectors sometimes ghostwrite objections for lay class members for a variety of reasons: the Court may grant leniency to a non-lawyer that would not be afforded counsel; the professional objector attorney may have numerous negative opinions issued about them that they want to avoid; counsel may not be licensed in the state at issue and wish to improperly circumvent state bar admission requirements; or counsel may wish to avoid the necessity of associating with a local attorney, which cuts into the potential profit for the objector attorney.

[2] As this Court has noted: "[t]he unfortunate game is to lodge *pro forma* objections at the trial stage, then negotiate a private resolution in order to drop the invariable notice of appeal." *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1362 (S.D. Fla. 2011) (quoting declaration of expert).

- claims rates, a familiarity of what those claims rates normally are, and how the claims rate relates to the proposed attorneys' fee award. Of course, Mr. Leps' observation is included as a predicate for the common (and meritless)[3] objection that attorneys' fees should not be valued based upon the total benefits made available to the class.

- Similarly, Mr. Leps claims he finds it "disturbing" that Anheuser-Busch has agreed "not to challenge a fee of up to $3,500,000.00." Objection at 2.  Again, what is framed as Mr. Leps' personal feeling about the settlement is a predicate for a common (and often rejected)[4] objection to a so-called "clear-sailing" provision.

- Mr. Leps claims he used to buy Beck's, but has "switched to Heinekens." Objection at 1.  What is framed as a note about Mr. Leps personal consumption habits is the predicate for a common (but incorrect)[5] legal objection—that the injunctive changes are not a benefit to class members who no longer purchase the product and therefore should not be considered in valuing the settlement for purposes of attorneys' fees.  *See* Objection at 2.

Finally, as to whether he is represented by counsel, Mr. Leps explicitly claims that he is not: "I am presently trying to determine if I can find an attorney to appear on my behalf . . . ." Objection at 2.

In order to understand the nature of the objections, Mr. Leps' standing to assert them, whether the objection was improperly ghost-written, and to determine if Mr. Leps would be willing or able to post an appellate bond for any appeal that may delay relief to the Class, Class Counsel sought to depose Mr. Leps.  Before issuing a subpoena, on October 5, 2015, Class Counsel Lance Harke personally called Mr. Leps at the number listed in his Objection to discuss the objection. In a voicemail, Mr. Harke identified himself as counsel for the Class, asked if Mr. Leps would appear for deposition and asked Mr. Leps to return his phone call, leaving his phone number. *See* Declaration of L. Harke (attached as Exhibit 3).  Mr. Leps never responded to the voicemail. *Id.*

---

[3] This argument has been soundly rejected by the Eleventh Circuit and this Court.  *See* Response to Objections [D.E. 164] at 9-11.
[4] *See* Response to Objection [D.E. 164] at 12-13.
[5] *See* Response to Objection [D.E. 164] at 13-14.

On October 6, 2015, Mr. Leps was served with both a subpoena for him to appear at deposition and a separate subpoena for him to produce documents.[6] *See* Subpoena to Testify at a deposition in a Civil Action (attached as Exhibit 4); Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (attached as Exhibit 5); *see also* Return of Service (attached as Exhibit 6).

Class Counsel subsequently changed the date of the deposition and again called Mr. Leps, leaving another voicemail identifying the caller, the purpose of the call, a return phone number and that counsel would be happy to answer any questions. *See* Declaration of T. Lifshitz (attached as Exhibit 7).  This was followed up by an email including the re-notice for the deposition and asking Mr. Leps to contact Class Counsel.[7] *Id.*  The re-notice for the deposition was also mailed to him. *Id.*

Mr. Leps did not contact Class Counsel, did not produce any documents and did not appear at the deposition on October 19, 2015. *See* Tr. of Depo. of A. Leps (attached as Exhibit 8).

