UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 13-cv-23656-O'SULLIVAN
[CONSENT]

FRANCISCO RENE MARTY *et al.*,

        Plaintiffs,

                                                                                                   CLASS ACTION

v.

ANHEUSER-BUSCH COMPANIES, LLC

        Defendant.
_____/

**PLAINTIFFS' MOTION FOR SANCTIONS
AGAINST OBJECTOR MULLER'S COUNSEL STEPHEN FIELD**

Attorney Stephen D. Field has filed an objection on behalf of a class member who knows nothing of this lawsuit or the settlement and who cares only about getting paid off. [D.E. 161]. The objection is frivolous, filed in bad faith by Mr. Field to needlessly obstruct the approval of an excellent class settlement before the settlement becomes final. The Court recognized the frivolous nature of Field's objection when each of his objections was overruled as part of the settlement's final approval. [D.E. 171]. After final approval, Plaintiffs deposed Field's client Ross Muller, who revealed that he is nothing more than his counsel's tool to delay final approval in an attempt to get a payoff from Plaintiffs' counsel. Specifically:

- Field's client knows nothing of the lawsuit or the settlement to which he objected, *see* Dep. Of R. Muller (hereinafter "Tr."), attached as Ex. A, at 20–22;

- He knows nothing of the settlement's terms or the benefits it provides to the class, *see* Tr. at 23–25;

- He has no idea what is "wrong" with the settlement or how it could be improved, *see* Tr. at 26–27, 34; and

- All he expects is a payoff of $2,000 — there is nothing else he needs or wants to dismiss his objection, *see* Tr. at 27, 29, 31.

In their Motion for Final Approval, Class Counsel cautioned that "Nationwide consumer class litigation often results in lawyer-driven objections in an effort to hold up the class settlement solely for a payoff." [D.E. 157 at 7 n.3.] That is precisely what is occurring here. The Court should not allow, much less reward, such conduct. Accordingly, Class Counsel move for the Court to issue an order finding that the Objector's Counsel Stephen Field has violated 28 U.S.C. § 1927, sanctioning the Objector's Counsel, and awarding Class Counsel reasonable attorney's fees and costs.

## BACKGROUND

After a hard-fought litigation in which fact and expert discovery was largely completed and class certification and motions in *limine* were fully briefed and argued, Plaintiffs and Defendant Anheuser-Busch Companies, LLC ("A-B") (collectively the "Parties") negotiated a settlement that provides substantial relief to purchasers of Beck's Beer, a domestically brewed beer that Plaintiffs alleged was falsely advertised and marketed as an import by A-B throughout the United States. The Parties executed a Settlement Agreement and Release ("Settlement Agreement" (DE 149-1)) and agreed upon the form of proposed Notice to Class Members.

The Court preliminarily approved the terms of the Settlement Agreement and certified the proposed Settlement Class on June 23, 2015. *See* Order Granting Prelim. App. [D.E. 152]. The Court preliminarily found that "the Settlement Agreement (1) was reached after arm's-length negotiations before a distinguished mediator, and after substantial factual and legal analyses by the parties; and (2) provides substantial benefits to all class members, especially in light of the risks associated with this litigation." *Id.* at 3. The Court also approved the proposed Class Notice

and notice plan, finding that it meets the requirements of Rule 23 of the Federal Rules of Civil Procedure, and provides the best notice practicable under the circumstances. *See id.* at 3.

No members of the class objected to preliminary approval, only a handful opted out, and only two professionals chose to object. Field and his client are responsible for one of these objections.

On October 20, 2015, the Court held a final approval hearing and granted final approval of the terms of the Settlement Agreement. [D.E. 172]. The Court also considered the objections raised by Field, who did not attend the final fairness hearing, and overruled his and his client's objections in full. [D.E. 171 ¶¶ 2–8].

Plaintiffs deposed Field's client on October 23, 2015, and his deposition confirms that his and Field's "objection" is not an effort to improve the settlement — it is simply a tactic to delay the finality of the settlement and its benefits to the Class in order to extract a pay-off.[1] The deposition made clear that Field's client could not answer even basic questions,[2] such as what this lawsuit is about:

> Q. My question is: Do you know what this lawsuit is about?
>
> A. I really don't know how to answer your question.
> . . .
> Q. My question is what—do you know what this case is about sir?
>
> A. I really don't know what you wanted me to say.

