# EXHIBIT A

Page 1

1                    UNITED STATES DISTRICT COURT

                    SOUTHERN DISTRICT OF FLORIDA

2                     Case No. 13-cv-23656-JJO

3

4    FRANCISCO RENE MARTY,

     SETH GOLDMAN, and FERNANDO

5    MARQUET on behalf of themselves

     and all others similarly situated,

6

7              Plaintiffs,

8    vs.

9

10   ANHEUSER-BUSCH COMPANIES, LLC,

11             Defendant.

     _____/

12

13

14

15

16     VIDEOTAPED/VIDEOCONFERENCE DEPOSITION OF ROSS MULLER

17          Taken at the Instance of the Plaintiffs

18

19

20   DATE:                 October 23, 2015

21   TIME:                 10:37 a.m. until 11:32 a.m.

22   PLACE:                St. Augustine Court Reporters

                           1510 North Ponce De Leon Boulevard

23                         Suite A

                           St. Augustine, Florida

24

     REPORTED BY:          MELISSA SCHROEDER, RPR,

25                         Court Reporter and Notary Public

```
                                                    Page 2

 1   APPEARANCES:
 2
 3            LANCE A. HARKE, P.A.
              SARAH C. ENGEL, P.A.
 4            (via videoconference)
              Harke, Clasby & Bushman, LLP
 5            9699 NE Second Avenue
              Miami Shores, Florida  33138
 6
              On Behalf of the Plaintiffs
 7
 8
              BRANDON R. KEEL, ESQUIRE
 9            (via videoconference)
              Skadden, Arps, Slate, Meagher & Flom, LLP
10            155 North Wacker Drive
              Chicago, Illinois  60606
11
              On Behalf of the Defendant
12
13            STEPHEN D. FIELD, ESQUIRE
              Stephen D. Field, P.A.
14            102 East 49th Street
              Hialeah, Florida  33013
15
              On Behalf of the Witness
16
17   ALSO PRESENT:
              Rick Nelson, Videographer
18
19
20
21
22
23
24
25
```

Page 3

                     I N D E X

TESTIMONY OF ROSS MULLER

        Direct Examination by Mr. Harke          5

CERTIFICATE OF OATH                              46

CERTIFICATE OF REPORTER                          47

ERRATA SHEET                                     48



                   E X H I B I T S

Plaintiffs' Exhibit 1                    15

Plaintiffs' Exhibit 2                    29

Plaintiffs' Exhibit 3                    36

Plaintiffs' Exhibit 4                    42

              S T I P U L A T I O N S


        It is hereby agreed and so stipulated by and
between the parties hereto, through their respective
counsel, that the reading and signing of the transcript
are expressly reserved by the Deponent.

Page 4

```
 1          THE VIDEOGRAPHER:  We are now on the record.
 2     Please note that the microphones are sensitive and
 3     may pick up whispering and private conversations.
 4     Please turn off all cell phones or place them away
 5     from the microphones, as they can interfere with
 6     the deposition audio.
 7          Recording will continue until our -- all
 8     parties agree to go off the record.
 9          My name is Eric Nelson representing Veritex
10     Legal Solutions.  The date today is October 23rd,
11     2015, and the time is approximately 10:37 a.m.
12          This deposition is being held at St. Augustine
13     Court Reporters, located at 1510 North Ponce de
14     Leon Boulevard, St. Augustine, Florida, and is
15     being taken by the counsel for the Plaintiffs.
16          The caption of this case is Francisco Rene
17     Marty, Seth Goldman, and Fernando Marquet versus
18     Anheuser-Busch Companies, LLC.  This case is being
19     held in the United States District Court, Southern
20     District of Florida, Case Number 13-cv-23656-JJO.
21     The witness -- the name of the witness is Ross
22     Muller.
23          At this time, the attorneys present in the
24     room, and everybody attending remotely, will
25     identify themselves and the parties they represent.
```

1          MR. HARKE:  Good morning.  This is Lance

2      Harke.  I represent the Class.  With me is my

3      partner, Sarah Engel, also representing the Class.

4          MR. KEEL:  Brandon Keel representing

5      Anheuser-Busch.

6          MR. FIELD:  And Stephen Field representing the

7      objector, Ross Muller.

8          THE VIDEOGRAPHER:  Our court reporter is

9      Melissa Schroeder, representing Veritex Legal

10      Solutions, will swear in the witness, and we can

11      proceed.

12          COURT REPORTER:  Raise your right hand,

13      please.

14          (Whereupon, the witness was sworn in by the

15   court reporter and responded "I do" to the oath.)

16   WHEREUPON,

17                        ROSS MULLER,

18       having been first duly sworn, was called as

19          a witness and testified as follows:

20                    DIRECT EXAMINATION

21   BY MR. HARKE:

22      Q.   Good morning.  Hi, how are you?

23      A.   Oh, you're talking to me now.  Okay.  Good

24   morning.  I'm fine.

25      Q.   I am, yes.

1      A.   All right.

2      Q.   Okay.  My name is Lance Harke.  I represent

3 the Class.  How do you pronounce your name, Mr. Muller?

4      A.   It's Ross Muller.

5      Q.   Muller, okay.  Thank you.

6           Mr. Muller, this is a deposition, and you're

7 being deposed as part of a court proceeding.  Have you

8 ever been deposed before?

9      A.   Yeah.  Once.

10     Q.   Okay.  What circumstances were those?

11     A.   Sorry?

12     Q.   When were you deposed?

13     A.   About a year ago.

14     Q.   Okay.  In what matter were you deposed?

15     A.   For a different class action.

16     Q.   Okay.  Was it the Truvia class action?

17     A.   Yeah.

18     Q.   Okay.  And who deposed you in the Truvia class

19 action?

20     A.   I don't know.  Up in Jacksonville, I had to go

21 somewhere.

22     Q.   Okay.  Do you remember the lawyer's name who

23 asked you questions?

24     A.   No.

25     Q.   Do you remember the court reporter's office

1   where the deposition was held?

2        A.   I'm new to the area; so, I mean, I took

3   directions and went up to Jacksonville and, you know,

4   did the deposition and went back.  So I'm not familiar

5   with that law office for any other reason than for that.

6        Q.   Uh-huh.  Do you remember the name of -- were

7   you represented by a lawyer in that case?

8        A.   Yeah.

9        Q.   What was his name?

10       A.   I don't remember at the time.

11       Q.   You don't remember the lawyer who represented

12   you in the Truvia objection that you filed?

13       A.   No.  It was a while ago.  I don't have a very

14   good memory.

15       Q.   Was it Brad Salter?

16       A.   Yeah, Brad in Hawaii.

17       Q.   Did Brad represent you -- yeah.  Did he

18   represent you at the deposition?

19       A.   He was on the phone.

20       Q.   Okay.  Was he serving as your lawyer when he

21   was on the phone?

22       A.   Yeah.

23       Q.   Okay.  Do you have a copy of the transcript of

24   the deposition?

25       A.   Not with me.  Should I?

1     Q.    Okay.  Do you have -- do you have one

2  anywhere?

3     A.    Probably at home somewhere in a file.

4     Q.    Okay.  How long were -- was the deposition,

5  Mr. Muller?

6     A.    A lot longer than it probably should have

7  been.  Maybe like two hours.

8     Q.    Is that -- right.  Two hours.

9         And what happened in the Truvia class action?

10  Did you succeed on your objection?

11     A.    I mean, I gave my deposition.

12     Q.    Uh-huh.  Did you change the settlement?

13     A.    I'm not really sure.  I don't have that

14  information with me.

15     Q.    You don't know whether or not there were any

16  changes made to the settlement in Truvia as a result of

17  your objection?  You don't know one way or the other?

18  Is that what you're saying?

19     A.    Is that really so relevant to the deposition

20  for today?

21     Q.    Yeah, it certainly is.  The reason that -- in

22  your objection today, you write that the reason that

23  you're here is to improve the settlement; isn't that

24  right?

25     A.    Yeah.

Page 9

```
 1        Q.   Did you improve the settlement in Truvia,
 2   Mr. Muller?
 3        A.   I don't remember.
 4        Q.   You don't remember one way or the other?
 5        A.   No.
 6        Q.   Did you get paid in Truvia, someone give you
 7   money to dismiss your objection?
 8        A.   To dismiss my objection?
 9        Q.   Yes, sir.
10        A.   Yeah, I got paid a small fee for going out
11   there.
12        Q.   What was the small fee?
13        A.   And then I got paid a fee for, you know, my
14   time and travel.
15        Q.   Okay.  How much was that?
16        A.   The time and travel?  I don't know.  It was
17   like 100 bucks or something.
18        Q.   No.  No, no, no.  How much was the fee that
19   you received?
20        A.   $2,000.
21        Q.   Okay.  So you received $2,000 in exchange for
22   dismissing your appeal?
23        A.   I received $2,000.
24        Q.   Is that right?
25             Right.  Was that in exchange for dismissing
```

Page 10

```
1    your appeal?
2         A.   I don't really understand the question.
3         Q.   Well, you filed a notice of dismissal of your
4    appeal in the Truvia class action, did you not?
5         A.   Yeah.
6         Q.   Okay.  And in exchange for doing that, did you
7    receive $2,000?
8         A.   Yep.
9         Q.   Okay.  And was there a written settlement
10   agreement that documented this exchange?
11        A.   I don't remember if I had that.
12        Q.   I didn't ask whether you had it.  I asked you
13   whether it exists.  Did you sign a settlement agreement
14   to resolve your objection in Truvia?
15        A.   I don't -- I'm not familiar with some of these
16   terms that you're saying right now.
17        Q.   Did you sign a piece of paper and receive the
18   2,000 --
19        A.   I mean, I went there because I had a
20   problem --
21             COURT REPORTER:  One at a time.
22             THE WITNESS:  I went there because I had a
23        problem with the way the brand represented itself,
24        and I -- and I did what I had to do.
25
```

Page 11

1   BY MR. HARKE:

2       Q.   Right.  Well, what did you do?  Did any --

3   were there any changes made to the settlement?

4            I read your objection in Truvia.  You were

5   complaining about the injunctive relief.  You were

6   complaining about the claim form.  You were complaining

7   about the attorney's fees.

8            Were there any changes whatsoever as a result

9   of your objection in Truvia?

10      A.   I don't remember.

11      Q.   That's a yes-or-no question.

12      A.   I've been busy with --

13      Q.   You don't remember --

14      A.   I've been busy with my own work.  I haven't

15  really followed up.

