CUNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 13-cv-23656-JJO

FRANCISCO RENE MARTY,
SETH GOLDMAN, and
FERNANDO MARQUET
on behalf of themselves and all others
similarly situated,

Plaintiffs,

v.

ANHEUSER-BUSCH COMPANIES, LLC,

Defendants.
_____/

**PLAINTIFFS' MOTION TO REQUIRE POSTING OF APPEAL BOND BY
OBJECTOR-APPELLANT ROSS MULLER
AND INCORPORATED MEMORANDUM OF LAW**

Objector Ross Muller knows nothing of this lawsuit or the settlement, knows nothing of the settlement's terms or the benefits it provides to the class, and has no idea what is "wrong" with the settlement or how it could be improved. (*See* Dep. of R. Muller, attached as Ex. A to DE 174, at 20–27 & 34). His own testimony establishes that he and his attorney Stephen D. Field care only about getting paid off. (*See id.* at 27, 29 & 31). Their objection is frivolous. [D.E. 161]. The Court rejected each of their arguments and overruled their objection as part of the settlement's final approval. [D.E. 171]. Predictably, Muller and Field have now appealed the Court's Order approving the settlement in an attempt to exact a ransom settlement from Class Counsel at the expense of the Class. [D.E. 175].

Plaintiffs accordingly request entry of an order requiring the posting of an appeal bond under FRAP 7 and 8 by Objector-Appellant Ross Muller. As the following facts and authorities demonstrate, an appeal bond in the amount of $10,000 should be imposed on Muller as a prerequisite for pursuing his appeal to account for expected appellate costs as well as the administrative costs of continued settlement administration during the length of the appeal period.

**I.     INTRODUCTION**

On September 15, 2015, Plaintiffs filed their Motion for Final Approval of Class Action Settlement, Application for Service Awards, Class Counsel's Application for Attorneys' Fees and Expenses [D.E. 108], seeking final approval of the Settlement with Defendant A-B providing over $20 million in monetary value to the Class and important injunctive changes that end disputed conduct. Of the approximately 1,700,000 Settlement Class Members, only two timely filed objections to the Settlement (collectively, the "Objections"), raising issues related generally to the amount of relief provided to the Class, and the amount of the fee award sought by Class Counsel. One of the two objections was filed by Objector Muller and his counsel Stephen Field.

The Court carefully reviewed all of the filings related to the Settlement, including Plaintiff's motion, the Objections, and response to the Objections. On October 20, 2015, the Court held a Final Approval hearing, at which all Parties and objectors were given the opportunity to appear and address the Court. No objectors appeared in person or through counsel at the Final Approval hearing to argue in support of their Objections.

On October 22, 2015, after full consideration of the filings and the presentations at the Final Approval Hearing, the Court entered its Final Order and Judgment [D.E. 172] and

Order Overruling Objections [D.E. 171]. The Court concluded that the Settlement provides a substantial recovery for the Settlement Class members, and represents an excellent result for the Settlement Class under all of the circumstances and challenges presented by this case. The Court specifically found that the Settlement is fair, reasonable, and adequate, represents more than acceptable compromise of the Settlement Class's claims, and complies with Fed. R. Civ. P. 23. And the Court also denied the Objections and rejected their arguments in all respects, finding that they were unsupported in the record and unpersuasive as to the substance of their complaints. [D.E. 171].

The Court's Final Order and Judgment should have put an end to this litigation, allowing the Parties to expeditiously distribute the benefits of the Settlement to the more than 1,700,000 Settlement Class Members. The delivery of those benefits, however, has now been delayed by Objector-Appellant Ross Muller, his Counsel Stephen Field, and their appeal. If Muller and Field wish to pursue their Objection beyond this point, in the face of this Court's ruling, they should be required to bear the costs that their actions will otherwise impose on the 1,700,000 non-objecting members of the Settlement Class.