## **Argument**

Deposition and discovery of an objector is perfectly appropriate: "while absent class members are not normally included in discovery, Objectors have voluntarily inserted themselves into this action, and as such, depositions of the Objectors are relevant and proper." *In re Netflix Privacy Litig.*, 5:11-CV-00379-EJD, 2013 WL 6173772, at *2 (N.D. Cal. 2013), *appeal dismissed* (Mar. 25, 2014), *appeal dismissed* (June 18, 2014); *see also In re Cathode Ray Tube (CRT)*

---

[6] The subpoena for documents is narrowly tailored to seek documents relating to Mr. Leps' standing to bring this objection, his purchase of Beck's beer and whether he is actually represented by counsel. *See* Exhibit 5.

[7] Although this Court's Order Granting Preliminary Approval specified that all objections "must" contain an email address for the objector, Mr. Leps failed to do so.  *See* Order Granting Prelim. Approval [D.E. 152 at ¶ 13].  The email was sent to the email address identified in Mr. Leps' online claim.  *See* Exhibit 7 at ¶ 3.

*Antitrust Litig.*, 281 F.R.D. 531, 533 (N.D. Cal. 2012) (noting objector who "voluntarily appeared in this litigation by objecting to the" settlement was subject to deposition). A deposition of an objector is particularly warranted where, as here, it is used to "seek information regarding the objector's standing, the bases for the objections, his role in objecting to this and other class settlements, and his relationships with the counsel that may affect the merits of the objection." *In re Netflix Privacy Litig.*, 2013 WL 6173772, at *2; *see also In re Cathode Ray Tube (CRT) Antitrust Litig.*, 281 F.R.D. at 533 (information sought through discovery is relevant, needed, and narrowly tailored when focused on the objector's standing, the bases for his current objections, his role in the current and other class settlements, and his relationships with the counsel). It is also proper to seek information related to whether the objector is capable of posting an appeal bond for any appeal that may delay the relief to the class. *See In re Netflix Privacy Litig.*, 2013 WL 6173772, at *2.

Whether an objection, or any court filing, is ghost written is also the proper subject of deposition and discovery. *See In re Cathode Ray Tube (CRT) Antitrust Litig.*, 281 F.R.D. at 533 (ordering deposition of purportedly *pro se* objector "to explore his relationship" with professional objector attorney); *see also Garcia v. Jenkins/Babb LLP*, 3:11-cv-3171-N-BH, 2012 WL 3846539, at *1 (N.D. Tex. 2012) (allowing discovery "into whether Plaintiffs have obtained the assistance of any undisclosed attorney so the Court can determine what actions should be taken regarding that."). This is because the practice of ghostwriting seeks to deceive the Court as to the true nature of the pleading, seeks to evade the power of the Court to regulate the lawyers appearing before it, violates Federal Rule of Civil Procedure 11, and the Florida Bar Rules. *In re Hood*, 727 F.3d 1360, 1363 (11th Cir. 2013) (under the Florida Rules of Professional Conduct, if lawyer assists a pro se litigant in drafting a document to be submitted to a court "the lawyer must indicate 'Prepared with

the assistance of counsel' on the document to avoid misleading the court, which otherwise might be under the impression that the person, who appears to be proceeding pro se, has received no assistance from a lawyer.") (quoting R. Regulating Fla. Bar 4–1.2(c) cmt.); *Duran v. Carris*, 238 F.3d 1268, 1272 (10th Cir. 2001) (ghostwriting "constitutes a misrepresentation to this court by litigant and attorney" and it "affords [the litigant] the benefit of this court's liberal construction of pro se pleadings" while "inappropriately shield[ing] [the attorney] from responsibility and accountability for his actions"); *Karpov v. Karpov*, Civ. 2-1411-9ms, 2013 WL 653965, at *4 (D. Del. 2013) (ghostwriting is "strongly disapproved as unethical and as a deliberate evasion of the responsibilities imposed on attorneys. Ghost-writing frustrates the application of Fed. R. Civ. P. 11 which requires all attorneys to verify through their signatures that there are sufficient grounds for the arguments in their pleadings."); *Ayvazian v. Moore Law Group*, 2:12-cv-01506-ODW, 2012 WL 241181, at * 4 (C.D. Cal. June 26, 2012) ("the practice of 'ghostwriting' violates the rules of professional conduct, and undermines the litigant's status as pro se. The likelihood that the impermissible practice of ghostwriting was used in the present Complaint is but another factor in support of the Court's decision to grant sanctions under Rule 11.") (internal citations omitted)); *In re Mungo*, 305 B.R. 762, 768 (Bankr. D.S.C. 2003) ("ghostwriting must be prohibited in this Court because it is a deliberate evasion of a bar member's obligations.").