Tr. at 20-21.

---

[1] Plaintiffs' subpoena to Field's client also requested documents in his possession related to, among other things, his objection in this case and in other cases. Field's client produced no documents. *See* Tr. at 17.

[2] Field's client also did not seem to understand his purpose as an objector, testifying that the reason he was at the deposition was "just to say, you know, that I, you know, don't think that Beck's brand is what it used to be." Tr. at 21.

> Q. Do you remember anything about it? Do you remember anything about any of the allegations in this lawsuit—
>
> A. Not at the moment.

Tr. at 22.

Nor did Field's client know what any of the terms of the settlement were:

> Q. . . . I need to know whether you know what the terms [of the settlement] are. Do you know what they are?
>
> A. I don't remember what they are.

Tr. at 23-24.

> Q. Do you know what—what the class member, if you file a claim, will receive in this case?
>
> A. I don't know.

Tr. at 24.

> Q. Do you know what the terms were of the changes to the marketing of the beer?
>
> A. I don't remember.

Tr. at 25.

Field's client likewise had no idea what was "wrong" with the settlement, other than his conclusory assertion that it was not "fair":

> Q. . . . So tell me in your own words what—what are you objecting to? What is your problem with this settlement?
>
> A. I just don't think the settlement was fair at the number it's at.
>
> Q. Okay. What is the number that it's at?
>
> A. I don't remember.

Tr. at 26.

Similarly, Field's client had no concept of how the settlement could be improved, other than his conclusory belief that it should be "more":

356811                                    4

> Q. . . . So what do you think the settlement should be, in your opinion? What should be changed about it?
>
> A. I don't know. I just think it should be more.
>
> Q. Okay. You think it should be more. Do you know how much more?
>
> A. No, I don't.

Tr. at 27; *see also id.* at 34.

Field's client's complete lack of knowledge about the case, the settlement, what is "wrong" with the settlement, or how it could be improved is not surprising, because his admitted goal is not to make the settlement better for the Class, but to delay the settlement in the hopes that he will get paid to walk away:

> Q. Is there anything else that you—that you would—you would need [other than money] to dismiss your objection?
>
> A. Something I need to dismiss my objection? I don't understand.
>
> Q. Yeah. Is there anything else [other than money] that you need or want?
>
> A No.

Tr. at 31. He was clear that he wants to be paid for his time and expects to be paid about $2,000.00 for this case. *See* Tr. at 27, 29.

Field's client Muller's current objection is part of pattern. Muller previously submitted a *pro forma* objection to a settlement relating to the sweetener Truvia. Tr. at 36. Worse, that objection was actually prepared by his attorney in that matter, who did not file a notice of appearance — a widely disparaged practice called ghost-writing. *Id.* Once the objection was overruled, his attorney filed a notice of appearance and a notice of appeal. *See Howerton et al. v. Cargill, Inc. et al.*, Case No. 13-cv-00336 (D. Hawaii) (DE 117 & 122); *see also generally* Truvia Dockets (attached as Ex. B). No changes to the Truvia settlement were ever made, yet

Muller dismissed his objection because he was paid $2,000 (and undoubtedly his attorney was paid more). *Id.*; Tr. at 9-10. In fact, Muller could recall nothing about the Truvia case other than the fact he got paid $2,000.00. *See* Tr. at 11 ("Q. But you have no recollection of the outcome of your objection, other than you received $2,000 to dismiss your appeal; is that right? A. That's what I said, yeah."). It is clear that Field and Muller are hoping to accomplish the same here — obtain no changes to the settlement, just delay this settlement so that they will be paid to dismiss their objection and inevitable appeal.

Field's objection is meritless, brought in bad faith to needlessly obstruct the settlement's finalization. Even when confronted with the obvious false statements in his client's objection, Field and his client still have done nothing to correct the record. *See* Tr. at 40-42. The Objection was meant as nothing more than a way to harass the Parties and needlessly increase their costs of litigation in an attempt to exact a ransom settlement. Accordingly, and as explained more fully below, the Objection is not warranted by existing law, has no evidentiary or factual support, was filed in bad faith, and is intended merely to cause needless obstruction and harass and increase Defendants' cost of litigation. The objection warrants sanctions against Mr. Field under 28 U.S.C. § 1927.