16      Q.   Okay.  Is there any other times where you've

17  ever filed a objection besides this one in Truvia?

18      A.   No.

19      Q.   But you have no recollection of the outcome of

20  your objection, other than you received $2,000 to

21  dismiss your appeal; is that right?

22      A.   That's what I said, yeah.

23      Q.   Okay.  All right, Mr. Muller.  This is a

24  deposition; so I'm just going to familiarize -- make

25  sure you're familiar with the -- the way these things

Page 12

1    proceed.  I'm going to be asking you questions.  Is that
2    all right?
3         A.   Okay.
4         Q.   Okay.  And you're going to answer them to the
5    best of your knowledge.  Is that fair?
6         A.   Sure.
7         Q.   And because the court reporter is taking down
8    our names, I need you to wait for me to finish my
9    question.  I'll do my best to wait for you to finish
10   your response.  Is that all right?
11        A.   Yep.
12        Q.   And you recognize, sir, that you're under
13   oath, right?
14        A.   Yep.
15        Q.   You're obligated to tell the truth to the best
16   of your knowledge.  Do you understand that?
17        A.   Yeah, I understand that.
18        Q.   If you fail to tell the truth, you could be
19   prosecuted for perjury.  Do you know that?
20        A.   Okay.
21        Q.   Okay.  If you need to take a break, you let me
22   know; but, otherwise, I'll expect you to finish the
23   question before we take any breaks.  Is that fair?
24        A.   Sure.
25        Q.   Let me ask you a little bit about your

1  personal background.  Your name is Ross Muller; is that

2  right?

3     A.   Yeah.  Muller, yeah.

4     Q.   Muller.  All right.

5          Well, where do you live, sir?

6     A.   St. Augustine.

7     Q.   What is your address?

8     A.   2140 Reef Drive.

9     Q.   Okay.  What is the zip code?

10     A.   32080.

11     Q.   What is your phone number?

12     A.   (904)342-7445.

13     Q.   Do you have an e-mail, sir?

14     A.   Yeah.

15     Q.   What is your e-mail address?

16     A.   It's fromwithinone@hotmail.com.

17     Q.   I'm sorry, what is that?

18     A.   Fromwithinone@hotmail.com.

19     Q.   Okay.  All right.  When were you born?

20     A.   October 27th, 1972.

21     Q.   All right.  And tell me a little bit about

22  yourself.  Where were you -- where were you raised and

23  educated and what do you do for a living?

24     A.   I was born in New York City and, in the early

25  '90s, went to school for architecture; and I've been

Page 14

1    working in that profession -- architectural interior,

2    graphic design, and landscaping design -- for the last

3    20 years.

4         Q.   Okay.  Where did you go to school for

5    architecture?

6         A.   New York Institute of Technology.

7         Q.   Did you receive a degree?

8         A.   What?

9         Q.   Did you receive a degree?

10        A.   No.

11        Q.   All right.  What years were you attending that

12   school?

13        A.   1990 to '94.

14        Q.   Uh-huh.  Why did you not complete your

15   education?

16        A.   I don't think that's any of your business.

17        Q.   Okay.  But you have gone --

18        A.   I have my own personal reasons for leaving

19   school, and I don't feel like I need to discuss them

20   with you.

21        Q.   Okay.  I'm just trying to get a feel for your

22   background, sir.  So you have no college degree.  Is

23   that fair?

24        A.   That's what I just said.

25        Q.   All right.  And what do you do for a living?

Page 15

1      A.   I just told you what I do.  For the last 20

2   years, I've worked as a architectural interior graphic

3   and landscape designer.

4      Q.   What company do you work for?

5      A.   I work for myself currently.

6      Q.   What is the name of your -- I'm sorry?  Does

7   your company --

8      A.   I currently work for myself.

9           Huh?

10          COURT REPORTER:  One at a time.

11  BY MR. HARKE:

12     Q.   Right.  Is there a business name that you

13  operate under?

14     A.   From Within - Design and Management, LLC.

15     Q.   Uh-huh.  Is that LLC incorporated in the state

16  of Florida?

17     A.   Yeah.

18     Q.   And are you the sole employee of that company?

19     A.   Yeah.  Yes.

20     Q.   Okay.

21          MR. HARKE:  Let's go ahead and ask the -- I'll

22       ask the court reporter to mark as Exhibit 1 the

23       subpoena for deposition for Mr. Muller.

24          (Court reporter clarification.)

25          (Plaintiffs' Exhibit Number 1 was marked for

Page 16

```
 1   identification.)
 2           MR. FIELD:  Hey, Lance?  This is Steve --
 3       Steve Field here.
 4           MR. HARKE:  Yes.
 5           MR. FIELD:  Is it -- it was meant to be both
 6       subpoenas as -- as --
 7           MR. HARKE:  Yes, please.  Thank you.
 8           MR. FIELD:  Okay.  I just wanted to be sure.
 9       Thanks.
10           MR. HARKE:  Thank you.
11           MR. FIELD:  He's got them.
12           MR. HARKE:  Okay.  Thank you.
13   BY MR. HARKE:
14       Q.   Mr. Muller, do you see the two subpoenas that
15   are marked as Exhibit 1 to your deposition in front of
16   you?
17       A.   Yeah.
18       Q.   And you received a copy of both; is that
19   right?
20       A.   I guess so.  I got a lot of paperwork with a
21   lot of conflicting dates and times and 10:30 p.m. and
22   wrong address and -- so I guess, yeah, I have a copy of
23   this.
24       Q.   Okay.  You got -- you received a copy of this?
25           Do you see the subpoena to produce documents,
```

Page 17

1   information, or objects or to permit inspection of

2   premises in a civil action?  Do you see that?

3            THE WITNESS:  Where is that supposed to be?

4            Okay.

5   BY MR. HARKE:

6        Q.   All right.  And the very last page, sir, which

7   would be page 6 of that document, has a list of document

8   requests that you were instructed to bring with you to

9   this deposition.  Do you see that?

10       A.   Yeah.

11       Q.   All right.  Did you bring with you any

12  documents to this deposition?

13       A.   No.  I just brought the last thing that had

14  the address on it.  So ...

15       Q.   Do you have any documents to produce today in

16  your deposition?

17       A.   No.

18       Q.   Did you sign a retainer agreement with

19  Mr. Field?

20       A.   Yeah.

21       Q.   All right.  Do you have a copy of that

22  retainer agreement?

23       A.   No.  I didn't think -- I didn't bring it with

24  me, no.

25       Q.   All right.  Do you have a copy of it?

Page 18

```
 1        A.    Yeah, at the house.
 2        Q.    All right.  And what is the -- what are the
 3   terms of your retainer with Mr. Field?  What's the
 4   financial arrangement that you and Mr. Fields [sic] have
 5   agreed to?
 6        A.    I don't remember.  I don't have it in front of
 7   me.
 8        Q.    You literally have no idea --
 9              THE WITNESS:  Do you have one?
10   BY MR. HARKE:
11        Q.    -- what agreement you reached with him?
12              THE WITNESS:  You have a copy of that?
13              MR. FIELD:  No, I don't.
14              THE WITNESS:  I don't have it with me; so I
15        don't know.
16   BY MR. HARKE:
17        Q.    All right.  But I'm not asking whether you
18   have it with you.  You already answered that.  I'm
19   asking if you remember anything about it whatsoever, any
20   detail of it at all?
21        A.    Not at the moment.
22        Q.    You can't remember how much you agreed to pay
23   Mr. Field for representing you in this case?
24        A.    No, I don't remember.
25        Q.    Okay.  Do you remember what Mr. Field is
```

1    expected to receive as compensation for representing you

2    in this case?

3         A.   No, I don't remember.

4         Q.   Do you remember how much you're supposed to

5    receive if you're successful in your objection?

6         A.   No.  I don't have that information.

7         Q.   Uh-huh.  Do you have any -- any documents that

8    show that you purchased Beck's beer?

9         A.   No.  I don't save receipts when I buy beer,

10   because I usually pay in cash, and I don't try and file

11   that with the IRS.

12        Q.   So you have no documents that would evidence

13   that you purchased Beck's beer --

14        A.   No.

15        Q.   -- is that right?

16        A.   I drank a lot of it when I was in college.

17   And when I drank it recently, I thought it wasn't the

18   same product that it appears to be, since I'm kind of a

19   connoisseur of German beer.  So that's why I took the

20   time to look up what might have happened.  You know, I

21   can -- and noticed that it was bought out by

22   Anheuser-Busch.

23             So, I mean, I brought it to a party with a lot

24   of German beer drinkers with, you know, Spaten and

25   Franziskaner, and I opened it and drank some and didn't

Page 20

1    even finish it, and nobody else touched it either.  So

2    that was sort of what made me curious to find out, like,

3    what happened.

4         Because I remember back when I drank it in

5    college, the tagline was Beck's is German for beer.  So

6    that's -- to me, you know, at this point in time, I

7    guess that's -- I don't know if that's still the

8    tagline, but it's not the same quality it used to be.

9         Q.   Have you ever been charged with a crime --

10        A.   No.

11        Q.   -- Mr. Muller?

12             Have you ever been in another lawsuit besides

13   this one and the Truvia objection that you filed?

14        A.   No.

15        Q.   Have you ever been sued?

16        A.   No.

17        Q.   Do you know what this lawsuit is about,

18   Mr. Muller?

19             MR. FIELD:  Objection.  Calls for a legal

20        conclusion.

21             Witness, go ahead and answer.

22   BY MR. HARKE:

23        Q.   My question is:  Do you know what this lawsuit

24   is about?

25        A.   I really don't know how to answer your

1    question.

2         Q.   Why is that?

3         A.   You know --

4         Q.   My question is what -- do you know what this

5    case is about, sir?

6         A.   I don't really know what you wanted me to say.

7         Q.   Well, if someone -- if one of your friends

8    were to ask you why you're sitting here today, what

9    would you tell them?

10        A.   Well, I came here just to say, you know, that

11   I, you know, don't think that Beck's brand is what it

12   used to be.

13        Q.   That's the reason you're here?

14        A.   Yeah.

15        Q.   Okay.  Do you know what it was that my law

16   firm did to prosecute this case?

17        A.   I don't know what you mean.

18        Q.   Do you know any of the work that -- that my

19   law firm did to achieve the settlement that we did?

20        A.   I mean, I've read some papers, but I -- I

21   don't know in detail, like, what you did.