Good cause exists for the Court to require Muller to post an appeal bond, given the high likelihood that this Court's Final Order will be affirmed. The Objection was brought by professional objectors whose sole purpose is to obtain a fee by objecting to whatever aspects of the Settlement they can latch onto. As this Court recognized in *In re Checking Account Overdraft Litigation*, 830 F. Supp. 2d 1330 (S.D. Fla. 2011), "[p]rofessional objectors can levy what is effectively a tax on class action settlements, a tax that has no benefit to anyone other than to the objectors. Literally nothing is gained from the cost:

3

Settlements are not restructured and the class, on whose benefit the appeal is purportedly raised, gains nothing." *Id.* at 1362 n.30 (internal quotation marks omitted).

An appeal bond will provide the protections typically afforded appellees during the pendency of an appeal — particularly an appeal of questionable merit — and will also discourage the Objector-Appellant and his counsel from viewing this Settlement as just a money-making opportunity. That is, if Muller and Field truly believe that their objections are well founded and they are motivated by genuine concern for the Settlement Class, they will post the required bond and proceed. On the other hand, if these appeals are what they appear to be, then by requiring bonds the Court will bend Muller and Fields' cost-benefit analyses, such that these appeals will not be the easy money they are hoping for, and they will cease their efforts to block the Class from receiving its just compensation.

The amount of such bonds should include security for (i) expected appellate fees and costs, and (ii) administrative costs of continued settlement administration during the length of the appeal period. As discussed below, Plaintiffs move the Court to order Muller to post an appeal bond totaling $10,000. The amount of this bond is appropriate in this case and is reasonable when compared to bonds imposed in other class actions, particularly in light of the meritless and attorney-interested nature of Muller and Field's appeal.

## II.     ARGUMENT

As many other courts have recognized, objectors should be required to post appeal bonds before they can use the time and expense of appeal to hold a settlement hostage. Federal Rule of Appellate Procedure 7 provides that, "[i]n a civil case, the district court may require an appellant to file a bond or provide other security in any form and amount necessary to ensure payment of costs on appeal." The Eleventh Circuit has held that under

4

Rule 7, this Court has discretion to require appellants to post a bond to secure payment of appeal costs. *See Pedraza v. United Guaranty Corp.*, 313 F.3d 1323, 1333 (11th Cir. 2002). In particular, a Rule 7 bond should be imposed where necessary to protect class members "from the burdens that stem from being forced to defend frivolous lawsuits." *Id.* at 1333. As noted by the Eleventh Circuit, "an appellant is less likely to bring a frivolous appeal if he is required to post a sizable bond . . . prior to filing the appeal." *Id.* Rule 7 authorizes the Court to forecast the outcome of the appeal. *See Adsani v. Miller*, 139 F.3d 67, 79 (2d Cir. 1998). The nature and amount of an appeal bond is left to the sound discretion of the district court. *See Farris v. Standard Fire Ins. Co.*, 280 Fed. App'x 486, 489 (6th Cir. 2008).

Courts commonly impose appeal bonds in the class action context. *See In re Cardizem CD Antitrust Litig.*, 391 F.3d 812, 816-17 (6th Cir. 2004) (endorsing the trial court's imposition of a $174,429 appeal bond); *In re Checking Overdraft Litigation*, No. 09–MD–02036, 2012 WL 456691, at *3 (S.D. Fla. Feb. 14, 2012) (ordering class action objectors to post $616,338 appeal bond); *Barnes v. FleetBoston Fin. Corp.*, No. 01-cv-10395, 2006 WL 6916834, at *3 (D. Mass. Aug. 22, 2006) (ordering imposition of $645,111 appeal bond).

When determining if an appeal bond is appropriate, courts consider: (i) the appellant's financial ability to post a bond; (ii) the merits of the appeal; (iii) whether the appellant has shown any bad faith or vexatious conduct; (iv) the risk that the appellant would not pay appellee's costs if the appeal is unsuccessful; and (v) the appellant's attorney's prior actions. *See In re Initial Pub. Offering Sec. Litig*, No 21-MC-92, 2010 WL

5

2505677, at *2 (S.D.N.Y. June 17, 2010). Consideration of these factors supports imposing an appeal bond here.