Here, Class Counsel is entitled to discover the basis for Mr. Leps' objection and whether it is ghostwritten by a professional objector. Protecting class action settlements from the vagaries of professional objectors and deterring their disruptive conduct is an important goal of this District:

> [P]rofessional objectors can levy what is effectively a tax on class action settlements, a tax that has no benefit to anyone other than to the objectors. Literally nothing is gained from the cost: Settlements are not restructured and the class, on whose benefit the appeal is purportedly raised, gains nothing. As Professor Issacharoff explained, "[t]he unfortunate game is to lodge *pro forma* objections at the trial stage, then negotiate a private resolution in order to drop the invariable notice of appeal. Once the case has progressed beyond the

> trial court, there is no longer any accountability for side payments to objectors' counsel, and the game is on." Decl. of Prof. Samuel Issacharoff [**DE # 1885–7**], ¶ 33. . . . Should these or any other Objectors choose to persist in their objections in order to tie up the execution of this Settlement and further delay payment to the members of the Settlement Class, the Court will consider additional measures to make sure that the members of the Settlement Class are not further harmed as a result.

*In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, at 1362 n.30 (internal citations and quotations omitted).  The discovery sought here will aid in that goal.

Mr. Leps offers no valid reason for opposing the deposition.  In fact, his letter is based entirely upon factual statements that are flatly contradicted by the evidence.  Mr. Leps claims: "No one ever called me about giving this deposition" and "I was never contacted about this . . ." Motion at 1.  This is proved wrong by the declarations of Class Counsel who both called Mr. Leps, as well as the email and letter sent to him.  *See* Exhibits 3, 7.  He also asserts that he received only the notice[8] for the deposition and that "Nothing else was included." Motion at 1. That is fully contradicted by the testimony of the process server who swears that not only was the notice served on Mr. Leps, but the two subpoenas were as well, along with directions to the Court Reporters' office. *See* Exhibit 5.  Finally, Mr. Leps claims that he was never "told what my rights are when being subpoenaed for deposition" yet, clearly, the subpoena is the approved form used in federal court with a full explanation of the rights and responsibilities of the recipient, including a copy of the pertinent parts of Rule 45. *See* Exhibits 4, 5.

Next, Mr. Leps complains that the deposition was set "over 30 miles from my home" and due to his employment he "will lose money by having to travel to this deposition." Motion at 1.  But, setting a deposition 30 miles from the deponent's home is entirely proper under Rule 45 which allows witnesses to be subpoenaed for deposition "within 100 miles of where the person resides . . . ." Fed. R. Civ. P. 45(c)(1). Moreover, had Mr. Leps ever contacted Class Counsel, they would

---

[8] Although Mr. Leps refers to the Subpoena, the attachment he includes is the Notice.

have gladly moved the deposition to a location and/or time more convenient to him, just as Class Counsel accommodated Objector Muller's request to do so. But Mr. Leps did not.

As to Mr. Leps' assertion that he was diagnosed with pneumonia, again, Class Counsel would have accommodated any reasonable request to address Mr. Leps' health concerns. It is worth noting, however, that Mr. Leps' health concerns are undocumented by any medical professional (or otherwise) and apparently did not prevent him from working—his stated reason for not wanting to travel to the deposition.