## LEGAL STANDARD

Section 1927 provides,

> Any attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927. This statute was designed to curb exactly the kinds of abuses that Mr. Muller's counsel, Stephen Field, has committed in this case. It allows district courts to "assess attorney's fees against litigants, counsel, and law firms who willfully abuse the judicial process by conduct tantamount to bad faith." *Malautea v. Suzuki Motor Co.*, 987 F.2d 1536, 1544 (11th

356811 6

Cir. 1993) (quoting *Avirgan v. Hull*, 932 F.2d 1572, 1582 (11th Cir. 1991)). "Bad faith" is the touchstone, and "[a] determination of bad faith is warranted where an attorney knowingly or recklessly pursues a frivolous claim or engages in litigation tactics that needlessly obstruct the litigation of non-frivolous claims." *Schwartz v. Millon Air, Inc.*, 341 F.3d 1220, 1225–26 (11th Cir. 2003).

Muller and Field's objection was filed in bad faith. Field has knowingly pursued a frivolous claim and engaged in litigation tactics that have needlessly obstructed (and will continue to needlessly obstruct) the approval of an excellent class settlement.

For Field's conduct he should be sanctioned.

## ARGUMENT

The Court rejected each frivolous objection raised by Field and his client in the Court's Order Overruling Objections as part of final approval of the Settlement, and Field's client's deposition confirmed that the Objection was filed only to delay the relief the settlement provides to the Class.

First, Field argued that the Settlement provides an inadequate claims process and offers inadequate relief due to the $12.00 and $50.00 caps. The Court rejected this argument, finding that Field's objection failed to "take into account the inherent risks associated with complex litigation such as this and the possibility that A-B may have ultimately prevailed in this case." [D.E. 171 ¶ 3).

Second, Field argued that the percentage-of-the-fund analysis is inapplicable. The Court rejected this argument under *Poertner v. Gillette Co.*, 2015 WL 4310896 (11th Cir. 2015), where the Eleventh Circuit approved a claims-made class action settlement in a comparable deceptive labeling case. This Court reasoned that [t]he *Poertner* decision is consistent with numerous other

decisions from this district that use the percentage-of-the-fund approach to evaluate the appropriateness of attorneys' fees in a claims-made class action settlement like this one" and that "[t]he 'percentage-of-the-fund' analysis applies here." [D.E. 171 ¶ 4].

Third, Field argued that the dollar amount of the actual claims made is low in comparison to the amount of fees. The Court rejected this argument, as "[a] similar objection was recently unequivocally rejected by the Eleventh Circuit in *Poertner* because it was 'based on [a] flawed valuation of the settlement pie[,] limiting the monetary value to the amount of [Defendant's] actual payouts,' while excluding the value of the injunctive and other negotiated relief." *Id.* ¶ 5.

Fourth, the Court rejected Field's objection that Class Counsel did not provide evidence to support a lodestar analysis, because "Class Counsel provided detailed testimony of the number of hours expended, the hourly rates for the various timekeepers, the work performed, the prevailing market rates, and all of the lodestar factors." *Id.* ¶ 6 (citing Exhibit 1 to Plaintiffs' Motion for Final Approval [D.E. 157] — Ronzetti Decl. and Composite Exhibit 1 thereto).

Fifth, the Court gave no weight to Field's argument that the injunctive relief secured by the settlement should not be considered a benefit to the Class when valuing the Settlement for purposes of awarding fees, because "[u]nder Eleventh Circuit law, injunctive changes such as label modifications represent a benefit to the class and should be considered when approving a class settlement." [D.E. 171 ¶ 7 (citing *Poertner*, 2015 WL 4310896, at *5, *6)].

Finally, the Court rejected Field's objection that the motion for attorneys' fees was not posted to the settlement website and that Plaintiffs' $5,000.00 class representative awards are excessive. The Court recognized that "Class Counsel's fee motion has been posted on the Settlement Website since September 22, 2015, before Muller filed his objection and before the September 29, 2015 objection deadline," and that "Rule 23(h) does not require a fee motion to be

posted on the settlement website before the objection deadline." [D.E. 171 ¶ 8]. The Court further concluded that the $5,000.00 service award was "reasonable and well-supported." [3] *Id.*

Each of Field's objections are factually and legally meritless and were appropriately overruled by the Court. Moreover, the recent deposition of Field's client confirms that the purpose of his objection is not to improve the settlement, but to delay the relief the settlement provides to the Class in the hopes that Field and his client will be paid to walk away. Field's client knows nothing of the lawsuit or the settlement to which he objected, knows nothing of the settlement's terms or the benefits it provides to the class, has no idea what is "wrong" with the settlement or how it could be improved, and expects nothing more than a payoff of $2,000 to dismiss his objection. He is a tool for Mr. Field to hold up final approval in the hopes of getting paid off.