22        Q.   And do you know generally?  Do you know

23   anything about the lawsuit that you're sitting here

24   today complaining about, anything at all?

25        A.   I don't know exactly what I'm supposed to say

Page 22

1   about it.

2       Q.   (Inaudible.)

3       A.   Well, I told you why I'm here.

4            COURT REPORTER:  One at a time, please.

5   BY MR. HARKE:

6       Q.   I'm sorry, Mr. Muller.  Go ahead.

7       A.   I mean, I'm just here to object to a

8   settlement for a product that is not what it used to be.

9       Q.   Right.  But that's what the lawsuit's about.

10  Do you know that?

11      A.   Yeah.

12      Q.   All right.  Did you read any of the documents

13  in the case?  Did you read the complaint that we filed?

14      A.   I might have breezed over it, but I don't

15  remember a lot of it.

16      Q.   Do you remember anything about it?  Do you

17  remember anything about any of the allegations in this

18  lawsuit --

19      A.   Not at the moment.

20      Q.   -- that we -- all right.

21           Did you read the Anheuser-Busch's answer,

22  their motion to dismiss, any of the documents that

23  Anheuser-Busch filed in opposition to our complaint?

24      A.   I don't remember what they said.

25      Q.   Do you know what any of the defenses were that

Page 23

1   Anheuser-Busch raised to our lawsuit?

2        A.   Not off the top of my head.

3        Q.   Is there -- you know, without showing you a

4   document at all, is there any fact about our lawsuit

5   that you can tell me?

6        A.   Not at the moment.  I mean, I'm just here to

7   object to what I told you.  I just don't think that this

8   product is what it used to be.

9        Q.   Okay.  Did you look at our class certification

10  briefing?

11       A.   I don't know.  Did I receive that?  I don't

12  know where I would have seen it.

13       Q.   Uh-huh.  Did you look at Anheuser-Busch's

14  opposition to our motion for class certification?

15       A.   I'm not familiar with it.

16       Q.   Have you read the settlement agreement in this

17  case, Mr. Muller?

18       A.   Yeah, that, I've seen.

19       Q.   Uh-huh.  What are the terms of the settlement,

20  sir?

21       A.   Well, I just didn't think it was a fair

22  settlement.

23       Q.   I didn't ask you that.  I asked you what the

24  terms were.  Before you can opine to whether it's fair

25  or not, I need to know whether you know what the terms

Page 24

```
 1    are.  Do you know what they are?
 2         A.   I don't remember what they are.
 3         Q.   You don't remember any of the terms of the
 4    settlement?
 5         A.   I read this stuff, but I didn't memorize it
 6    and -- you know, and -- you know, depending on my lawyer
 7    to, you know, help with me certain legal --
 8         Q.   Sure.
 9         A.   -- nomenclature that I'm not familiar with.
10         Q.   No, I understand.
11         A.   I understand the basics of why I'm here, you
12    know, is to --
13         Q.   Okay.
14         A.   -- to object to the brand and the settlement
15    amount.  So ...
16         Q.   Right.  Right.  All right.  What -- what
17    are -- what is the settlement amount?
18         A.   I don't remember what it is.
19         Q.   Do you know what -- what the class member, if
20    you file a claim, will receive in this case?
21         A.   I don't know.
22         Q.   Do you know what changes are being made to the
23    labeling of Beck's beer pursuant to this settlement?
24         A.   I don't remember the details of it.  I know
25    there was something mentioned about it in there
```

Page 25

 1    somewhere.

 2         Q.    Something mentioned about it.

 3               Do you know what the terms were of the changes

 4    to the marketing of the beer?

 5         A.    I don't remember.

 6         Q.    Did you prepare an objection in this case?

 7         A.    Sorry?

 8         Q.    Did you prepare an objection in this case?

 9         A.    Well, I signed one, yeah.  That was --

10         Q.    Uh-huh.

11         A.    -- worked out with Steve.

12         Q.    Right.  Did he write it for you?

13         A.    I got it from his office, and I signed it

14    after we spoke about it --

15         Q.    Right.

16         A.    -- on the phone.

17         Q.    Okay.  Did you write any of it?

18         A.    No.

19         Q.    Right.  So that means he wrote it, correct?

20         A.    I would assume.

21         Q.    Right.  Did you review it before you signed

22    it?

23         A.    Yeah.

24         Q.    Do you agree with everything in it?

25         A.    Yeah.

Page 26

```
 1        Q.   All right.  So tell me in your own words
 2   what -- what are you objecting to?  What is your problem
 3   with this settlement?
 4        A.   I just don't think the settlement was fair at
 5   the number it's at.
 6        Q.   Okay.  What is the number that it's at?
 7        A.   I don't remember.
 8        Q.   What number do you think it should be?
 9        A.   Considering the amount, you know, like, of
10   money that, you know, the beer makes, I don't think it's
11   all fair.
12        Q.   All right.  How much does the beer make?  Do
13   you know?
14        A.   I don't know exactly, but I'm sure it's in the
15   billions.
16        Q.   You think it's in the billions?
17        A.   That's what I would assume.
18        Q.   You're assuming that?  You don't know one way
19   or the other, though, do you?
20        A.   I don't remember.
21        Q.   Well, do you remember or do you not know which
22   one?
23        A.   I don't remember.
24        Q.   Did you know -- okay.  So you knew at one time
25   what the beer sales were for Beck's beer?  Is that what
```

Page 27

1    you're saying?

2         A.   I may have seen it when I went online to find

3    out what happened to the quality, but I don't remember.

4         Q.   Uh-huh.  Right.  So what do you think the

5    settlement should be, in your opinion?  What should be

6    changed about it?

7         A.   I don't know.  I just think it should be more.

8         Q.   Okay.  You think it should be more.  Do you

9    know how much more?

10        A.   No, I don't.

11        Q.   Do you know how much would be enough?

12        A.   No.

13        Q.   Are you seeking money in this case?

14        A.   Am I seeking money?

15        Q.   Yeah.  Do you want to be paid money for -- to

16   dismiss your objection like you did in Truvia?

17             Remember, sir, you're under oath.

18        A.   Yeah, I mean, I expect to be paid for my time.

19        Q.   Right.

20        A.   Which is a small fraction of what it would be

21   if I was sitting at home actually doing what my

22   profession is.  So, I mean ...

23        Q.   Right.  Do you realize, sir, that you objected

24   to the $5,000 representative payment award to the class

25   reps who did exactly what you're doing, which is sitting

Page 28

```
 1    for deposition, taking time away from their daily lives,

 2    time away from their families in order to step -- step

 3    forward to represent the class?

 4          Do you realize that you objected to the $5,000

 5    that -- that -- that they were to receive under this

 6    settlement because your lawyer said that it was too

 7    much?  Do you realize that?

 8    A.    Yes.

 9    Q.    So you're upset that they're receiving $5,000

10    for serving as a class rep, but you want to get paid

11    money for sitting here for your objection; is that

12    right?

13          MR. FIELD:  Objection.  You're asking a

14       question that calls for a legal conclusion.

15    BY MR. HARKE:

16    Q.    You can answer the question, sir.

17          MR. FIELD:  Go ahead.

18          THE WITNESS:  What?

19    BY MR. HARKE:

20    Q.    I'm just trying to understand.  You're --

21    you're objecting to $5,000 for the class representatives

22    to receive as a incentive award, but you want to be paid

23    for appearing for your deposition today?

24          MR. FIELD:  Objection.

25
```

Page 29

BY MR. HARKE:

1

2      Q.   Is that what I'm understanding?  Is that

3  right?

4           MR. FIELD:  Objection.  The objection speaks

5      for itself.

6  BY MR. HARKE:

7      Q.   How much money do you wish to receive for --

8  for -- for sitting here today?

9      A.   I don't know.

10     Q.   How much do you think is fair, sir?  How much

11  do you think you should get paid for serving in your

12  capacity as an objector?

13     A.   I mean, I'm not expecting anything more than

14  Truvia.  You know, it was a small amount of money.

15     Q.   Uh-huh.  Truvia was $2,000; is that right?

16     A.   Yeah.

17          MR. HARKE:  Let's go ahead and mark as Exhibit

18      2 the objection to the class action settlement on

19      behalf of Objector Ross Muller.  It's marked as --

20      it's Tab 4, Melissa.

21          COURT REPORTER:  Thank you, sir.

22          (Plaintiffs' Exhibit Number 2 was marked for

23  identification.)

24  BY MR. HARKE:

25     Q.   Mr. Muller, before we -- we talk about your

Page 30

```
 1   objection, I just want to make sure I understand you.
 2   You're seeking, you said, the same $2,000 you received
 3   in Truvia in exchange for dismissing this objection; is
 4   that right?
 5            MR. FIELD:  No.  I'm going to object.  The
 6        objection speaks for itself.  The relief he's
 7        seeking is set forth in the objection.
 8            MR. HARKE:  Mr. Field, we're in federal court.
 9        You can't -- you can't coach the witness.  That --
10        that's an improper objection.
11            MR. FIELD:  I said the -- the document speaks
12        for itself.
13            MR. HARKE:  I -- that, you can say.
14   BY MR. HARKE:
15        Q.   I'm going to ask the question again,
16   Mr. Muller.  Do you want $2,000 in exchange for
17   dismissing this objection?
18        A.   I didn't really have a number in mind.  I
19   mean, the main reason I'm here is just, you know, to
20   support the -- you know, the objection that the
21   settlement wasn't enough and that, you know, the quality
22   of the brand is not what it used to be.
23        Q.   But you'd be satisfied with $2,000 for having
24   raised that objection?
25            MR. FIELD:  Objection.  Asked and answered.
```

1   BY MR. HARKE:

2        Q.   Is that a "yes"?  I see you moved your hands.

3        A.   It was a -- it was a "I don't know what you

4   want me to say since I've already answered you."

5        Q.   Okay.  And you answered you want the same as

6   in Truvia, didn't you?

7        A.   I didn't say that.  I'm just saying that, you

8   know, that's not the main reason I'm even here.

9        Q.   Okay.  But you'd accept $2,000 to dismiss your

10  objection?

11            MR. FIELD:  Again, I'm going to object.  We're

12       not in settlement negotiations.

13  BY MR. HARKE:

14       Q.   How much money do you want to dismiss your

15  appeal?

16       A.   I don't really have anything in mind at the

17  moment.