Objector-Appellant Muller and his counsel Field are continuing to press pretextual objections, unnecessarily holding up a Settlement that Class Members overwhelmingly support. Their motivations are transparent: they are looking to extract money from Class Counsel by delaying the resolution of this case. Accordingly, the Court should exercise its discretion under Rule 7 to require Muller to post a bond on appeal. *See Sckolnick v. Harlow*, 820 F.2d 13 (1st Cir. 1987) (upholding imposition of appeal bond under Rule 7 based on plaintiff's history of litigiousness and implication that appeal was frivolous); *In re Compact Disc Minimum Advertised Price Antitrust Litigation*, No. MDL 1361, 2003 WL 22417252 (D. Me. 2003) (accord); *In re NASDAQ Market-Makers Antitrust Litigation*, 187 F.R.D. 124, 128 (S.D.N.Y. 1999) (in setting the amount of Rule 7 bond, "it is appropriate to consider the merits of the appeal itself") (internal quotation marks omitted).

### A. Objector-Appellant Muller is Presumed to Have the Financial Ability to Post a Bond

Courts presume that appellants are financially able to post appeal bonds unless they demonstrate otherwise. *See In re Initial Pub. Offering Sec. Litig.*, 721 F. Supp. 2d 201, 213 (S.D.N.Y. 2010); *see also Adsani*, 139 F.3d at 79 (finding that "without any showing of [appellant's] financial hardship," the imposition of a bond is not an impermissible barrier to appeal).

Objector-Appellant Ross Muller is represented by attorney Stephen D. Field, and the appeal bond requirement should be an expected expense. Unless Muller submits evidence establishing that he is financially unable to post an appellate bond, the Court should conclude that he is able to post the bond. *See Baker v. Urban Outfitters, Inc.*, No.

6

01-CV-5440, 2006 WL 3635392, at *1 (S.D.N.Y. Dec. 12, 2006) (concluding that objectors failed to demonstrate that they could not post a bond when they failed to present adequate financial information). In any event, Mr. Muller's ability to post the bond is not decisive, because, as explained below, his appeal clearly lacks merit and he is not pursuing the appeal in good faith. *See Tri-Star Pictures, Inc. v. Unger*, 32 F. Supp. 2d 144, 148 (S.D.N.Y. 1999) (concluding that requiring bond did not deny objector due process despite objector's claimed insolvency because objector was acting in bad faith).

### B.  The Appeal Lacks Merit

As the Court has already concluded, Muller's Objections, and thus his appeal, are without merit. Muller will only be able to make arguments on appeal that were raised before the Court. *See Kensington Rock Island Ltd. P'ship v. Am. Eagle Partners*, 921 F.2d 122, 124–25 (7th Cir. 1990). And to prevail on appeal he will have to show that this Court abused its discretion. *See Williams v. Rohm and Haas Pension Plan*. 658 F.3d 629, 634 (7th Cir. 2011). The Settlement was approved after lengthy and careful review, and none of Muller's arguments on appeal have any reasonable expectation of altering the Final Order based on fact or law. The appeal serves only to delay the Settlement Class Members' receipt of the benefits of the Settlement.

Specifically, all of Muller's criticisms of the settlement are frivolous and were appropriately rejected by the Court. First, Muller argued that the Settlement provides an inadequate claims process and offers inadequate relief due to the $12.00 and $50.00 caps. The Court rejected this argument, finding that Muller's objection failed to "take into account the inherent risks associated with complex litigation such as this and the possibility that A-B may have ultimately prevailed in this case." [D.E. 171 ¶ 3).

Second, Muller argued that the percentage-of-the-fund analysis is inapplicable. The Court rejected this argument under *Poertner v. Gillette Co.*, 2015 WL 4310896 (11th Cir. 2015), where the Eleventh Circuit approved a claims-made class action settlement in a comparable deceptive labeling case. This Court reasoned that [t]he *Poertner* decision is consistent with numerous other decisions from this district that use the percentage-of-the-fund approach to evaluate the appropriateness of attorneys' fees in a claims-made class action settlement like this one" and that "[t]he 'percentage-of-the-fund' analysis applies here." [D.E. 171 ¶ 4].