Mr. Leps failed entirely in his obligations to respond to the subpoenas served upon him, and his proffered reasons for doing so are shown to be false by the evidence submitted herewith. Class Counsel incurred fees and expenses in the amount of $4,838.54[9] appearing for the deposition and filing this motion, which should be awarded pursuant to Federal Rule of Civil Procedure 37. *See* Fed. R. Civ. P. 37(a)(5) (if a motion to compel is granted "the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees" unless certain mitigating factors are present).

## Conclusion

Mr. Leps' objection has no merit and appears to be written by a professional objector attempting to evade the power of this Court, delay relief to the Class and extract an unwarranted payoff. Mr. Leps should be ordered to appear for deposition, produce the requested documents, and pay for Class Counsel's fees and costs for the filing this motion and appearing at the deposition.

---

[9] *See* Exhibit 3.

Respectfully submitted,

*/s/* Lance A. Harke, Esq.
lharke@harkeclasby.com
Howard M. Bushman, Esq.
hbushman@harkeclasby.com
Sarah Clasby Engel, Esq.
sengel@harkeclasby.com
**HARKE CLASBY & BUSHMAN LLP**
9699 NE Second Avenue
Miami Shores, Florida 33138
Telephone:    (305) 536-8220
Facsimile:     (305) 536-8229


Robert W. Rodriguez, Esq.
RobertWRodriguez@GMail.Com
**ROBERT W. RODRIGUEZ, P.A.**
66 West Flagler Street, Suite 1002
Miami, Florida 33130
Telephone: (305) 444-1446
Facsimile: (305) 907-5244

Thomas A. Tucker Ronzetti, Esq.
tr@kttlaw.com
Adam M. Moskowitz, Esq.
amm@kttlaw.com
Tal J. Lifshitz, Esq.
tjl@kttlaw.com
**KOZYAK, TROPIN & THROCKMORTON, LLP**
2525 Ponce de Leon Blvd., 9th Floor
Coral Gables, FL 33134
Telephone:  (305) 372-1800
Facsimile:    (305) 372-3508
*Counsel for Plaintiffs*

John Campbell, Esq.
john@campbelllawllc.com
**CAMPBELL LAW, LLC**
1500 Washington Avenue,
Suite 100
St. Louis, MO 63103
(314)588-8101
*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 20th day of October, 2015, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which will serve all counsel of record — including Objector Muller's counsel Stephen D. Field — via transmission of Notices of Electronic Filing generated by CM/ECF. I further certify that I mailed the foregoing document via FedEx to Objector Abner Leps at 11 Grayson Court, Charles Town, West Virginia 25414.

/s/ Lance A. Harke, Esq.

**SERVICE LIST**

Stanley H. Wakshlag
swakshlag@knpa.com
201 South Biscayne Boulevard, Suite 1100
Miami, FL 33131-4327
Phone: (305) 373-1000
Fax: (305) 372-1861

*Attorneys for Defendant Anheuser-Busch Companies, LLC*

David R. Pehlke
david.pehlke@skadden.com
Brandon R. Keel
brandon.keel@skadden.com
**SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP**
155 North Wacker Drive
Chicago, IL 60606
Phone: (312) 407-0700
Fax: (312) 407-0411

*Attorneys for Defendant Anheuser-Busch Companies, LLC*

Abner Leps
Iino27ii@hotmail.com
11 Grayson Court
Charles Town, West Virginia 25414
Phone: (205) 538-8618

*Objector*

Ross Muller
2140 Reef Drive
St. Augustine, Florida 32080
Phone: (949) 357-3132

*Objector*

Stephen D. Field
steve@field-law.com
Stephen D. Field, P.A.
102 East 49th Street
Hialeah, Florida 33013
Phone: (305) 698-3421
Fax: (305) 698-1930

*Attorney for Objector Ross Muller*

29715