This is the precise situation that 28 U.S.C. § 1927 seeks to prevent. Sanctions are warranted.

## **Conclusion**

For the reasons set forth above, Class Counsel seek sanctions against Counsel Stephen Field under 28 U.S.C. § 1927. His Objection was filed on behalf of a client who knows nothing of the lawsuit or the settlement, including the terms of the settlement, what was allegedly wrong with it, or how it could be improved. All Field and his client want is a pay-off, which Field's client admitted during his deposition. Nevertheless, Field seeks to defeat the benefits to the class

---

[3] Field is well aware that the $5,000.00 representative award is reasonable — he made this same objection to the *Kirin* settlement and it was summarily rejected. *See* Order Overruling Objections, attached as Ex. C, at 3. Indeed, without a hint of irony, Field's client admits he expects to get paid for his time in this case (although he has obtained nothing for the Class), yet he would deny that same benefit to the Class representatives who answered interrogatories, travelled to Florida for deposition, produced documents, and helped to achieve the settlement. Tr. at 27, 29.

and his client. The Objection was filed in bad faith to hold up final approval to exact a ransom payment before allowing the settlement to become final.

**WHEREFORE**, Class Counsel respectfully request that the Court issue an order finding that the Objector's Counsel has violated 28 U.S.C. § 1927, sanctioning the Objector's Counsel, and awarding Plaintiffs reasonable attorney's fees and costs.

Dated: November 12, 2015                             Respectfully submitted,

| | |
|---|---|
| Lance A. Harke, P.A.<br>lharke@harkeclasby.com<br>Howard M. Bushman, Esq.<br>hbushman@harkeclasby.com<br>**HARKE CLASBY & BUSHMAN LLP**<br>9699 NE Second Avenue<br>Miami Shores, Florida 33138<br>Telephone:   (305) 536-8220<br>Facsimile:    (305) 536-8229 | /s/Thomas A. Tucker Ronzetti<br>Thomas A. Tucker Ronzetti, Esq.<br>tr@kttlaw.com<br>Adam M. Moskowitz, Esq.<br>amm@kttlaw.com<br>Tal J. Lifshitz, Esq.<br>tjl@kttlaw.com<br>**KOZYAK, TROPIN & THROCKMORTON LLP**<br>2525 Ponce de Leon Blvd.,<br>9th Floor<br>Coral Gables, FL 33134<br>Telephone:  (305) 372-1800<br>Facsimile:   (305) 372-3508<br>*Counsel for Plaintiffs* |
| Robert W. Rodriguez, Esq.<br>RobertWRodriguez@GMail.Com<br>**ROBERT W. RODRIGUEZ, P.A.**<br>66 West Flagler Street, Suite 1002<br>Miami, Florida 33130<br>Telephone:  (305) 444-1446<br>Facsimile:  (305) 907-5244 | John Campbell, Esq.<br>john@campbelllawllc.com<br>**CAMPBELL LAW, LLC,**<br>1500 Washington Avenue,<br>Suite 100<br>St. Louis, MO 63103<br>Telephone:  (314)588-8101 |

## LOCAL RULE 7.1(a)(3) CERTIFICATION

**I HEREBY CERTIFY** that prior to filing this motion Plaintiffs attempted to confer in a good faith effort to resolve by agreement the issues to be raised in this motion by emailing Mr. Field on November 9, 2015 at 10:14 AM, but Plaintiffs have received no response from Mr. Field.

By: /s/Thomas A. Tucker Ronzetti
Thomas A. Tucker Ronzetti, Esq.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was filed electronically with the Clerk of Court and served via email to Defendants' Counsel on Thursday, November 12, 2015.

By: /s/Thomas A. Tucker Ronzetti
Thomas A. Tucker Ronzetti, Esq.