18       Q.   Okay.  Is that all that you want, sir?

19       A.   I'm sorry?

20            MR. FIELD:  Same objection.

21  BY MR. HARKE:

22       Q.   Is there anything else that you -- that you

23  would -- you would need to dismiss your objection?

24       A.   Something I need to dismiss my objection?  I

25  don't understand.

Page 32

1       Q.   Yeah.  Is there anything else that you need or

2   want?

3       A.   No.

4       Q.   Did Mr. Fields write the objection?

5       A.   We already answered that.

6       Q.   And the answer is yes, right?

7       A.   Yeah.

8       Q.   How did you come --

9       A.   Why would you badger me and ask me the

10  question over again like that?

11      Q.   How did you come into contact with Mr. Field?

12      A.   I already told you.  When I went online, I saw

13  this -- the case and got in contact with him by that

14  means then.

15      Q.   How did you get in contact with him?

16      A.   I just found his information online and gave

17  him a call.

18      Q.   Right.  How did you find his information

19  online?

20      A.   How does one find anything online?  You do a

21  search.  I told you I thought the beer wasn't what it

22  used to be; so I looked up online and found the -- the

23  suit and gave him a call.

24      Q.   Okay.  How do you know Mr. Field was -- had a

25  relationship to this suit?  I mean, there's a lot of

Page 33

```
 1    lawyers in --
 2         A.   I found out after I spoke with him.
 3         Q.   Right.  You called him?
 4         A.   Yeah.
 5         Q.   He didn't call you?
 6         A.   I called him, I just said.
 7         Q.   Right.  And how did you know to call him out
 8    of all the lawyers in the state of Florida to represent
 9    you in this case?
10         A.   Because his phone number was online and I
11    called him.
12         Q.   What search did you run that came up with his
13    phone number online?
14         A.   What search did I run?
15         Q.   Yeah.  How did you -- how did you get -- how
16    did you find his name?
17         A.   On the Internet.
18         Q.   What search did you run?
19         A.   Well, when I Googled the -- you know, the
20    Beck's beer information, I saw the case and saw his
21    number and called him.
22         Q.   Do you know what a claims-made process is?
23         A.   No, not exactly.
24         Q.   Do you know what a claims rate is?
25         A.   I don't know how to answer that question.
```

Page 34

1    Sorry.

2         Q.   Do you know what injunctive relief is?

3         A.   How is that relevant to why I'm here?

4         Q.   Do you know what -- do you know what your

5    objection says?  I mean, what -- do you know why you're

6    here?  What are -- what are your problems with the

7    settlement?

8         A.   I just didn't think it was fair.

9         Q.   You think it should be more, right?

10        A.   I just didn't think it was a fair settlement.

11        Q.   What -- what parts of it aren't fair?

12        A.   Just overall, it just doesn't seem fair.

13        Q.   What specifically overall do you not like

14   about the settlement?

15        A.   The overall fact that I don't think it's

16   really fair the way it's structured.

17        Q.   On page 5 of your objection -- if I can draw

18   your attention to page 5.  Do you see that?  You have

19   page 5 in front of you?

20        A.   Yeah, I have page 5.

21        Q.   Okay.  Near the end, your lawyer writes "The

22   purpose of objecting is to improve the settlement and

23   obtain greater or more advantageous relief for the class

24   and claimants."

25             Do you see that?

1      A.    Yeah.

2      Q.    Do you agree with that?

3      A.    Yeah.

4      Q.    In the Truvia objection that you filed, did

5  you improve the settlement?

6           MR. FIELD:  Objection.  Asked and answered.

7  BY MR. HARKE:

8      Q.    You didn't improve it at all, did you?

9           MR. FIELD:  Objection.  Asked and answered.

10  BY MR. HARKE:

11      Q.    You can answer the question.  You didn't

12  improve the Truvia settlement at all; isn't that right?

13      A.    I already told you earlier I don't know.  I

14  didn't follow up.

15      Q.    Well, we all know.  You didn't.  So, whether

16  you remember it or not, you didn't improve the

17  settlement.

18      A.    If you're making a --

19      Q.    Did you obtain greater or more --

20      A.    -- if you're making a statement, then don't

21  ask it as a statement.

22      Q.    Did you make any -- did you obtain greater or

23  more advantageous relief for the class and claimants in

24  Truvia?

25           MR. FIELD:  Objection.  Asked and answered.

Page 36

```
 1   BY MR. HARKE:
 2        Q.   Did you?
 3        A.   I already answered your question earlier.  At
 4   this point, it seems like you're just badgering me.
 5        Q.   Let me go ahead and mark the Truvia objection
 6   that you filed.
 7             MR. HARKE:  It's identified as Tab 6, Melissa.
 8             (Plaintiffs' Exhibit Number 3 was marked for
 9   identification.)
10   BY MR. HARKE:
11        Q.   Take a moment, Mr. Muller, and let me know
12   when you're ready.
13        A.   What did you want to ask?
14        Q.   Is this the objection that you filed in the
15   Truvia class action?
16        A.   Yeah.
17        Q.   And if you turn to page 5 of this objection,
18   is that your signature under the name Ross Muller?
19        A.   Yeah.
20        Q.   Did you write this objection yourself?
21        A.   No.  I went over it with Brad.
22        Q.   Uh-huh.  Did Brad write the objection for you?
23        A.   Yes.
24        Q.   Okay.  But Brad didn't file it on your behalf;
25   you filed it individually as Ross Muller; isn't that
```

Page 37

```
 1   right?
 2        A.   Well, I sent the FedEx thing.
 3        Q.   Right.  But Brad -- Brad --
 4        A.   Isn't -- isn't that the purpose of a lawyer,
 5   is to help you put together documents to make a case on
 6   something?
 7        Q.   Well, but the lawyer didn't make an appearance
 8   at the district court and file your objection.  You
 9   filed it individually as a -- as a pro se objector.
10        A.   Okay.
11        Q.   You understand that?
12        A.   All right.
13        Q.   Right.  You know you just -- you just
14   testified that your lawyer prepared it for you.
15        A.   Well, I got help with it.
16        Q.   Is that right?
17        A.   I mean, you know, isn't that normally what
18   people do?
19        Q.   What parts did you help with?
20        A.   I'm sorry?
21        Q.   All right.  Which parts did you help with in
22   this Truvia objection?
23        A.   I don't remember.
24        Q.   All right.  What -- what does the word
25   "cy pres" mean?
```

Page 38

```
 1        A.    I don't remember.
 2        Q.    What injunctive relief were you complaining
 3   about in Truvia?  Do you remember?
 4        A.    No.
 5        Q.    Do you know what about the claims process you
 6   had a problem with in Truvia?
 7        A.    I just really don't remember.
 8        Q.    All you remember is you received $2,000 for
 9   filing your objection, right?
10        A.    I remember that, yeah.
11        Q.    Okay.  Do you have any suggestions for how
12   this settlement or Beck's settlement should be changed?
13        A.    Not off the top of my head.
14        Q.    If you filed something in this case that was
15   wrong, would you want to correct it?
16        A.    I don't feel like there's anything wrong; so I
17   don't really know what you're asking.
18              Do you understand that question?
19        Q.    Okay.  Let's look at page 3 of your objection.
20   All right?
21        A.    Which one?  It seems like we're spending --
22        Q.    Your objection.
23        A.    -- as much time on a past case as we are on
24   the one that we're supposed to be here using each
25   other's time for.  So am I looking at the --
```

Page 39

1          Q.    Let's look at page --

2          A.    -- Truvia or am I'm looking at this?  Or am I

3     here for Truvia or am I here for Anheuser-Busch?

4          Q.    Let's look at page 3 of your Beck's objection.

5     Page 3.

6          A.    Okay.

7          Q.    The second full paragraph that begins "The

8     court shall also deduct hours expended," do you see that

9     Mr. Muller?

10         A.    Yeah.

11         Q.    Okay.  Your lawyer writes "The court should

12    also deduct hours expended to complete and file the

13    class certification motion and motions in limine."

14               Do you know what that means?

15         A.    No, not exactly.  I mean, that's why Stephen

16    has helped me to prepare a document.  I mean, I don't --

17         Q.    Okay.

18         A.    Am I meant to know all of this legal stuff as

19    well as you do?

20         Q.    The next sentence says "The class

21    certification motion and motions in limine were

22    completed and filed after settlement."

23               Do you see that?

24               MR. FIELD:  Objection.  The document speaks

25         for itself.

Page 40

1    BY MR. HARKE:

2         Q.   Do you see that, Mr. Muller?

3         A.   I see it, yeah, but ...

4         Q.   Okay.  Did you know that the class

5    certification motion and motions in limine were

6    completed before the settlement, not after, as your

7    lawyer wrote?

8         A.   Are we just going on past the objection of the

9    document speaking for itself or --

10             MR. FIELD:  You got to go and answer.

11   BY MR. HARKE:

12        Q.   Did you know that that sentence was 100

13   percent wrong, that the class certification motion and

14   motions in limine were completed and filed before the

15   settlement, not after?

16        A.   Did I know --

17        Q.   Do you understand that, sir?

18        A.   Did I know it was wrong?  You're saying it's

19   wrong.

20        Q.   Yeah.

21        A.   No, I was wasn't aware that it was --

22        Q.   Yes.

23        A.   I wasn't aware that it was wrong.

24        Q.   All right.  It is wrong.  All you have to do

25   is go on the settlement website and you can learn that

Page 41

```
 1    information.  Did you know that?
 2        A.   No, I didn't.
 3        Q.   So, if you file something that's wrong in a
 4    federal court, are you obligated to fix it -- correct
 5    it?
 6            MR. FIELD:  Objection.  Calls for a legal
 7        conclusion.
 8            Go ahead and answer.
 9            THE WITNESS:  What was that now?
10    BY MR. HARKE:
11        Q.   Do you feel you should let the court know that
12    you were wrong about this?
13        A.   Well, I imagine so.  I wasn't aware it was
14    wrong.
15        Q.   Okay.  I -- I understand.  The next
16    sentence -- the next paragraph that begins "Finally, it
17    is unclear," do you see that?
18        A.   Yeah.
19        Q.   Okay.  It says -- your lawyer wrote "Finally,
20    it is unclear why class counsel has not posted its fee
21    motion to the settlement website."
22            Do you see that?
23        A.   I see that, yeah.
24        Q.   Okay.  Turns out that's wrong, too.  Did you
25    know that?
```

Page 42

```
 1        A.   No, I didn't.

 2        Q.   Okay.  If you went on the settlement website,

 3   you'd see that the fee motion was posted.

 4        A.   Okay.

 5        Q.   You're not aware of that though?

 6        A.   No, I'm not.

 7        Q.   All right.  Okay.

 8             THE WITNESS:  Is that something we should fix?

 9             MR. FIELD:  We'll discuss it after the

10        deposition.

11             THE WITNESS:  Okay.

12   BY MR. HARKE:

13        Q.   Let me show you what I'll ask the court

14   reporter to mark as -- this will be Exhibit 4.

15             MR. HARKE:  It's Tab 5.  It's Plaintiffs'

16        motion for sanctions against Objector Muller and

17        his counsel.

18             (Plaintiffs' Exhibit Number 4 was marked for

19   identification.)

20             THE WITNESS:  Have you seen this one?

21             MR. FIELD:  I have not.

22             THE WITNESS:  This is new?

23             MR. FIELD:  Yep.

24   BY MR. HARKE:

25        Q.   Do you have it in front of you, Mr. Muller?
```

Page 43

1          A.    Yeah, I do.

2          Q.    Okay.  Have you ever seen this document

3     before?