Third, Muller argued that the dollar amount of the actual claims made is low in comparison to the amount of fees. The Court rejected this argument, as "[a] similar objection was recently unequivocally rejected by the Eleventh Circuit in *Poertner* because it was 'based on [a] flawed valuation of the settlement pie[,] limiting the monetary value to the amount of [Defendant's] actual payouts,' while excluding the value of the injunctive and other negotiated relief." *Id.* ¶ 5.

Fourth, the Court rejected Muller's objection that Class Counsel did not provide evidence to support a lodestar analysis, because "Class Counsel provided detailed testimony of the number of hours expended, the hourly rates for the various timekeepers, the work performed, the prevailing market rates, and all of the lodestar factors." *Id.* ¶ 6 (citing Exhibit 1 to Plaintiffs' Motion for Final Approval [D.E. 157] — Ronzetti Decl. and Composite Exhibit 1 thereto).

Fifth, the Court gave no weight to Muller's argument that the injunctive relief secured by the settlement should not be considered a benefit to the Class when valuing the Settlement for purposes of awarding fees, because "[u]nder Eleventh Circuit law,

injunctive changes such as label modifications represent a benefit to the class and should be considered when approving a class settlement." [D.E. 171 ¶ 7 (citing *Poertner*, 2015 WL 4310896, at *5, *6)].

Finally, the Court rejected Muller's objection that the motion for attorneys' fees was not posted to the settlement website and that Plaintiffs' $5,000.00 class representative awards are excessive. The Court recognized that "Class Counsel's fee motion has been posted on the Settlement Website since September 22, 2015, before Muller filed his objection and before the September 29, 2015 objection deadline," and that "Rule 23(h) does not require a fee motion to be posted on the settlement website before the objection deadline." [D.E. 171 ¶ 8]. The Court further concluded that the $5,000.00 service award was "reasonable and well-supported."[1] *Id.*

Each of Muller's objections are factually and legally meritless and were appropriately overruled by the Court. Muller has no valid basis to argue that this Court abused its discretion in approving the Settlement.

### C. The Objector-Appellants' and Their Counsels' Conduct and Motivations Warrant the Imposition of the Requested Appeal Bonds

The attorney-driven nature of Muller's appeal is transparent. Baseless rote allegations (such as those Muller raised) that class counsel undervalued the claims, and boilerplate objections to fees, notice, and class representative awards provide strong

---

[1] Muller's counsel Field is well aware that the $5,000.00 representative award is reasonable — he made this same objection to the *Kirin* settlement and it was summarily rejected. *See* Order Overruling Objections, attached as Ex. C to D.E. 174, at 3. Indeed, without a hint of irony, Muller admits he expects to get paid for his time in this case (although he has obtained nothing for the Class), yet he would deny that same benefit to the Class representatives who answered interrogatories, travelled to Florida for deposition, produced documents, and helped to achieve the settlement. *See* Muller Tr. at 27, 29.

9

evidence that the objections stem from professional objectors' counsel. Such lawyers — who employ objections, and subsequent meritless appeals, as leverage to extort settlements — interfere with the system and "often delay and unnecessarily complicate class proceedings." *Newberg on Class Actions* § 15:37. The Federal Judicial Center therefore advises courts to "[w]atch out . . . for canned objections from professional objectors who seek out class actions to extract a fee by lodging generic, unhelpful protests." Federal Judicial Center, *Managing Class Action Litigation: A Pocket Guide for Judges*, at 15 (2d ed. 2009).

Federal Courts "are increasingly weary of professional objectors," who "are a pariah to the functionality of class action lawsuits, as they maraud proposed settlements — not to assess their merits on some principled basis — but to extort the parties, and particularly the settling defendants, into ransoming a settlement that could otherwise be undermined by a time-consuming appeals process." *O'Keefe v. Mercedes-Benz United States, LLC*, 214 F.R.D. 266, 295 n.26 (E.D. Pa. 2003).