4          A.    No.  This is new.

5          Q.    Well, it's not new.  We filed it -- we served

6     it on --

7          A.    I meant I haven't seen it before.

8          Q.    Okay.  I understand.  This is a motion for

9     sanctions against you and your lawyer.  Why don't you

10    take a moment and review it.

11         A.    It's kind of long.  I mean ...

12         Q.    Well, it is long.  This is a complicated case.

13    It's a complex piece of litigation.

14               THE WITNESS:  Do you need to read this one?

15    BY MR. HARKE:

16         Q.    But this motion -- Mr. Muller, I'll share with

17    you that this motion --

18         A.    I hear you.

19         Q.    -- seeks -- okay.  This seeks sanctions

20    against you and your lawyer for filing a legally

21    deficient and frivolous objection.

22               If we're successful in this motion, sir, we

23    will obtain fees and costs not just against you but

24    against your lawyer as well.  Are you aware of that?

25         A.    I'm aware of it now that you're telling me.

Page 44

1      Q.   All right.  Are you familiar with appeal

2    bonds?

3      A.   No.

4      Q.   Do you know that you could be ordered to pay

5    costs if your appeal is unsuccessful?

6      A.   No, I didn't know that.

7      Q.   Do you have the ability to pay a cost bond?

8      A.   I don't know what that means.

9      Q.   Do you have the financial resources to pay our

10   costs on appeal if your objection is unsuccessful?

11         MR. FIELD:  Objection.  Calls for speculation.

12         THE WITNESS:  I don't --

13   BY MR. HARKE:

14      Q.   Is there anything else about this settlement

15   that you have a problem with that you haven't already

16   told me on the record?

17      A.   No.

18         MR. HARKE:  Why don't we take a two-minute

19         break, and we'll reconvene.

20         THE WITNESS:  All right.

21         MR. HARKE:  Thank you.

22         THE VIDEOGRAPHER:  We're going off the record

23         at 11:24.

24         (Recess had.)

25         THE VIDEOGRAPHER:  We are back on the record

Page 45

```
 1      at 11:32.
 2             MR. HARKE:  Thank you.
 3             Mr. Muller, I have no further questions at
 4      this time.  Thank you for taking the opportunity to
 5      speak with me today.
 6             THE WITNESS:  All right.  Thanks.  I
 7      appreciate your time as well.
 8             MR. HARKE:  You guys have a great day.
 9             MR. FIELD:  Thank you.
10             THE VIDEOGRAPHER:  So we're going off the
11      record and we're done?
12             MR. FIELD:  We're done.
13             THE VIDEOGRAPHER:  Okay.
14             THE WITNESS:  Okay.
15             THE VIDEOGRAPHER:  This concludes the
16      videotaped deposition of Ross Muller on
17      October 23rd, 2015, at 11:32 a.m.
18             (Deposition concluded.)
19
20
21
22
23
24
25
```

Page 46

1                    CERTIFICATE OF OATH

2

3    STATE OF FLORIDA     )
                          )
4    COUNTY OF ST. JOHNS)

5

6

7          I, Melissa Schroeder, Registered Professional

8    Reporter, Notary Public, State of Florida, certify that

9    the witness named herein personally appeared before me

10   and was duly sworn on the 23rd day of October, 2015.

11

12         WITNESS my hand and official seal this 30th

13   day of October, 2015.

14

15

16

17                            _____

                              Melissa Schroeder, RPR

18                            Registered Professional Reporter

                              Notary Public, State of Florida

19                            Commission No. FF 165993

                              Expires: November 2, 2018

20

21

22

23

24

25

Page 47

1                    CERTIFICATE OF REPORTER

2

3    STATE OF FLORIDA    )

                         )

4    COUNTY OF ST. JOHNS)

5

6             I, Melissa Schroeder, Registered Professional

7    Reporter, CERTIFY that I was authorized to and did

8    stenographically report the foregoing proceedings; that

9    a review of the transcript was requested, and that the

10   transcript is a true and complete record of my

11   stenographic notes.

12

13            I FURTHER CERTIFY that I am not a relative,

14   employee, attorney, or counsel of any of the parties,

15   nor am I a relative or employee of any of the parties'

16   attorney or counsel connected with the action, nor am I

17   financially interested in the action.

18

19            Dated this 30th day of October, 2015, in

20   St. Johns County, Florida.

21

22

23            _____

              Melissa Schroeder,

24            Registered Professional Reporter

25

Page 48

1                          ERRATA SHEET

2    IN RE:  FRANCISCO RENE MARTY, et al., Plaintiffs vs

     ANHEUSER-BUSCH COMPANIES, LLC, Defendant,

3    Case No. 13-cv-23656-JJO

4    Deposition of Ross Muller, taken October 23, 2015

5

6    Page      Line                 Change

7    _____     _____     _____

8    _____     _____     _____

9    _____     _____     _____

10   _____     _____     _____

11   _____     _____     _____

12   _____     _____     _____

13   _____     _____     _____

14   _____     _____     _____

15   _____     _____     _____

16   _____     _____     _____

17   _____     _____     _____

18   _____     _____     _____

19   _____     _____     _____

20   _____     _____     _____

21

     Under penalties of perjury, I declare that I have read

22   the foregoing document and that the facts stated in it

     are true.

23

     _____    _____

24   Date              Signature

25

[& - bucks]                                                                                     Page 49

**&**

**&**   2:4,9

**1**

**1**  3:9 15:22,25 16:15
**100**   9:17 40:12
**102**   2:14
**10:30**   16:21
**10:37**   1:21 4:11
**11:24**   44:23
**11:32**   1:21 45:1,17
**13**   1:2 4:20 48:3
**15**   3:9
**1510**   1:22 4:13
**155**   2:10
**165993**   46:19
**1972**   13:20
**1990**   14:13

**2**

**2**   3:9 29:18,22 46:19
**2,000**   9:20,21,23 10:7
   10:18 11:20 29:15
   30:2,16,23 31:9 38:8
**20**   14:3 15:1
**2015**   1:20 4:11 45:17
   46:10,13 47:19 48:4
**2018**   46:19
**2140**   13:8
**23**   1:20 48:4
**23656**   1:2 4:20 48:3
**23rd**   4:10 45:17
   46:10
**27th**   13:20
**29**   3:9

**3**

**3**   3:10 36:8 38:19
   39:4,5
**30th**   46:12 47:19
**32080**   13:10
**33013**   2:14
**33138**   2:5
**342-7445**   13:12
**36**   3:10

**4**

**4**   3:10 29:20 42:14,18
**42**   3:10
**46**   3:4
**47**   3:4
**48**   3:5
**49th**   2:14

**5**

**5**   3:3 34:17,18,19,20
   36:17 42:15
**5,000**   27:24 28:4,9,21

**6**

**6**   17:7 36:7
**60606**   2:10

**9**

**904**   13:12
**90s**   13:25
**94**   14:13
**9699**   2:5

**a**

**a.m.**   1:21,21 4:11
   45:17
**ability**   44:7
**accept**   31:9
**achieve**   21:19
**action**   6:15,16,19 8:9
   10:4 17:2 29:18
   36:15 47:16,17
**address**   13:7,15
   16:22 17:14
**advantageous**   34:23
   35:23
**ago**   6:13 7:13
**agree**   4:8 25:24 35:2
**agreed**   3:15 18:5,22
**agreement**   10:10,13
   17:18,22 18:11 23:16
**ahead**   15:21 20:21
   22:6 28:17 29:17
   36:5 41:8
**al**   48:2
**allegations**   22:17

**amount**   24:15,17
   26:9 29:14
**anheuser**   1:10 4:18
   5:5 19:22 22:21,23
   23:1,13 39:3 48:2
**answer**   12:4 20:21,25
   22:21 28:16 32:6
   33:25 35:11 40:10
   41:8
**answered**   18:18
   30:25 31:4,5 32:5
   35:6,9,25 36:3
**appeal**   9:22 10:1,4
   11:21 31:15 44:1,5
   44:10
**appearance**   37:7
**appearances**   2:1
**appeared**   46:9
**appearing**   28:23
**appears**   19:18
**appreciate**   45:7
**approximately**   4:11
**architectural**   14:1
   15:2
**architecture**   13:25
   14:5
**area**   7:2
**arps**   2:9
**arrangement**   18:4
**asked**   6:23 10:12
   23:23 30:25 35:6,9
   35:25
**asking**   12:1 18:17,19
   28:13 38:17
**assume**   25:20 26:17
**assuming**   26:18
**attending**   4:24 14:11
**attention**   34:18
**attorney**   47:14,16
**attorney's**   11:7
**attorneys**   4:23
**audio**   4:6
**augustine**   1:22,23
   4:12,14 13:6

**authorized**   47:7
**avenue**   2:5
**award**   27:24 28:22
**aware**   40:21,23
   41:13 42:5 43:24,25

**b**

**b**   3:8
**back**   7:4 20:4 44:25
**background**   13:1
   14:22
**badger**   32:9
**badgering**   36:4
**basics**   24:11
**beck's**   19:8,13 20:5
   21:11 24:23 26:25
   33:20 38:12 39:4
**beer**   19:8,9,13,19,24
   20:5 24:23 25:4
   26:10,12,25,25 32:21
   33:20
**begins**   39:7 41:16
**behalf**   1:5 2:6,11,15
   29:19 36:24
**best**   12:5,9,15
**billions**   26:15,16
**bit**   12:25 13:21
**bond**   44:7
**bonds**   44:2
**born**   13:19,24
**bought**   19:21
**boulevard**   1:22 4:14
**brad**   7:15,16,17
   36:21,22,24 37:3,3
**brand**   10:23 21:11
   24:14 30:22
**brandon**   2:8 5:4
**break**   12:21 44:19
**breaks**   12:23
**breezed**   22:14
**briefing**   23:10
**bring**   17:8,11,23
**brought**   17:13 19:23
**bucks**   9:17