The actions of Muller and his counsel Field have real costs, as Settlement Class Member payments will be delayed, and the administrative costs will mount, until the appeals have been resolved.

> Class actions . . . attract those in the legal profession who subsist primarily off of the skill and labor of, to say nothing of the risk borne by, more capable attorneys. These are the opportunistic objectors. Although they contribute nothing to the class, they object to the settlement, thereby obstructing payment to lead counsel or the class in the hope that lead plaintiff will pay them to go away. Unfortunately, the class-action kingdom has seen a Malthusian explosion of these opportunistic objectors . . . .

*In re Cardinal Health, Inc. Sec. Litig.*, 550 F. Supp. 2d 751, 754 (S.D. Ohio 2008).

Both Muller and his attorney Field are fairly characterized as professional objectors, and they should be forced to internalize the costs that their fee-seeking conduct imposes on the Class. In particular, Field made a nearly identical objection in the related state court *Kirin* settlement, which was rejected, and his subsequent appeal was dismissed by the Third District Court of Appeal.

And with respect to Objector-Appellant Muller, he previously submitted a pro forma objection to a settlement relating to the sweetener Truvia. *See* Tr. at 36. Worse, that objection was actually prepared by his attorney in that matter, who did not file a notice of appearance — a widely disparaged practice called ghost-writing. *Id.* Once the objection was overruled, his attorney filed a notice of appearance and a notice of appeal. *See Howerton et al. v. Cargill, Inc. et al.*, Case No. 13-cv-00336 (D. Hawaii) (DE 117 & 122). No changes to the Truvia settlement were ever made, yet Muller dismissed his objection because he was paid $2,000 (and undoubtedly his attorney was paid more). *Id.*; Tr. at 9-10. In fact, when deposed in this case, Muller could recall nothing about the Truvia case other than the fact he got paid $2,000.00. *See* Tr. at 11 ("Q. But you have no recollection of the outcome of your objection, other than you received $2,000 to dismiss your appeal; is that right? A. That's what I said, yeah."). It is clear that Field and Muller are hoping to accomplish the same here — obtain no changes to the settlement, just delay this settlement so that they will be paid to dismiss their objection and inevitable appeal.

To protect the Settlement Class from this bad faith conduct, the Court should impose an appeal bond on Objector-Appellant Muller.

### D.     A Significant Risk of Nonpayment Exists

Class Counsel and the Settlement Class face a significant risk of never receiving any of the post-appeal costs to which they may be entitled absent a bond, as Muller lives outside of this District and has not offered to guarantee payment of costs that might be assessed against him. *Id.* In light of this risk, the Objector-Appellant should be required to post an appeal bond. *See Poplar Grove Planting and Refining Co.*, 600 F.2d at 1191.

### E.     The Amounts Requested Are Reasonable

While the precise amount of the bond is left to the sound discretion of the Court, the practical reality is that "[r]equiring too small a bond, or no bond at all, may encourage frivolous, time-consuming, harassing appeals." *Page v. AH Robins Co.*, 85 F.R.D. 139, 139-40 (E.D. Va. 1980). The costs that can be included in a Rule 7 bond are not limited to costs defined by Rule 39. *See Pedraza*, 313 F.3d at 1323. The district court has substantial discretion to determine the amount of a bond necessary to ensure the payment of costs on appeal. *Id.* at 1327; *Sckolnick*, 820 F.2d at 15.

Plaintiff requests that the amount of the bonds in this instance total $10,000, representing security for (i) expected appellate costs, and (ii) administrative costs of continued settlement administration during the length of the appeal period.

The first category of costs, under Rule 39, is routinely included in appeal bonds. *See, e.g.*, *O'Keefe v. Mercedes-Benz-USA, LLC*, No. 01-cv-2902, 2003 U.S. Dist. LEXIS 9838 (E.D. Pa. 2003) (including Rule 39(c) costs of copying, printing, and reproducing documents in an appeal bond); Wright, Miller & Cooper, *Federal Practice & Procedure* § 3953 (3d ed. 1999). Class Counsel anticipate incurring costs taxable under Rule 39(e),

12

including the estimated cost for printing and copying briefs and other submissions, in the approximate amount of $5,000.