**busch** 1:10 4:18 5:5
   19:22 22:23 23:1
   39:3 48:2
**busch's** 22:21 23:13
**bushman** 2:4
**business** 14:16 15:12
**busy** 11:12,14
**buy** 19:9

**c**

**c** 2:3
**call** 32:17,23 33:5,7
**called** 5:18 33:3,6,11
   33:21
**calls** 20:19 28:14
   41:6 44:11
**capacity** 29:12
**caption** 4:16
**case** 1:2 4:16,18,20
   7:7 18:23 19:2 21:5
   21:16 22:13 23:17
   24:20 25:6,8 27:13
   32:13 33:9,20 37:5
   38:14,23 43:12 48:3
**cash** 19:10
**cell** 4:4
**certain** 24:7
**certainly** 8:21
**certificate** 3:4,4 46:1
   47:1
**certification** 23:9,14
   39:13,21 40:5,13
**certify** 46:8 47:7,13
**change** 8:12 48:6
**changed** 27:6 38:12
**changes** 8:16 11:3,8
   24:22 25:3
**charged** 20:9
**chicago** 2:10
**circumstances** 6:10
**city** 13:24
**civil** 17:2
**claim** 11:6 24:20
**claimants** 34:24
   35:23

**claims** 33:22,24 38:5
**clarification** 15:24
**clasby** 2:4
**class** 5:2,3 6:3,15,16
   6:18 8:9 10:4 23:9,14
   24:19 27:24 28:3,10
   28:21 29:18 34:23
   35:23 36:15 39:13,20
   40:4,13 41:20
**coach** 30:9
**code** 13:9
**college** 14:22 19:16
   20:5
**come** 32:8,11
**commission** 46:19
**companies** 1:10 4:18
   48:2
**company** 15:4,7,18
**compensation** 19:1
**complaining** 11:5,6,6
   21:24 38:2
**complaint** 22:13,23
**complete** 14:14 39:12
   47:10
**completed** 39:22
   40:6,14
**complex** 43:13
**complicated** 43:12
**concluded** 45:18
**concludes** 45:15
**conclusion** 20:20
   28:14 41:7
**conflicting** 16:21
**connected** 47:16
**connoisseur** 19:19
**considering** 26:9
**contact** 32:11,13,15
**continue** 4:7
**conversations** 4:3
**copy** 7:23 16:18,22
   16:24 17:21,25 18:12
**correct** 25:19 38:15
   41:4
**cost** 44:7

**costs** 43:23 44:5,10
**counsel** 3:17 4:15
   41:20 42:17 47:14,16
**county** 46:4 47:4,20
**court** 1:1,22,25 4:13
   4:19 5:8,12,15 6:7,25
   10:21 12:7 15:10,22
   15:24 22:4 29:21
   30:8 37:8 39:8,11
   41:4,11 42:13
**crime** 20:9
**curious** 20:2
**currently** 15:5,8
**cv** 1:2 4:20 48:3
**cy** 37:25

**d**

**d** 2:13,13 3:1
**daily** 28:1
**date** 1:20 4:10 48:24
**dated** 47:19
**dates** 16:21
**day** 45:8 46:10,13
   47:19
**de** 1:22 4:13
**declare** 48:21
**deduct** 39:8,12
**defendant** 1:11 2:11
   48:2
**defenses** 22:25
**deficient** 43:21
**degree** 14:7,9,22
**depending** 24:6
**deponent** 3:18
**deposed** 6:7,8,12,14
   6:18
**deposition** 1:16 4:6
   4:12 6:6 7:1,4,18,24
   8:4,11,19 11:24
   15:23 16:15 17:9,12
   17:16 28:1,23 42:10
   45:16,18 48:4
**design** 14:2,2 15:14
**designer** 15:3

**detail** 18:20 21:21
**details** 24:24
**different** 6:15
**direct** 3:3 5:20
**directions** 7:3
**discuss** 14:19 42:9
**dismiss** 9:7,8 11:21
   22:22 27:16 31:9,14
   31:23,24
**dismissal** 10:3
**dismissing** 9:22,25
   30:3,17
**district** 1:1,1 4:19,20
   37:8
**document** 17:7,7
   23:4 30:11 39:16,24
   40:9 43:2 48:22
**documented** 10:10
**documents** 16:25
   17:12,15 19:7,12
   22:12,22 37:5
**doing** 10:6 27:21,25
**drank** 19:16,17,25
   20:4
**draw** 34:17
**drinkers** 19:24
**drive** 2:10 13:8
**duly** 5:18 46:10

**e**

**e** 3:1,8 13:13,15
**earlier** 35:13 36:3
**early** 13:24
**east** 2:14
**educated** 13:23
**education** 14:15
**either** 20:1
**employee** 15:18
   47:14,15
**engel** 2:3 5:3
**eric** 4:9
**errata** 3:5 48:1
**esquire** 2:8,13
**et** 48:2

**everybody**  4:24
**evidence**  19:12
**exactly**  21:25 26:14
  27:25 33:23 39:15
**examination**  3:3 5:20
**exchange**  9:21,25
  10:6,10 30:3,16
**exhibit**  3:9,9,10,10
  15:22,25 16:15 29:17
  29:22 36:8 42:14,18
**exists**  10:13
**expect**  12:22 27:18
**expected**  19:1
**expecting**  29:13
**expended**  39:8,12
**expires**  46:19
**expressly**  3:18

**f**

**fact**  23:4 34:15
**facts**  48:22
**fail**  12:18
**fair**  12:5,23 14:23
  23:21,24 26:4,11
  29:10 34:8,10,11,12
  34:16
**familiar**  7:4 10:15
  11:25 23:15 24:9
  44:1
**familiarize**  11:24
**families**  28:2
**federal**  30:8 41:4
**fedex**  37:2
**fee**  9:10,12,13,18
  41:20 42:3
**feel**  14:19,21 38:16
  41:11
**fees**  11:7 43:23
**fernando**  1:4 4:17
**ff**  46:19
**field**  2:13,13 5:6,6
  16:2,3,5,8,11 17:19
  18:3,13,23,25 20:19
  28:13,17,24 29:4
  30:5,8,11,25 31:11

**31:20 32:11,24 35:6
  35:9,25 39:24 40:10
  41:6 42:9,21,23
  44:11 45:9,12
**fields**  18:4 32:4
**file**  8:3 19:10 24:20
  36:24 37:8 39:12
  41:3
**filed**  7:12 10:3 11:17
  20:13 22:13,23 35:4
  36:6,14,25 37:9
  38:14 39:22 40:14
  43:5
**filing**  38:9 43:20
**finally**  41:16,19
**financial**  18:4 44:9
**financially**  47:17
**find**  20:2 27:2 32:18
  32:20 33:16
**fine**  5:24
**finish**  12:8,9,22 20:1
**firm**  21:16,19
**first**  5:18
**fix**  41:4 42:8
**flom**  2:9
**florida**  1:1,23 2:5,14
  4:14,20 15:16 33:8
  46:3,8,18 47:3,20
**follow**  35:14
**followed**  11:15
**follows**  5:19
**foregoing**  47:8 48:22
**form**  11:6
**forth**  30:7
**forward**  28:3
**found**  32:16,22 33:2
**fraction**  27:20
**francisco**  1:4 4:16
  48:2
**franziskaner**  19:25
**friends**  21:7
**frivolous**  43:21
**fromwithinone**  13:16
  13:18

**front**  16:15 18:6
  34:19 42:25
**full**  39:7
**further**  45:3 47:13

**g**

**generally**  21:22
**german**  19:19,24
  20:5
**give**  9:6
**go**  4:8 6:20 14:4
  15:21 20:21 22:6
  28:17 29:17 36:5
  40:10,25 41:8
**going**  9:10 11:24
  12:1,4 30:5,15 31:11
  40:8 44:22 45:10
**goldman**  1:4 4:17
**good**  5:1,22,23 7:14
**googled**  33:19
**graphic**  14:2 15:2
**great**  45:8
**greater**  34:23 35:19
  35:22
**guess**  16:20,22 20:7
**guys**  45:8

**h**

**h**  3:8
**hand**  5:12 46:12
**hands**  31:2
**happened**  8:9 19:20
  20:3 27:3
**harke**  2:3,4 3:3 5:1,2
  5:21 6:2 11:1 15:11
  15:21 16:4,7,10,12
  16:13 17:5 18:10,16
  20:22 22:5 28:15,19
  29:1,6,17,24 30:8,13
  30:14 31:1,13,21
  35:7,10 36:1,7,10
  40:1,11 41:10 42:12
  42:15,24 43:15 44:13
  44:18,21 45:2,8
**hawaii**  7:16

**head**  23:2 38:13
**hear**  43:18
**held**  4:12,19 7:1
**help**  24:7 37:5,15,19
  37:21
**helped**  39:16
**hereto**  3:16
**hey**  16:2
**hi**  5:22
**hialeah**  2:14
**home**  8:3 27:21
**hotmail.com.**  13:16
  13:18
**hours**  8:7,8 39:8,12
**house**  18:1
**huh**  7:6 8:12 14:14
  15:9,15 19:7 23:13
  23:19 25:10 27:4
  29:15 36:22

**i**

**idea**  18:8
**identification**  16:1
  29:23 36:9 42:19
**identified**  36:7
**identify**  4:25
**illinois**  2:10
**imagine**  41:13
**improper**  30:10
**improve**  8:23 9:1
  34:22 35:5,8,12,16
**inaudible**  22:2
**incentive**  28:22
**incorporated**  15:15
**individually**  36:25
  37:9
**information**  8:14
  17:1 19:6 32:16,18
  33:20 41:1
**injunctive**  11:5 34:2
  38:2
**inspection**  17:1
**instance**  1:17
**institute**  14:6