The second category of costs that should be included in the appeal bonds, the administrative costs of continued settlement administration, is also routinely included in class action appeal bonds. *See, e.g., In re Netflix Privacy Litig.*, No. 11-cv-00379, 2013 WL 6173772, at *4 (N.D. Cal. Nov. 25, 2013) (including "significant administrative costs" totaling $21,344 in class action appeal bond); *Dennings v. Clearwire Corp.*, 928 F. Supp. 2d 1270 (W.D. Wash. 2013) (including $39,150 in "increased expenses in settlement administration and administrative costs" in class action appeal bond); *Miletak v. Allstate Ins. Co.*, No. 06-03778, 2012 WL 3686785, at *2 (N.D. Cal. Aug. 27, 2012) (same for $60,000 bond); *In re Uponor, Inc., F1807 Plumbing Fittings Products Liability Litigation*, No. 11–MD–2247, 2012 WL 3984542, at *5 (D. Minn. Sept. 11, 2012) (same for $170,000 bond).

Inclusion of this second category is also justified to (at least partially) preserve the status quo. As Judge Gold and former Judge Scott recognized in *Allapattah Services, Inc. v. Exxon*, No. 91-0988-CIV (S.D. Fla. 2006), if an objecting class member's appeal effectively stays the payment of settlement proceeds or the implementation of settlement relief to the rest of the class, it is appropriate to require the appealing class member to post a *supersedeas* bond to "preserve the status quo while protecting the non-appealing party's rights pending appeal." Report and Recommendation on Westheimer's Objection to the Class Settlement, at 20-24 (DE 1315-4) ("*Exxon* R&R"), *adopted by Allapattah Services, Inc. v. Exxon Corp.*, 2006 WL 1132371 (S.D. Fla. 2006) (*citing Poplar Grove Planting and Refining Co., Inc. v. Bache Halsey Stuart, Inc.*, 600 F.2d 1189 (5th Cir. 1979)). "The

bond secures against any losses sustained as a result of being 'forced to forgo execution on a judgment during the course of an ineffectual appeal.'" *Id.* at 22-23 (quoting *Poplar Grove*, 600 F.2d at 1191).

Finally, including administrative costs is further justified by the fact that Plaintiffs asserted claims against A-B under the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201, *et seq.*, which contains a provision permitting the court to require a party bringing a meritless claim to post a bond to indemnify the defendant for any damages incurred, Fla. Stat. § 501.211(3). *See In re Cardizem CD Antitrust Litig.*, 391 F.3d at 818; *Pedraza*, 333 F.3d at 1333.

In this instance, the Settlement Administrator Kurtzman Carson Consultants, LLC ("KCC") estimates, based on its extensive previous experience, that "an appeal will cause an incremental increase of approximately $2,000 to $2,750 per month in ongoing administration costs during the appeal period. This estimate includes the following activities: settlement website maintenance (including periodic updates or document postings during and after the appeal); updates to the interactive voice response system ("IVR"); IVR monthly maintenance fees; IVR minutes; document storage; post office box fees; handling class member communications (e.g., address updates, distribution inquiries, etc.); updates to claimant address information; additional address searches for undeliverable checks (because more claimants are likely to change addresses if the check distribution is delayed); and staff hours related to client communications, project management, quality assurance, and systems support." Exhibit A (Decl. of Jeffrey Gyomber ¶ 3). Moreover, according to the most recent statistics published by the federal court system, the median time from filing a notice of appeal to final disposition in the

14

Eleventh Circuit is 7.3 months. *See* http://www.uscourts.gov/statistics/table/na/federal-court-management-statistics/2015/06/30. Thus, if the appeal period extends the Settlement Administration by 7.3 months, the additional cost is estimated to be $14,600 (using the low end of KCC's $2000 to $2,750 range).