**instructed** 17:8
**interested** 47:17
**interfere** 4:5
**interior** 14:1 15:2
**internet** 33:17
**irs** 19:11

**j**

**jacksonville** 6:20 7:3
**jj0** 4:20
**jjo** 1:2 48:3
**johns** 46:4 47:4,20

**k**

**keel** 2:8 5:4,4
**kind** 19:18 43:11
**knew** 26:24
**know** 6:20 7:3 8:15
    8:17 9:13,16 12:19
    12:22 18:15 19:20,24
    20:6,7,17,23,25 21:3
    21:4,6,10,11,15,17
    21:18,21,22,22,25
    22:10,25 23:3,11,12
    23:25,25 24:1,6,6,7
    24:12,19,21,22,24
    25:3 26:9,10,13,14
    26:18,21,24 27:7,9
    27:11 29:9,14 30:19
    30:20,21 31:3,8
    32:24 33:7,19,22,24
    33:25 34:2,4,4,5
    35:13,15 36:11 37:13
    37:17 38:5,17 39:14
    39:18 40:4,12,16,18
    41:1,11,25 44:4,6,8
**knowledge** 12:5,16

**l**

**l** 3:13
**labeling** 24:23
**lance** 2:3 5:1 6:2 16:2
**landscape** 15:3
**landscaping** 14:2
**law** 7:5 21:15,19

**lawsuit** 20:12,17,23
    21:23 22:18 23:1,4
**lawsuit's** 22:9
**lawyer** 7:7,11,20
    24:6 28:6 34:21 37:4
    37:7,14 39:11 40:7
    41:19 43:9,20,24
**lawyer's** 6:22
**lawyers** 33:1,8
**learn** 40:25
**leaving** 14:18
**legal** 4:10 5:9 20:19
    24:7 28:14 39:18
    41:6
**legally** 43:20
**leon** 1:22 4:14
**limine** 39:13,21 40:5
    40:14
**line** 48:6
**list** 17:7
**literally** 18:8
**litigation** 43:13
**little** 12:25 13:21
**live** 13:5
**lives** 28:1
**living** 13:23 14:25
**llc** 1:10 4:18 15:14,15
    48:2
**llp** 2:4,9
**located** 4:13
**long** 8:4 43:11,12
**longer** 8:6
**look** 19:20 23:9,13
    38:19 39:1,4
**looked** 32:22
**looking** 38:25 39:2
**lot** 8:6 16:20,21
    19:16,23 22:15 32:25

**m**

**mail** 13:13,15
**main** 30:19 31:8
**making** 35:18,20
**management** 15:14

**mark** 15:22 29:17
    36:5 42:14
**marked** 15:25 16:15
    29:19,22 36:8 42:18
**marketing** 25:4
**marquet** 1:5 4:17
**marty** 1:4 4:17 48:2
**matter** 6:14
**meagher** 2:9
**mean** 7:2 8:11 10:19
    19:23 21:17,20 22:7
    23:6 27:18,22 29:13
    30:19 32:25 34:5
    37:17,25 39:15,16
    43:11
**means** 25:19 32:14
    39:14 44:8
**meant** 16:5 39:18
    43:7
**melissa** 1:24 5:9
    29:20 36:7 46:7,17
    47:6,23
**member** 24:19
**memorize** 24:5
**memory** 7:14
**mentioned** 24:25
    25:2
**miami** 2:5
**microphones** 4:2,5
**mind** 30:18 31:16
**minute** 44:18
**moment** 18:21 22:19
    23:6 31:17 36:11
    43:10
**money** 9:7 26:10
    27:13,14,15 28:11
    29:7,14 31:14
**morning** 5:1,22,24
**motion** 22:22 23:14
    39:13,21 40:5,13
    41:21 42:3,16 43:8
    43:16,17,22
**motions** 39:13,21
    40:5,14

**moved** 31:2
**muller** 1:16 3:2 4:22
    5:7,17 6:3,4,5,6 8:5
    9:2 11:23 13:1,3,4
    15:23 16:14 20:11,18
    22:6 23:17 29:19,25
    30:16 36:11,18,25
    39:9 40:2 42:16,25
    43:16 45:3,16 48:4

**n**

**n** 3:1,13
**name** 4:9,21 6:2,3,22
    7:6,9 13:1 15:6,12
    33:16 36:18
**named** 46:9
**names** 12:8
**ne** 2:5
**near** 34:21
**need** 12:8,21 14:19
    23:25 31:23,24 32:1
    43:14
**negotiations** 31:12
**nelson** 2:17 4:9
**new** 7:2 13:24 14:6
    42:22 43:4,5
**nomenclature** 24:9
**normally** 37:17
**north** 1:22 2:10 4:13
**notary** 1:25 46:8,18
**note** 4:2
**notes** 47:11
**notice** 10:3
**noticed** 19:21
**november** 46:19
**number** 4:20 13:11
    15:25 26:5,6,8 29:22
    30:18 33:10,13,21
    36:8 42:18

**o**

**o** 3:13
**oath** 3:4 5:15 12:13
    27:17 46:1
**object** 22:7 23:7
    24:14 30:5 31:11

**objected** 27:23 28:4
**objecting** 26:2 28:21
  34:22
**objection** 7:12 8:10
  8:17,22 9:7,8 10:14
  11:4,9,17,20 19:5
  20:13,19 25:6,8
  27:16 28:11,13,24
  29:4,4,18 30:1,3,6,7
  30:10,17,20,24,25
  31:10,20,23,24 32:4
  34:5,17 35:4,6,9,25
  36:5,14,17,20,22
  37:8,22 38:9,19,22
  39:4,24 40:8 41:6
  43:21 44:10,11
**objector** 5:7 29:12,19
  37:9 42:16
**objects** 17:1
**obligated** 12:15 41:4
**obtain** 34:23 35:19
  35:22 43:23
**october** 1:20 4:10
  13:20 45:17 46:10,13
  47:19 48:4
**office** 6:25 7:5 25:13
**official** 46:12
**oh** 5:23
**okay** 5:23 6:2,5,10,14
  6:16,18,22 7:20,23
  8:1,4 9:15,21 10:6,9
  11:16,23 12:3,4,20
  12:21 13:9,19 14:4
  14:17,21 15:20 16:8
  16:12,24 17:4 18:25
  21:15 23:9 24:13
  25:17 26:6,24 27:8
  31:5,9,18 32:24
  34:21 36:24 37:10
  38:11,19 39:6,11,17
  40:4 41:15,19,24
  42:2,4,7,11 43:2,8,19
  45:13,14
**once** 6:9

**online** 27:2 32:12,16
  32:19,20,22 33:10,13
**opened** 19:25
**operate** 15:13
**opine** 23:24
**opinion** 27:5
**opportunity** 45:4
**opposition** 22:23
  23:14
**order** 28:2
**ordered** 44:4
**outcome** 11:19
**overall** 34:12,13,15

**p**

**p** 3:13
**p.a.** 2:3,3,13
**p.m.** 16:21
**page** 17:6,7 34:17,18
  34:19,20 36:17 38:19
  39:1,4,5 48:6
**paid** 9:6,10,13 27:15
  27:18 28:10,22 29:11
**paper** 10:17
**papers** 21:20
**paperwork** 16:20
**paragraph** 39:7
  41:16
**part** 6:7
**parties** 3:16 4:8,25
  47:14,15
**partner** 5:3
**parts** 34:11 37:19,21
**party** 19:23
**pay** 18:22 19:10 44:4
  44:7,9
**payment** 27:24
**penalties** 48:21
**people** 37:18
**percent** 40:13
**perjury** 12:19 48:21
**permit** 17:1
**personal** 13:1 14:18
**personally** 46:9

**phone** 7:19,21 13:11
  25:16 33:10,13
**phones** 4:4
**pick** 4:3
**piece** 10:17 43:13
**place** 1:22 4:4
**plaintiffs** 1:7,17 2:6
  3:9,9,10,10 4:15
  15:25 29:22 36:8
  42:15,18 48:2
**please** 4:2,4 5:13
  16:7 22:4
**point** 20:6 36:4
**ponce** 1:22 4:13
**posted** 41:20 42:3
**premises** 17:2
**prepare** 25:6,8 39:16
**prepared** 37:14
**pres** 37:25
**present** 2:17 4:23
**private** 4:3
**pro** 37:9
**probably** 8:3,6
**problem** 10:20,23
  26:2 38:6 44:15
**problems** 34:6
**proceed** 5:11 12:1
**proceeding** 6:7
**proceedings** 47:8
**process** 33:22 38:5
**produce** 16:25 17:15
**product** 19:18 22:8
  23:8
**profession** 14:1
  27:22
**professional** 46:7,18
  47:6,24
**pronounce** 6:3
**prosecute** 21:16
**prosecuted** 12:19
**public** 1:25 46:8,18
**purchased** 19:8,13
**purpose** 34:22 37:4
**pursuant** 24:23

**put** 37:5

**q**

**quality** 20:8 27:3
  30:21
**question** 10:2 11:11
  12:9,23 20:23 21:1,4
  28:14,16 30:15 32:10
  33:25 35:11 36:3
  38:18
**questions** 6:23 12:1
  45:3

**r**

**r** 2:8
**raise** 5:12
**raised** 13:22 23:1
  30:24
**rate** 33:24
**reached** 18:11
**read** 11:4 21:20
  22:12,13,21 23:16
  24:5 43:14 48:21
**reading** 3:17
**ready** 36:12
**realize** 27:23 28:4,7
**really** 8:13,19 10:2
  11:15 20:25 21:6
  30:18 31:16 34:16
  38:7,17
**reason** 7:5 8:21,22
  21:13 30:19 31:8
**reasons** 14:18
**receipts** 19:9
**receive** 10:7,17 14:7
  14:9 19:1,5 23:11
  24:20 28:5,22 29:7
**received** 9:19,21,23
  11:20 16:18,24 30:2
  38:8
**receiving** 28:9
**recess** 44:24
**recognize** 12:12
**recollection** 11:19
**reconvene** 44:19