A $10,000 bond is, therefore, supported by the facts here and reasonable when compared to the bonds imposed in similar cases. *See, e.g., In re Cardizem CD Antitrust Litig.*, 391 F.3d at 818 (endorsing $174,429 appeal bond); *In re Checking Overdraft Litigation*, 2012 WL 456691 at *3 (ordering class action objectors to post $616,338 appeal bond); *Barnes v. FleetBoston Fin. Corp.*, 2006 WL 6916834 at *3 (ordering imposition of $645,111 appeal bond).

## III. CONCLUSION

For the foregoing reasons, requiring Objector-Appellant Muller to post an appeal bond is justified and appropriate. Plaintiffs respectfully request that the Court enter an Order under FRAP 7 and 8 requiring Muller to post an appeal bond totaling $10,000 to account for expected appellate costs as well as the administrative costs of continued settlement administration during the length of the appeal period.

Respectfully submitted,

| | |
|---|---|
| Robert W. Rodriguez, Esq.<br>RobertWRodriguez@GMail.Com<br>**ROBERT W. RODRIGUEZ, P.A.**<br>66 West Flagler Street, Suite 1002<br>Miami, Florida 33130<br>Telephone: (305) 444-1446<br>Facsimile: (305) 907-5244<br><br>Lance A. Harke, P.A.<br>lharke@harkeclasby.com<br>Howard M. Bushman, Esq.<br>hbushman@harkeclasby.com<br>**HARKE CLASBY & BUSHMAN LLP**<br>9699 NE Second Avenue<br>Miami Shores, Florida 33138<br>Telephone: (305) 536-8220<br>Facsimile: (305) 536-8229 | /s/ Thomas A. Tucker Ronzetti<br>Thomas A. Tucker Ronzetti, Esq.<br>tr@kttlaw.com<br>Adam M. Moskowitz, Esq.<br>amm@kttlaw.com<br>Tal J. Lifshitz, Esq.<br>tjl@kttlaw.com<br>**KOZYAK, TROPIN &**<br>**THROCKMORTON, LLP**<br>2525 Ponce de Leon Blvd., 9th Floor<br>Coral Gables, FL 33134<br>Telephone: (305) 372-1800<br>Facsimile: (305) 372-3508<br>*Counsel for Plaintiffs*<br><br>John Campbell, Esq.<br>john@campbelllawllc.com<br>**CAMPBELL LAW, LLC**<br>1500 Washington Avenue,<br>Suite 100<br>St. Louis, MO 63103<br>(314)588-8101<br>*Counsel for Plaintiff* |

**CERTIFICATE OF SERVICE**

    **I HEREBY CERTIFY** that on this 8th day of December, 2015, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which will serve all counsel of record — including Objector Muller's counsel Stephen D. Field — via transmission of Notices of Electronic Filing generated by CM/ECF. I further certify that I mailed the foregoing document via FedEx to Objector Abner Leps at 11 Grayson Court, Charles Town, West Virginia 25414.

    /s/ Thomas A. Tucker Ronzetti

**SERVICE LIST**

Stanley H. Wakshlag
swakshlag@knpa.com
201 South Biscayne Boulevard, Suite 1100
Miami, FL 33131-4327
Phone: (305) 373-1000
Fax: (305) 372-1861

*Attorneys for Defendant Anheuser-Busch Companies, LLC*

David R. Pehlke
david.pehlke@skadden.com
Brandon R. Keel
brandon.keel@skadden.com
**SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP**
155 North Wacker Drive
Chicago, IL 60606
Phone: (312) 407-0700
Fax: (312) 407-0411

*Attorneys for Defendant Anheuser-Busch Companies, LLC*

Abner Leps
Iino27ii@hotmail.com
11 Grayson Court
Charles Town, West Virginia 25414
Phone: (205) 538-8618

*Objector*

Ross Muller
2140 Reef Drive
St. Augustine, Florida 32080
Phone: (949) 357-3132

*Objector*

Stephen D. Field
steve@field-law.com
Stephen D. Field, P.A.
102 East 49th Street
Hialeah, Florida 33013
Phone: (305) 698-3421
Fax: (305) 698-1930

*Attorney for Objector Ross Muller*

4291.101.F57483