**record** 4:1,8 44:16,22
  44:25 45:11 47:10
**recording** 4:7
**reef** 13:8
**registered** 46:7,18
  47:6,24
**relationship** 32:25
**relative** 47:13,15
**relevant** 8:19 34:3
**relief** 11:5 30:6 34:2
  34:23 35:23 38:2
**remember** 6:22,25
  7:6,10,11 9:3,4 10:11
  11:10,13 18:6,19,22
  18:24,25 19:3,4 20:4
  22:15,16,17,24 24:2
  24:3,18,24 25:5 26:7
  26:20,21,23 27:3,17
  35:16 37:23 38:1,3,7
  38:8,10
**remotely** 4:24
**rene** 1:4 4:16 48:2
**rep** 28:10
**report** 47:8
**reported** 1:24
**reporter** 1:25 3:4 5:8
  5:12,15 10:21 12:7
  15:10,22,24 22:4
  29:21 42:14 46:8,18
  47:1,7,24
**reporter's** 6:25
**reporters** 1:22 4:13
**represent** 4:25 5:2
  6:2 7:17,18 28:3 33:8
**representative** 27:24
**representatives**
  28:21
**represented** 7:7,11
  10:23
**representing** 4:9 5:3
  5:4,6,9 18:23 19:1
**reps** 27:25
**requested** 47:9
**requests** 17:8

**reserved** 3:18
**resolve** 10:14
**resources** 44:9
**respective** 3:16
**responded** 5:15
**response** 12:10
**result** 8:16 11:8
**retainer** 17:18,22
  18:3
**review** 25:21 43:10
  47:9
**rick** 2:17
**right** 5:12 6:1 8:8,24
  9:24,25 10:16 11:2
  11:21,23 12:2,10,13
  13:2,4,19,21 14:11
  14:25 15:12 16:19
  17:6,11,21,25 18:2
  18:17 19:15 22:9,12
  22:20 24:16,16,16
  25:12,15,19,21 26:1
  26:12 27:4,19,23
  28:12 29:3,15 30:4
  32:6,18 33:3,7 34:9
  35:12 37:1,3,12,13
  37:16,21,24 38:9,20
  40:24 42:7 44:1,20
  45:6
**room** 4:24
**ross** 1:16 3:2 4:21 5:7
  5:17 6:4 13:1 29:19
  36:18,25 45:16 48:4
**rpr** 1:24 46:17
**run** 33:12,14,18

**s**

**s** 3:8,13,13
**sales** 26:25
**salter** 7:15
**sanctions** 42:16 43:9
  43:19
**sarah** 2:3 5:3
**satisfied** 30:23
**save** 19:9

**saw** 32:12 33:20,20
**saying** 8:18 10:16
  27:1 31:7 40:18
**says** 34:5 39:20 41:19
**school** 13:25 14:4,12
  14:19
**schroeder** 1:24 5:9
  46:7,17 47:6,23
**se** 37:9
**seal** 46:12
**search** 32:21 33:12
  33:14,18
**second** 2:5 39:7
**see** 16:14,25 17:2,9
  31:2 34:18,25 39:8
  39:23 40:2,3 41:17
  41:22,23 42:3
**seeking** 27:13,14
  30:2,7
**seeks** 43:19,19
**seen** 23:12,18 27:2
  42:20 43:2,7
**sensitive** 4:2
**sent** 37:2
**sentence** 39:20 40:12
  41:16
**served** 43:5
**serving** 7:20 28:10
  29:11
**set** 30:7
**seth** 1:4 4:17
**settlement** 8:12,16,23
  9:1 10:9,13 11:3
  21:19 22:8 23:16,19
  23:22 24:4,14,17,23
  26:3,4 27:5 28:6
  29:18 30:21 31:12
  34:7,10,14,22 35:5
  35:12,17 38:12,12
  39:22 40:6,15,25
  41:21 42:2 44:14
**share** 43:16
**sheet** 3:5 48:1
**shores** 2:5

**show** 19:8 42:13
**showing** 23:3
**sic** 18:4
**sign** 10:13,17 17:18
**signature** 36:18
  48:24
**signed** 25:9,13,21
**signing** 3:17
**similarly** 1:5
**sir** 9:9 12:12 13:5,13
  14:22 17:6 21:5
  23:20 27:17,23 28:16
  29:10,21 31:18 40:17
  43:22
**sitting** 21:8,23 27:21
  27:25 28:11 29:8
**situated** 1:5
**skadden** 2:9
**slate** 2:9
**small** 9:10,12 27:20
  29:14
**sole** 15:18
**solutions** 4:10 5:10
**sorry** 6:11 13:17 15:6
  22:6 25:7 31:19 34:1
  37:20
**sort** 20:2
**southern** 1:1 4:19
**spaten** 19:24
**speak** 45:5
**speaking** 40:9
**speaks** 29:4 30:6,11
  39:24
**specifically** 34:13
**speculation** 44:11
**spending** 38:21
**spoke** 25:14 33:2
**st** 1:22,23 4:12,14
  13:6 46:4 47:4,20
**state** 15:15 33:8 46:3
  46:8,18 47:3
**stated** 48:22
**statement** 35:20,21
**states** 1:1 4:19

**stenographic** 47:11
**stenographically**
  47:8
**step** 28:2,2
**stephen** 2:13,13 5:6
  39:15
**steve** 16:2,3 25:11
**stipulated** 3:15
**street** 2:14
**structured** 34:16
**stuff** 24:5 39:18
**subpoena** 15:23
  16:25
**subpoenas** 16:6,14
**succeed** 8:10
**successful** 19:5 43:22
**sued** 20:15
**suggestions** 38:11
**suit** 32:23,25
**suite** 1:23
**support** 30:20
**supposed** 17:3 19:4
  21:25 38:24
**sure** 8:13 11:25 12:6
  12:24 16:8 24:8
  26:14 30:1
**swear** 5:10
**sworn** 5:14,18 46:10

**t**

**t** 3:8,13,13
**tab** 29:20 36:7 42:15
**tagline** 20:5,8
**take** 12:21,23 36:11
  43:10 44:18
**taken** 1:17 4:15 48:4
**talk** 29:25
**talking** 5:23
**technology** 14:6
**tell** 12:15,18 13:21
  21:9 23:5 26:1
**telling** 43:25
**terms** 10:16 18:3
  23:19,24,25 24:3
  25:3

**testified** 5:19 37:14
**testimony** 3:2
**thank** 6:5 16:7,10,12
  29:21 44:21 45:2,4,9
**thanks** 16:9 45:6
**thing** 17:13 37:2
**things** 11:25
**think** 14:16 17:23
  21:11 23:7,21 26:4,8
  26:10,16 27:4,7,8
  29:10,11 34:8,9,10
  34:15
**thought** 19:17 32:21
**time** 1:21 4:11,23
  7:10 9:14,16 10:21
  15:10 19:20 20:6
  22:4 26:24 27:18
  28:1,2 38:23,25 45:4
  45:7
**times** 11:16 16:21
**today** 4:10 8:20,22
  17:15 21:8,24 28:23
  29:8 45:5
**told** 15:1 22:3 23:7
  32:12,21 35:13 44:16
**top** 23:2 38:13
**touched** 20:1
**transcript** 3:17 7:23
  47:9,10
**travel** 9:14,16
**true** 47:10 48:22
**truth** 12:15,18
**truvia** 6:16,18 7:12
  8:9,16 9:1,6 10:4,14
  11:4,9,17 20:13
  27:16 29:14,15 30:3
  31:6 35:4,12,24 36:5
  36:15 37:22 38:3,6
  39:2,3
**try** 19:10
**trying** 14:21 28:20
**turn** 4:4 36:17
**turns** 41:24
**two** 8:7,8 16:14 44:18

**u**

**u** 3:13
**uh** 7:6 8:12 14:14
  15:15 19:7 23:13,19
  25:10 27:4 29:15
  36:22
**unclear** 41:17,20
**understand** 10:2
  12:16,17 24:10,11
  28:20 30:1 31:25
  37:11 38:18 40:17
  41:15 43:8
**understanding** 29:2
**united** 1:1 4:19
**unsuccessful** 44:5,10
**upset** 28:9
**usually** 19:10

**v**

**veritex** 4:9 5:9
**versus** 4:17
**videoconference** 1:16
  2:4,9
**videographer** 2:17
  4:1 5:8 44:22,25
  45:10,13,15
**videotaped** 1:16
  45:16
**vs** 1:8 48:2

**w**

**wacker** 2:10
**wait** 12:8,9
**want** 27:15 28:10,22
  30:1,16 31:4,5,14,18
  32:2 36:13 38:15
**wanted** 16:8 21:6
**way** 8:17 9:4 10:23
  11:25 26:18 34:16
**website** 40:25 41:21
  42:2
**went** 7:3,4 10:19,22
  13:25 27:2 32:12
  36:21 42:2

**whatsoever** 11:8
  18:19
**whispering** 4:3
**wish** 29:7
**witness** 2:15 4:21,21
  5:10,14,19 10:22
  17:3 18:9,12,14
  20:21 28:18 30:9
  41:9 42:8,11,20,22
  43:14 44:12,20 45:6
  45:14 46:9,12
**word** 37:24
**words** 26:1
**work** 11:14 15:4,5,8
  21:18
**worked** 15:2 25:11
**working** 14:1
**write** 8:22 25:12,17
  32:4 36:20,22
**writes** 34:21 39:11
**written** 10:9
**wrong** 16:22 38:15
  38:16 40:13,18,19,23
  40:24 41:3,12,14,24
**wrote** 25:19 40:7
  41:19

**x**

**x** 3:1,8

**y**

**yeah** 6:9,17 7:8,16,17
  7:22 8:21,25 9:10
  10:5 11:22 12:17
  13:3,3,14 15:17,19
  16:17,22 17:10,20
  18:1 21:14 22:11
  23:18 25:9,23,25
  27:15,18 29:16 32:1
  32:7 33:4,15 34:20
  35:1,3 36:16,19
  38:10 39:10 40:3,20
  41:18,23 43:1
**year** 6:13
**years** 14:3,11 15:2

| |
|---|
| **yep**  10:8 12:11,14 42:23 |
| **york**  13:24 14:6 |
| **z** |
| **zip**  13:9 |

Federal Rules of Civil Procedure

Rule 30


(e) Review By the Witness; Changes.

(1) Review; Statement of Changes. On request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which:

(A) to review the transcript or recording; and

(B) if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them.

(2) Changes Indicated in the Officer's Certificate. The officer must note in the certificate prescribed by Rule 30(f)(1) whether a review was requested and, if so, must attach any changes the deponent makes during the 30-day period.



DISCLAIMER: THE FOREGOING FEDERAL PROCEDURE RULES ARE PROVIDED FOR INFORMATIONAL PURPOSES ONLY. THE ABOVE RULES ARE CURRENT AS OF SEPTEMBER 1, 2014. PLEASE REFER TO THE APPLICABLE FEDERAL RULES OF CIVIL PROCEDURE FOR UP-TO-DATE INFORMATION.